# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN HENNESSY, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>TELIK, INC., MICHAEL M. WICK, CYNTHIA M. BUTITTA, UBS SECURITIES LLC, LEHMAN BROTHERS HOLDINGS INC., and J.P. MORGAN SECURITIES INC., )<br><br>Defendants. ) | **CIVIL ACTION NO.  07-cv-5707**<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Kevin Hennessy ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Telik, Inc. ("Telik" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal class action on behalf of purchasers of the common stock of Telik, who purchased or otherwise acquired Telik's common stock between March 27, 2003 and June 4, 2007, inclusive (the "Class Period"), including purchasers in the Company's November 5, 2003 stock offering, and the Company's January 28, 2005 stock offering (the "Offering"),

seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Telik is a biopharmaceutical company that works to develop and commercialize innovative small molecule drugs to treat diseases. The Company's most advanced drug development candidate is TELCYTA (TLK286), a tumor-activated small molecule.  TELCYTA is a small molecule cancer drug product candidate designed to be activated in cancer cells. Throughout the Class Period, the Company conducted multiple clinical trials to evaluate the effectiveness of TELCYTA, and reported positive results to investors.

3.    Throughout the Class Period, the defendants misled financial analysts, the Food and Drug Administration ("FDA"), and investors into believing that TELCYTA was safe and effective for public use, and that the Company had conducted sufficient clinical studies to prove it.  The Company, however, did not disclose that its clinical studies showed that test subjects had died at an increased rate when compared to those participants that were not given the drug, and that physicians pulled other test subjects out of the study early, which compromised the data that was being gathered and analyzed.  As a result of the false and misleading statements issued by the defendants, shares of the Company's common stock were artificially inflated during the Class Period.

4.    The Company's scheme came to a screeching halt on December 26, 2006 when the Company reported preliminary data revealing that TELCYTA had failed all three of its clinical trials.  In one trial, the Company stated that "TELCYTA did not achieve a statistically significant improvement in overall survival, the primary endpoint."  In another trial, the Company stated that TELCYTA "did not achieve its primary endpoint of demonstrating a statistically significant improvement in overall survival for TELCYTA as compared to the active

controls."  Additionally, the Company disclosed that in the third clinical trial, approximately 25 percent of the patients were prematurely discontinued from the assigned study treatment.

5.      On this news, shares of the Company's stock declined $11.49 per share, or over 70.6 percent, to close on December 26, 2006 at $4.77 per share, on unusually heavy trading volume.

6.      Then on June 3, 2007, the Company released the results of its Assist-1 trial at the annual meeting of the American Society of Clinical Oncology (ASCO).  In stark contrast to the Company's prior statements, the Company revealed for the first time that participants in the study groups actually died sooner when they used TELCYTA, at an average of five months sooner than those who did not receive the drug.  The following day, the FDA placed a clinical hold on the Company's Investigational New Drug Application for TELCYTA, which was initiated by FDA following the presentation of TELCYTA Phase 3 clinical trial results.  The effect of this clinical hold stopped new patient enrollment in TELCYTA clinical trials, and the Company was prohibited from administering additional doses of the drug to those patients already enrolled in the trials.

7.      Following the Company's news and the FDA announcement, shares of the Company's stock declined an additional 41 percent, to close on June 5, 2007 at $3.42 per share, on unusually heavy trading volume.

8.      The Complaint alleges that, throughout the Class Period, defendants failed to disclose or indicate the following: (1) that TELCYTA clinical trials were not conducted pursuant to FDA clinical trial standards; (2) as such, the study data that was being gathered and analyzed would be unusable and therefore meaningless to the FDA; (3) that participants in the TELCYTA clinical trials were actually dying faster than those that were not using the drug; (4) that as a

result, the defendants had no reason to believe the Company's TELCYTA New Drug Application would be accepted, and therefore the defendants knew or should have known that TELCYTA would not be a commercially viable drug candidate.

9.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v) and pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

12.     Venue is proper in this Judicial District pursuant to Section 22 of the Securities Act and pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, the Company's Offering was actively marketed in this Judicial District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, Kevin Hennessy, as set forth in the accompanying certification, incorporated by reference herein, purchased Telik common stock at artificially inflated prices during the Class Period and has been damaged thereby.

15.     Defendant Telik is a Delaware corporation with its principal place of business located at 3165 Porter Drive, Palo Alto, California.

16.     Defendant Michael M. Wick, M.D., Ph.D. ("Wick") was, at all relevant times, the Company's President, Chief Executive Officer ("CEO"), and Chairman of the Board of Directors.

17.     Defendant Cynthia M. Butitta ("Buttia") was, at all relevant times, the Company's Chief Financial Officer ("CFO"), Chief Operating Officer ("COO"), and Principal Accounting Officer.

18.     Defendants Wick and Butitta are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Telik's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-

published" information, the result of the collective actions of the Individual Defendants.

19.    Defendant UBS Securities LLC ("UBS") is an investment banking house with offices in this District.  Defendant UBS was an underwriter and Lead Manager for the Company's January 2005 Offering.

20.    Defendant Lehman Brothers Inc. ("Lehman") is an investment banking house with offices in this District.  Defendant Lehman was an underwriter and Co-Manager for the Company's January 2005 Offering.

21.    Defendant J.P. Morgan Securities Inc. ("JP Morgan") is an investment banking house with offices in this District.  JP Morgan was an underwriter and Co-Manager for the Company's January 2005 Offering.

22.    Defendants UBS, Lehman, and JP Morgan are collectively referred to hereinafter as the "Underwriter Defendants."  The Underwriter Defendants served as underwriters, financial advisors, and assisted in the preparation of the Company's January 2005 Offering.

## SUBSTANTIVE ALLEGATIONS

### Background

23.    Telik is a biopharmaceutical company that works to develop and commercialize innovative small molecule drugs to treat diseases. The Company's most advanced drug development candidate is TELCYTA (TLK286), a tumor-activated small molecule.  TELCYTA is a small molecule cancer drug product candidate designed to be activated in cancer cells. Throughout the Class Period, the Company conducted multiple clinical trials to evaluate the effectiveness of TELCYTA, and reported positive results to investors.

**Materially False and Misleading
Statements Issued During the Class Period**

24.    On March 27, 2003, the Company issued a press release entitled "Telik Initiates

Phase 3 Registration Trial of TLK286 in Ovarian Cancer Patients."  Therein, the Company, in

relevant part, stated:

> Telik, Inc. announced the initiation of a randomized, controlled
> Phase 3 registration trial of TLK286 administered as a single agent
> in ovarian cancer patients whose disease has progressed following
> platinum-based chemotherapy and one second-linetreatment.
>
> The multinational trial, designated the ASSIST-1 (ASsessment of
> Survival In Solid Tumors-1) trial, is expected to enroll
> approximately 440 women. Patients will be randomized to a
> TLK286 treatment group, or to a control group receiving either
> Doxil® or Hycamtin®, drugs that are commonly used in the third-
> line ovarian cancer setting. The study is designed to evaluate
> whether TLK286 treatment reduces the risk of death, leading to an
> increase in survival, as compared to the control group treatments.
>
> Results from a Phase 2 single agent study of TLK286 in ovarian
> cancer were presented at the American Society of Clinical
> Oncology meeting in May 2002 and at the EORTC/NCI/AACR
> meeting in November 2002. In this trial, objective tumor responses
> were observed and median patient survival was estimated at 17
> months by Kaplan-Meier analysis.
>
> "Ovarian cancer has the highest mortality rate of all gynecologic
> malignancies. There is an urgent need for new treatment
> alternatives since approximately 75% of new cases of ovarian
> cancer are diagnosed at an advanced stage," said Gail L. Brown,
> M.D., senior vice president and chief medical officer. "**The
> objective responses and survival benefit observed with
> TLK286 in our Phase 2 ovarian cancer trial, the clinical
> activity reported in other cancers, including non-small cell
> lung, breast and colorectal, as well as the tolerability profile
> seen inmore than 350 patients, provide a strong foundation for
> this Phase 3 trial**."
>
> * * *
>
> **TLK286 is a small molecule prodrug which is activated by
> GST P1-1, an enzyme present in higher levels in many human**

7

**cancers than in normal tissues. Upon activation, TLK286 initiates an intracellular process known as apoptosis, or programmed cell death**. Telik has retained worldwide commercialization rights to TLK286. [Emphasis added.]

25. On April 9, 2003, the Company issued a press release entitled "Telik Announces New Preclinical Data on TLK286 that Supports Unique Mechanism of Activation, and Activity in Combinations with Standard Cancer Drugs." Therein, the Company, in relevant part, stated:

Telik, Inc. announced a series of preclinical studies of its TLK286 product candidate, currently in a Phase 3 registration trial for ovarian cancer, and in clinical trials in non-small cell lung, breast and colorectal cancer. The studies were published in the March 2003 Proceedings of the Annual Meeting of the American Association for Cancer Research.

TLK286 is a prodrug which is administered in an inactive form. It is activated in cancer cells by GST P1-1, an enzyme present in higher levels in important cancers including ovarian, lung, breast, colorectal, pancreas and lymphoma, than in normal tissue. **In previous studies, Telik scientists have reported that TLK286 induces cancer cell death via the stress response signaling pathway**. New preclinical data published on TLK286 include:

- **TLK286-induced activation of the stress response apoptotic signaling pathway: confirmation of novel antitumor mechanism of action (Abstract # 2643).** TLK286 toxicity to cancer cells increases in a time- and dose-dependent manner after it is cleaved by GST P1-1. Using an analog of TLK286 that could not be cleaved by GST P1-1, Telik scientists demonstrated that the non-cleavable analog was inactive, and therefore that cleavage is required for TLK286 activation and subsequent cancer cell killing. This result supports the premise that the selective activation of TLK286 within cancer cells contributes to the generally mild side effect profile and antitumor activity of TLK286 seen in clinical trials.

- **Enhanced antitumor activity of TLK286 in combination with oxaliplatin, carboplatin, doxorubicin, paclitaxel and docetaxel in human colorectal, ovarian, non-small cell lung and breast cancer cell lines (Abstract # 1722).** Human cancer cell lines were treated with TLK286 in combinations with several important chemotherapeutic drugs. The studies consistently demonstrated enhanced or synergistic cancer cell growth inhibition. For example, treatment of a colorectal

cancer cell line with TLK286 and oxaliplatin resulted in a fifteen-fold increase in growth inhibition compared to the sum of either agent alone. These data, and the mild, non-overlapping toxicities seen in clinical trials of TLK286, suggest that combinations may be appropriate and provide scientific support for ongoing clinical trials using TLK286 in regimens with docetaxel, carboplatin and doxorubicin (Doxil®).

• **Sensitization of a human cancer cell line to paclitaxel following prolonged treatment with TLK286 (Abstract # LB123).** Following up on the combination studies, Telik scientists examined the effects of prolonged exposure of human ovarian cancer cells to TLK286. TLK286 exposure was associated with enhanced sensitivity of the cancer cells to taxanes, an important class of chemotherapeutic drugs. [Emphasis added.]

26.    On April 24, 2003, the Company issued a press release entitled "Telik Announces

First Quarter 2003 Financial Results."  Therein, the Company, in relevant part, stated:

Key developments at Telik since the beginning of 2003 have included:

• The initiation of a Phase 3 registration trial of TELCYTA™ in ovarian cancer patients whose disease has progressed following platinum-based chemotherapy and one second-line treatment. The multinational trial, designated the **ASSIST-1** (**AS**sessment of **S**urvival **I**n **S**olid **T**umors-1) trial, is designed to evaluate whether TELCYTA™ treatment reduces the risk of death, leading to an increase in survival, as compared to the control group treatments.

• The publication of new preclinical data that support the ongoing clinical development of TELCYTA™. These data elaborate on the proposed mechanism of activation and activity of TELCYTA™ and describe the use of TELCYTA™ in combination with standard chemotherapeutic drugs. [Emphasis in original.]

27.    On June 1, 2003, the Company issued a press release entitled "Telik Announces Confirmatory Results from Second Phase 2 Trial of TELCYTA™ in Advanced Non-Small Cell Lung Cancer."  Therein, the Company, in relevant part, stated:

> Telik, Inc. announced positive interim results from a second Phase 2 trial which confirm the clinical activity of TELCYTA™ (TLK286) administered as a single agent in the treatment of patients with non-small cell lung cancer who have failed platinum-containing regimens. The data were presented at the annual meeting of the American Society of Clinical Oncology in Chicago.
>
> Interim results from this trial show an 8% objective response rate (one partial response by the RECIST criteria), one minor response (8%) and a 67% overall disease stabilization rate. Median duration of stable disease is greater than 4.5 months and ongoing. Median survival has not yet been reached. TELCYTA™ continues to be well-tolerated, with the most common adverse events in this trial categorized as Grade 1 or 2 (mild to moderate). There were few Grade 3 and no Grade 4 adverse events. Thirty-three patients with Stage IIIB or IV non-small cell lung cancer were evaluable for survival and 12 patients were evaluable for tumor response at the time of interim analysis. Half had failed prior platinum therapy and two-thirds also were resistant to paclitaxel.
>
> "Advanced, chemotherapy-resistant non-small cell lung cancer patients have a predictably poor prognosis, and published clinical trials with second- and third-line agents for the disease have shown low response rates and median survival times from four to six months," said Gail L. Brown, M.D., senior vice president and chief medical officer. "In the earlier Phase 2 trial of TELCYTA™ in non-small cell lung cancer, median survival was significantly improved over that expected for these patients. We are encouraged that the objective responses and high disease stabilization rate may translate to a survival advantage in this ongoing trial."
>
> Telik plans to initiate a registration Phase 3 trial of TELCYTA™ for the treatment of advanced non-small cell lung cancer.
>
> In Phase 2 trials, TELCYTA™ has demonstrated clinical activity in ovarian, breast and colorectal cancer, in addition to non-small cell lung cancer. A high proportion of these tumors express GST P1-1, which activates TELCYTA™ within the tumor.

28. Also on June 1, 2003, the Company issued a press release entitled "Telik Announces Confirmatory Results from Second Phase 2 Trial of TELCYTA™ (TLK286) in Advanced Ovarian Cancer." Therein, the Company, in relevant part, stated:

> Telik, Inc. (Nasdaq: TELK) announced positive interim results from a second Phase 2 clinical trial of TELCYTA™ (TLK286) administered as a single agent in women with platinum refractory or resistant ovarian cancer, that confirm the previous results of a previous Phase 2 trial in this patient population. The data were presented at the annual meeting of the American Society of Clinical Oncology in Chicago.
>
> The interim results show a 17% objective response rate (three partial responses by RECIST criteria) and 56% overall disease stabilization rate in women with advanced, platinum refractory or resistant ovarian cancer. Responses were accompanied by clinical symptom improvement. Median duration of stable disease is greater than six months and ongoing. Median survival has not yet been reached. TELCYTA™ continues to be well-tolerated, with the most common adverse events categorized as Grade 1 or 2 (mild to moderate). Grade 3 adverse events were infrequent, and no Grade 4 adverse events were reported.
>
> The interim analysis is based on 33 patients evaluable for survival and 18 patients evaluable for tumor response. All of the patients were either refractory or resistant to platinum, and 82% were resistant to paclitaxel and additional salvage therapies.
>
> "These results confirm the clinical activity reported in the previous Phase 2 trial of TELCYTA™ in advanced ovarian cancer and support the ongoing Phase 3 registration trial of TELCYTA™ in the third-line ovarian cancer setting," said Gail L. Brown, M.D., senior vice president and chief medical officer. "The interim results of this trial are comparable with those of the first ovarian cancer trial at a similar stage. This is encouraging because, in our earlier Phase 2 trial, clinical responses correlated with improved overall median survival. The efficacy, favorable toxicity profile and non-overlapping toxicities reported with TELCYTA™ now observed over a wide range of patient drug exposure, facilitate its use both as a single agent and in combination regimens in less advanced patients."
>
> "Further, we are pleased to report that the ovarian cancer patient in our earlier Phase 2 trial, whose complete response following TELCYTA™ treatment was first reported at the 2002 ASCO

meeting, remains in complete remission and off all treatment for ovarian cancer," Dr. Brown said. "This durable, long-term complete response is particularly encouraging because her disease was refractory to platinum therapy."

In Phase 2 trials, TELCYTA™ has demonstrated clinical activity in breast, non-small cell lung and colorectal cancer, in addition to ovarian cancer. A high proportion of these tumors express GST P1-1, which activates TELCYTA™ within the tumor.

29.    On July 30, 2003, the Company issued a press release entitled "Telik Announces Second Quarter 2003 Financial Results."  Therein, the Company, in relevant part, stated:

At the annual meeting of the American Society of Clinical Oncology (ASCO) in May 2003, Telik reported positive new interim results from Phase 2 clinical trials of TELCYTA™ in ovarian, non-small cell lung and breast cancer. Key findings included:

- **Ovarian cancer:** New interim clinical results confirmed the significant clinical activity reported in the previous Phase 2 clinical trial of TELCYTA™ in women with advanced ovarian cancer, and support the ongoing Phase 3 trial in this potential indication.

- **Non-small cell lung cancer:** Interim results from a second Phase 2 clinical trial in poor prognosis patients who have failed platinum-containing regimens confirmed the results reported in the prior Phase 2 clinical trial in non-small cell lung cancer, in which disease stabilization was associated with a median survival that was significantly improved over that expected for these patients.

* * *

In these clinical trials, as in the previous clinical trials, TELCYTA™ treatment was well-tolerated, **with most side effects mild and reversible**.  [Emphasis added.]

30.    On June 30, 2003, the Company held an earnings conference call with investors and financial analysts.  During this call, Defendant Wick, in relevant part, stated:

Financials (C.B.) 1. Net loss $11.9m ($0.33 per share), vs. net loss $9.1m ( $0.33) per share YoverY: 1. Due to increases in R&D spending of $10.3m, vs. $8m YoverY 2. Reflects expansion of

clinical development program for TELCYTA, and for second compound, TLK199 2. Cash on hand $80.8m, vs $104.3m at year end 2002 3. Projected operating expenses for 2003 of $55-60m 4. **Cash burn for 2003 projected to be $45-50m, assumes payment for corporate partnerships**.

\* \* \*

S2. Operations (M.W.) 1. Highlights: 1. Presentation at American Society of Clinical Oncology, of three new phase 2 trials in ovarian, non-small cell lung, and breast cancer 2. Results of trials confirm previous results of TELCYTA 3. Presented for first time positive results in breast cancer 4. Results contribute to confirmation of unique mechanism of **TELCYTA: 1. Spares tissues from damaging effects of activated drug 2. Targeted activation strategy 3. More tolerable cancer drug -- side effects generally mild and reversible, in several hundred patients treated** 5. With results of breast cancer, are four-for-four in demonstrating clinical activity of TELCYTA in each cancer 2. **Ovarian cancer trial: 1. Interim results show 17% objective response rate, 56% overall disease stabilization rate 2. Strategy of reducing risk going forward by conducting Phase 2 trials with Phase 3 standards** 3. Median survival estimated at 71 weeks 4. One woman had complete response after refracted to platinum therapy; taken off therapy, remains in remission for 17 mos. 3. **Lung cancer trial: 1. 8% objective response rate and 67% overall disease stabilization rate 2. Positive result 3. In first trial , median survival nine months** 4. On track for Phase 3 trial in non-small cell lung cancer 5. Suggests TELCYTA is insensitive to schedule; important for using in combination

\* \* \*

(George Farmer, Fortis Securities) Can you give an update on median survival of first ovarian cancer phase 2 trial?

(Michael Wick) The last public update we gave was in Nov 2002 at the ORTC meeting, I think it was 71 weeks. The data continued very strong, we don't really update it because it requires calling each patient to find out if they're alive or dead. We're focused on the phase 3 trials now. Sometime along the line we'll give final data on that. But it continues strong.

\* \* \*

(Joel Sendek, Lazard Freres) And what difference from the control arm are you looking for?

13

(Michael Wick) This is an event driven trial, and the event is death. The trial has a 98 percent probability to show a 28% reduction in the risk of death. That translates into approximately a 40% increase in median survival over the control arm. That's really a translation of the primary math. We surpassed that by quite a bit in both ovarian cancer trials.  [Emphasis added.]

31.    On August 14, 2003, the Company issued a release entitled "Telik Announces Positive Follow-Up Results from Phase 2 Trial of TELCYTA™ in Advanced Non-Small Cell Lung Cancer."  Therein, the Company, in relevant part, stated:

Telik, Inc. (Nasdaq: TELK) reported positive follow-up data from a Phase 2 clinical trial of TELCYTA™ (TLK286) in patients with non-small cell lung cancer whose disease progressed following platinum-containing regimens. The data were reported at the Tenth World Conference on Lung Cancer in Vancouver, British Columbia.

Patients enrolled in this trial received TELCYTA™ as second- or third-line treatment for advanced non-small cell lung cancer. An 11% objective response rate was observed in the 19 patients evaluable for efficacy at the time of analysis. The overall disease stabilization rate was 69%. Median survival has not yet been reached. TELCYTA™ continues to be well tolerated, with the most common adverse events categorized as Grade 1 or 2 (mild to moderate).

"These maturing results further confirm the clinical activity of TELCYTA™ that has been reported in non-small cell lung cancer, including earlier data from this trial presented at the American Society of Clinical Oncology meeting in June, and data from a previous Phase 2 trial in non-small cell lung cancer," said Gail L. Brown, M.D., senior vice president and chief medical officer. "We look forward to the initiation of the TELCYTA™ Phase 3 registration trial in non-small cell lung cancer later this year."

In Phase 2 trials, TELCYTA™ has demonstrated clinical activity in ovarian, breast and colorectal cancer, in addition to non-small cell lung cancer. A high proportion of these tumors express GST P1-1, which activates TELCYTA™ within the tumor. A Phase 3 registration trial of TELCYTA™ in women with advanced ovarian cancer is in progress, in addition to ongoing trials evaluating TELCYTA™ in combination with standard chemotherapies.

32.    On September 3, 2003, the Company issued a press release entitled "Telik Announces FDA Fast Track Designation for TELCYTA™." Therein, the Company, in relevant part, stated:

> Telik, Inc. (Nasdaq: TELK) announced that the U.S. Food and Drug Administration has granted Fast Track designation for TELCYTA™ (TLK286) for third line therapy in patients with platinum refractory or resistant ovarian cancer.
>
> "Fast Track designation is a recognition by the FDA of the serious unmet medical need faced by women with platinum refractory or resistant ovarian cancer, and the potential of TELCYTA™ to address that need," said Gail L. Brown, M.D., senior vice president and chief medical officer. A randomized Phase 3 registration clinical trial with TELCYTA™ is in progress for third line therapy in patients with platinum refractory or resistant ovarian cancer.
>
> **Fast Track programs are designed to facilitate the development and expedite the review of new drugs that are intended to treat serious or life-threatening conditions and that demonstrate the potential to address unmet medical needs.** [Emphasis added.]

33.    On October 1, 2003, the Company issued a press release entitled "Telik Announces Successful Completion of FDA Special Protocol Assessment Review for TELCYTA™." Therein, the Company, in relevant part, stated:

> Telik, Inc. (Nasdaq: TELK) announced that the Phase 3 protocol for TELCYTA™ (TLK286) in non-small cell lung cancer (NSCLC) has successfully completed Special Protocol Assessment (SPA) review by the U.S. Food and Drug Administration.
>
> The trial, designated **ASSIST-2 (As**sessment of **S**urvival **I**n **S**olid **T**umors-2), will enroll approximately 500 patients with platinum refractory or resistant NSCLC who will be randomized to receive either TELCYTA™ or Iressa® (gefitinib) for the third-line treatment of NSCLC. The study is designed to evaluate whether TELCYTA™ treatment leads to an increase in survival as compared to the control treatment. The first Phase 3 TELCYTA™ protocol, for the ongoing **ASSIST-1** trial of TELCYTA™ in women with platinum refractory or resistant ovarian cancer, previously underwent successful SPA review.

15

34.    On October 29, 2003, the Company issued a press release entitled "Telik Announces Third Quarter 2003 Financial Results."  Therein, the Company, in relevant part, stated:

> Recent highlights have included:
>
> - The Phase 3 clinical trial protocol for TELCYTA™ in advanced non-small cell lung cancer (NSCLC) has successfully completed Special Protocol Assessment (SPA) review by the U.S. Food and Drug Administration. The protocol for the ongoing Phase 3 TELCYTA™ trial in platinum refractory or resistant ovarian cancer previously underwent successful SPA review.
>
> - Telik received FDA Fast Track designation for TELCYTA™ for third-line treatment in patients with platinum refractory or resistant ovarian cancer.
>
> - At the Tenth World Conference on Lung Cancer, Telik reported maturing results from a Phase 2 trial of TELCYTA™ in advanced non-small cell lung cancer, demonstrating an 11% objective response rate and 69% overall disease stabilization rate.
>
> - Telik reported interim data from three Phase 1-2a clinical trials in which TELCYTA™ was used in combination with standard chemotherapy drugs. **Results indicate that the combinations were well tolerated at all doses tested**. In the carboplatin combination trial in heavily pretreated, third-line or greater patients who had failed a platinum-containing regimen, five of eight evaluable patients (63%) had objective tumor responses by the RECIST criteria, including one complete response, and an 88% overall disease stabilization rate was observed. In the docetaxel combination trial in second and third-line non-small cell lung cancer patients, three of 14 evaluable patients (21%) who received full doses of TELCYTA™ and docetaxel had objective tumor responses by the RECIST criteria, and the overall disease stabilization rate was 64%. In combination with Doxil®, the combination resulted in a 33% objective response rate by the RECIST criteria and 100% disease stabilization rate among the three evaluable ovarian cancer patients treated with the highest dose of each drug. [Emphasis added.]

35.    Also on October 29, 2003, the Company issued a press release entitled "Telik Announced Proposed Equity Offering."  Therein, the Company, in relevant part, stated:

> Telik, Inc. (Nasdaq: TELK) announced plans to offer 6,000,000 shares of common stock in an underwritten public offering under its existing shelf registration statement. Five million of the shares are expected to be offered by the company, and 1,000,000 shares are expected to be offered by a corporate selling stockholder. In addition, the underwriters will have an option to purchase from the company up to an additional 900,000 shares to cover over-allotments, if any.

36.    In connection with this offering, the Company filed a Prospectus on November 6, 2003.  The Prospectus indicated that the Company now sought to offer 6.5 million shares of stock for sale to the public at $20.00 per share, and a selling stockholder sought to offer an additional 1 million shares of stock for sale to the public.  Additionally, the underwriter over-allotment was increased to an additional 1.125 million shares for sale.  The offering was a financial success for the Company, as it was able to raise over $152.5 million in gross proceeds. Additionally, the Company, in relevant part, stated:

> TELCYTA, our lead product candidate, is a small molecule tumor-activated cancer drug that we are evaluating initially to treat cancers that are resistant to standard chemotherapy drugs. TELCYTA binds to glutathione S-transferase P1-1, or GST P1-1, a protein that is elevated in many human cancers, such as ovarian, non-small cell lung, colorectal, breast and other types of cancer. GST P1-1 levels are often further elevated following treatment with many standard chemotherapy drugs, and this elevation is associated with the development of resistance to these drugs. **When TELCYTA binds to GST P1-1 inside a cancer cell, a chemical reaction occurs, releasing fragments of TELCYTA that cause programmed cancer cell death, or apoptosis.**
>
> * * *
>
> **We initiated a Phase 3 registration trial of TELCYTA for the treatment of ovarian cancer in March 2003** and have received Fast Track designation from the FDA for this indication. We plan to initiate a Phase 3 registration trial of TELCYTA in non-small cell lung cancer in 2004 and completed a Special Protocol

Assessment review by the FDA for this trial in October 2003. We have retained worldwide commercialization rights for TELCYTA.

* * *

TELCYTA has been evaluated in more than 400 cancer patients in 12 clinical trials. **Results from these trials indicate that TELCYTA is generally well tolerated, with mostly mild to moderate side effects, particularly when compared to the side effects** and toxicities of standard chemotherapeutic drugs. This tolerability profile may be an important clinical advantage for TELCYTA. Since combination drug regimens are commonly used in cancer treatment, the tolerability profile of TELCYTA and its apparent lack of overlapping toxicities with standard chemotherapeutic drugs suggest TELCYTA may be well suited for inclusion in combination chemotherapy regimens.

**In June 2003, at the American Society of Clinical Oncology annual meeting, we announced positive interim results from the multicenter Phase 2 trials of TELCYTA in ovarian, non-small cell lung and breast cancer.** In the ovarian cancer trial, the non-small cell lung cancer trial and breast cancer trial, **TELCYTA demonstrated significant single agent antitumor activity, including multiple objective tumor responses and prolongation of expected survival in patients who were unresponsive to standard treatments.** The results of the ovarian cancer trial and the non-small cell lung cancer trial were similar to those observed in previous Phase 2 trials we reported at the American Society of Clinical Oncology annual meeting in May 2002.

* * *

We regularly review the progress of scientific and clinical research in important disease areas to identify targets with commercial potential. **By careful selection of targets, we intend to develop product candidates with a clear path to regulatory approval and the potential to show early evidence of clinical efficacy. This strategy will allow us to reduce the risk inherent in drug discovery and accelerate the commercialization of our drug candidates.** [Emphasis added.]

18

37.    On December 2, 2003, the Company issued a press release entitled "TELIK Announced FDA Fast Track Designation for TELCYTA™ for Non-Small Cell Lung Cancer." Therein, the Company, in relevant part, stated:

> Telik, Inc. (Nasdaq: TELK) announced that the U.S. Food and Drug Administration (FDA) has granted Fast Track designation for TELCYTA™ (TLK286) for third line therapy for locally advanced or metastatic non-small cell lung cancer. The FDA previously granted Fast Track designation for TELCYTA™ for third line therapy in patients with platinum refractory or resistant ovarian cancer.
>
> **Fast Track programs are designed to facilitate the development and expedite the review of new drugs that demonstrate the potential to treat serious or life-threatening conditions and address unmet medical needs.**    [Emphasis added.]

38.    On February 19, 2004, the Company issued a press release entitled "Telik Announces Fourth Quarter and Year-End 2003 Financial Results." Therein, the Company, in relevant part, stated:

> Highlights during 2003 included:
>
> **TELCYTA™**
>
> - Telik reported positive, confirmatory results from additional Phase 2 studies of TELCYTA™ administered as a single agent in ovarian and non-small cell lung cancer at the American Society of Clinical Oncology meeting in June.
>
> * * *
>
> - The Phase 3 registration trial of TELCYTA™ in ovarian cancer was initiated. The trial is designed to enroll approximately 440 women with platinum refractory or resistant ovarian cancer who have also failed treatment with one of the approved second line agents.
>
> - A Phase 3 registration trial of TELCYTA™ in platinum resistant non-small cell lung cancer was announced and is scheduled to begin in the current quarter.

- The protocols for the TELCYTA™ Phase 3 registration trials were reviewed by the FDA under Special Protocol Assessments, and the FDA granted Fast Track status for TELCYTA™ for the treatment of ovarian and non-small cell lung cancer in the third line setting.

- Positive interim clinical results were reported using TELCYTA™ in combination treatment regimens with carboplatin, Taxotere® and Doxil®, drugs that are used in current front line and second line chemotherapy.

39.    Also on February 19, 2004, the Company held an earnings conference call with financial analysts and investors.  During this call, the Individual Defendants, in relevant part, stated:

> MICHAEL WICK, CHAIRMAN AND CEO, TELIK, INC.: Thanks, Carol. 2003 was a year of significant value creation at Telik, as we initiated the Phase III registration trial of Telcyta in ovarian cancer and we prepare for the intiation of a Phase III trial in non-small cell lung cancer. We also presented positive interim data from the Phase II trials of Telcyta in combination with carboplatin, Taxotere, and Doxil, which lays the foundation for advancing Telcyta to the second and front line setting. In addition to the progress made in the Telcyta development program, we continue to advance our second cancer compound, Telintra.
>
> **At the American Society of Hematology meeting, we reported positive clinical data for Telintra, or TLK199, which supports further clinical development. The clinical results for Telcyta and Telintra provide multiple opportunities for Telik in 2004, which I'll now discuss.**
>
> First, we will review our progress and plans for Telcyta, our lead product candidate. …
>
> Following this rationale, we've constructed Telcyta to be a small molecule that is administered to cancer patients in an inactive form. It can be processed within cancer cells by an enzyme called GSTP11, that has shown to be expressed in higher levels in ovarian, lung, breast, colorectal, pancreatic, lymphoma, as well as in other cancers, than in normal cells. The targeted activation of Telcyta results in the release of highly reactive fragments that rapidly interfere with RNA, DNA, and proteins, overwhelming the ability of the cancer cell to escape. Furthermore, a safety profile

consistent with targeted activation within cancer cells is observed with a relatively sparing of normal cells.

**In our Telcyta development program, we have attempted to reduce development risks by conducting nine successful Phase II trials in four indications. Our strategy was to measure Telcyta against a high hurdle in order to estimate its realistic potential early in the development process.** In addition, we applied several traditional principles of cancer drug development, including testing Telcyta as a single agent, **so that we knew that whatever positive effects observed could be attributed to Telcyta, and whatever negative effects observed were also due to Telcyta**, challenging Telcyta early by treating more refractory patients with worse prognoses than we expected to treat in our Phase III trials, and showing safety and efficacy in more advanced cancer patients is always more difficult for any cancer drug; confirming the actually we observed in our first Phase II trial by repeating the Phase II trials in lung and ovarian cancer; by providing visibility into the potential survival benefit caused by Telcyta, although in a non-randomized setting.

**In addition to adhering to these traditional principles, we also used the more stringent resist criteria to assess tumor response. This is the same criteria that we are now employing in our Phase III trials** -- resist, as you know, requires, for example, radiologic confirmation of tumor response by independent radiologic exam.

Finally, for both Phase III trials, we have received FDA fast track designation and completed a special protocol assessment process.

**Telcyta is very well tolerated across all of our trials, consistent with the proposed mechanism of activation within cancer cells. The principle toxicities are mild to moderate nausea and vomiting, which is well controlled with standard antiemetics not seen as often severe, treatment-limiting organ toxicities common to many cancer drugs.** We observed numerous objective responses including responses in bulky tumors as well as long-term disease stabilization and longer patient survival than would be expected in these advanced populations. These results provide the foundation for our Phase III registration trials.

* * *

Demonstrating the safety and clinical activity of Telcyta as a single agent was, of course, a very important objective. We also are advancing the Telcyta development program by conducting

combination Phase II trials in order to move Telcyta into earlier-stage treatment regimen. Under review -- the principles of combination therapy. …

At the EORTC meeting in Boston in November, we presented what I believe is the most significant Telcyta data since ASCO of 2002 -- positive preliminary results from combination [inaudible] for drugs that represent the mainstay of chemotherapy for solid tumors including platinum, [taxine] and [anthrocycle]. In [inaudible] of the three trials reported, the patients enrolled in the combination Telcyta/carboplatin trials, who are ovarian cancer patients for refractory or resistant to carboplatin. In these patients, the expected response rate to platinum approaches zero, while the response rate to Telcyta, based on our Phase II trials, will be expected to be in the range of 15% to 19%. In the combination trial, reportedly 63% objective response rate, including a durable complete response and an 88% overall disease stabilization rate. We saw no unanticipated toxicity, now continuing enrollment and dose escalation of Telcyta.

\* \* \*

To summarize our progress with Telcyta, the past year has seen the combination of single-agent activity and, second, the Phase II trials in ovarian and non-small-cell lung cancer, the demonstration of activity in breast cancer, demonstration of Telcyta activity in combination with three major classes of chemotherapeutic drugs. The Phase III trial on ovarian cancer is well underway. We remain on track to begin the Phase III study of non-small-cell lung cancer before the end of March. Which we now, in the end of 2004, we intend to initiate several additional trials using Telcyta in combination regimen in the front line and second line settings; trials that provide near-term visibility to the full clinical and market potential of Telcyta.

These advances, we believe, have significantly increased the value of Telcyta for Telik and for potential partnerships outside the U.S., which we continue to pursue. Also, looking ahead, several mechanistic abstracts described in the underlying mechanism of synergy of Telcyta as well as explain the synergy with standard agents have been accepted by the American Association of Cancer Research meeting at the end of March, and we expect to present, as mentioned earlier, additional Telcyta combination data at ASCO in June.

\* \* \*

22

CYNTHIA BUTITTA, COO AND CFO, TELIK, INC.: … As Mike has just described, we have set very aggressive goals for Telik in 2004 based on the compelling clinical data we have reported over the past year. These goals include completing enrollment in the two Phase III registration trials for Telcyta in ovarian and non-small-cell lung cancer; completing and reporting data on the Phase II combination trials of Telcyta with carboplatin, Taxotere, and Doxil; completing the single-agent breast cancer trial reporting data later this year; initiating a number of new pilots in randomized combination Telcyta studies including a front line trial with platinum and non-small-cell lung cancer as well as additional combination trials in ovarian and non-small-cell lung cancer in either the front line or second line study; manufacturing the registration batches of Telcyta in preparation for the CMC section of our Telcyta NDA; completing the Telintra Phase I-IIa trial in MDS; and advancing the development of an oral formulation of Telintra including pre-clinical IND-enabling studies for a potential INDx filing in the first half of 2005.

**The achievement of these goals with Telcyta and Telintra will provide a strong foundation for continued growth and stockholder value for Telik, and balancing these goals with our financial resources, we anticipate committing proportionately less resources to our pre-clinical pipeline relative to the clinical opportunities in 2004. Based on the significantly expanded clinical and development programs for Telcyta and Telintra, and the many activities that support our clinical programs including manufacturing and the beginning of NDA filing preparations, we anticipate total operating expenses in 2004 will be approximately $90m to $95m. Cash burn is estimated to be in the $85m to $90m range with a delta being noncash expenses and interest income.** We are not guiding to any revenue from potential partnerships although, of course, there is that potential there.

Consistent with our focus on clinical trials and related support, we anticipate that approximately 85% of our operating expenses will be in research and development and 15% in G&A. Further, as we add new trials and accelerate NDA-related activities, we expect expenses to ramp up over the year with approximately 45% of operating expenses in the first half of 2004 in the balance of the second half. **The plan we describe reflects our enthusiasm about the potential for Telcyta and Telintra and our belief in them as near-term growth drivers for the company. We have demonstrated the clinical activity of Telcyta in refractory and resistant cancer, now moving rapidly into the important**

**studies of front line and second line treatment with combination regimen.**

\* \* \*

JAMES BIRCHENOUGH: … one final question on Telcyta -- should we expect at some point this year an interim look at the data for purposes of seeking accelerated approval in ovarian?

MICHAEL WICK: **Well, you know, we designed this trial with all the bells and whistles. You know what's very well. You know, I think we've given the same guidance we've given right along -- we're committed to finishing this trial. We've built in every opportunity to have success. We will communicate with Wall Street if there are any -- you know -- if the independent data monitoring committee makes any substantive recommendations**, you know, there can be lots of them along the way. You know, if the assumptions on the trial were not borne out that we agreed to, we might have to adjust our trial. **We certainly don't expect -- nor have we seen any evidence of safety concerns for Telcyta, which is typically an issue. But insofar as any interim looks don't change our original guidance, we won't communicate them. Insofar as they do, we will. Cindy, do you have any comments on that?**

CYNTHIA BUTITTA: No, that's correct.

\* \* \*

MICHELLE PARK, ANALYST, CREDIT SUISSE FIRST BOSTON: Most of my questions have been answered. I was wondering if you are disclosing the number of patients that have been enrolled thus far in the ovarian cancer study?

CYNTHIA BUTITTA: No, we're not providing that guidance.

\* \* \*

GEORGE FARMER: It has, okay. Finally, in the Phase III lung trial that's about to get underway, can you talk about any exclusion or inclusion criteria?

MICHAEL WICK: I think, no, without getting in too detailed -- I mean -- typically, these patients -- it's our belief, as has been true in our Phase II studies, and the FDA is very clear about this -- that the population you study should reflect the population that you intend, ultimately, to market to. …

GEORGE FARMER: But I would imagine it's very tempting, given the variable response rate of Arissa in different segments of the lung cancer population, and given that there is very little for treatment of third line lung cancer, anyway, to think about how you could design a trial where you could really show an enhanced effect of Telcyta in that setting.

MICHAEL WICK: That's true, but one has to, you know, not be too clever by half, okay? That base is a straightforward trial. You know, we have to make it, we have to be sensitive to the patient's need. For example, we will allow them to bail other EGFR inhibitors simply because the main drivers, we believe, with the FDA are the improved platinums, the improved Taxoteres, or whatever else they fail along the way, that would be acceptable. For example, we certainly will not attempt to enrich our population in any of the histotypes. We believe that we can provide enough advantage to Telcyta by simply following the normal distribution of histiotype that you can look up in any textbook. We will, for example, if patients, in addition to platinum, had received an EGFR inhibitor, we will allow that. Again, another one, although is -- it's an interesting concept you're raising, you know, as one deals with the FDA process and the FDA and Dr. Brown, here, we do this pretty straight.  [Emphasis added.]

40.    On April 29, 2004, the Company issued a press release entitled "Telik Announces First Quarter 2004 Financial Results."  Therein, the Company, in relevant part, stated:

Highlights since the beginning of 2004 have included:

- The ASSIST-2 trial, a multi-national Phase 3 registration trial of TELCYTA in non-small cell lung cancer (NSCLC), was initiated as planned. The trial is expected to enroll approximately 520 patients who are being randomized to TELCYTA treatment or to a control group receiving Iressa®, the approved third-line treatment for NSCLC.

- A Phase 1-2a clinical trial was initiated to evaluate the combination of TELCYTA and cisplatin in NSCLC patients who have not previously received chemotherapy.

- At the American Association of Cancer Research (AACR) 94th annual meeting, preclinical data were presented demonstrating that TELCYTA demonstrated synergy, or enhanced inhibition of cancer cell growth, in combination with a number of chemotherapeutic drugs, including platinums, taxanes, anthracyclines and EGFR targeted drugs.

- Also at the AACR meeting, data were reported showing that, in preclinical models, TELCYTA is non-cross resistant with taxanes, and that TELCYTA is capable of re-sensitizing cancer cells to taxanes after resistance is established.

41.    Also on April 29, 2004, the Company held an earnings conference call with financial analysts and investors.    During this call, the Individual Defendants, in relevant part, stated:

> DR. MICHAEL WICK, CHAIRMAN & CEO, TELIK, INC.: …
> Phase 3 trials follow the comprehensive successful Phase 2 clinical development program, now having treated hundreds of patients with thousands of doses, including two confirmatory single-agent trials, each in ovarian and non-small cell lung cancer, as well as trials in breast and colorectal cancer. **Across these trials, Telcyta has demonstrated significant anti-tumor activity, continued outstanding tolerability, and a favorable impact on survival, compared to expected, in those very advanced patients. We have previously reported data for these trials at ASCO and and other scientific meetings, and now are in the process of publishing them in peer review journals.**
>
> * * *
>
> **The advantage to earlier stage patients has always been part of our clinical development program, but the very strong data has allowed us to accelerate that part of the program with the attendant acceleration of market opportunity and revenue.** We will, of course, be certain that these trials do not compromise the execution of the current Phase 3 trial. Given (indiscernible) the design, we believe this trial could be advantageous also to Telik and an NDA filing next year. There are many advantages to an accelerated broader development program for Telcyta that lead to a better regulatory and commercial package. The results from this trial will strengthen the case for favorable reimbursement. And together with the single-agent trials in third-line allow for the most efficient growth for Telcyta in this clinical indication.
>
> CYNTHIA BUTITTA, COO & CFO, TELIK, INC.: Thanks, Mike. … the opportunity for continued growth and value for our shareholders through the development of Telcyta and Telintra is very significant. Since the last call we have initiated, as planned, the Phase 3 registration trials for single-agent Telcyta in non-small cell lung cancer, and we also initiated a front-line non-small cell lung cancer trial using Telcyta in combination with Cisplatin. Our

guidance on timing for the Phase 3 trials remains unchanged. We have over 150 sites activated in the ovarian trial and we expect enrollment to be completed later this year. We also expect to complete accrual in the lung cancer trial within the year. Since both trials are event-driven, the timing for having results is not precisely predictable. **We design these trials with interim looks to provide opportunities for accelerated approval, although we are prepared to complete the trials and anticipate filing the NDA in the second half of '05.**

As Mike has described, we expect to open new combination studies with Telcyta, including randomized, Phase 3 trial evaluating Telcyta plus Carboplatin versus Topochican in ovarian cancer patients as a second-line setting by midyear. For the Telintra program, we expect to complete the ongoing trial in MDS patients and to advance the oral formulation of Telintra toward an IND filing in the first half of '05.

\* \* \*

JOEL SENDEK: Okay. You talked about the interim looks built into the other studies. Have you told us when you might -- when those interim looks are, if you will comment on that?

DR. MICHAEL WICK: It is very important for us to keeping the pristine (technical difficulty) nature of those trials in tact and their scientific integrity. **We think it's important to offer our investors, or shareholders, every opportunity to participate in this. So this is a state-of-the-art trial, with all in scale points out the bells and whistles. They include interim looks, independent data safety monitoring boards. Typically, these are based on fractions of events occurring. As you know, the endpoints are response rates, TTPN, and death, are the typical issues. And Cindy said earlier, we began the trial, but we'll only communicate with the street if any of those interim looks change in a material way our guidance for that trial, either in terms of size, of timing, or that's finished. Okay, and so far, none of those have occurred.** [Emphasis added.]

42.    On August 5, 2004, the Company issued a press release entitled "Telik Announces Second Quarter 2004 Financial Results." Therein, the Company, in relevant part, stated:

Highlights of the 2004 second quarter include:

**American Society of Clinical Oncology (ASCO) Annual Meeting:** At the ASCO meeting in June, Telik reported positive

results from three Phase 2 trials of TELCYTA used in combination with standard chemotherapy: TELCYTA plus carboplatin in platinum refractory or resistant ovarian cancer; TELCYTA plus lOfferingsomal doxorubicin in platinum refractory or resistant ovarian cancer; and TELCYTA plus docetaxel in platinum resistant NSCLC.

**Phase 2 TELCYTA trial in front-line NSCLC:** Telik announced the initiation of a Phase 2 trial to evaluate TELCYTA in combination with carboplatin and paclitaxel in the front-line treatment of Stage IIIb or IV NSCLC. The trial is being conducted at teaching affiliates of the Harvard Medical School including the Dana-Farber Cancer Institute, Massachusetts General Hospital and Beth Israel Deaconess Medical Center. Thomas Lynch, M.D., Medical Director, Center for Thoracic Cancers, Massachusetts General Hospital and Associate Professor of Medicine, Harvard Medical School, is Principal Investigator of the study.

43.    On November 4, 2004, the Company issued a press release entitled "Telik Announces Third Quarter 2004 Financial Results."  Therein, the Company, in relevant part, stated:

Highlights since the beginning of the 2004 third quarter have included:

**10th Biennial International Gynecologic Cancer Society (IGCS) Meeting:** Telik reported data from two positive Phase 2 clinical trials of TELCYTA administered in combination with standard chemotherapy in platinum refractory or resistant ovarian cancer. The results included:

- **TELCYTA plus carboplatin in platinum refractory or resistant ovarian cancer:** a total of 53 patients have been enrolled in the trial, 27 of whom were evaluable for efficacy at the time of analysis. The objective response rate by RECIST is 54%, including 4 durable complete responses and 10 partial responses that have been independently reviewed. Objective responses were observed at all participating institutions including the Massachusetts General Hospital, Dana-Farber Cancer Institute and University of Texas M.D. Anderson Cancer Center. Based on these data, Telik plans to initiate the ASSIST-3 Phase 3 trial, to evaluate the combination of TELCYTA plus carboplatin versus Doxil in the second line treatment of platinum refractory or resistant ovarian cancer.

- **TELCYTA plus Doxil in platinum refractory or resistant ovarian cancer:** a total of 51 patients have been enrolled in the trial, including 12 treated in a separate dose-escalation phase. At the time of analysis, 19 patients in Phase 2 were evaluable for efficacy. The objective response rate by RECIST is 42%, with eight partial responses that have been independently reviewed.

44.    On December 29, 2004, the Company issued a press release entitled "Telik Completes Enrollment in Assist-1, Initiates Assist-3 and Reviews Status of Assist-2 Clinical Trials." Therein, the Company, in relevant part, stated:

> Telik, Inc. (Nasdaq: TELK) announced the completion of enrollment for the ASSIST-1 clinical trial of TELCYTA™ (TLK286), and the initiation of a new randomized Phase 3 trial of TELCYTA called ASSIST-3, in second line platinum refractory or resistant ovarian cancer.
>
> ASSIST-1 is a randomized Phase 3 study designed to enroll 440 women in the third line treatment of platinum refractory or resistant ovarian cancer. Enrollment is complete.
>
> ASSIST-3 is a randomized Phase 3 study designed to enroll 244 women with 122 to be treated with the combination of TELCYTA plus carboplatin, and 122 to be treated with Doxil®. The trial endpoints are objective response rate, progression-free survival and overall survival. The study is based on a positive multicenter Phase 2 study of the combination of TELCYTA plus carboplatin in platinum refractory or resistant ovarian cancer, first presented at the annual meeting of the American Society of Clinical Oncology earlier this year and later updated at the Tenth Biennial International Gynecologic Cancer Society meeting. The initial participating institutions are the Harvard Affiliated Hospitals including the Massachusetts General Hospital, Dana-Farber Cancer Institute, Brigham and Women's Hospital, and Beth Israel Deaconess Medical Center.
>
> ASSIST-2 is a randomized Phase 3 study designed to enroll 520 patients in the third line treatment of platinum resistant non-small cell lung cancer. Enrollment continues as planned and the company anticipates completion of enrollment in the first quarter of 2005.

45.    On January 24, 2005, the Company issued a press release entitled "Telik Announces Proposed Public Offering of Common Stock."  Therein, the Company, in relevant part, stated:

> Telik, Inc. (Nasdaq: TELK) today announced that it plans to file a prospectus supplement with the Securities and Exchange Commission related to an underwritten offering of 5,000,000 shares of its common stock under an existing shelf registration statement. In connection with the offering, Telik expects to grant the underwriters a 30-day option to purchase up to 750,000 additional shares to cover over-allotments, if any.
>
> UBS Investment Bank is acting as the sole book-running manager in this offering. J.P. Morgan Securities Inc. and Lehman Brothers are acting as co-managers.

46.    In connection with the Company's January 2005 Offering, the Company filed a Prospectus (the "Prospectus") on January 28, 2005.  The Prospectus indicated that the Company now sought to sell 7 million shares of stock for sale to the public at $18.75 per share, with an underwriter over-allotment of an additional 1.05 million shares for sale.  The Offering was a financial success for the Company, as it was able to raise over $150.9 million in gross proceeds. Additionally, the Company, in relevant part, stated:

> TELCYTA, our lead product candidate, is a small molecule tumor-activated cancer product candidate that binds to glutathione S-transferase P1-1, or GST P1-1, a protein that is elevated in many human cancers, such as ovarian, non-small cell lung, colorectal, breast and other types of cancer. GST P1-1 levels are often further elevated following treatment with many standard chemotherapy drugs, and this elevation is associated with the development of resistance to these drugs. **When TELCYTA binds to GST P1-1 inside a cancer cell, a chemical reaction occurs, releasing fragments of TELCYTA that cause programmed cancer cell death, or apoptosis.**
>
> **TELCYTA has shown clinical antitumor activity alone and in combination in multiple Phase 2 clinical trials in refractory or resistant ovarian, non-small cell lung, breast and colorectal cancer.** Positive results from three combination trials were presented at the annual meeting of the American Society of

Clinical Oncology in June 2004 and at the Tenth Biannual International Gynecologic Cancer Society meeting in October 2004.

* * *

TELCYTA has been evaluated in multiple clinical trials. **Results from these clinical trials indicate that TELCYTA is generally well-tolerated, with mostly mild to moderate side effects**, particularly when compared to the side effects and toxicities of standard chemotherapeutic drugs. This tolerability profile may be an important clinical advantage for TELCYTA. Since combination drug regimens are commonly used in cancer treatment, the tolerability profile of TELCYTA and its lack of overlapping toxicities with standard chemotherapeutic drugs suggest TELCYTA may be well suited for inclusion in combination chemotherapy regimens.

* * *

We regularly review the progress of scientific and clinical research in important disease areas to identify targets with commercial potential. **By careful selection of targets, we intend to develop product candidates with a clear path to regulatory approval and the potential to show early evidence of clinical efficacy. This strategy should allow us to reduce the risk inherent in drug discovery and accelerate the commercialization of our product candidates.** [Emphasis added.]

47.    On February 24, 2005, the Company issued a press release entitled "Telik Announces Fourth Quarter and 2004 Year End Financial Results." Therein, the Company, in relevant part, stated:

At December 31, 2004, Telik had $138.6 million in cash, cash equivalents and investments including restricted investments, compared to $201.1 million at December 31, 2003. In February 2005, the company completed a follow-on public offering of 8,050,000 shares of its common stock, resulting in gross proceeds to the company of $150,937,500.

Highlights during 2004 included:

- Enrollment was completed in the ASSIST-1 Phase 3 clinical trial of TELCYTA for third-line platinum refractory or resistant ovarian cancer.

- The ASSIST-2 Phase 3 clinical trial of TELCYTA was initiated for third-line platinum resistant non-small cell lung cancer.

- A third Phase 3 clinical trial, ASSIST-3, was initiated using the combination of TELCYTA plus carboplatin for second-line platinum refractory or resistant ovarian cancer.

- Positive results from three Phase 2 clinical trials for TELCYTA in combination with standard chemotherapy in ovarian and non-small cell lung cancer were reported at the American Society of Clinical Oncology annual meeting. Additional positive data from the ovarian cancer trials were reported at the International Gynecologic Cancer Society meeting.

- Two additional Phase 2 clinical trials were initiated for TELCYTA, in the treatment of advanced non-small cell lung cancer patients who have not previously received chemotherapy. One of the trials is in combination with cisplatin, and the other is in combination with carboplatin and paclitaxel.

- Preclinical results that support the advancement of TELCYTA clinical development to front-line and second-line treatment settings were reported at the American Association for Cancer Research annual meeting.

48.    On May 5, 2005, the Company issued a press release entitled "Telik Announces Financial Results for 2005 First Quarter," which stated in relevant part:

Recent highlights include TELCYTA preclinical presentations at the 96th annual meeting of the American Association for Cancer Research:

- Telik scientists reported that the combination of TELCYTA and carboplatin showed synergistic inhibition of cancer cell proliferation *in vitro* in both platinum resistant and platinum sensitive human ovarian cancer cells. These studies support the ongoing Phase 3 ASSIST-3 registration trial, in which the combination of TELCYTA and carboplatin is being evaluated in platinum refractory or resistant ovarian cancer in the second line setting.

- Studies were presented that describe the synergistic effects of doublet and triplet combinations of TELCYTA with platinum

and taxane drugs as compared to the individual agents in human ovarian and non-small cell lung cancer cells. These data provide support for the two ongoing Phase 2TELCYTA trials in the first line treatment of advanced non-small cell lung cancer. One trial is evaluating the combination of TELCYTA, carboplatin and paclitaxel. The second trial is evaluating the combination of TELCYTA and cisplatin. Preliminary data from the Phase 2 trials will be reported at the annual meeting of the American Society of Clinical Oncology (ASCO) later this month.

- A third report provided details on the TELCYTA-induced effects on cell cycle progression and apoptosis, or programmed cell death, consistent with its novel mechanism of targeted activation.

In addition, Telik announced a collaboration with Stuart Aaronson, M.D., Professor and Chair, Oncological Sciences and Professor of Medicine at the Mount Sinai School of Medicine, and colleagues, to utilize Telik's proprietary TRAP drug discovery technology to discover and evaluate novel, pharmaceutically active small molecules for new cancer targets. This is one in a series of TRAP collaborations Telik has entered into with leading cancer research institutions to add to its pipeline of cancer drug candidates while expanding utilization of its TRAP technology.

49.    On August 4, 2005, the Company issued a press release entitled "Telik Announces Second Quarter 2005 Financial Results."  Thereafter, the defendants held an earnings conference call with investors and financial analysts, although they avoided answering questions that dealt with the appropriate dosage levels and the safety of the drug:

[JIM BIRCHENOUGH]: . . . Okay, and then just one the recent combination data, have you yet seen any of those dose-limiting toxicities with the combination with taxol and carbo that you hadn't seen at ASCO and what are your thoughts with regards to the toxicity profile you've seen through Barcelona.

[MICHAEL WICK]: You are at ASCO when you saw the presentation there actually in the dose 1 and the Phase 1 presentation, actually much like the Phase 2 that we presented with taxol and carbo. We went the full monodose therapy of TELCYTA, if you recall we saw the CR at 400 milligrams meters, so we continued to treat now substantially more patients were quite pleased with the safety profile. **We are going to explore several**

33

**doses and we will comment on that at the appropriate time**.
[Emphasis added.]

50.    On February 9, 2006, the Company issued a press release entitled "Telik

Announces Fourth Quarter and 2005 Year End Financial Results and 2006 Financial Guidance."

Therein, the Company, in relevant part, stated:

2005 highlights included:

- The advancement of our lead product candidate, TELCYTA®, in three randomized Phase 3 registration trials and in two Phase 2 trials in first-line non-small cell lung cancer:

    o    The ASSIST-1 Phase 3 trial completed enrollment of 440 women with platinum refractory or resistant ovarian cancer in the third-line setting. The primary endpoint for ASSIST-1 is improvement in survival.

    o    A peer-reviewed publication describing the Phase 2 TELCYTA trial supporting the ASSIST-1 trial was published in the *International Journal of Gynecological Cancer*.

    o    The ASSIST-3 trial was initiated to evaluate the combination of TELCYTA plus carboplatin in second-line platinum refractory or resistant ovarian cancer. This trial is enrolling 244 women. The primary endpoint for ASSIST-3 is objective response rate as well as progression-free survival.

    o    The ASSIST-2 trial completed enrollment of 520 patients with platinum resistant non-small cell lung cancer in the third-line treatment setting. Improvement in survival is the primary endpoint of the ASSIST-2 trial.

    o    Positive interim data from the multicenter Phase 2 trial of TELCYTA administered in combination with the standard regimen of carboplatin and paclitaxel in first-line non-small cell lung cancer were reported at the 11th World Conference on Lung Cancer in July. This trial has been expanded to multiple sites and is intended to enroll approximately 100 patients.

    o    Positive interim data from the multicenter Phase 2 trial of TELCYTA administered in combination with cisplatin,

also in first-line nonsmall cell lung cancer, were reported at the 41st annual meeting of the American Society of Clinical Oncology and at the 11th World Conference on Lung Cancer.

- Preclinical data demonstrating the ability of TELCYTA to resensitize platinum-resistant human ovarian cancer cells to platinum were reported at the American Association for Cancer Research 96th annual meeting. These data provided scientific rationale for the ASSIST-3 trial design.

- Preclinical data describing the synergistic inhibitory effects of both doublet and triplet combinations of TELCYTA with platinum and taxane drugs as compared to the individual agents in human ovarian and non small cell lung cancer cells were presented at the American Association of Cancer Research 96th annual meeting. These data provided scientific support for the Phase 2 first-line non-small cell lung cancer trials.

51.    On May 4, 2006, the Company issued a press release entitled "Telik Announces Financial Results for 2006 First Quarter."  Therein, the Company, in relevant part, stated:

Recent highlights include:

- Initiation of the ASSIST-5 trial: This Phase 3 trial will evaluate the combination of TELCYTA plus Doxil® to treatment with Doxil alone in women with platinum refractory or resistant ovarian cancer. Approximately 244 women are expected to be enrolled, with half randomized to each treatment arm. Trial endpoints include objective response rate, progression-free survival and overall survival.

- Completion of ASSIST-3 enrollment: Telik announced the completion of planned enrollment for the ASSIST-3 trial, a Phase 3 trial evaluating the combination of TELCYTA plus carboplatin to treatment with Doxil in women with platinum refractory or resistant ovarian cancer.

- TELCYTA presentation at the 97th annual meeting of the American Association for Cancer Research: Telik reported positive preclinical resultswith its lead cancer product candidate, TELCYTA (TLK286), that support TELCYTA's unique mechanism of targeted activation in cancer cells and the synergy observed when TELCYTA is administered in combination with platinum-based chemotherapeutic drugs.

52.    On August 3, 2006, the Company issued a press release entitled "Telik Announces Quarterly Financial Release, Conference Call and Webcast."  Therein, the Company, in relevant part, stated:

>    Developments during the second quarter of 2006 included:
>
>    • Initiation of the ASSIST-5 Phase 3 clinical trial, which will compare treatment with the combination of TELCYTA and lOfferingsomal doxorubicin to treatment with lOfferingsomal doxorubicin alone in women with platinum refractory or resistant ovarian cancer in the second line setting.
>
>    • Completion of patient enrollment in the ASSIST-3 Phase 3 clinical trial, which will compare treatment with the combination of TELCYTA and carboplatin to treatment with lOfferingsomal doxorubicin, also in the second line setting in women with platinum refractory or resistant ovarian cancer.
>
>    • Completion of patient enrollment in the ASSIST-3 Phase 3 clinical trial, which will compare treatment with the combination of TELCYTA and carboplatin to treatment with lOfferingsomal doxorubicin, also in the second line setting in women with platinum refractory or resistant ovarian cancer.

53.    The statements contained in ¶¶ 24 – 52 were materially false and misleading when made because Defendants failed to disclose or indicate the following: (1) that TELCYTA clinical trials were not conducted pursuant to FDA clinical trial standards; (2) as such, the study data that was being gathered and analyzed would be unusable and therefore meaningless to the FDA; (3) that participants in the TELCYTA clinical trials were actually dying faster than those that were not using the drug; (4) that as a result, the defendants had no reason to believe the Company's TELCYTA New Drug Application would be accepted, and therefore the defendants knew or should have known that TELCYTA would not be a commercially viable drug candidate.

**<u>The Truth Begins to Emerge</u>**

54.    On December 26, 2006, the Company issued a press release entitled "Telik Reports Preliminary Results on ASSIST-1, ASSIST-2 and ASSIST-3 Phase 3 Clinical Trials."

This press release disclosed that all three of the Company's clinical trials had failed. While this news shocked the market, the Company still did not detail all of the results that it had observed in the trials. The press release, in relevant part, stated:

> Telik, Inc. (Nasdaq: TELK) announced preliminary results from three separate Phase 3 clinical trials of its investigational drug TELCYTA (TLK286, canfosfamide HCl).
>
> **Non-Small Cell Lung Cancer**
>
> **ASSIST-2 Trial**
>
> The ASSIST-2 trial, a 520 patient multinational, randomized study designed to evaluate TELCYTA as compared to gefitinib in the third-line therapy of advanced non-small cell lung cancer, **did not achieve a statistically significant improvement in overall survival, the primary endpoint.**
>
> **Platinum Refractory or Resistant Ovarian Cancer**
>
> **ASSIST-1 Trial**
>
> The ASSIST-1 trial, a 440 patient multinational, randomized study designed to evaluate TELCYTA as compared to the active control agents lOfferingsomal doxorubicin or topotecan in the third-line therapy of platinum resistant ovarian cancer, **did not achieve its primary endpoint of demonstrating a statistically significant improvement in overall survival for TELCYTA as compared to the active controls. While the preliminary analysis revealed a number of internal inconsistencies that need to be further investigated, resolution of these inconsistencies may not change the preliminary results.**
>
> **ASSIST-3 Trial**
>
> The ASSIST-3 trial, a 244 patient randomized trial conducted in the U.S., was designed to demonstrate a statistically significant improvement in overall tumor response to the combination of TELCYTA plus carboplatin compared to lOfferingsomal doxorubicin in the second-line treatment of platinum resistant ovarian cancer. Under the trial protocol, patients were to have received treatment until tumor progression or unacceptable toxicity. However, a major discordance was observed between the clinical review of the tumor scans and the independent radiology review.

> **Approximately 25% of the patients were discontinued prematurely from the assigned study treatment as judged by the independent review of the scans. Therefore, the company believes the trial was compromised and may not be suitable for a regulatory submission.** The company plans to meet with advisors to review the results and also to determine if any changes should be made to the protocol and/or trial conduct procedures for the ongoing ASSIST-5 trial. [Emphasis added.]

55.    On this news, shares of the Company's stock declined $11.49 per share, or over 70.6 percent, to close on December 26, 2006 at $4.77 per share, on unusually heavy trading volume.

56.    On April 17, 2007, the Company issued a press release entitled "Telik Reports Positive Data Demonstrating Synergy in Combination and Highly Statistically Significant Effect of TELCYTA as Maintenance Therapy in First-Line Non-Small Cell Lung Cancer." Therein, the Company, in relevant part, stated:

> Telik, Inc. announced the presentation today of results from a Phase 2 clinical trial of the triplet combination of TELCYTA® (canfosfamide HCl, TLK286), carboplatin and paclitaxel in the first-line treatment of advanced non-small cell lung cancer. **The results include highly statistically and clinically significant improvement in both progression-free survival and overall survival in responding patients who received TELCYTA maintenance therapy as compared with those who did not receive TELCYTA maintenance therapy**. The data were presented at the 98th annual meeting of the American Association for Cancer Research (AACR) in Los Angeles.
>
> * * *
>
> **The triplet combination was generally well-tolerated at all TELCYTA doses evaluated, with toxicities similar to those expected with each drug alone. There were no new, unexpected or cumulative toxicities. TELCYTA maintenance therapy was, as expected, well-tolerated, with Grade 1 or 2 toxicities observed in fewer than 5% of patients**.
>
> **"Many approaches to maintenance therapy following first-line treatment for advanced non-small cell lung and ovarian cancer have been evaluated, with most adding little to efficacy while**

exposing patients to ongoing risks from toxic chemotherapy," said Gail L. Brown, M.D., senior vice president and chief medical officer. "The safety profile and clinical activity of TELCYTA, both in combination with carboplatin and paclitaxel and as monotherapy, suggest a potential role for this investigational agent as part of first-line combination treatment and as single agent maintenance therapy of non-small cell lung cancer. We will review these results with our expert advisors to discuss plans to expeditiously advance the TELCYTA program toward registration." [Emphasis added.]

57. On May 3, 2007 the Company issued a press release entitled "Telik Announces First Quarter 2007 Financial Results." Therein, the Company, in relevant part, stated:

Telik also reviewed data presented at the recent American Association for Cancer Research (AACR) 98th annual meeting:

- Positive data were reported from a multicenter Phase 2 trial of TELCYTA in combination with carboplatin and paclitaxel in the first-line treatment of advanced non-small cell lung cancer. One-hundred twenty-nine patients were enrolled for a planned four to six cycles of triplet combination therapy, followed by optional TELCYTA maintenance therapy for those patients with ongoing clinical benefit (objective response or stable disease) at the completion of combination therapy. In the intent-to-treat population, the objective response rate was 34.1% and the overall disease stabilization rate was 77.5%. The median progression-free survival was 4.9 months and median survival was 9.6 months.

- Of the 100 patients (77.5%) with objective response or stable disease, 50 patients received TELCYTA maintenance therapy and 50 patients did not receive TELCYTA maintenance therapy. The two groups were well balanced for patient demographics, key non-small cell lung cancer disease characteristics and prognostic factors, except for ECOG performance status, which favored the non-maintenance group. Median progression-free survival in the patients receiving TELCYTA maintenance therapy was 6.9 months, compared with 4.2 months in those not receiving TELCYTA maintenance therapy (p<0.0001, HR 0.36). Median survival in the TELCYTA maintenance group was 14.2 months compared with 8.4 months in those not receiving TELCYTA maintenance therapy (p=0.0003, HR 0.40). Outcomes were similar whether the patients had objective tumor response or stable disease.

- A series of preclinical studies focused on the cellular and molecular correlates of synergistic cancer cell growth inhibition by TELCYTA, carboplatin and paclitaxel alone and in different combinations in human lung cancer cells. **These studies support the Phase 2 trial of TELCYTA in combination with carboplatin and paclitaxel reported at the AACR meeting**.

- A separate series of preclinical studies evaluated the anti-angiogenic effects of TELCYTA with and without bevacizumab, demonstrating that TELCYTA can potentially be a potent inhibitor of human endothelial cell proliferation. Further, the combination of TELCYTA and bevacizumab produced significantly enhanced inhibition of endothelial cell proliferation and capillary tubule formation. **These studies suggest the potential for TELCYTA use in combination with bevacizumab and other anti-angiogenic agents**. [Emphasis added.]

58.    The statements contained in ¶¶ 54 and 56 – 57 were materially false and misleading when made for the same reasons as set forth in ¶ 53, *supra*.

59.    On June 3, 2007, the Company released the results of its ASSIST-1 trial at the annual meeting of the American Society of Clinical Oncology (ASCO).  In stark contrast to the Company's prior statements, the Company revealed for the first time that participants in the study group actually died sooner when they used TELCYTA, at an average of five months sooner, than those who did not receive the drug.  In an associated press release, the Company, in relevant part, revealed:

> Telik, Inc. (Nasdaq: TELK) reported results of the TELCYTA (canfosfamide HCl, TLK286) ASSIST-1 trial today at the 43 rd annual meeting of the American Society of Clinical Oncology (ASCO).
>
> The Phase 3, international, randomized, active control study enrolled 461 women with advanced, platinum refractory or resistant ovarian cancer whose disease had progressed following first-line platinum-based therapy and second-line treatment with either lOfferingsomal doxorubicin or topotecan. Two hundred thirty-two women were randomized to TELCYTA treatment and 229 women were randomized to treatment with one of the active

control drugs (pegylated lOfferingsomal doxorubicin (PLD) or topotecan), depending upon their second-line treatment. The two arms of the study were balanced for key ovarian cancer disease characteristics, platinum refractory or resistant status, and other prognostic or predictive factors.

**The trial did not meet the primary endpoint of demonstrating superiority in overall survival or the secondary endpoint of demonstrating superiority in progression-free survival on the TELCYTA arm as compared with the active control arm. Median survival on the TELCYTA arm was 8.5 months compared with 13.6 months on the active control arm (p <0.01). Median progression-free survival was 2.3 months on the TELCYTA arm compared with 4.3 months on the active control arm.**

The performance of the drugs on the active control arm, PLD or topotecan, was unexpected based on reported data, and no known prognostic or predictive factors accounted for this result. In addition, patients treated with PLD tended to have superior overall survival as compared with patients treated with topotecan, also an unexpected result as published reports suggest that survival outcomes in platinum refractory or resistant ovarian cancer patients are similar for both agents. [Emphasis added.]

60.    Also on June 3, 2007, the Company issued a press release entitled "Telik Reports Results of Telcyta ASSIST-3 Trial."  Therein, the Company, in relevant part, stated:

Telik, Inc. (Nasdaq: TELK) reported results of the TELCYTA (canfosfamide HCl, TLK286) ASSIST-3 trial today at the 43 rd annual meeting of the American Society of Clinical Oncology (ASCO).

The Phase 3, randomized, active control study enrolled 247 women with advanced, platinum refractory or resistant ovarian cancer whose disease had progressed following first-line platinum-based therapy. One hundred twenty-three women were randomized to treatment with the combination of TELCYTA and carboplatin and 124 women were randomized to treatment with pegylated lOfferingsomal doxorubicin (PLD). The two arms of the study were balanced for key ovarian cancer disease characteristics, platinum refractory or resistant status, and other prognostic or predictive factors. All patients had platinum refractory or resistant disease, with a platinum-free interval (PFI, from the date of last treatment with platinum-based chemotherapy to the date of documented disease progression) of six months or less.

41

Patients were treated until disease progression, as determined by radiologic evaluations at each site, or unacceptable toxicity. A central, blinded independent radiology review also was conducted.

Assessment of the primary endpoint, objective response rate by RECIST, may have been compromised because approximately 25% of patients were prematurely discontinued from the study for disease progression, as assessed by the independent radiology review. Median progression-free survival, the secondary endpoint of the trial, assessed by independent radiology review, was 3.5 months on both arms.

As expected with a platinum-containing regimen, there were more hematologic toxicities on the TELCYTA plus carboplatin arm as compared with the PLD arm. These toxicities were well managed with growth factor support or dose reductions as clinically appropriate. Febrile neutropenia occurred only on the PLD arm. Non-hematologic toxicities were more common on the PLD arm, also as expected. Patient-reported quality of life outcomes consistently favored the TELCYTA plus carboplatin arm over the PLD arm, although the differences were not statistically significant.

A multivariate analysis of prognostic factors was conducted including all prespecified patient characteristics and stratification factors. **There were statistically significant differences between the two arms of the study in patients who had a drug-free period (DFP, from the date of last treatment with any anti-cancer treatment to the first study treatment) of greater than or equal to six months. Thirty-eight patients, 19 on each arm, had a DFP of six months or more. In this group, median progression-free survival was 3.5 months on the PLD arm versus not yet reached on the TELCYTA plus carboplatin arm (p ≤ 0.01). Median survival was 11.1 months on the PLD arm versus not yet reached on the TELCYTA plus carboplatin arm. The objective response rate (as assessed by the independent radiology review) was 31.6% on the TELCYTA plus carboplatin arm, as compared with 10.5% on the PLD arm.** [Emphasis added.]

61.    Then on June 4, 2007, the Company announced that the FDA had placed a clinical hold on the Company's Investigational New Drug application for TELCYTA®. The clinical hold was initiated by FDA following the presentation of TELCYTA Phase 3 clinical trial results. The effect of this clinical hold stopped new patient enrollment in TELCYTA clinical trials, and the

Company was prohibited from administering additional doses of the drug to those patients already enrolled in the trials. In an associated press release, the Company, in relevant part, stated:

> Telik, Inc. (Nasdaq: TELK) announced that the U.S. Food and Drug Administration (FDA) has placed a clinical hold on the Investigational New Drug (IND) application for TELCYTA® (canfosfamide HCl). The clinical hold was initiated by FDA following the presentation of TELCYTA Phase 3 clinical trial results at the annual meeting of the American Society of Clinical Oncology.
>
> No new patients will be enrolled on TELCYTA clinical trials, and no patients currently being treated on the trials will receive additional treatment until the FDA releases the clinical hold. Telik plans to submit to the FDA additional detailed safety and other information regarding TELCYTA and meet with the FDA regarding the clinical hold as soon as possible.

62.    Following the Company's news and the FDA announcement, shares of the Company's stock declined an additional 41 percent, to close on June 5, 2007 at $3.42 per share, on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

63.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Telik's common stock between March 27, 2003 and June 4, 2007, inclusive (the "Class Period"), including purchasers in the Company's November 5, 2003 stock offering, and the Company's January 28, 2005 stock offering (the "Offering"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

64.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Telik's common stock was actively traded on the

NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Telik or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

65.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

66.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

67.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Telik; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

68.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

69.    The market for Telik's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Telik's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Telik's common stock relying upon the integrity of the market price of Telik's common stock and market information relating to Telik, and have been damaged thereby.

70.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Telik's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

71.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Telik's financial well-being, business relationships, and prospects. These material misstatements and omissions had the cause and effect of creating in the market an

unrealistically positive assessment of Telik and its financial well-being, business relationships, and prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

72.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

73.    During the Class Period, Plaintiff and the Class purchased common stock of Telik at artificially inflated prices and were damaged thereby. The price of Telik's common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

74.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Telik , their control over, and/or receipt and/or modification of Telik's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information

concerning Telik, participated in the fraudulent scheme alleged herein.

75.    Also, during the Class Period, and with shares of the Company's stock trading at artificially inflated levels, the Company was able to successfully complete two common stock public offerings.  In November 2003, the Company sold over 7.625 million shares of stock to the public at a price of $20.00 per share, for gross proceeds of over $152.5 million.  Then in January 2005, the Company offered another 8.05 million shares of common stock to the public at a price of $18.75 per share, for gross proceeds of over $150.9 million.

76.    Additionally, during the Class Period, and with shares of the Company's stock trading at artificially inflated levels, Defendant Butitta, the Company's CFO and COO, sold over 10,000 shares of Company stock for gross proceeds of $215,705.

**Applicability of Presumption of Reliance:**
**Fraud On The Market Doctrine**

77.    At all relevant times, the market for Telik's common stock was an efficient market for the following reasons, among others:

(a)    Telik's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Telik filed periodic public reports with the SEC and the NASDAQ;

(c)    Telik regularly communicated with public investors <u>via</u> established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Telik was followed by several securities analysts employed by major

brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

78.    As a result of the foregoing, the market for Telik's common stock promptly digested current information regarding Telik from all publicly-available sources and reflected such information in Telik's stock price. Under these circumstances, all purchasers of Telik's common stock during the Class Period suffered similar injury through their purchase of Telik's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

79.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Telik who knew that those statements were false when made.

**FIRST CLAIM**
**Violation of Section 11 of**
**The Securities Act Against All Defendants**

80.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the defendants to defraud Plaintiff or members of the Class.  This count is predicated upon defendants' strict liability for making false and materially misleading statements in the Prospectus.

81.     This claim is asserted by Plaintiff against all defendants by, and on behalf of, persons who acquired shares of the Company's common stock pursuant to or traceable to the false Prospectus issued in connection with the Company's January 2005 Offering.

82.     Individual Defendants as signatories of the Registration Statement and Prospectus, as directors and/or officers of Telik and controlling persons of the issuer, owed to the holders of the stock obtained through the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus at the time they became effective to ensure that such statements were true and correct, and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Prospectus as set forth herein.  As such, defendants are liable to the Class.

83.     Underwriter Defendants owed to the holders of the stock obtained through the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the

statements contained therein not misleading.  Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Prospectus as set forth herein.  As such, defendants are liable to the Class.

84.    None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

85.    Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Prospectus, which misrepresented or failed to disclose, *inter alia*, the facts set forth above.  By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

86.    As a direct and proximate result of defendants' acts and omissions in violation of the Securities Act, the market price of Telik's common stock sold in the Offering was artificially inflated, and Plaintiff and the Class suffered substantial damage in connection with their ownership of Telik's common stock pursuant to the Prospectus.

87.    Telik is the issuer of the stock sold <u>via</u> the Prospectus.  As issuer of the stock, the Company is strictly liable to Plaintiff and the Class for the material misstatements and omissions therein.

88.    At the times they obtained their shares of Telik, Plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

89.    This action is brought within one year after discovery of the untrue statements and omissions in and from the Prospectus which should have been made through the exercise of

reasonable diligence, and within three years of the effective date of the Prospectus.

90.    By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the defendants and each of them, jointly and severally.

### SECOND CLAIM
### Violation of Section 12(a)(2) of
### The Securities Act Against All Defendants

91.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

92.    This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all defendants.

93.    Defendants were sellers, offerors, and/or solicitors of purchasers of the shares offered pursuant to the Telik Offering Prospectus.

94.    The Telik Offering Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.  The Individual Defendants' actions of solicitation included participating in the preparation of the false the misleading Prospectus.

95.    Defendants owed to the purchasers of Telik's common stock, including Plaintiff and other members of the Class, the duty to make a reasonable and diligent investigation of the statements contained in the Offering materials, including the Prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the Offering materials as set forth above.

96.     Plaintiff and other members of the Class purchased or otherwise acquired Telik's common stock pursuant to and/or traceable to the defective Prospectus.  Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Prospectus.

97.     Plaintiff, individually and representatively, hereby offer to tender to defendants that common stock which Plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such common stock, in return for the consideration paid for that common stock together with interest thereon.  Class members who have sold their Telik common stock are entitled to rescissory damages.

98.     By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated Section 12(a)(2) of the Securities Act.  Accordingly, Plaintiff and members of the Class who hold Telik's common stock purchased in the Offering have the right to rescind and recover the consideration paid for their Telik common stock, and hereby elect to rescind and tender their Telik common stock to the defendants sued herein.  Plaintiff and Class members who have sold their Telik common stock are entitled to rescissory damages.

99.     This action is brought within three years from the time that the common stock upon which this Count is brought was sold to the public, and within one year from the time when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based.

**THIRD CLAIM**
**Violation of Section 15 of The Securities Act**
**Against the Individual Defendants**

100.    Plaintiff repeats and realleges each and every allegation contained above, excluding all allegations above that contain facts necessary to prove any elements not required to

state a Section 15 claim, including without limitation, scienter.

101.    This count is asserted against Individual Defendants and is based upon Section 15 of the Securities Act.

102.    Individual Defendants, by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Telik within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Telik to engage in the acts described herein.

103.    Individual Defendants' position made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

104.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**FOURTH CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

105.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

106.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Telik's common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

107.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made

untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Telik's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

108.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Telik's financial well-being, business relationships, and prospects, as specified herein.

109.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Telik's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Telik and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Telik's common stock during the Class Period.

110.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's

management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

111.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Telik's financial well-being, business relationships, and prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being, business relationships, and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

112.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Telik's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices

of Telik's common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Telik's common stock during the Class Period at artificially high prices and were damaged thereby.

113.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Telik was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Telik common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

114.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

115.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

**FIFTH CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

116.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

117.    The Individual Defendants acted as controlling persons of Telik within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

118.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

119.    As set forth above, Telik and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: June 14, 2007                          **BRODSKY & SMITH, LLC**

                                              By:*s/ Evan J. Smith, Esquire (ES3254)*
                                              Evan J. Smith, Esquire (ES3254)
                                              240 Mineola Boulevard
                                              Mineola, NY 11501
                                              (516) 741-4977
                                              (516) 741-0626 (facsimile)

                                              **SCHIFFRIN BARROWAY
                                              TOPAZ & KESSLER LLP**
                                              Richard A. Maniskas, Esquire
                                              D. Seamus Kaskela, Esquire
                                              280 King of Prussia Road
                                              Radnor, PA 19087
                                              (610) 667-7706
                                              (610) 667-7056 (facsimile)

                                              *Attorneys for Plaintiffs*