# EXHIBIT  E

# *LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP*

| | |
|---|---|
| *Embarcadero Center West* | *780 Third Avenue* |
| *275 Battery Street, 30th Floor* | *48th Floor* |
| *San Francisco, CA  94111-3339* | *New York, NY  10017-2024* |
| *Telephone:  (415) 956-1000* | *Telephone:  (212) 355-9500* |
| *Facsimile:  (415) 956-1008* | *Facsimile:  (212) 355-9592* |

*One Nashville Place*
*150 Fourth Avenue North, Suite 1650*
*Nashville, TN  37219-2415*
*Telephone:  (615) 313-9000*
*Facsimile:  (615) 313-9965*

*E-mail:  mail@lchb.com*
*Website:  www.lieffcabraser.com*

## *FIRM PROFILE:*

Lieff Cabraser Heimann & Bernstein, LLP, is a fifty-plus attorney, AV-rated law firm founded in 1972 with offices in San Francisco, New York and Nashville.  Lieff Cabraser has a diversified practice, successfully representing plaintiffs in the fields of personal injury and mass torts, securities fraud, employment discrimination and unlawful employment practices, product defect, antitrust, consumer protection, aviation, environmental and toxic exposure, and human rights.  Our clients include individuals, classes or groups of persons, businesses, and public and private entities.

Lieff Cabraser has served as court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States. With co-counsel, we have represented clients across the globe in cases filed in American courts. We have litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the last decade.

Lieff Cabraser is among the largest firms in the United States that only represent plaintiffs.  Described by *The American Lawyer* as "one of the nation's premier plaintiffs' firms," Lieff Cabraser enjoys a national reputation for professional integrity and the successful prosecution of our clients' claims. We possess sophisticated legal skills and the financial resources necessary for the handling of large, complex cases, and for litigating against some of the nation's largest corporations.  We take great pride in the leadership roles our firm plays in many of this country's major cases, including those resulting in landmark decisions and precedent-setting rulings.

In the 2006 edition of its annual list of the plaintiffs' law firms "doing the most to shape the law," *The National Law Journal* selected Lieff Cabraser as one of the nation's top plaintiffs' firms. Lieff Cabraser was also a member of *The National Law Journal*'s Plaintiffs' "Hot List"

from 2003 through 2005.  We are one of only three plaintiffs' law firms in the nation to receive this award the last four years.

*CASE PROFILES:*

### A.    Personal Injury and Products Liability Litigation

Lieff Cabraser has obtained over $400 million in verdicts, judgements and settlements for our clients in individual personal injury and wrongful death lawsuits.  Since 1995, and working with co-counsel, we have achieved verdicts, judgements and settlements in excess of $10 billion in product liability class action lawsuits.

We only represent plaintiffs.  In many of these cases, we assisted our clients in persuading the corporate defendants to issue recalls or improve their safety procedures for the protection of all consumers and patients.  Currently, we are prosecuting scores of lawsuits involving injuries and deaths from all types of negligent conduct, manufacturing errors and design defects.  Our cases range from vehicle and aviation accidents to faulty medical devices.  We also represent  patients prescribed drugs with dangerous, undisclosed side effects and consumers sickened by contaminated food products.

Our successful personal injury and products liability cases, with the exception of aviation cases which are profiled separately, include:

1.    ***Individual Vehicle Injury Lawsuits.***  Lieff Cabraser has an active practice prosecuting claims for clients injured, or the families of loved ones who have died, by the wrongful conduct of other drivers or due to unsafe and defective vehicles, tires and other automotive equipment.  We are representing clients in actions involving fatalities and serious injuries due to rollover accidents of fifteen passenger vans and sports utility vehicles.  Plaintiffs allege that the vans and SUVs were defectively designed because they pose an unreasonable risk of rollover during foreseeable driving conditions.  We also represent clients in many other vehicle cases including ones where defective cruise control switches resulted in fires and design defects caused the vehicle to shifted suddenly from park into reverse.

In March 2007, in *Mraz v. DaimlerChrysler*, No. BC 332487 (Cal. Sup. Ct.), we obtained a $54.4 million verdict, including $50 million in punitive damages, against DaimlerChrysler for intentionally failing to cure a known defect in millions of its vehicles that led to the death of Richard Mraz, a young father.  Mr. Mraz suffered fatal head injuries when the 1992 Dodge Dakota pickup truck he had been driving at his work site ran him over after he exited the vehicle believing it was in park.  The jury found that a defect in the Dodge Dakota's automatic transmission, called a park-to-reverse defect, played a substantial factor in Mr. Mraz's death and that DaimlerChrysler was negligent in the design of the vehicle for failing

to warn of the defect and then for failing to adequately recall or retrofit the vehicle.

2.    ***Fen-Phen ("Diet Drugs") Litigation.***  Our firm continues to represent individuals pursuing personal injury claims due to injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux).  We dedicate substantial resources and attention to these clients and are available for confidential consultations for anyone who ingested Redux or Pondimin.

We served as counsel for the plaintiff that filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to adequately warn physicians and consumers of risks associated with the drugs.  Since the recall was announced in 1997, Lieff Cabraser has represented over 400 persons in individual actions who have suffered heart and/or lung damage, most often consisting of cardiac valve damage and/or Primary Pulmonary Hypertension, after ingesting Pondimin or Redux.  In *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation filed across the nation in federal courts.  In August 2000, the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage.  Lieff Cabraser also served on the Plaintiffs' Executive Committee in the California Coordinated Proceedings in California state court, and as class counsel in the State of Washington certified medical monitoring action.

3.    ***Blood Factor VIII And Factor IX Litigation.***  Working with counsel in Asia, Europe, Central and South America and the Middle East, Lieff Cabraser represents hundreds of hemophiliacs worldwide, or their survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and Americans with hemophilia who contracted HCV, from contaminated and defective blood factor products produced by American pharmaceutical companies.  In 2004, Lieff Cabraser was appointed Plaintiffs' Lead Counsel of the "second generation" Blood Factor MDL litigation presided over by Judge Grady in the Northern District of Illinois.  This groundbreaking litigation follows upon a two-month trial directed by Richard M. Heimann in 2003 in California state court on behalf of a person with hemophilia who is HIV-positive.

4.    ***In re Vioxx Products Liability Litigation,*** MDL No. 1657 (E.D.  La.).  We represent patients that suffered heart attacks or strokes, and the families of loved ones who died, after having being prescribed the arthritis and pain medication Vioxx.  In individual personal injury lawsuits against Merck, the manufacturer of Vioxx, our clients allege that Merck falsely

promoted the safety of Vioxx and failed to disclose the full range of the drug's dangerous side effects. In April 2005, in the federal multi-district litigation, the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Steering Committee, which has the responsibility of conducting all pretrial discovery of Vioxx cases in Federal court and pursuing all settlement options with Merck. In August 2006, a federal jury in New Orleans found unanimously that Merck had failed to warn doctors about Vioxx's risks and was responsible for the heart attack suffered by retired FBI agent, Gerald Barnett and awarded $51 million in damages. Lieff Cabraser was co-counsel in the *Barnett* case. Lieff Cabraser attorneys Don Arbitblit and Jennifer Gross participated in the trial, working closely with attorneys Mark Robinson and Andy Birchfield. The Court subsequently vacated the jury award and ordered a new trial. Lieff Cabraser is continuing to work with co-counsel in the prosecution of the Federal court Vioxx cases.

5.    ***In re Bextra/Celebrex Marketing Sales Practices and Products Liability Litigation***, MDL 1699. Lieff Cabraser serves as Plaintiffs' Liaison Counsel to oversee and direct all personal injury and consumer litigation now pending in Federal courts nationwide arising out of the sale and marketing of the COX-2 inhibitors Bextra, Celebrex, and Parecoxib manufactured by Pfizer, Inc and its predecessor companies Pharmacia Corporation and G.D. Searle, Inc. In this ongoing litigation, over 2,500 individuals have brought personal injury claims, and hundreds more individuals and institutions allege that Bextra, Celebrex, and Percoxib were marketed deceptively. In addition to serving as Liaison Counsel, Lieff Cabraser is also directly representing patients injured by Bextra, Celebrex, and Parecoxib.

6.    ***Sulzer Hip and Knee Implants Litigation.*** In December 2000, Sulzer Orthopedics, Inc., announced the recall of approximately 30,000 units of its Inter-Op Acetabular Shell Hip Implant, followed in May 2001 with a notification of failures of its Natural Knee II Tibial Baseplate Knee Implant. In coordinated litigation in California state court, *In re Hip Replacement Cases*, JCCP 4165, Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Co-Lead Counsel. In the federal litigation, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, MDL 1410, Lieff Cabraser played a significant role in negotiating a revised settlement with Sulzer valued at more than $1 billion. In May 2002, the Court granted final approval to the revised settlement. Lieff Cabraser serves as Class Counsel for Subclass V of the settlement (class members with unrevised reprocessed Inter-Op shells).

7.    ***In re Baycol Products Litigation***, MDL No. 1431 (D. Minn.). Baycol was one of a group of drugs called statins, intended to reduce cholesterol. In August 2001, Bayer A.G. and Bayer Corporation, the manufacturers of Baycol, withdrew the drug from the worldwide market based upon reports that Baycol was associated with serious side effects and linked to the

deaths of over 100 patients worldwide. In the federal multi-district litigation, Lieff Cabraser serves as a member of the Plaintiffs' Steering Committee (PSC) and the Executive Committee of the PSC. In addition, Lieff Cabraser represented approximately 200 Baycol patients who have suffered injuries or family members of patients who died allegedly as a result of ingesting Baycol. In these cases, our clients reached confidential favorable settlements with Bayer.

8.    ***Multi-State Tobacco Litigation***.  Lieff Cabraser represented the Attorneys' General of Massachusetts, Louisiana and Illinois, several additional states, and 18 cities and counties in California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers. The suits were part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general. The states, cities and counties sought both to recover the public costs of treating smoking-related diseases and require the tobacco industry to undertake extensive modifications of its marketing and promotion activities in order to reduce teenage smoking. In California alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid over the next 25 years.

9.    ***In re Silicone Gel Breast Implants Products Liability Litigation***, MDL No. 926 (N.D. Ala.).  Lieff Cabraser serves on the Plaintiffs' Steering Committee and was one of five members of the negotiating committee which achieved a $4.25 billion global settlement with certain defendants of the action. This was renegotiated in 1995, and is referred to as the Revised Settlement Program ("RSP"). Over 100,000 recipients have received initial payments, reimbursement for the explantation expenses and/or long term benefits.

10.   ***In re Telectronics Pacing Systems Inc., Accufix Atrial "J" Leads Products Liability Litigation***, MDL No. 1057 (S.D. Ohio).  Lieff Cabraser served on the court-appointed Plaintiffs' Steering Committee in a nationwide products liability action alleging that defendants placed into the stream of commerce defective pacemaker leads. In April 1997, the district court re-certified a nationwide class of "J" Lead implantees with subclasses for the claims of medical monitoring, negligence and strict product liability. A summary jury trial utilizing jury instructions and interrogatories designed by Lieff Cabraser occurred in February 1998. A partial settlement was approved thereafter by the district court, but reversed by the Court of Appeals. In March 2001, the district court approved a renewed settlement that included a $58 million fund to satisfy all past, present and future claims by patients for their medical care, injuries, or damages arising from the lead.

11.   ***In re Felbatol Products Liability Litigation,*** MDL No. 1048 (N.D. Cal.). Lieff Cabraser served as Co-Lead Class Counsel and Plaintiffs' Liaison

Counsel in this nationwide litigation asserting medical monitoring, compensatory and punitive damages claims on behalf of 100,000 users of the anti-epilepsy drug Felbatol, who alleged present and potential injuries from its serious adverse effects, including liver failure and aplastic anemia.  The nationwide Plaintiff class was certified on March 15, 1995; certification was vacated for further findings by the Ninth Circuit in *Valentino v. Carter-Wallace*, 97 F.3d 1277 (9th Cir. 1996), which affirmed the viability of nationwide mass tort class actions.  The litigation was settled favorably on behalf of all major injury claimants in March 1997.

12.    ***In re Cordis Pacemaker Product Liability Litigation***, MDL No. 850 (S.D. Ohio).  Lieff Cabraser represented a certified nationwide class of Cordis pacemaker recipients on personal injury, emotional distress, fraud, equitable relief, and pacemaker explant compensation claims. In 1995, shortly before trial, Lieff Cabraser negotiated and obtained Court approval of a $21 million settlement of the action.

13.    ***In re Copley Pharmaceutical, Inc., "Albuterol" Products Liability Litigation***, MDL  No. 1013 (D. Wyo.).  Lieff Cabraser served on the Plaintiffs' Steering Committee in a class action lawsuit against Copley Pharmaceutical, which manufactured Albuterol, a bronchodilator prescription pharmaceutical.  Albuterol was the subject of a nationwide recall in January 1994 after a microorganism was found to have contaminated the solution, allegedly causing numerous injuries including bronchial infections, pneumonia, respiratory distress and, in some cases, death.  In October 1994, the district court certified a nationwide class on liability issues.  *In re Copley Pharmaceutical*, 161 F.R.D.  456 (D. Wyo. 1995).  In November 1995, the district court approved a $150 million settlement of the litigation.

## B.    Securities and Investment Fraud

1.    ***In re Scorpion Technologies, Inc. Securities Litigation I***, No. C-93-20333-EAI (N.D. Cal.); ***Dietrich v. Bauer***, No. C-95-7051-RWS (S.D.N.Y.); ***Claghorn v. Edsaco***, No. 98-3039-SI (N.D. Cal.).  Lieff Cabraser served as Co-Lead Counsel in class action suits arising out of an alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its officers, accountants, underwriters and business affiliates to inflate the company's earnings through reporting fictitious sales.  In *Scorpion I*, the Court found plaintiffs had presented sufficient evidence of liability under Federal securities acts against the accounting firm Grant Thornton for the case to proceed to trial.  *In re Scorpion Techs.*, 1996 U.S. Dist. LEXIS 22294 (N.D. Cal. Mar. 27, 1996).  In 1988, the Court approved a $5.5 million settlement with Grant Thornton.  In 2000, the Court approved a $950,000 settlement with Credit Suisse First Boston Corporation.  In April 2002, a federal jury in San Francisco, California returned a $170.7 million

verdict against Edsaco Ltd.  The jury found that Edsaco aided Scorpion in setting up phony European companies as part of scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings.  Included in the jury verdict, one of the largest verdicts in a securities fraud suit in the U.S. in 2002, was $165 million in punitive damages.  Richard M. Heimann conducted the trial for plaintiffs.

Following the *Edsaco* trial, the parties reached a settlement of the action on favorable monetary terms to the class, which included Edsaco's relinquishment of its right to appeal and the plaintiff's agreement to vacate the jury verdict.  On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation:  "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here.  You were opposed by extremely capable lawyers.  It was an uphill battle.  There were some complicated questions, and then there was the tricky issue of actually collecting anything in the end.  I think based on the efforts that were made here that it was an excellent result for the class. . . .  [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."

2.      ***Merrill Lynch Fundamental Growth Fund and Merrill Lynch Global Value Fund, Inc., v. McKesson HBOC, Inc., et al.,*** No. 02-405792 (Cal. Supr. Ct.).  Lieff Cabraser served as counsel for two Merrill Lynch mutual funds in a private lawsuit filed alleging that a massive accounting fraud occurred at HBOC & Company ("HBOC") before and following its 1999 acquisition by McKesson Corporation ("McKesson").  The funds charged that defendants, including the former CFO of McKesson HBOC, the name McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $150 million in losses for plaintiffs.  In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S.  Attorney and SEC.  *McKesson HBOC, Inc. v. Superior Court*, 115 Cal. App. 4th 1229 (2004). In October 2005, the parties entered into a settlement on favorable terms to Merrill Lynch Funds.

3.      ***Alaska State Department of Revenue, et al. v. America Online, Inc., et al.,*** No. 1JU-04-503 (Alaska Sup. Ct.).  In December 2006, a $50 million settlement was reached in a securities fraud action brought by the Alaska State Department of Revenue, Alaska State Pension Investment Board and Alaska Permanent Fund Corporation against defendants America Online, Inc. ("AOL"), Time Warner Inc. (formerly known as AOL Time Warner

("AOLTW")), Historic TW Inc.  When the action was filed, the Alaska Attorney General estimated the losses at $70 million.  The lawsuit, filed in 2004 in Alaska State Court, alleged that defendants misrepresented advertising revenues and growth of AOL and AOLTW along with the number of AOL subscribers, all of which was intended to, and did, artificially inflate the stock price of AOL and AOLTW to the detriment of Alaska State funds.

The Alaska Department of Law retained Lieff Cabraser to lead the litigation efforts under its direction.  "We appreciate the diligence and expertise of our counsel in achieving an outstanding resolution of the case," said Mark Morones, spokesperson for the Department of Law, following announcement of the settlement.

4.    ***Qwest Communications Securities Litigation***.  Lieff Cabraser represents the New York State Common Retirement Fund, Fire and Police Pension Association of Colorado, Denver Employees' Retirement Plan, San Francisco Employees' Retirement System, and over thirty separate Merrill Lynch Mutual Funds in individual securities fraud actions filed in federal court against Qwest Communications International, Inc., Philip F. Anschutz, former co-chairman of the Qwest board of directors and other senior executives at Qwest as well as Arthur Andersen LLP.  In each action, defendants are charged with significantly overstating Qwest's publicly-reported growth, revenues, earnings, and earnings per share from 1999 through 2002.  Defendants' unlawful conduct served to maintain Qwest's common share price at artificially high levels and enabled the individual defendants to sell Qwest common shares at inflated values.

5.    ***In re Broadcom Corporation***, No. CV 06-3252-R (C.D. Cal.).  Lieff Cabraser serves as court-appointed Lead Counsel in a stockholders' derivative action against the board of directors of Broadcom Corporation. The suit alleges defendants intentionally manipulated their stock option grant dates between 1997 and at least the end of 2002 in order to enrich themselves at the expense of Broadcom and Broadcom shareholders. Defendants made it appear as if stock options were granted earlier than they actually were in order to maximize the value of the grant.  By making it seem as if stock option grants occurred on dates when Broadcom stock was trading at a comparatively low per share price, Broadcom executives were able to exercise their stock option grants at exercise prices that were lower than the fair market value of Broadcom stock on the day the options were actually granted.

6.    ***Albert, et al. v. Alex. Brown Management Services, Inc., et al.; Baker , et al. v. Alex. Brown Management Services, Inc., et al.***  (Del. Sup. Ct.). In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that

resulted in an aggregate loss of hundreds of millions of dollars. The suits name as defendants Deutsche Bank and its subsidiaries Alex Brown Management Services and Deutsche Bank Securities, members of the funds' management committee, as well as DC Investments Partners and two of its principles. Among the plaintiff-investors are 70 high net worth individuals.

7.   ***Kofuku Bank Ltd. and Namihaya Bank Ltd. v. Republic New York Securities Corp., et al.***, No. 00 CIV 3298 (S.D.N.Y.); and ***Kita Hyogo Shinyo-Kumiai v. Republic New York Securities Corp., et al.***, No. 00 CIV 4114 (S.D.N.Y.). Lieff Cabraser represented Kofuku Bank, Namihaya Bank and Kita Hyogo Shinyo-Kumiai (a credit union) in individual lawsuits against, among others, Martin A. Armstrong and HSBC, Inc., the successor-in-interest to Republic New York Corporation, Republic New York Bank and Republic New York Securities Corporation for alleged violations of federal securities and racketeering laws. Through a group of interconnected companies owned and controlled by Armstrong – the Princeton Companies – Armstrong and the Republic Companies promoted and sold promissory notes, known as the "Princeton Notes," to more than eighty of the largest companies and financial institutions in Japan. Lieff Cabraser's lawsuits, as well as the lawsuits of dozens of other Princeton Note investors, alleged that the Princeton and Republic Companies made fraudulent misrepresentations and non-disclosures in connection with the promotion and sale of Princeton Notes, and that investors' moneys were commingled and misused to the benefit of Armstrong, the Princeton Companies and the Republic Companies. In December 2001, the claims of our clients and those of the other Princeton Note investors were settled. As part of the settlement, our clients recovered more than $50 million, which represented 100% of the value of their principal investments less money they received in interest or other payments.

8.   ***Lehman Brothers/First Alliance Mortgage Litigation***, No. SA CV 01-971 (C.D. Cal.). On June 16, 2003, a federal jury in California held Lehman Brothers, Inc., liable for knowingly assisting First Alliance Mortgage Corporation in committing fraud. First Alliance was accused of misrepresenting the true cost of home loans and of charging borrowers as much as 24% in loan origination and other fees. The jury found that First Alliance systematically defrauded borrowers, and that Lehman Brothers aided and abetted the fraudulent scheme. The verdict showed that the community will hold Wall Street responsible for knowingly serving as a financial backer to abusive lenders. Lieff Cabraser partner Hector D. Geribon served as co-counsel in the trial for the plaintiffs. The Ninth Circuit Court of Appeals affirmed classwide liability against Lehman Brothers.

9.  ***Allocco, et al. v. Gardner, et al.***, No. GIC 806450 (Cal. Supr. Ct.).  Lieff Cabraser represents Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen and certain entities that entered into fraudulent transactions with Peregrine. The lawsuit, filed in California state court, arises out of Peregrine's August 2001 acquisition of Remedy.  Plaintiffs charge that they were induced to exchange their Remedy stock for Peregrine stock on the basis of false and misleading representations made by defendants.  Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

10.  ***In re National Century Financial Enterprises, Inc.  Investment Litigation***, MDL 1565 (S.D. Ohio).  Lieff Cabraser serves as Lead Counsel for the New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund in a securities fraud and breach of fiduciary duties lawsuit against Bank One, JPMorgan Chase Bank, Credit Suisse First Boston LLC, and additional defendants.  The complaint charges that plaintiffs suffered $89 million in losses as a result of a massive Ponzi scheme orchestrated and implemented by National Century Financial Enterprises and defendants.  Lieff Cabraser reached settlements with several of the defendants for the benefit of the Funds and continues to prosecute the case against the non-settling defendants.

11.  ***In re Network Associates, Inc. Securities Litigation***, No. C-99-1729-WHA (N.D. Cal.).  Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors.  The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price.  In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the *Network Associates* settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel .  .  .   We have class counsel who's one of the most foremost law firms in the country in both securities law and class actions. And they have a very excellent reputation for the conduct of these kinds of cases and their experience and views .  .  ."

12.  ***In re California Micro Devices Securities Litigation***, No. C-94-2817-VRW (N.D. Cal.).  Lieff Cabraser served as Liaison Counsel for the

Colorado Public Employees' Retirement Association and the California State Teachers' Retirement System, and the class they represented. Prior to 2001, the Court approved $19 million in settlements. In May 2001, the Court approved an additional settlement of $12 million, which, combined with the earlier settlements, provided class members an almost complete return on their losses. The settlement with the company included multi-million dollar contributions by the former Chairman of the Board and Chief Executive Officer.

Commenting in 2001 on Lieff Cabraser's work in *Cal Micro Devices*, U.S. District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation." One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable. In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

13.   *In re FPI/Agretech Securities Litigation*, MDL No. 763 (D. Haw., Real, J.). Lieff Cabraser served as Lead Class Counsel on behalf of multiple classes of investors defrauded in a limited partnership investment scheme. The Court approved $15 million in partial pretrial settlements. At trial, the jury returned a $25 million verdict, which included $10 million in punitive damages plus costs, interest, and attorneys' fees, against non-settling defendant Arthur Young & Co. on securities and tort claims arising from its involvement in the fraud. Richard M. Heimann served as Lead Trial Counsel in the class action trial. On appeal, the compensatory damages judgment was affirmed and the case was remanded for retrial on punitive damages. In December 1994, the Court approved a $17 million class settlement with Ernst & Young.

14.   *Informix/Illustra Securities Litigation*, No. C-97-1289-CRB (N.D. Cal.). Lieff Cabraser represented Richard H. Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc. ("Illustra"), and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation ("Informix") in connection with Informix's 1996 purchase of Illustra. Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company. The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition. In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company

alleged to have committed securities fraud. Our clients, the Illustra shareholders, received approximately 30% of the net settlement fund.

15.  ***In re Media Vision Technology Securities Litigation,*** No. CV-94-1015 (N.D. Cal.). Lieff Cabraser serves as Co-Lead Counsel in a class action lawsuit which alleged that certain of Media Vision's officers, outside directors, accountants and underwriters engaged in a fraudulent scheme to inflate the company's earnings, and issued false and misleading public statements about the company's finances, earnings and profits. By 1998, the Court had approved several partial settlements with many of Media Vision's officers and directors, accountants and underwriters which totalled $31 million. The settlement proceeds have been distributed to eligible class members. The evidence that Lieff Cabraser developed in the civil case led prosecutors to commence an investigation and ultimately file criminal charges against Media Vision's former Chief Executive Officer and Chief Financial Officer. The civil action against Media Vision's CEO and CFO was stayed pending the criminal proceedings against them. In the criminal proceedings, the CEO pled guilty on several counts, and the CFO was convicted at trial. In October, 2003, the Court granted Plaintiffs' motions for summary judgment and entered a judgment in favor of the class against these two defendants in the amount of $188 million.

16.  ***Nguyen v. FundAmerica***, No. C-90-2090 MHP (N.D. Cal., Patel, J.), 1990 Fed. Sec. L. Rep. (CCH) ¶¶ 95,497, 95,498 (N.D. Cal. 1990). Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants. The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets. The Bankruptcy Court permitted class proof of claiMs. Lieff Cabraser obtained dual District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

17.  ***In re First Capital Holdings Corp. Financial Products Securities Litigation***, MDL No. 901 (C.D. Cal.). Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements. This policyholder settlement generated over $1 billion in restored life insurance policies, and was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

18.  ***In re Precious Metals Dealers/Safrabank Securities Litigation***, MDL No. 804 (C.D. Cal.) Lieff Cabraser served as Lead Counsel for a class of

purchasers who were allegedly fraudulently induced to purchase precious metal through similar high pressure sales pitches.  The case resulted in a $10 million settlement.

C.    **Employment Discrimination and Unfair Employment Practices**

1.    ***Butler v. Home Depot***, No. C94-4335 SI (N.D. Cal.).  Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment.  The class was certified in January 1995.  In January 1998, the Court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree.  Under the terms of the settlement, Home modified its hiring, promotion, and compensation practices to ensure that interested and qualified women were hired for, and promoted to, sales and management positions.

On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provides "a very significant monetary payment to the class members for which I think they should be grateful to their counsel…Even more significant is the injunctive relief that's provided for . . ."  By 2003, the injunctive relief created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of over approximately $100 million per year in wages for female employees.

In 2002, Judge Illston stated that the injunctive relief has been a "win/win" . . . for everyone, because . . . the way the Decree has been implemented has been very successful and it is good for the company as well as the company's employees.

2.    ***In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation,*** MDL No. 1439 (D. Or.).  Lieff Cabraser and co-counsel represent personal lines claims representatives of Farmers' Insurance Exchange seeking unpaid overtime.  In November 2003, after a three week liability phase trial, the Court held that Farmers' claims adjusters who handle auto and low level property claims are entitled to overtime.  300 F. Supp. 2d 1020 (2003).  The Court further found that Farmers' actions were willful and were not taken in good faith, entitling the workers to liquidated damages.  In January and May 2005, the Court entered judgments totaling $52.5 million against Farmers, the largest judgments ever entered as the result of the trial of a Fair Labor Standards Act case. In October 2006, the Ninth Circuit Court of Appeals reverse the judgment for plaintiffs under the Fair Labor Standards Act and the laws of New Mexico, Illinois, Michigan, and Washington, and remand ed the case for further proceedings under the laws of Minnesota, Oregon, and Colorado. Plaintiffs filed a request for rehearing and a petition for rehearing en banc.

3.      ***Rosenburg, et al. v. IBM,*** No. C06-0430 JDC (N.D. Cal.).  In July 2007, the Court granted final approval to a $65 million settlement of a class action suit by current and former technical support workers for IBM seeking unpaid overtime.  The settlement constitutes a record amount in litigation seeking overtime compensation for employees in the computer industry.  Plaintiffs alleged that IBM illegally misclassified its employees who install or maintain computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

4.      ***Satchell, et al. v. FedEx Express***, No. C 03-2659 SI; C 03-2878 SI (N.D. Cal.).  In April 2007, the parties reached a $54.9 million settlement of the race discrimination class action lawsuit by African American and Latino employees of FedEx Express.  The settlement requires FedEx to reform its promotion, discipline, and pay practices.  Under the settlement, FedEx will implement multiple steps to promote equal employment opportunities, including making its performance evaluation process less discretionary, discarding use of the "Basic Skills Test" as a prerequisite to promotion into certain desirable position, and submitting policy changes to demonstrate that its revised practices do not continue to foster racial discrimination.  The settlement, covering 20,000 hourly employees and operations managers who have worked in the western region of FedEx Express since October 1999, will be submitted to the Court for preliminary approval on April 13, 2007.

5.      ***Amochaev et al. v. Citigroup Global Markets, Inc., d/b/a Smith Barney***, No. C05-1298 PJH (N.D. Cal.).  Female Financial Consultants allege Smith Barney discriminated against them in account distribution, business leads, referral business, partnership opportunities, and sales support.  The suit is brought on behalf of a national class of all female Financial Consultants employed at Smith Barney since August 30, 2003, and a California subclass of all female Financial Consultants employed at Smith Barney in California since June 25, 2003.  Lieff Cabraser serves as co-counsel for plaintiffs.

6.      ***Gonzalez et al. v. Abercrombie & Fitch Stores, Inc. et al.***, No. C03-2817 SI (N.D. Cal.).  In April 2005, the Court approved a settlement, valued at approximately $50 million, which requires the retail clothing giant Abercrombie & Fitch to provide monetary benefits of $40 million to the class of Latino, African American, Asian American and female applicants and employees who charged the company with discrimination.  The settlement also requires the company to institute a range of policies and programs to promote diversity among its workforce and to prevent discrimination based on race or gender.  Lieff Cabraser served as Lead Class Counsel and prosecuted the case with a number of co-counsel firms, including the Mexican American Legal Defense and Education Fund, the Asian Pacific American Legal Center and the NAACP Legal Defense and Educational Fund, Inc.

7.     ***Frank v. United Airlines, Inc.***, No. C-92-0692 MJJ (N.D. Cal.).  Lieff
Cabraser and co-counsel obtained a $36.5 million settlement in February
2004 for a class of female flight attendants who were required to weigh
less than comparable male flight attendants.

Former U.S. District Court Judge Charles B. Renfrew (ret.), who served as
a mediator in the case, stated, "As a participant in the settlement
negotiations, I am familiar with and know the reputation, experience and
skills of lawyers involved.  They are dedicated, hardworking and able
counsel who have represented their clients very effectively."  U.S. District
Judge Martin J. Jenkins, in granting final approval to the settlement, found
"that the results achieved here could be nothing less than described as
exceptional," and that the settlement "was obtained through the efforts of
outstanding counsel."

8.     ***Winnett, et al. v. Caterpillar, Inc.***, No. 3:06-cv-00235 (M.D. Tenn.).
Lieff Cabraser serves as co-counsel representing retirees in a nationwide
class action lawsuit against Caterpillar, Inc.  In October 2004 Caterpillar
began charging monthly premiums despite longstanding contracts that
promise free healthcare to certain participants and their spouses.  The
lawsuit seeks to end these charges and restore the plaintiffs and similarly
situated retirees to the position they would have been but for Caterpillar's
contractual violations.  In July 2007, the Court granted the plaintiffs' class
certification request and designated the named plaintiffs as class
representatives.

9.     ***Barnett v. Wal-Mart***, No. 01-2-24553-SNKT (Wash.); ***Gamble v. Wal-
Mart***, No. 7121-01 (N.Y.).  Lieff Cabraser and co-counsel represent
proposed classes of hourly wage earners at Wal-Mart in Washington and
New York who allegedly have been forced to work "off-the-clock"
(without pay).  Plaintiffs, current and former Wal Mart employees, allege
that, in violation of state wage and hour laws, Wal-Mart forces employees
to work through breaks and to work without pay after they have clocked
out.  In October 2004, in the Washington Wal-Mart action, the Court
certified a class of approximately 40,000 current and former Wal-Mart
employees.

10.    ***Holloway, et al. v. Best Buy,*** No. C05-5036 PJH (N.D. Cal.).  Lieff
Cabraser, with co-counsel, represents a proposed class of current and
former employees of Best Buy in a federal class action civil rights lawsuit.
Plaintiffs allege that Best Buy stores nationwide discriminate against
women and minorities, specifically African Americans and Latinos.
These employees charge that they are paid less than white males, denied
promotions, and assigned to less desirable positions.  The suit also alleges
that Best Buy discriminates against women and minorities in hiring
decisions.

11.    ***Giannetto v. Computer Sciences Corporation***, 03-CV-8201 (C.D. Cal.).
In one of the largest overtime pay dispute settlements ever in the
information technology industry, the Court in July 2005 granted final
approval to a $24 million settlement with Computer Sciences Corporation.
Plaintiffs charged that the global conglomerate had a common practice of
refusing to pay overtime compensation to its technical support workers
involved in the installation and maintenance of computer hardware and software
in violation of the Fair Labor Standards Act, California's Unfair
Competition Law, and the wage and hour laws of 13 states.

12.    ***Foster v. The Great Atlantic & Pacific Tea Company, Inc.  ("A&P")***,
No. 99 Civ. 3860 (CM) (S.D.N.Y.).  Lieff Cabraser, along with co-
counsel, represented approximately 870 current and former employees of
New York area supermarkets suing under the Fair Labor Standards Act.
The Opt-In Plaintiffs in the certified collective action sought unpaid
overtime compensation resulting from Defendants' alleged failure to
compensate employees for work performed "off-the-clock."  In May 2004,
the Court approved a settlement providing $3.11 million to the Opt-In
Plaintiffs.  In June 2004, current and former full-time hourly employees of
The Great Atlantic & Pacific Tea Company filed a new lawsuit against
defendants in New York state court.  The plaintiffs allege that defendants
systematically failed to pay overtime wages and deleted hours worked
from time records in violation of New York labor law.  In July 2007, the
Court certified the class of thousands of cashiers, clerks, bakers, deli and
other hourly-paid workers.

13.    ***Goddard, et al. v. Longs Drug Stores Corporation, et al.***, No.
RG04141291 (Cal. Supr. Ct.).  Store managers and assistant store
managers of Longs Drugs charged that the company misclassified them as
exempt from overtime wages.  Managers regularly worked in excess of 8
hours per day and 40 hours per week without compensation for their
overtime hours.  Following mediation, in 2005, Longs Drugs agreed to
settle the claims for a total of $11 million.  Over 1,000 current and former
Longs Drugs managers and assistant managers were eligible for
compensation under the settlement, over  98% of the class submitted
claiMs.

14.    ***Zuckman v. Allied Group***, No. 02-5800 SI (N.D. Cal.).  In September
2004, the Court approved a settlement with Allied Group and Nationwide
Mutual Insurance Company of $8 million plus Allied/Nationwide's share
of payroll taxes on amounts treated as wages, providing plaintiffs a 100%
recovery on their claiMs. Plaintiffs, claims representatives of Allied /
Nationwide, alleged that the company misclassified them as exempt
employees and failed to pay them and other claims representatives in
California overtime wages for hours they worked in excess of eight hours
or forty hours per week.  In approving the settlement, U.S. District Court

Judge Susan Illston commended counsel for their "really good lawyering" and stated that they did "a splendid job on this" case.

15.   ***Trotter v. Perdue Farms, Inc.***, No. C 99-893-RRM (JJF) (MPT) (D. Del.). Lieff Cabraser represented a class of chicken processing employees of Perdue Farms, Inc., one of the nation's largest poultry processors, for wage and hour violations. The suit challenged Perdue's failure to compensate its assembly line employees for putting on, taking off, and cleaning protective and sanitary equipment in violation of the Fair Labor Standards Act, various state wage and hour laws, and the Employee Retirement Income Security Act. Under a settlement approved by the Court in 2002, Perdue paid $10 million for wages lost by its chicken processing employees and attorneys' fees and costs. The settlement was in addition to a $10 million settlement of a suit brought by the Department of Labor in the wake of Lieff Cabraser's lawsuit.

16.   ***Sandoval v. Mountain Center, Inc., et al.*** No. 03CC00280 (Cal. Supr. Ct.). Cable installers in California charged that defendants owed them overtime wages, as well as damages for missed meal and rest breaks and reimbursement for expenses incurred on the job. In 2005, the Court approved a $7.2 million settlement of the litigation, which was distributed to the cable installers who submitted claiMs.

17.   ***Gottlieb v. SBC Communications***, No. CV-00-04139 AHM (MANx) (C.D. Cal.). With co-counsel, Lieff Cabraser represented current and former employees of SBC and Pacific Telesis Group ("PTG") who participated in AirTouch Stock Funds, which were at one time part of PTG's salaried and non-salaried savings plans. After acquiring PTG, SBC sold AirTouch, which PTG had owned, and caused the AirTouch Stock Funds that were included in the PTG employees' savings plans to be liquidated. Plaintiffs alleged that in eliminating the AirTouch Stock Funds, and in allegedly failing to adequately communicate with employees about the liquidation, SBC breached its duties to 401k plan participants under the Employee Retirement Income Security Act. In 2002, the Court granted final approval to a $10 million settlement .

18.   ***Thomas v. California State Automobile Association***, No. CH217752 (Cal. Supr. Ct.). With co-counsel, Lieff Cabraser represented 1,200 current and former field claims adjusters who worked for the California State Automobile Association ("CSAA"). Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked. In May 2002, the Court approved an $8 million settlement of the case.

19.   ***Church v. Consolidated Freightways***, No. C90-2290 DLJ (N.D. Cal.). Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a freight

forwarding company acquired by Consolidated Freightways in 1989.  On behalf of the employee class, Lieff Cabraser prosecuted claims for violation of the Employee Retirement Income Security Act, the securities laws, and the Age Discrimination in Employment Act.  The case settled in 1993 for $13.5 million.

20.    ***Buttram v. UPS, Inc.***, No. C-97-01590 MJJ (N.D. Cal.).  Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African-American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement.  In 1999, the Court approved a $12.14 million settlement of the action.  Under the injunctive relief portion of the settlement, among other things, Class Counsel continues to monitor the promotions of African-American part-time hourly employees to part-time supervisor and full-time package car driver.

21.    ***Lyon v. TMP Worldwide, Inc.***, No. 993096 (Cal. Supr. Ct.).  Lieff Cabraser served as Class Counsel for a class of certain non-supervisory employees in an advertising firm.  The settlement, approved in 2000, provided almost a 100% recovery to class members.  The suit alleged that TMP failed to pay overtime wages to these employees.

22.    ***Kahn v. Denny's***, No. BC177254 (Cal. Supr. Ct.).  Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California.  The Court approved a $4 million settlement of the case in 2000.

23.    ***Giles v. Allstate***, JCCP Nos.  2984 and 2985.  Lieff Cabraser represented a class of Allstate insurance agents seeking reimbursement of out-of-pocket costs.  The action settled for approximately $40 million.

24.    ***Bogan v. Fleetwood Enterprises, Inc.***, No. CIV 00-0440-S-BLW (D. Idaho).  Lieff Cabraser, along with co-counsel, represents a nationwide class of women production associates who allegedly have been discriminated against on the basis of sex with respect to promotions and compensation, and who allegedly have been subjected to rampant sexual harassment.  In 2002, the Court approved a settlement that included comprehensive injunctive relief.

25.    ***Dupree v. The Prudential Insurance Co., et al.***, No. 99-8337-CIV (AJJ) (S.D. Fla.)  With co-counsel, Lieff Cabraser represents a group of retired employees of Prudential who are participants in Prudential's Retirement Plan. The Plan provides pension benefits to thousands of retirees who used to work for Prudential.  Those benefits are protected by a federal statute called the Employee Retirement Income Security Act (ERISA), which was enacted by Congress to prevent employers from exercising

improper control over the assets of their retirement plans. The plaintiff retirees allege that Prudential violated ERISA by using (and continuing to use) the Retirement Plan's assets to benefit Prudential, instead of its retirees. Trial commenced on February 17, 2004, and concluded in March. The Court heard closing arguments on January 20, 2005. Plaintiffs request that the Court make Prudential restore to all Plan participants the funds allegedly taken out of the Retirement Plan in violation of the law.

Lieff Cabraser attorneys have also had experience working on several other employment cases, including cases involving race, gender, and age discrimination, ERISA, breach of contract claims, and wage/hour claims. Lieff Cabraser attorneys frequently write amici briefs on cutting-edge legal issues involving employment law. Lieff Cabraser is currently investigating charges of race, gender and/or age discrimination, and wage/hour violations against several companies. In 2004, Kelly M. Dermody was included by *The Recorder* in a list of the best employment lawyers in the San Francisco Bay Area, and has also been selected as a *Northern California Super Lawyer.*

### D.    Consumer Protection

1.    ***Sutter Health Uninsured Pricing Cases***, J.C.C.P. No. 4388. Plaintiffs alleged that they and a Class of uninsured patients treated at Sutter hospitals were charged substantially more than patients with private or public insurance, and many times above the cost of providing their treatment. In December 2006, the Court granted final approval to a comprehensive and groundbreaking settlement of the action. As part of the settlement, Class members will be entitled to make a claim for refunds or deductions of between 25% to 45% from their prior hospital bills, at an estimated total value of $276 million. For the next three years, Sutter will maintain discounted pricing policies for uninsureds that will make Sutter's pricing for uninsureds comparable to or better than the pricing for patients with private insurance. In addition, Sutter agreed to maintain more compassionate collections policies that will protect uninsureds who fall behind in their payments. Lieff Cabraser served as Lead Counsel in the coordinated action.

2.    ***Catholic Healthcare West Cases***, J.C.C.P. No. 4453. Plaintiff alleged that Catholic Healthcare West ("CHW") charged uninsured patients excessive fees for treatment and services, at rates far higher than the rates charged to patients with private insurance or on Medicare. In January 2007, the Court approved a settlement that provides discounts, refunds and other benefits for CHW patients valued at $423 million. The settlement requires that CHW lower its charges and end price discrimination against all uninsured patients, maintain generous charity case policies allowing low-income uninsureds to receive free or heavily discounted care, and protect uninsured patients from unfair collections practices. Lieff Cabraser served as Lead Counsel in the coordinated action.

3.    ***Ricci v. Ameriquest Mortgage Company***, No. 27-CV-05-2546 (Minn. District Court).  Lieff Cabraser serves as Plaintiffs' Lead Counsel for a certified class of Minnesota property owners who obtained mortgage loans from Ameriquest Mortgage Company.  Plaintiffs charge that Ameriquest has engaged in a deceptive and unlawful business practices in violation of Minnesota law.   Plaintiffs allege that Ameriquest trains its sales force to target economically vulnerable persons in a predatory lending scheme based on the sale of loans with illegal and undisclosed fees and terms.

4.    ***Morris v. AT&T Wireless Services, Inc.***, No. C-04-1997-MJP (W.D. Wash.).  Lieff Cabraser served as class counsel for a nationwide settlement class of cell phone customers subjected to an end of billing cycle cancellation policy implemented by AT&T Wireless in 2003 and alleged to have breached customers' service agreements.  In May 2006, the New Jersey Superior Court granted final approval to a class settlement that guarantees delivery to the class of $40 million in benefits.  Class members received cash-equivalent calling cards automatically, and had the option of redeeming them for cash.  Lieff Cabraser had been prosecuting the class claims in the Western District of Washington when a settlement in New Jersey state court was announced.  Lieff Cabraser objected to that settlement as inadequate because it would have only provided $1.5 million in benefits without a cash option, and the court agreed, declining to approve it.  Thereafter, Lieff Cabraser negotiated the new settlement providing $40 million to the class, and the settlement was approved.

5.    ***Strugano v. Nextel Communications, Inc.,*** No. BC 288359 (Cal. Superior Court).  In May 2006, the Los Angeles Superior Court granted final approval to a class action settlement on behalf of all California customers of Nextel from January 1, 1999 through December 31, 2002, for compensation for the harm caused by Nextel's alleged unilateral (1) addition of a $1.15 monthly service fee and/or (2) change from second-by-second billing to minute-by-minute billing, which caused "overage" charges (*i.e.*, for exceeding their allotted cellular plan minutes).  The total benefit conferred by the Settlement directly to Class Members was between approximately $13.5 million and $55.5 million, depending on which benefit Class Members selected.  Class Counsel secured these benefits for a Class of approximately 308,000 customers with 1.1 million cell phone plans.

6.    ***Thompson, et al. v. WFS Financial, Inc.,*** No. 3-02-0570 (M.D. Tenn.)  In November 2005, the Court granted final approval of the settlement of the action against WFS Financial alleging violations of the Federal Equal Credit Opportunity Act and related state laws.  The Court recognized the "innovative" and "remarkable settlement" achieved on behalf of a nationwide class of African and Hispanic American consumers.  On behalf of a nationwide class, Lieff Cabraser and its co-counsel obtained a judgment that limits the amount of "mark-up" lenders can impose on

interest rates, putting it in a range to alleviate the discriminatory impact. It requires the lender to offer refinancing of $1 billion of the outstanding loan balances in its overall portfolio to reduce by 1% the interest rates currently being charged. It requires dealers to disclose — up front and in the contracts — what has been hidden for decades, namely despite being presented with a qualifying rate, auto financing is still negotiable and that the dealer may be retaining a portion of the finance charges. Finally, it funds consumer education and assistance programs for Rainbow/PUSH, La Raza, and will establish fellowships for and loan forgiveness for young lawyers who seek to advance rights of consumers by taking public interest law jobs. The monetary benefit to the affected group provided by the settlement is estimated to be about $49 million, with an incidental benefit to non-minority customers (for whom the markup caps also apply) of $36 million.

7.    ***Pakeman, et al. v. American Honda Finance Corporation***, No. 3-02-0490 (M.D. Tenn.) In April 2006, the Court granted final approval of a class settlement against American Honda Finance Corporation. Lieff Cabraser, with its co-counsel, reached a settlement for a nationwide class of consumers raising claims under the Federal Equal Credit Opportunity Act, and related state law claiMs. The settlement provides that defendant establish a refinance program applicable to $1 billion of its existing loan portfolio under which African and Hispanic Americans are eligible for a 1% reduction on their auto loan interest rate. The settlement also imposes a limit to the amount of "mark-up" lenders can impose on interest rates, increases the transparency of consumer disclosures, and funds consumer education prograMs. The monetary benefit to the class is estimated to be between about $47 million to $72 million.

8.    ***Providian Credit Card Cases***, No. JCCP 4085 (San Francisco Superior Ct.). Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services. In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes in its business practices. The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest settlement ever by a U.S. credit card company in a consumer protection case.

9.    ***In re Tri-State Crematory Litigation***, MDL No. 1467 (N.D. Ga.). In March 2004, Lieff Cabraser delivered opening statements and began testimony in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia. The families also asserted claims against the funeral homes that delivered the

decedents to Tri-State Crematory for failing to ensure that the crematory performed cremations in the manner required under the law and by human decency. One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million. Trial on the class members' claims against the operators of crematory began in August 2004. Soon thereafter, these defendants entered into a $80 million settlement with plaintiffs. As part of the settlement, all buildings on the Tri-State property were razed. The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory operations or other inappropriate activities from ever taking place there. Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order. 215 F.R.D. 660 (2003).

10.   **California Title Insurance Industry Litigation.** Lieff Cabraser, in coordination with parallel litigation brought by the Attorney General, reached settlements in 2003 and 2004 with the leading title insurance companies in California, resulting in historic industry-wide changes to the practice of providing escrow services in real estate closings. The settlements brought a total of $50 million in restitution to California consumers, including cash payments. In the lawsuits, plaintiffs alleged, among other things, that the title companies received interest payments on customer escrow funds that were never reimbursed to their customers. The defendant companies include Lawyers' Title, Commonwealth Land Title, Stewart Title of California, First American Title, Fidelity National Title, and Chicago Title.

11.   **Kline v. The Progressive Corporation**, Circuit No. 02-L-6 (Circuit Court of the First Judicial Circuit, Johnson County, Illinois). Lieff Cabraser served as settlement class counsel in a nationwide consumer class action challenging Progressive Corporation's private passenger automobile insurance sales practices. Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified. In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief. The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

12.   **Citigroup Loan Cases**, JCCP No. 4197 (San Francisco Superior Ct.). In 2003, the Court approved a settlement that provided approximately $240 million in relief to former Associates' customers across America. Prior to its acquisition in November 2000, Associates First Financial, referred to as The Associates, was one of the nation's largest "subprime" lenders. Lieff Cabraser represented former customers of The Associates charging that the company added on mortgage loans unwanted and unnecessary

insurance products and engaged in improper loan refinancing practices. Lieff Cabraser Heimann & Bernstein, LLP, served as nationwide Plaintiffs' Co-Liaison Counsel.

13. ***In re Ocwen Federal Bank FSB Mortgage Servicing Litigation***, MDL No. 1604 (Northern District of Illinois). Lieff Cabraser serves as Co-Lead Plaintiffs' Counsel in a nationwide class action against Ocwen Financial Corporation, Ocwen Federal Bank FSB, and their affiliates ("Ocwen"). This lawsuit arises out of charges against Ocwen of misconduct in servicing its customers' mortgage loans and in its provision of certain related services, including debt collection and foreclosure services.

14. ***Curry v. Fairbanks Capital Corporation***, No. 03-10895-DPW (D. Mass.). In 2004, the Court approved a $55 million settlement of a class action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans. The settlement also required substantial changes in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers. Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners.

15. ***In re Synthroid Marketing Litigation***, MDL No. 1182 (N.D. Ill.). Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid. The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available. In 2000, the District Court gave final approval to a $87.4 million settlement with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999. In 2001, the Court of Appeals upheld the order approving the settlement and remanded the case for further proceedings. 264 F. 3d 712 (7th Circ. 2001). The settlement proceeds were distributed in 2003.

16. ***Reverse Mortgage Cases***, JCCP No. 4061 (San Mateo County Superior Ct., Cal.). Transamerica Corporation, through its subsidiary Transamerica Homefirst, Inc., sold "reverse mortgages" marketed under the trade name "Lifetime." The Lifetime reverse mortgages were sold exclusively to seniors, *i.e.*, persons 65 years or older. Lieff Cabraser, with co-counsel, filed suit on behalf of seniors alleging that the terms of the reverse mortgages were unfair, and that borrowers were misled as to the loan terms, including the existence and amount of certain charges and fees. In 2003, the Court granted final approval to an $8 million settlement of the action.

17.     ***In re American Family Enterprises***, MDL No. 1235 (D.N.J.).  Lieff Cabraser served as co-lead counsel for a nationwide class of persons who received any sweepstakes materials sent under the name "American Family Publishers."  The class action lawsuit alleged that defendants deceived consumers into purchasing magazine subscriptions and merchandise in the belief that such purchases were necessary to win an American Family Publishers' sweepstakes prize or enhanced their chances of winning a sweepstakes prize.  In September 2000, the Court granted final approval of a $33 million settlement of the class action.  In April 2001, over 63,000 class members received refunds averaging over $500 each, representing 92% of their eligible purchases.  In addition, American Family Publishers agreed to make significant changes to the way it conducts the sweepstakes.

18.     ***In re Sears Automotive Center Consumer Litigation***, Civ. No. C-92-2227 RHS (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel for a certified nationwide class of Sears auto center customers for purposes of approval of a combined injunctive relief/refund settlement.  As part of the  settlement, Sears distributed to class members merchandise coupons valued at $25 million.

19.     ***Roberts v. Bausch & Lomb***, Civ. No. 94-C-1144-W (N.D. Ala.).  Lieff Cabraser was designated as one of several Class Counsel in November 1994 in this nationwide consumer fraud class action involving deceptive marketing of contact lenses.  In 1996, the Court approved a settlement valued at $68 million ($34 million cash and $34 million in eye care products).

20.     ***In re Miracle Ear Consumer Litigation***, Civ. No. 94-1696 (4th Jud. Dist. Minn.).  Lieff Cabraser served as Co-Lead Class Counsel in a nationwide class action certified in late 1994 involving claims arising from misrepresentations regarding performance of a hearing aid device.  State courts in Minnesota and Alabama granted final approval to the nationwide settlement.

**E.     <u>Antitrust/Trade Regulation/Intellectual Property</u>**

1.     ***Natural Gas Antitrust Cases***, J.C.C.P. Nos. 4221, 4224, 4226 & 4228 (Cal. Supr. Ct.).  In a landmark victory for California consumers and businesses, the Court approved a $1.5 billion settlement in December 2003 of class action litigation against El Paso Natural Gas Co.  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel for residential and business consumers of natural gas.  Plaintiffs charged that during the California energy crisis in 2000-2001, El Paso manipulated the market for natural gas pipeline transmission capacity into California to enable its energy trading subsidiary to acquire the capacity, and then used the capacity to drive up natural gas prices on the spot market.  Approximately $1 billion in cash

has been distributed to the class.  In December 2006, the Court granted final approval to settlements with several defendants in the related price-indexing natural gas cases.  These settlements total $92.1 million.

2.    ***Microsoft Private Antitrust Litigation.***  Representing businesses and consumers, Lieff Cabraser prosecuted multiple private antitrust cases against Microsoft Corporation in state courts across the country, including Florida, New York, North Carolina, and Tennessee.  Plaintiffs alleged that Microsoft engaged in anticompetitive conduct and/or violated state deceptive and unfair business practices statutes to harm competition and monopolize the markets for Intel-compatible, personal computer operating system software, as well as word processing and spreadsheet software.  In August 2006, the New York Supreme Court granted final approval to a settlement that makes available up to $350 million in benefits for New York businesses and consumers.  In August 2004, the Court in the North Carolina action granted final approval to a settlement valued at over $89 million.  In June 2004, the Court in the Tennessee action granted final approval to a $64 million settlement.  In November 2003, in the Florida Microsoft litigation, the Court granted final approval to a $202 million settlement, one of the largest antitrust settlements in Florida history.  Lieff Cabraser served as Co-Lead Counsel in the New York, North Carolina and Tennessee cases, and held leadership roles in the Florida case.

3.    ***Wholesale Electricity Antitrust Cases I & II***, J.C.C.P. Nos. 4204 & 4205 (Cal. Supr. Ct.).  Lieff Cabraser served as co-lead counsel in the private class action litigation against Duke Energy Trading & Marketing Reliant Energy, and The Williams Companies for claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-2001.  Extending the landmark victories for California residential and business consumers of electricity, in September 2004, plaintiffs reached  a $206 million settlement with Duke Energy Trading & Marketing, and in August 2005, plaintiffs reached a $460 million settlement with Reliant Energy, settling claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-01.  Lieff Cabraser earlier entered into a settlement for over $400 million with The Williams Companies.

4.    ***Azizian v. Federated Department Stores,*** 3:03 CV 03359 SBA (N.D. Cal.).  In March 2005, the Court granted final approval to a settlement that Lieff Cabraser and co-counsel reached with numerous department store cosmetics manufacturers and retailers.  The settlement is valued at $175 million and includes significant injunctive relief, for the benefit of a nationwide class of consumers of department store cosmetics.  The complaint alleged the manufacturers and retailers violated antitrust law by engaging in anticompetitive practices to prevent discounting of department store cosmetics.

5.      *In re ATM Antitrust Litigation*, No. C-04-2676 (N.D. Cal.).  Lieff Cabraser represents a putative class of ATM users against a number of banks comprising the Star ATM Network, alleging that those banks conspired to fix the price of ATM interchange fees, thereby unlawfully inflating fees paid by ATM users in the network.

6.      *In re TFT-LCD (Flat Panel) Antitrust Litigation,* MDL No. 1827 (N.D. Cal.).  Representing direct purchasers of flat-panel TV screens and other products incorporating liquid crystal displays, Lieff Cabraser serves as one of two Interim Lead Counsel in nationwide class action litigation against the world's leading manufacturers of Thin Film Transistor Liquid Crystal Displays.  TFT-LCDs are used in flat-panel televisions as well as computer monitors, laptop computers, mobile phones, personal digital assistants and other devices.  The plaintiffs allege that from at least January 1, 1998 through December 31, 2005 defendants conspired to raise, fix and stabilize the prices of TFT-LCDs.

7.      *In re Static Random Access Memory (SRAM) Antitrust Litigation*, MDL No. 1819 (N.D. Cal.).  Lieff Cabraser serves as one of four members of the Steering Committee for indirect purchasers of SRAM, which is used for a variety of applications, including on the motherboards of computers, as well as in cellular telephones, other handheld devices, and game consoles.  In the nationwide class action, the plaintiffs allege that defendant manufacturers of SRAM conspired in restraint of trade to artificially raise, fix, maintain, and stabilize prices for SRAM, allocate markets for SRAM, and allocate production of SRAM.

8.      *In re Flash Memory Antitrust Litigation,* MDL No. 1852.  Lieff Cabraser is class counsel for purchasers of flash memory, which is commonly used in a variety of applications, including circuit boards, memory cards, digital cameras, USB storage devices, portable music players, mobile wireless technology, game consoles and personal computers.  Plaintiffs allege that they have been deprived of free and open competition, and that prices for flash memory sold by defendants have been fixed, raised, maintained and stabilized at artificially high levels throughout the United States.

9.      *In re Publication Paper Antitrust Litigation*, MDL No. 1631 (D. Conn.).  Lieff Cabraser serve as class counsel in this nationwide antitrust class action on behalf of printing companies.  Plaintiffs allege that the defendants, who are among the world's largest paper manufacturers, conspired illegally to fix the price of publication paper that is used to print magazines.

10.     *Spectrum Stores, Inc., et al.  v. Citgo Petroleum Corp.,* H-06-3569 (S.D. Tex.).  Lieff Cabraser serves as class counsel on behalf of direct purchasers of gasoline and other oil-based products from Citgo.  The

plaintiffs allege antitrust damages for Citgo's participation in OPEC's oil cartel.

11.   *In re High Pressure Laminates Antitrust Litigation*, MDL No. 1368 (S.D.N.Y.).  Lieff Cabraser served as Trial Counsel on behalf of a class of direct purchasers of high pressure laminates.  The case in 2006 was tried to a jury verdict.  The case settled for over $40 million.

12.   *In re Buspirone Antitrust Litigation*, MDL No. 1413 (S.D.N.Y.).  In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payors that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety. Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS' patent and refrain from entering the market.  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

13.   *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.).  In May 2005, the Court granted final approval to a settlement of a class action lawsuit by patients, insurance companies and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis and precocious puberty.  The settlement requires the defendants, Abbott Laboratories, Takeda Pharmaceutical Company Limited, and TAP Pharmaceuticals, to pay $150 million, inclusive of costs and fees, to persons or entities who paid for Lupron from January 1, 1985 through March 31, 2005.  Plaintiffs charged that the defendants conspired to overstate the drug's average wholesale price ("AWP"), which resulted in plaintiffs paying more for Lupron than they should have paid.  Lieff Cabraser served as Co-Lead Plaintiffs' Counsel.

14.   *California Vitamin Cases*, J.C.C.P.  No. 4076 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution.  In January 2002, the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins.  In December 2006, the Court granted final approval to over $8.8 million in additional settlements.

15.   *Ciprofloxacin Federal and State Antitrust Litigation*, MDL No. 1383 (E.D.N.Y.).  Lieff Cabraser serves as Co-Lead Counsel for consumers who purchased Cipro, the top selling antibiotic in the world.  Plaintiffs allege that Bayer Corporation, Barr Laboratories, two other generic drug companies, and other defendants entered into an unlawful agreement to

keep a generic version of the drug off the market that allowed Bayer to sell
Cipro at inflated prices.  Lieff Cabraser also represents purchasers of
Cipro in a class action lawsuit filed in California state court.  In July 2004,
the California Court of Appeal upheld the trial court's grant of class
certification of an antitrust and unfair competition action against
defendants.

16.   ***Pharmaceutical Cases I, II, and III***, J.C.C.P. Nos. 2969, 2971 & 2972
(Cal. Supr. Ct.).  Lieff Cabraser served as Co-Lead and Co-Liaison
Counsel representing a certified class of indirect purchasers (consumers)
on claims against the major pharmaceutical manufacturers for violations
of the Cartwright Act and the Unfair Competition Act.  The class alleged
that defendants unlawfully fixed discriminatory prices on prescription
drugs to retail pharmacists in comparison with the prices charged to
certain favored purchasers, including HMOs and mail order houses.  In
April 1999, the Court approved a settlement providing $148 million in
free, brand-name prescription drugs to health agencies that serve
California's poor and uninsured.  In October 2001, the Court approved a
settlement with the remaining defendants in the case, which provided an
additional $23 million in free, brand-name prescription drugs to these
agencies.

17.   ***Coalition for Elders' Independence, Inc. v. Biovail Corporation,*** No.
CV023320 (Cal. Supr. Ct.).  Lieff Cabraser serves as Co-Lead Counsel for
class of consumers who purchased the drug Adalat, also known as
Nifedipine.  Plaintiffs allege that two generic manufacturers of Adalat
entered into an agreement to allocate the dosages markets for generic
Adalat, thereby substantially reducing competition and unlawfully
inflating prices on both generic and brand-name Adalat, in violation of
state antitrust laws.

18.   ***In re Electrical Carbon Products Antitrust Litigation***, MDL No. 1514
(D.N.J.).  Lieff Cabraser represents the City and County of San Francisco
and a class of direct purchasers of carbon brushes and carbon collectors on
claims that producers fixed the price of carbon brushes and carbon
collectors in violation of the Sherman Act.

19.   ***Electrical Carbon Products Cases***, J.C.C.P.  No. 4294 (San Francisco
Superior Court).  Lieff Cabraser represents the City and County of San
Francisco and a class of indirect purchasers of carbon brushes and carbon
collectors on claims that producers fixed the price of carbon brushes and
carbon collectors in violation of the Cartwright Act and the Unfair
Competition Law.  Lieff Cabraser also represents the People of the State
of California in claims arising from the Unfair Competition Law.

20.   ***In re Compact Disc Antitrust Litigation***, MDL No. 1216 (C.D. Cal.).
Lieff Cabraser served as Co-Lead Counsel for the direct purchasers of

compact discs on claims that the producers fixed the price of CDs in violation of the federal antitrust laws.

21.     ***In re Carpet Antitrust Litigation***, MDL No. 1075 (N.D. Ga.).  Lieff Cabraser served as Class Counsel and a member of the trial team for a class of direct purchasers of twenty-ounce level loop polypropylene carpet.  Plaintiffs, distributors of polypropylene carpet, alleged that Defendants, seven manufacturers of polypropylene carpet, conspired to fix the prices of polypropylene carpet by agreeing to eliminate discounts and charge inflated prices on the carpet.  In 2001, the Court approved a $50 million settlement of the case.

22.     ***In re Lasik/PRK Antitrust Litigation***, No. CV 772894 (Cal. Supr. Ct.).  Lieff Cabraser served as a member of Plaintiffs' Executive Committee in class actions brought on behalf of persons who underwent Lasik/PRK eye surgery.  Plaintiffs alleged that defendants, the manufacturers of the laser system used for the laser vision correction surgery, manipulated fees charged to ophthalmologists and others who performed the surgery, and that the overcharges were passed onto consumers who paid for laser vision correction surgery.  In December 2001, the Court approved a $12.5 million settlement of the litigation.

23.     ***In re Toys 'R' Us Antitrust Litigation***, MDL No. 1211 (E.D.N.Y.).  Lieff Cabraser served as Co-Lead Counsel representing a class of direct purchasers (consumers) who alleged that Toys 'R' Us conspired with the major toy manufacturers to boycott certain discount retailers in order to restrict competition and inflate toy prices.  In February 2000, the Court approved a settlement of cash and product of over $56 million.

24.     ***In re Travel Agency Commission Antitrust Litigation***, MDL No. 1058 (D. Minn.). Lieff Cabraser served as Co-Lead Counsel for a certified class of U.S. travel agents on claims against the major U.S. air carriers, who allegedly violated the federal antitrust laws by fixing the commissions paid to travel agents.  In 1997, the Court approved an $82 million settlement.

25.     ***Sanitary Paper Cases I & II***, J.C.C.P. Nos. 4019 & 4027 (Cal. Supr. Ct.).  Lieff Cabraser served as Liaison Counsel on behalf of indirect purchasers of commercial paper products.  Plaintiffs alleged that from 1993 to 2000 Defendants fixed the price of commercial tissue, toilet paper, toilet seat covers, and other commercial paper products in violation of the Cartwright Act and Unfair Competition Act.  In February 2001, the Court approved a $3 million settlement of the case.

26.     ***Schwartz v. National Football League***, No. 97-CV-5184 (E.D. Pa.).  Lieff Cabraser served as counsel for individuals who purchased the "NFL Sunday Ticket" package of private satellite transmissions in litigation

against the National Football League for allegedly violating the Sherman Act by limiting the distribution of television broadcasts of NFL games by satellite transmission to one package.  In August 2001, the Court approved of a class action settlement that included: (1) the requirement that defendants provide an additional weekly satellite television package known as Single Sunday Ticket for the 2001 NFL football season, under certain circumstances for one more season, and at the defendants' discretion thereafter; (2) a $7.5 million settlement fund to be distributed to class members; (3) merchandise coupons entitling class members to discounts at the NFL's Internet store which the parties value at approximately $3 million; and (4) $2.3 million to pay for administering the settlement fund and notifying class members.

27.    *In re Commercial Explosives Antitrust Litigation*, MDL No. 1093 (D. Utah).  Lieff Cabraser served as Class Counsel on behalf of direct purchasers of explosives used in mining operations.  In 1998, the Court approved a $77 million settlement of the litigation.

28.    *In re California Indirect-Purchaser X-Ray Antitrust Litigation*, No. 960886 (Cal. Supr. Ct.).  Lieff Cabraser served as Class Counsel on behalf of indirect purchasers (consumers) of medical x-ray film who alleged violations of the Cartwright and Unfair Competition Acts.  In 1998, the Court approved a $3.75 million settlement of the litigation.

29.    *In re Brand Name Prescription Drugs*, MDL No. 997 (N.D. Ill.).  Lieff Cabraser served as Class Counsel for a class of tens of thousands of retail pharmacies against the leading pharmaceutical manufacturers and wholesalers of brand name prescription drugs for alleged price-fixing from 1989 to 1995 in violation of the federal antitrust laws.  Class Plaintiffs charged that defendants engaged in price discrimination against retail pharmacies by denying them discounts provided to hospitals, health maintenance organizations, and nursing homes.  In 1996 and 1998, the Court approved settlements with certain manufacturers totaling $723 million.

30.    *In re K-Dur Prescription Drug Antitrust Litigation*, MDL No. 1419.  Lieff Cabraser serves as Class Counsel on behalf of indirect purchasers of K-Dur, a potassium supplement often prescribed in conjunction with high blood pressure medication.  K-Dur is the fourth most frequently prescribed drug to seniors.  The complaint alleges the defendants illegally agreed not to compete in the sale of K-Dur which prevented any generic version of K-Dur from coming onto the market.

31.    *In re Flat Glass Antitrust Litigation*, MDL 1200 (W.D. Pa.).  Lieff Cabraser served as Class Counsel on behalf of a class of direct purchasers of flat glass.

32.     ***In re Linerboard Antitrust Litigation***, MDL 1261 (E.D. Pa.).  Lieff Cabraser served as Class Counsel on behalf of a class of direct purchasers of linerboard.  The court recently approved a settlement totaling $202 million.

33.     ***Carbon Fiber Cases I, II, III***, J.C.C.P. Nos. 4212, 4216 & 4222 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel on behalf of indirect purchasers of carbon fiber.  Plaintiffs alleged that defendants illegally conspired to raise prices of carbon fiber.  Settlements have been reached with all of the defendants.

34.     ***Methionine Cases I and II***, J.C.C.P. Nos. 4090 & 4096 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of methionine, an amino acid used primarily as a poultry and swine feed additive to enhance growth and production.  Plaintiffs allege that the companies illegally conspired to raise methionine prices to super-competitive levels.  The case settled.

35.     ***McIntosh v. Monsanto***, No. 4:01CV65RSW (E.D. Mo.).  Lieff Cabraser served as Co-Lead Counsel in a class action lawsuit against Monsanto Company and others alleging that a conspiracy to fix prices on genetically modified Roundup Ready soybean seeds and Yieldgard corn seeds.  The case settled.

36.     ***Tortola Restaurants, L.P. v. Minnesota Mining and Manufacturing***, No. 314281 (Cal. Supr. Ct)  Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of Scotch-brand invisible and transparent tape.  Plaintiffs alleged that defendant 3M conspired with certain retailers to monopolize the sale of Scotch-brand tape in California.  This case has been resolved as part of a nationwide settlement that Lieff Cabraser negotiated, along with co-counsel.

## F.     <u>Non-Personal Injury Defective Products</u>

1.     ***Richison v. American Cemwood Corp.***, No. 005532 (San Joaquin Superior Ct., Cal.).  Lieff Cabraser served as Co-lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed.  In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation.  This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion.  The claims period runs through 2015.

2.     ***Williams v. Weyerhaeuser***, No. 995787 (San Francisco Superior Ct.).  Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands or millions of owners of homes and other structures

with defective Weyerhaeuser hardboard siding.  A California-wide class was certified for all purposes in February 1999, and withstood writ review by both the California Court of Appeal and Supreme Court of California. In 2000, the Court granted final approval to a nationwide settlement of the case which provides class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing, damaged siding.  The settlement has no cap, and requires Weyerhaeuser to pay all timely, qualified claims over a nine year period.  The claims program is underway and paying claims.

3. ***Foothill/DeAnza Community College District v. Northwest Pipe Company***, No. C-00-20749 (N.D. Cal.).  In June 2004, the court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that fails.  Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S.  as part of fire suppression systems for use in residential and commercial buildings. After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok.  The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product.  Under the settlement, owners whose Poz-Lok pipes are leaking today, or over the next 15 years, may file a claim for compensation.

4. ***Toshiba Laptop Screen Flicker Settlement.***  Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component.  Under the terms of the Settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS or an authorized TAIS service provider recovered the cost of that repair, up to $300 for the Satellite 1800 Series and the Satellite Pro 4600 personal computers, or $400 for the Tecra 8100 personal computers.  TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by 18 months.

5. ***ABS Pipe Litigation***, JCCP No. 3126 (Contra Costa County Superior Ct., Cal.).  Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking.  Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product.  Between 1998 and 2001, we achieved 12 separate settlements in the class actions and related individual lawsuits for approximately $78 million.

Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these reputations, but underlined, in my opinion, how well deserved those reputations are."

6.  ***McManus, et al. v. Fleetwood Enterprises, Inc.***, No. SA-99-CA-464-FB (W.D. Tex.). Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor homes. In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes. The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a supplemental braking system is needed to stop safely while towing heavy items, such as a vehicle or trailer. The settlement paid $250 to people who bought a supplemental braking system for Fleetwood motor homes that they bought new.

7.  ***Cox v. Shell***, No. 18,844 (Obion County Chancery Ct., Tenn.). Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective polybutylene plumbing systems and yard service lines. In November 1995, the Court approved a settlement involving an initial commitment by Defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants. The settlement claims program will continue past 2010, under the continuing supervision of the trial court.

8.  ***Naef v. Masonite***, No. CV-94-4033 (Mobile County Circuit Ct., Ala.). Lieff Cabraser Heimann & Bernstein served as Class Counsel on behalf of a nationwide Class of an estimated 4 million homeowners with allegedly defective hardboard siding manufactured and sold by Masonite Corporation, a subsidiary of International Paper, on their homes. The Class was certified in November 1995, and the Alabama Supreme Court twice denied extraordinary writs seeking to decertify the Class, including in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996). A month-long jury trial in 1996 established the factual predicate that Masonite hardboard siding was defective under the laws of most states. The case settled on the eve of a second Class-wide trial, and in January 1998, the Court approved a Class Settlement. Under the Settlement, Class members with failing Masonite hardboard siding installed and incorporated in their property between January 1, 1980 and January 15, 1998 can make claims over a multi-year claims program and have their homes evaluated by independent

inspectors.  Class members with qualifying damage to their siding recover damages associated with the siding.  To date, the Settlement has paid out over $650 million to homeowners across the country, and claims continue to be made and paid.

9.  ***In re Louisiana-Pacific Inner-Seal Siding Litigation***, No. C-95-879-JO (D. Or.).  Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide class of homeowners with defective exterior siding on their homes.  Plaintiffs asserted claims for breach of warranty, fraud, negligence, and violation of consumer protection statutes.  On April 26, 1996, U.S. District Judge Robert E. Jones entered an Order, Final Judgment and Decree granting final approval to a nationwide settlement requiring Louisiana-Pacific to provide funding up to $475 million to pay for inspection of homes and repair and replacement of failing siding over the next seven years.

10.  ***In re Intel Pentium Processor Litigation***, No. CV 745729 (Santa Clara Sup. Ct., Cal.).  Lieff Cabraser served as one of two court appointed Co-Lead Class Counsel, and negotiated a settlement, approved by the Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion.  The chip replacement program has been implemented, and is ongoing.

11.  ***Gross v. Mobil***, No. C 95-1237-SI (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide action involving an estimated 2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an aircraft engine oil.  Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief.  Plaintiffs obtained a preliminary injunction requiring Defendant Mobil Corporation to provide notice to all potential class members of the risks associated with past use of Defendants' aircraft engine oil.  In addition, Plaintiffs negotiated a proposed Settlement, granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

12.  ***In re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation***, MDL No. 961.  Lieff Cabraser served as court-appointed Co-Lead Counsel representing a class of 4.7 million plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly defective gas tanks.  The Consolidated Complaint asserted claims under the Lanham Act, the Magnuson-Moss Act, state consumer protection statutes, and common law.  In 1995, the Third Circuit vacated the District Court settlement approval order and remanded the matter to the District Court for further proceedings.  In July 1996, a new nationwide class action was certified for

purposes of an enhanced settlement program valued at a minimum of $600 million, plus funding for independent fuel system safety research projects.  Final approval was granted in November 1996.

13.     ***Hanlon v. Chrysler Corp.***, No. C-95-2010-CAL (N.D. Cal.).  In 1995, the district court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs.  As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches.  The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

G.     **Environmental and Toxic Exposures**

1.     ***In re Unocal Refinery Litigation***, No. C 94-04141 (Cal. Supr. Ct.).  Lieff Cabraser served as one of two Co-Lead Class Counsel and on the Plaintiffs' Steering Committee in this action against Union Oil Company of California ("Unocal") arising from a series of toxic releases from Unocal's San Francisco refinery in Rodeo, California.  The action was settled in 1997 on behalf of approximately 10,000 individuals for $80 million.

2.     ***Kentucky Coal Sludge Litigation.***  On October 11, 2000, near Inez, Kentucky, a coal waste storage facility ruptured, spilling 300 million gallons of coal sludge (a wet mixture produced by the treatment and cleaning of coal) into waterways in the region and contaminating hundreds of properties.  This was one of the worst environmental disasters in the Southeastern United States.  With co-counsel, Lieff Cabraser represented over 400 clients in property damage claims, including claims for diminution in the value of their homes and properties.  In April 2003, the parties reached a confidential settlement agreement on favorable terms to the plaintiffs.

3.     ***Toms River Childhood Cancer Incidents***.  With co-counsel, Lieff Cabraser represented 69 families in Toms River, New Jersey, each with a child having cancer, that claimed the cancers were caused by environmental contamination in the Toms River area.  Commencing in 1998, the parties – the 69 families, Ciba Specialty Chemicals, Union Carbide and United Water Resources, Inc., a water distributor in the area – participated in an unique alternative dispute resolution process, which lead to a fair and efficient consideration of the factual and scientific issues in the matter.  In December 2001, under the supervision of a mediator, a confidential settlement favorable to the families was reached.

4.     ***In re Exxon Valdez Oil Spill Litigation*** (District of Alaska/Alaska Sup. Ct.).  The Exxon Valdez ran aground in March of 1989, spilling 11 million gallons of oil into Prince William Sound.  Lieff Cabraser served as one of

the court-appointed Plaintiffs' Class Counsel. The class consisted of 32,000 fisherman, Alaska natives, landowners and others whose livelihoods were gravely affected by the disaster. In addition, Lieff served on the Class Trial Team in 1994. A class action jury trial was held in federal court in 1994. That jury awarded $5 billion in punitive damages to the plaintiff class. The punitive damages award has been on repeated appeal by the Exxon Corporation ever since. In 2001, the Ninth Circuit Court of Appeals ruled that the original $5 billion punitive damages verdict was excessive. In 2002, U.S. District Court Judge H. Russell Holland reinstated the award at $4 billion. Judge Holland stated that, "Exxon officials knew that carrying huge volumes of crude oil through Prince William sound was a dangerous business, yet they knowingly permitted a relapsed alcoholic to direct the operation of the Exxon Valdez through Prince William Sound." In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines. In January 2004, Judge Holland issued his order finding that Supreme Court authority did not change the Court's earlier analysis. In December 2006, the Ninth Circuit Court of Appeals issued its ruling, setting the punitive damages award at $2.5 billion. The case remains on appeal.

5.  ***West v. G&H Seed Co., Aventis CropSciences USA, LLP, et al.***, No. 99-C-4984-A (La. State Ct). With co-counsel, Lieff Cabraser represented a class of 1,500 Louisiana crawfish farmers. The farmers sued Bayer CropScience LP claiming the pesticide ICON killed their crawfish and caused economic ruin. In 2004, the Court granted approved a $45 million settlement. The settlement was reached after the parties had presented nearly a month's worth of evidence at trial, and were on the verge of making closing arguments to the jury.

6.  ***Craft v. Vanderbilt University***, Civ. No. 3-94-0090 (M.D. Tenn.). Lieff Cabraser served as Lead Counsel of a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron without their consent while receiving prenatal care at defendant Vanderbilt's hospital in the 1940's. The facts surrounding the administration of radioactive iron to the pregnant women and their children *in utero* came to light as a result of Energy Secretary Hazel O'Leary's 1993 disclosures of government sponsored human radiation experimentation during the Cold War. Defendants' attempts to dismiss the claims and decertify the class were unsuccessful. The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.

7.  ***In re GCC Richmond Works Cases***, J.C.C.P. No. 2906. Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in coordinated litigation arising out of the release of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California on

July 26, 1993.  The Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.

8.    ***In re Sacramento River Spill Cases I and II,*** J.C.C.P. Nos. 2617 & 2620 (Cal. Supr. Ct.).  Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel, Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in an action arising out of a July 14, 1991 Southern Pacific train derailment and toxic spill near Dunsmuir, California.  Settlement proceeds of approximately $16 million were distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes:  personal injury, business loss, property damage/diminution, and evacuation.

## H.    Aviation Law

1.    ***In re Air Crash near Athens, Greece on August 14, 2005,*** MDL No. 1773.  On August 14, 2005, a Boeing 737 operating as Helios Airways flight 522 crashed north of Athens, Greece, resulting in the deaths of all passengers and crew.  The aircraft was heading from Larnaca, Cyprus to Athens International Airport when ground controllers lost contact with the pilots, who had radioed in to report problems with the air conditioning system.  Press reports about the official investigation indicate that a single switch for the pressurization system on the plane was not properly set by the pilots, and eventually both were rendered unconscious, along with most of the passengers and cabin crew.  Lieff Cabraser represents the families of several victims, and filed complaints alleging that a series of design defects in the Boeing 737-300 contributed to the pilots' failure to understand the nature of the problems they were facing.  Foremost among those defects was a confusing pressurization warning "horn" which uses the same sound that alerts pilots to improper takeoff and landing configurations.  The Judicial Panel on Multidistrict Litigation recently granted Lieff Cabraser's motion to consolidate all Helios cases before the U.S. District Court for the Northern District of Illinois in Chicago, where the headquarters of The Boeing Company are located and where Lieff Cabraser filed its clients' cases.

2.    ***Crash of West Caribbean Airways Flight 708.***  On August 16, 2005, a McDonnell Douglas MD-82 operated by West Caribbean Airways lost engine power and crashed near La Cucharita, Venezuela, during a flight from Panama City to Fort de France, Martinique.  Martinique is a province of France.  A large number of the victims' families retained French attorneys to represent them.  In light of Lieff Cabraser's work on the Flash Air case (see below), those French attorneys asked Lieff Cabraser to advise them on the substance of U.S.  laws which may be applicable to a claim against The Boeing Company (successor to McDonnell Douglas) or Pratty & Whitney, the manufacturer of the aircraft's engines.  Lieff Cabraser now serves in that advisory capacity.

3.     **_Crash of Manhattan Tourist Helicopter._**  On June 14, 2005 a Bell 206 helicopter operated by Helicopter Flight Services, Inc. fell into the East River shortly after taking off for a tourist flight over New York City.  The pilot and six passengers were immersed upside-down in the water as the helicopter overturned.  Lieff Cabraser represents a passenger on the helicopter.

4.     **_Crash of "Legend" Aircraft in Tucson, AZ._**  On November 19, 2005, a single engine "Turbine Legend" kit plane operated by its owner crashed shortly after takeoff from a private airstrip in Tucson, Arizona, killing both the owner/pilot and a passenger.  Lieff Cabraser represents the widow of the passenger.  Witnesses report that the aircraft left the narrow runway during the takeoff roll and although the pilot managed to get the plane airborne, it rolled to the left and crashed.  Lieff Cabraser is investigating the liability of the pilot and others, including the manufacturer of the kit and the operator of the airport from which the plane took off.  The runway was 16 feet narrower than the minimum width recommended by the Federal Aviation Administration.

5.     **_Crash of Air Algerie Boeing 737._**  Together with French co-counsel, Lieff Cabraser represents the families of several passengers who died in the March 6, 2003 crash of a Boeing 737 airplane operated by Air Algerie.  The aircraft crashed soon after takeoff from the Algerian city of Tamanrasset, after one of the engines failed.  All but one of the 97 passengers were killed, along with six crew members.

6.     **_Crash of Flash Air Boeing 737_**.  On January 3, 2004, all 148 passengers and crew were killed when a Flash Airlines Boeing 737 plunged into the Red Sea off the coast of Egypt, after the pilots encountered a malfunction in the flight control system.  Most of the passengers were from France and were vacationing at the seaside resort of Sharm el Sheikh.  After the families retained French attorneys to represent them, those French attorneys conducted several rounds of interviews of U.S. law firms with the intention of engaging one of those firms to file an action in the United States against Boeing, which manufactured the aircraft in the United States.  Lieff Cabraser was selected to be that firm, and filed complaints in federal court in Los Angeles on behalf of the families of more than 120 victims. Although the U.S. District Court ruled that the case could be more conveniently tried in France, the plaintiffs have contested the jurisdiction of the French court over the case against Boeing.  If the French courts rule against jurisdiction, the case in the United States will be reactivated.  Otherwise, Lieff Cabraser will act as consultants to the French attorneys on technical issues and questions of U.S. law.

7.     **_Tower Collision of U.S. Army Blackhawk Helicopter._**  Lieff Cabraser represents the family of a pilot who died in the November 29, 2004 crash of a U.S. Army Black Hawk Helicopter.  The Black Hawk was flying

during the early morning hours at an altitude of approximately 500 feet
when it hit cables supporting a 1,700 foot-tall television tower, and
subsequently crashed 30 miles south of Waco, Texas, killing both pilots
and five passengers, all in active Army service. The tower warning lights
required by FCC regulations were inoperative, and the aviation and
weather experts retained by Lieff Cabraser will testify that had the lights
been operating as they should have, the helicopter's pilots would have
been warned away from the tower before they hit the cable. LCHB will be
filing an action shortly.

8.    ***Crash of China Eastern Airlines Bombardier CRJ200.*** Lieff Cabraser
represents families of over 30 passengers who died in the November 21,
2004, crash of China Yunnan Airlines Flight 5210. The plane, a
Bombardier CRJ-200 built in Canada with engines from a General Electric
plant in Massachusetts, was headed for Shanghai with 47 passengers and
six crew members when it crashed into a lake, seconds after taking off
from Baotou, Inner Mongolia. The lawsuit filed by Lieff Cabraser in the
Los Angeles Superior Court alleges that the crash was the result of
a combination of pilot error and defects in the aircraft and its engines. The
defendants' attempt to transfer the case to the federal court failed when
Lieff Cabraser's motion to remand was granted by that court. The case is
now pending in the Los Angeles Superior Court.

9.    ***Crash of Macedonian Presidential Aircraft.*** Lieff Cabraser represents
the families of 8 victims of the February 26, 2004 crash of a Beech King
Air 200 in Bosnia-Herzegovina. The crash killed the President of
Macedonia, Boris Trajkovski, and a number of his advisors and cabinet
members.

10.   ***Crash of Mandala Airlines Flight 91.*** On September 5, 2005, a Boeing
737 operating as Mandala Flight 091 crashed immediately after takeoff
form the airport in Medan, Indonesia, killing 101 of the 117 people on
board, as well as 44 people on the ground. Lieff Cabraser represents a
number of injured persons and families of deceased victims.

11.   ***Aeroflot-Russian International Airlines Airbus Disaster.*** Lieff Cabraser
represented the families of passengers who were on Aeroflot-Russian
International Airlines Flight SU593 that crashed in Siberia on March 23,
1994. The plane was in route from Moscow to Hong Kong. All
passengers on board died. According to a transcript of the cockpit voice
recorder, the pilot's two children entered the cockpit during the flight and
took turns flying the plane. The autopilot apparently was inadvertently
turned off during this time, and the pilot was unable to remove his son
from the captain's seat in time to avert the plane's fatal dive. Lieff
Cabraser, alongside French co-counsel, filed suit in France, where Airbus,
the plane's manufacturer, was headquartered. All the families Lieff

Cabraser represented obtained substantial economic recoveries in settlement of the action.

12.    ***United Airlines Boeing 747 Disaster***, MDL No. 807 (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Liaison Counsel on behalf of the passengers and families of passengers injured and killed in the United Airlines Boeing 747 cargo door catastrophe near Honolulu, Hawaii on February 24, 1989. Lieff Cabraser organized the litigation of the case, which included claims brought against United Airlines and The Boeing Company.  Among our work, we developed a statistical system for settling the passengers' and families' damages claims with certain defendants, and coordinated the prosecution of successful individual damages trials for wrongful death against the non-settling defendants.

13.    ***German Air Force Lockheed F-104 Star Fighter Litigation:***  In the late 1960s and extending into the early 1970s, the United States sold F-104 Star Fighter jets to the German Air Force that were manufactured by Lockheed Aircraft Corporation in California.  Although the F-104 Star Fighter was designed for high-altitude fighter combat, it was used in Germany and other European countries for low-level bombing and attack training missions.  Consequently, the aircraft had an extremely high crash rate, with over 300 pilots killed.  Commencing in 1971, the law firm of Belli Ashe Ellison Choulos & Lieff filed hundreds of lawsuits for wrongful death and other claims on behalf of the widows and surviving children of the pilots.  Robert Lieff continued to prosecute the cases after the formation of our firm.  In 1974, the lawsuits were settled with Lockheed on terms favorable to the plaintiffs.  This litigation helped establish the principle that citizens of foreign countries could assert claims in United States courts, and obtain substantial recoveries, against an American manufacturer based upon airplane accidents or crashes occurring outside of the United States.

## I.    <u>International and Human Rights Litigation</u>

1.    ***Holocaust Cases***.  Lieff Cabraser is one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era.  We serve as Settlement Class Counsel in the case against the Swiss banks that the Court approved a U.S. $1.25 billion settlement in July 2000.  Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School.  We were also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks.  In connection therewith, Lieff Cabraser participated in multi-national negotiations that led to

Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution. Our website provides links to the websites of settlement and claims administrators in these cases.

Commenting on the work of Lieff Cabraser and co-counsel in the litigation against private German corporations, entitled *In re Holocaust Era German Industry, Bank & Insurance Litigation* (MDL No. 1337), U.S. District Court Judge William G. Bassler stated on November 13, 2002:

> Up until this litigation, as far as I can tell, perhaps with some minor exceptions, the claims of slave and forced labor fell on deaf ears. You can say what you want to say about class actions and about attorneys, but the fact of the matter is, there was no attention to this very, very large group of people by Germany, or by German industry until these cases were filed. . . . What has been accomplished here with the efforts of the plaintiffs' attorneys and defense counsel is quite incredible. . . I want to thank counsel for the assistance in bringing us to where we are today. Cases don't get settled just by litigants. It can only be settled by competent, patient attorneys.

2.   ***Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.***, No. 01-0892-CRB (N.D. Cal.). In April 2001, Lieff Cabraser filed a class action on behalf of contract workers (known as "Braceros") who came from Mexico to the United States pursuant to bilateral agreements from 1942 through 1949 to aid American farms and industries hurt by employee shortages. The agreements provided that ten percent of the Braceros' wages would be withheld from them and transferred via United States and Mexican banks to savings accounts for each Bracero. Plaintiffs claim they were never reimbursed for the portion of their wages placed in the forced savings accounts. In June 2005, U.S. District Court Judge Charles Breyer denied motions to dismiss filed by Mexico and the Mexican banks charged with illegally withholding the savings funds from the Braceros in an extensive opinion, permitting the case to go forward against the Mexican defendants. The case is pending on appeal in the Ninth Circuit Court.

3.   ***Ali, et al. v. Rumsfeld,*** No. 05-C-1201 (N.D. Ill.) On March 1, 2005, Lieff Cabraser joined the ACLU and Human Rights First in representing seven individuals who claim that they were tortured by American military forces when they were held in U.S. Army detention facilities in Iraq and Afghanistan. Numerous Defense Department reports have found that torture was "widespread." The suit alleges that Defense Secretary Donald

Rumsfeld and high-ranking military commanders were responsible for authorizing torture or failing to stop torture after they learned of it. A former Rear Admiral and former Brigadier General also serve as co-counsel. The consolidated case is pending in the U.S. District Court in Washington, D.C.

## FIRM BIOGRAPHY:

### PARTNERS

**ELIZABETH J. CABRASER**, born Oakland, California, June 23, 1952. Admitted to practice in California,1978; California Supreme Court,1978; U.S. Supreme Court, 1996; U.S. District Court, Northern District of California, 1978; Eastern District of California, 1979; Central District of California and Southern District of California, 1992; U.S. Court of Appeals, Second Circuit, 2000; Third Circuit, 1994; Fifth Circuit, 1992; Sixth Circuit, 1992; Seventh Circuit, 2001; Ninth Circuit, 1979; Tenth Circuit, 1992; Eleventh Circuit, 1992; U.S. Tax Court, 1979; U.S. District Court, District of Hawaii, 1986. *Education*: Boalt Hall School of Law, University of California (J.D., 1978); University of California at Berkeley (A.B., 1975). *Awards and Honors*: "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, Winter 2007; "Top Women Litigators in California," *The San Francisco* and *Los Angeles Daily Journal,* 2007; *Distinguished Leadership Award*, Legal Community Against Violence, 2006; "One Hundred Most Influential Lawyers in America," *The National Law Journal*, 2006, 2000 and 1997; "Top 75 Women Litigators," *California Daily Journal*, 2005-2006; Women of Achievement, Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2006; "Best Lawyer," *Best Lawyers in America*, 2006; "Top 100 Lawyers," *California Daily Journal*, 2005-2002; "Top 30 Securities Litigator," *California Daily Journal*, 2005; "Top 100 and Top 50 Female Northern California Super Lawyer," *Law & Politics*, 2005-2006; "Northern California Super Lawyer," *Law & Politics*, 2004-2007; "Top 50 Women Litigators," *California Daily Journal*, 2004; *Citation Award*, University of California, Berkeley Boalt Hall, 2003; "Top 30 Women Litigators," *California Daily Journal*, 2002; *Distinguished Jurisprudence Award*, Anti-Defamation League, 2002; "Top Ten Women Litigators," *The National Law Journal,* 2001; "California Law Business Top 100 Lawyers," *California Daily Journal*, 2000-1998; *Matthew O. Tobriner Public Service Award*, Legal Aid Society, 2000; *Presidential Award of Merit*, Consumer Attorneys of California, 1998; "Fifty Most Influential Women Lawyers," *The National Law Journal,* 1998; "Lawyers of the Year," *California Lawyer*, 1998; *Public Justice Achievement Award*, Trial Lawyers for Public Justice, 1997. *Publications*: Co-Author with Fabrice N. Vincent, "Class Actions Fairness Act of 2005," *California Litigation,* Vol. 18, No. 3 (2005); Editor in Chief, *California Class Actions Practice and Procedures* (2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law*, updated and re-published in 5 *Newberg on Class Actions* (ABA 2001-2004); Co-Author, "Mass But Not (Necessarily) Class: Emerging Aggregation Alternatives Under the Federal Rules," ABA 8th Annual National Institute on Class Actions, New York (Oct. 15, 2004), New Orleans (Oct. 29, 2004); Co-Author, "2004 ABA Toxicology Monograph-California State Law," (January 2004); "Current Issues Involving Rule 12(b)(6) and Rule 9(b)," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 2004); "New

Developments in Mass Torts and Class Actions: 'Issues' Certification The Mass Torts Top Ten of 2003; Rule 23's New Provision and Action Trial Plans; And the FJC 'New Plain Language' Class Notice," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study, February 2004); "Human Rights Violations as Mass Torts: Compensation as a Proxy for Justice in the United States Civil Litigation System"; Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-02); "Unfinished Business:  Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," 36 *Wake Forest Law Review* 979 (Winter 2001); "Symposium: Enforcing the Social Contract through Representative Litigation," 33 *Connecticut Law Review* 1239 (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," 74 *Tulane Law Review* 2005 (June 2000); "Class Action Trends and Developments After *Amchem* and *Ortiz*," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 1999); Contributor/Editor, *Moore's Federal Practice* (1999); "Life After *Amchem*:  The Class Struggle Continues," 31 *Loyola Law Review* 373 (1998); "Recent Developments in Nationwide Products Liability Litigation:  The Phenomenon of Non-Injury Products Cases, the Impact of *Amchem* and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); Contributor/Editor, *California Causes of Action* (1998); "Beyond Bifurcation:  Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken:  Thoughts on the Fifth Circuit's Decertification of the *Castano* Class," SB24 ALI-ABA 433 (1996); "Getting the Word Out:  Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements," 24 *CTLA Forum* 11 (Jan./Feb. 1994); "Do You Know the Way from San Jose?  The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions & Derivative Suits* (Spring 1994); "An *Oracle* of Change? Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation:  Tailor a Case Management Order to Your Controversy," 21 *The Brief* 12 (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets:  When Fraud Creates the Market, 12 *Class Action Reports* 402 (1989); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets:  When Fraud Creates the Market," 12 *Class Action Reports* 402 (1989); "Mandatory Certification of Settlement Classes," 10 *Class Action Reports* 151 (1987); Co-author with Alexandra L. Foote and Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author with Fabrice N. Vincent, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002). *Member*:  American Law Institute, Council; American Bar Association (Past Co-Chair, Committee on Mass Torts; Committee on Class Actions and Derivative Suits; Tort and Insurance Practice Section (TIPS); Past Vice-Chair, Rules & Procedures Committee, Contributor, Civil Procedure & Evidence News Letter; Business Law Section, Corporate & Litigation Group); Federal Bar Association, Northern District of California Chapter; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors, 1997-1998; Past Member, Judiciary Committee); Advisor, American Law Institute International Jurisdiction and Judgments and Aggregate Litigation Projects; California

Constitution Revision Commission, 1993-1996; National Center for State Courts Mass Tort Conference Planning Committee; Northern District of California Civil Justice Reform Act (CJRA) Advisory Committee, and Advisory Committee on Professional Conduct; Lawyer-Delegate, Ninth Circuit Judicial Conference, 1992-1995; American Bar Association (Litigation Section and Committee on Class Actions and Derivative Suits; Co-Chair, Committee on Mass Torts); Consumer Attorneys of California (CAOC); Trial Lawyers for Public Justice (TLPJ); Bar Association of the Fifth Federal Circuit; Fight for Justice Campaign; (California State Liaison, Women Trial Lawyers Caucus); California Women Lawyers; Lawyers Club of San Francisco; Queen's Bench; Association of Business Trial Lawyers; Bay Area Lawyers for Individual Freedom; ABA National Institute on Class Actions (Organizer/ Participant, 1997-2000).

**RICHARD M. HEIMANN**, born Miami, Florida, August 23, 1948.  Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1975; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 1980; U.S. District Court, District of Hawaii, 1986. *Education*:  Georgetown University (J.D., 1972); *Georgetown Law Journal*, 1971-72; University of Florida (B.S.B.A., with honors, 1969).  *Employment*:  Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, and as an Assistant Public Defender in Philadelphia, Pennsylvania, 1972-74.  As a private civil law attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials.  In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages.  Following the *Edsaco* trial, the parties reached a settlement of the action on favorable monetary terms to the class, which included Edsaco's relinquishment of its right to appeal and the plaintiff's agreement to vacate the jury verdict.  *Member*:  State Bar of California; Bar Association of San Francisco.  *Awards and Honors:* "Northern California Super Lawyers," *Law & Politics*, 2004 - 2007.

**WILLIAM BERNSTEIN**, born York, Pennsylvania, July 5, 1950.  Admitted to practice in California, 1975; U.S. Court of Appeals, Ninth Circuit, 1975; U.S. District Court, Northern District of California, 1975; New York and U.S. Supreme Court, 1985; U.S. District Court, Central and Eastern Districts of California, 1991; U.S. District Court, Southern District of California, 1992.  *Education*:  University of San Francisco (J.D., 1975); *San Francisco Law Review*, 1974-75; University of Pennsylvania (B.A., general honors, 1972).  *Community Service*: Adjunct Professor of Law, University of San Francisco, Settlement Law (2006-Present); Judge Pro Tem for San Francisco Superior Court, 2000-present; Marin Municipal Court, 1984; Discovery Referee for the Marin Superior Court, 1984-89; Arbitrator for the Superior Court of Marin, 1984-1990.  *Publications/Presentations*:  "The Rise and Fall of Enron's One-To-Many Trading Platform" (American Bar Association Antitrust Law Section, Annual Spring Meeting, 2005); Co-author with Donald C. Arbitblit, "Effective Use of Class Action Procedures in California Toxic Tort Litigation", 3 *Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996).  *Member*:  State Bar of California; State Bar of New York; Marin County Bar Association (Admin. of Justice Committee, 1988); Bar Association of San Francisco. *Awards and Honors:* Northern California Super Lawyers, *Law & Politics*, *2004 – 2007*; *Unsung Hero* Award, Appleseed, 2006.

**JOSEPH R. SAVERI**, born San Francisco, California, August 18, 1962.  Admitted to practice in California, 1987; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Southern District of California; U.S. Court of Appeals, First Circuit; U.S. Court of Appeals, Second Circuit; U.S. Court of Appeals, Seventh Circuit; U.S. Court of Appeals, Eighth Circuit; U.S. Court of Appeals, Ninth Circuit; U.S. Supreme Court.  *Education*:  University of Virginia (J.D., 1987); University of California at Berkeley (B.A., 1984).  *Publications and Presentations*: "Dagher: An Admirable Exercise in Restraint," Competition: The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Vol. 15, No. 2 (Fall/Winter 2006); Panelist, *Soaring Prices for Prescription Drugs: Just Rewards for Innovations or Antitrust Violations?*, University of San Francisco Law Review (November 13, 2004); *California Antitrust & Unfair Competition Law 3d* (Antitrust and Unfair Competition Law Section of the State Bar of California 2003); Panelist, Fordham Conference on Electronic Discovery, Discovery Subcommittee of Advisory Committee on the Rules of Civil Procedure; Contributing Author, *Antitrust Class Actions Practice and Procedure (*Elizabeth J. Cabraser editor in chief, 2003); "RICO Update," 22 *Review of Securities and Commodities Regulation*, No. 18 (Oct. 25, 1989).  *Member*:  Faculty Member, Sedona Conference on Antitrust Law and Litigation, 2006; Northern District of California's Civil Rules and Practice Committee; Bar Association of San Francisco; State Bar of California; Italian American Bar Association; Lawyers Club of San Francisco.  *Awards and Honors*: "Northern California Super Lawyers," *Law & Politics*, 2006 & 2007.

**DONALD C. ARBITBLIT**, born Jersey City, New Jersey, May 5, 1951.  Admitted to practice in Vermont, 1979; California and U.S. District Court, Northern District of California, 1986.  *Education*:  Boalt Hall School of Law, University of California (J.D., 1979); Order of the Coif; Tufts University (B.S., *magna cum laude*, 1974).  *Publications*:  Co-Author with Wendy Fleishman, "The Risky Business of Off-Label Use," *Trial* (March 2005); "Comment on *Joiner*: Decision on the *Daubert* Test of Admissibility of Expert Testimony," 6 *Mealey's Emerging Toxic Torts*, No. 18 (December 1997); Co-author with William Bernstein, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," 3 *Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996); "The Plight of American Citizens Injured by Transboundary River Pollution," 8 *Ecology Law Quarterly*, No. 2 (1979).  *Appointments*:  Member of the Federal Court-appointed Science Executive Committee, and Chair of the Epidemiology/Clinical Trials Subcommittee, In re Vioxx Products Liability Litigation, MDL No. 1657 (E.D. La.); Member of the Federal Court-appointed Science and Expert Witness Committees in *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), *In re Baycol Products Litigation,* MDL No. 1431 (D. Minn.) and *Rezulin Products Liability Litigation*, MDL No. 1348 (S.D.N.Y.).  *Member*:  Bar Association of San Francisco; State Bar of California.  *Awards and Honors:* "Northern California Super Lawyers," *Law & Politics*, 2004-07.

**STEVEN E. FINEMAN,** born Los Angeles, California, February 13, 1963.  Managing Partner.  Admitted to practice in California, 1989; U.S. District Court, Northern, Eastern and Central Districts of California and U.S. Court of Appeals, Ninth Circuit, 1995; U.S. Court of Appeals, Fifth Circuit, 1996; New York, U.S. District Court, Eastern and Southern Districts of New York, U.S. Court of Appeals, Second Circuit and U.S. Supreme Court, 1997; District of Columbia, 1997.  *Education*:  University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (English

Literature and Political Science, 1983-84). *Honors/Appointments*: "New York Super Lawyers," *Law & Politics*, 2006; "The New York Area's Best Lawyers," *Best Lawyers in America* (published by *American Lawyer Media*); "40 under 40", *The National Law Journal*, 2002, selected as one of the country's most successful litigators under the age of 40; Editorial Board, "Bill of Particulars, A Review of Developments in New York State Trial Law," New York State Trial Lawyers Institute, Quarterly (June 2005-present); Trial Lawyers for Public Justice, Executive Committee Member (July 2006-present), Board of Directors (July 2002-present); Board of Trustees, Civil Justice Foundation (January 2004-present); Board of Directors, New York State Trial Lawyers Association (July 2001-July 2004); Plaintiff Toxic Tort Advisory Council, Lexis/Nexis, Mealey's Publications and Conferences Group (January 2002-present). *Publications/Presentations*: American Constitution Society for Law and Policy, 2006 National Convention, Panel Member, *Finding the Balance: Federal Preemption of State Law* (June 16, 2006, Washington, D.C.); Lieff, Cabraser, Heimann & Bernstein, LLP, Global Justice Forum, Conference Moderator and Panel Member on securities litigation (May 19, 2006, Paris, France); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, *Foreign Claimants in U.S. Court* (April 25, 2006, Stanford, California); Lieff, Cabraser, Heimann & Bernstein, LLP, Global Justice Forum, Conference Moderator and Speaker and Papers, *The Basics of Federal Multidistrict Litigation: How Disbursed Claims are Centralized in U.S. Practice and Basic Principles of Securities Actions for Institutional Investors* (May 20, 2005, London, England); New York State Trial Lawyers Institute, Federal Practice for State Practioners, Speaker and Paper, *Federal Multidistrict Litigation Practice*, (March 30, 2005, New York, New York), published in "Bill of Particulars, A Review of Developments in New York State Trial Law" (Spring 2005); Stanford University Law School, The Stanford Center on Conflict and Negotiation, Interdisciplinary Seminar on Conflict and Dispute Resolution, Guest Lecturer, *In Search of "Global Settlements": Resolving Class Actions and Mass Torts with Finality* (March 16, 2004, Stanford, California); Lexis/Nexis, Mealey's Publications and Conferences Group, Wall Street Forum: Mass Tort Litigation, Co-Chair of Event (July 15, 2003, New York, New York); Northstar Conferences, The Class Action Litigation Summit, Panel Member on Class Actions in the Securities Industry, and Paper, *Practical Considerations for Investors' Counsel - Getting the Case* (June 27, 2003, Washington, D.C.); The Manhattan Institute, Center for Legal Policy, Forum Commentator on Presentation by John H. Beisner, "Magnet Courts: If You Build Them, Claims Will Come" (April 22, 2003, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's Courses on Complex Litigation ("Selecting The Forum For a Complex Case -- Strategic Choices Between Federal And State Jurisdictions") and Alternative Dispute Resolution ("ADR In Mass Tort Litigation") (March 4, 2003, Stanford, California); American Bar Association, Tort and Insurance Practice Section, Emerging Issues Committee, Member of Focus Group on Emerging Issues in Tort and Insurance Practice (coordinated event with New York University Law School and University of Connecticut Law School, August 27, 2002, New York, New York); Duke University and University of Geneva, *Debates Over Group Litigation in Comparative Perspective*, Panel Member on Mass Torts and Products Liability (July 21-22, 2000, Geneva, Switzerland); *New York Law Journal*, Article, *Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme* (November 23, 1998); Leader Publications, *Litigation Strategist*, "Fen-Phen" Articles, *The Admissibility of Scientific Evidence in Fen-Phen Litigation* and *Daubert Developments: Something for Plaintiffs, Defense Counsel* (June 1998, New York, New York); The Defense Research Institute and Trial Lawyer

Association, Toxic Torts and Environmental Law Seminar, Article and Lecture, *A Plaintiffs' Counsels' Perspective: What's the Next Horizon?* (April 30, 1998, New York, New York); Lexis/Nexis, Mealey's Publications and Conference Group, Mealey's Tobacco Conference: Settlement and Beyond 1998, Article and Lecture, *The Expanding Litigation* (February 21, 1998, Washington, D.C.); New York State Bar Association, Expert Testimony in Federal Court After Daubert and New Federal Rule 26, Article and Lecture, *Breast Implant Litigation: Plaintiffs' Perspective on the Daubert Principles* (May 23, 1997, New York, New York). *Member*: American Bar Association; New York Bar Association; California Bar Association; District of Columbia Bar Association; Public Justice Foundation, Board of Directors (July 2002-present); Executive Committee (July 2006-present); Co-Chair, Class Action Preservation Project ( July 2005-present); Secretaray (July 2007-present); Association of the Bar of the City of New York; Fight for Justice Campaign; New York State Trial Lawyers Association; Trial Lawyers For Public Justice; Association of Trial Lawyers of America; Human Rights First; American Constitution Society for Law and Policy; Supreme Court Historical Society.

**ROBERT J. NELSON**, born New York, New York, October 20, 1960; admitted practice in California, 1987; U.S. District Court, Central District of California, 1987; U.S. District Court, Northern District of California, 1988; U.S. Court of Appeals, Ninth Circuit, 1988; U.S. Court of Appeals, Sixth Circuit, 1995; District of Columbia, 1998; New York, 1999; U.S. District Court, Eastern District of New York, Southern District of New York, 2001. *Education*: N.Y.U. School of Law (J.D., 1987): Order of the Coif, Articles Editor, *New York University Law Review,* Root-Tilden Scholarship Program; Cornell University (A.B., *cum laude* 1982): Member, Phi Beta Kappa, College Scholar Honors Program; London School of Economics (General Course, 1980-81): Graded First. *Employment:* Law Clerk to Judge Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 1987-88; Assistant Federal Public Defender, Northern District of California, 1988-93; Legal Research and Writing Instructor, University of California-Hastings College of the Law, 1989-91 (Part-time position). *Publications:* Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "The Importance of Privilege Logs," *The Practical Litigator*, Vol. II, No. 2 (March 2000)(ALI-ABA Publication); "To Infer or Not to Infer a Discriminatory Purpose: Rethinking Equal Protection Doctrine," 61 *New York University Law Review* 334 (1986). *Member:* State Bar of California; Bar of the District of Columbia; State Bar of New York; Bar Association of San Francisco; Fight for Justice Campaign; American Bar Association. *Awards and Honors:* "Northern California Super Lawyers," *Law & Politics*, 2004 - 2007.

**KELLY M. DERMODY**, born Ithaca, New York, June 16, 1967. Admitted to practice in California, 1994; U.S. District Court, Northern District of California, 1995; U.S. Court of Appeals for the Third Circuit (2001); U.S. Court of Appeals for the Seventh Circuit (2006); U.S. Court of Appeals for the Ninth Circuit (2007); U.S. District Court of Colorado (2007). *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 1993); Moot Court Executive Board (1992-1993); Articles Editor, *Industrial Relations Law Journal/Berkeley Journal of Employment and Labor Law* (1991-1992); Harvard University (A.B. *magna cum laude*, 1990), Senior Class Ames Memorial Public Service Award. *Employment*: Law Clerk to Chief Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, 1993-1994; Adjunct Professor of Law, Golden Gate University School of Law, Employment Law (Spring 2001). *Awards:* "Trial Lawyer of the Year Finalist," Public Justice Foundation, 2007; "Top

Women Litigators in California," *The San Francisco* and *Los Angeles Daily Journal,* 2007; "California Lawyer Attorney of the Year (CLAY) Award," California Lawyer, 2007; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, Winter 2007; Consumer Attorney of the Year Finalist, Consumer Attorneys of California, 2006; *Daily Journal* Magazine: Named as one of California's "Top 20 Lawyers Under 40" (2006); Northern California Super Lawyer, *Law & Politics*, 2004 – 2007; "Top 100 Super Lawyers" and "Top 50 Female Super Lawyers" Awards, *Law & Politics*, 2007; "Trial Lawyer of the Year Finalist," Public Justice Forum, 2007; "Living the Dream Partner," Lawyers Committee for Civil Rights of the San Francisco Bay Area, 2005. *Publications/Presentations*:  "Class Actions: Latest Developments in Litigating and Settling Employment Discrimination Class Actions" (American Bar Association Labor and Employment Section Equal Opportunity Committee, Mid-Year Meeting, 2001); Co-Author with James M. Finberg, "A Road Map to Discovery in Employment Discrimination and Wage/Hour Class Actions" (Glasser Legal Works Seminar, 2000); "Employment Discrimination Class Actions in the Wake of *Allison v. Citgo Petroleum Corp*." (American Bar Association Litigation Section Annual Meeting, 2000); "Employment Discrimination Class Actions in the Wake of *Allison v. Citgo Petroleum Corp*. and Fed. R. Civ. P. 23(f)" (Federal Bar Association Convention, 1999); Co-Author with James M. Finberg, "Discovery in Employment Discrimination Class Actions," in *Litigation and Settlement of Complex Class Actions* (Glasser Legal Works 1998). *Member*:  American Bar Association Labor and Employment Law Section Committee on Equal Opportunity in the Legal Profession (Co-Chair, 2006-present); American Bar Association Labor and Employment Law Section Equal Employment Opportunity Committee (Co-Chair, 2003-present; Midwinter Meeting Planning Committee, 2000-present); ABA Labor and Employment Law Section Katrina Task Force (Member, 2005-present); Bar Association of San Francisco (Board of Directors, 2005-present; Litigation Section, Executive Committee, 2002-2005); Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1998-2005; Secretary, 1999-2003; Co-Chair, 2003-2005); National Center for Lesbian Rights (Board of Directors, 2002-present; Board Co-Chair, 2005-2006); Pride Law Fund (Board of Directors, 1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); Equal Rights Advocates (Litigation Committee, 2000-2002); State Bar of California; Consumer Attorneys of California; National Employment Lawyers' Association; Bay Area Lawyers for Individual Freedom.

   ***JONATHAN D. SELBIN***, born Baton Rouge, Louisiana, May 11, 1967.  Admitted to practice in California, 1994; New York, 2001; District of Columbia, 1999; U.S. Court of Appeals, Fifth Circuit, 1994; U.S. District Court, Northern District of California, 1995; U.S. District Court, Central District of California, 1997; U.S. District Court, Southern District of New York, 2001. *Education*:  Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989). *Employment:*  Law Clerk to Judge Marilyn Hall Patel, U.S. District Court, Northern District of California, 1993-95. *Awards and Honors*: "New York Super Lawyers," *Law & Politics*, 2006. *Publications*:  Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor-in-chief, 2003); "Bashers Beware:  The Continuing Constitutionality of Hate Crimes Statutes After R.A.V.," 72 *Oregon Law Review* 157 (Spring, 1993). *Member*:  State Bar of California; State Bar of New York; Bar of the District of Columbia; American Bar Association; New York State Trial Lawyers Association.

**BARRY R. HIMMELSTEIN**, born Philadelphia, Pennsylvania, March 14, 1958. Admitted to bar, 1992, California; U.S. District Court, Northern District of California, 1992. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1991); Note and Articles Editor, *Hastings Law Journal* (1990-91); University of Michigan at Ann Arbor (B.G.S., with distinction, 1982). *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Employment*: Law Clerk to Judge Charles A. Legge, U.S. District Court, Northern District of California, 1991-92. *Member*: State Bar of California; Bar Association of San Francisco.

**MICHELE C. JACKSON**, born Redwood City, California, January 17, 1954. Admitted to bar, 1979, California; U.S. District Court, Northern District of California, 1979; United States Supreme Court, 1988; U.S. Court of Appeals, Ninth Circuit, 1981; U.S. District Court, Central District of California, 1985; U.S. Court of Appeals, Fifth Circuit, 1989. *Education*: University of San Francisco School of Law (J.D., *cum laude*, 1979); Stanford University (B.A., with honors, 1976). *Employment*: Judicial Extern to Justice Wiley W. Manuel, California Supreme Court, Summer 1977. *Publications*: Panelist, "Settlement and Mediation of Unfair Competition Disputes" (May, 2006) and other panels, State Bar of California Antitrust and Unfair Competition Section; Chapter Co-Author with Marc Seltzer, *"*State Antitrust Law and Intellectual Property" in *California Antitrust & Unfair Competition Law* (Third), Vol. 1: Antitrust*;* Author, American Bar Association, Section Of Antitrust Law Course Materials, *Asserted Defenses to a §17200 Class Action Based on Korea Supply -- The Interplay With Indirect Purchaser Litigation*; Contributing Author, *California Class Actions Practice and Procedure (*2003). *Awards and Honors*: Northern California Super Lawyer, *Law & Politics*, 2007; Recipient of State Bar Board of Governors Award. *Appointments*: Officer, Advisor and Executive Committee Member, State Bar of California Antitrust and Unfair Competition Section (terms beginning September, 2001-Present). *Member*: American Bar Association; State Bar of California; Bar Association of San Francisco; McAuliffe Law Honor Society.

**MICHAEL W. SOBOL**, born Mt. Kisco, New York, October 5, 1961. Admitted to practice in Massachusetts, 1989; California, 1998; United States District Court, District of Massachusetts, 1990; U.S. District Court, Northern District of California, 2001. *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983). *Employment*: Lecturer in Law, Boston University School of Law, 1995-1997. *Member*: State Bar of California; Bar Association of San Francisco.

**FABRICE N. VINCENT**, born Paris, France, June 15, 1966. Admitted to practice in California, 1992; U.S. District Court, Northern District of California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992. *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989). *Publications:* Co-Author with Elizabeth J. Cabraser, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Co-Editor, *California Class Actions Practice and Procedures* (2003-06); Co-Author, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure,"

*Survey of State Class Action Law* (ABA 2000-06), updated and re-published in 5 *Newberg on Class Actions* (2001-06); Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-06); Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000) and author of "Off-Label Drug Promotion Permitted" (Oct. 1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases," (Leader Publications 1999); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader Publications 2000). *Awards & Honors:* Northern California Super Lawyer, *Law & Politics*, 2006 – 2007. *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association; Fight for Justice Campaign; Association of Business Trial Lawyers.

**DAVID S. STELLINGS**, born New Jersey, April 23, 1968. Admitted to practice in New York, 1994; New Jersey; 1994; U.S. District Court, Southern District of New York, 1994. *Education*: New York University School of Law (J.D., 1993); Editor, *Journal of International Law and Politics;* Cornell University (B.A., *cum laude*, 1990). *Member*: State Bar of New York; State Bar of New Jersey; Bar Association of the City of New York; New York State Bar Association; American Bar Association.

**ERIC B. FASTIFF,** born San Francisco, California. Admitted to practice in California, 1996; District of Columbia, 1997; U.S. Court of Appeals for the Ninth Circuit, U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, District of Columbia; U.S. Court of Federal ClaiMs. *Education*: Cornell Law School (J.D., 1995); Editor-in-Chief, *Cornell International Law Journal;* London School of Economics (M.Sc. (Econ.), 1991); Tufts University (B.A., *cum laude, magno cum honore in thesi*, 1990). *Employment*: Law Clerk to Hon. James T. Turner, U.S. Court of Federal Claims, 1995-1996. *Publications*: Co-Editor, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser, Editor-in-Chief, 2003-2006); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2003-06); Author, "US Generic Drug Litigation Update," 1 *Journal of Generic Medicines* 212 (2004); Author, "The Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments: A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems," 28 *Cornell International Law Journal* 469 (1995). *Member*: State Bar of California; District of Columbia Bar Association; Bar Association of San Francisco; Bar of the U.S. Court of Federal Claims; Editorial Board Member, *Journal of Generic Medicines*, 2003-present.

**WENDY FLEISHMAN**, born Philadelphia, Pennsylvania, 1954. Admitted to practice in Pennsylvania, 1977; New York, 1992. *Education*: University of Pennsylvania (Post-Baccalaureate Pre-Med, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974). *Employment*: Skadden, Arps, Slate, Meagher & Flom LLP in New York (Counsel in the Mass Torts and Complex Litigation Department), 1993-2001; Fox, Rothschild O'Brien & Frankel (partner), 1988-93 (tried more than thirty civil, criminal, employment and jury trials, and AAA arbitrations, including toxic tort, medical malpractice and serious injury and wrongful

death cases); Ballard Spahr Andrews & Ingersoll (associate), 1984-88 (tried more than thirty jury trials on behalf of the defense and the plaintiffs in civil personal injury and tort actions as well as employment- and construction-related matters); Assistant District Attorney in Philadelphia, 1977-84 (in charge of and tried major homicide and sex crime cases). *Awards and Honors*: "New York Super Lawyers," *Law & Politics*, 2006. *Publications*: Editor, Brown & Fleishman, "Proving and Defending Damage Claims: A Fifty-State Guide," (2007); Co-Author with Donald C. Arbitblit, "The Risky Business of Off-Label Use," *Trial* (March 2005); Co-Author, "From the Defense Perspective," in *Scientific Evidence*, Chapter 6, (Aspen Law Pub, 1999); American Bar Association, Editor, *Trial Techniques Newsletter*, Tort and Insurance Practices Section, 1995-96; and 1993-94. *Appointments*: Mealey's Drug & Medical Device Litigation Conference, Co-Chair (2007); Executive Committee *In re ReNu MoistureLoc Product Liability Litigation, MDL*; *In re Baycol MDL Litigation* – Co Chair Science Committee; *In re Vioxx MDL Litigation* – Pricing Committee. *Member*: New York State Trial Lawyers Association (Board of Directors, 2004-Present); Association of the Bar of the City of New York (Judiciary Committee, 2004-Present); American Bar Association (2000, Affair Chair, ABA Annual Meeting, Torts & Insurance Practices Section, NYC; 1997, Chair, Trial Techniques Committee, Tort & Insurance Practices; 1996, Chair Elect, Trial Techniques Committee, Tort & Insurance Practices); Pennsylvania Bar Association (Committee on Legal Ethics and Professionalism, 1993-Present; Committee on Attorney Advertising, 1993-Present; Vice-Chair, Task Force on Attorney Advertising, 1991-92); State Bar of New York, Federal Bar Association; Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present; Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-94; New York State Trial Lawyers Association; New York Women's Bar Association; Association of the Bar of the City of New York; New York County Lawyers; Fight for Justice Campaign; NYTLA; PATLA; Philadelphia Bar Association (Member of Committee on Professionalism 1991-92).

**PAULINA DO AMARAL**, born New York, New York, February 1966. Admitted to practice in New York, 1997; California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Southern District of New York, 2004; U.S. District Court, Western District of Michigan, 2004; U.S. District Court, Eastern District of Michigan, 2007. *Education*: University of California Hastings College of Law (J.D., 1996); Executive Editor, *Hastings Constitutional Law Quarterly*; National Moot Court Competition Team, 1995; Moot Court Executive Board; University of Rochester (B.A., 1988). *Employment*: Law Clerk to Chief Judge Richard Alan Enslen, U.S. District Court, Western District of Michigan, 1996-98. *Member*: American Bar Association; State Bar of New York, State Bar of California, Bar Association of San Francisco; American Trial Lawyers Association; Association of the Bar of the City of New York; New York State Trial Lawyers Association.

**HECTOR D. GERIBON**, born Montevideo, Uruguay, November 5, 1966. Admitted to practice in New Jersey and New York, 1997; California, 1999; U.S. District Court, District of New Jersey, 1997; U.S. Court of Appeals for the Ninth Circuit, U.S. District Courts for the Northern and Central Districts of California, 1999; U.S. Court of Appeals, Third Circuit, 2001; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2006. *Education*: Brooklyn Law School (J.D., 1996); Moot Court Honor Society; American Jurisprudence Award for Health Law; Recipient, Edward V. Sparer Public Interest Law Fellowship; St. John's University, (B.S., Dean's List, 1988). *Employment*: Law Clerk to Judge Manuel L. Real, U.S. District Court, Central District of

California, 1997-98; Judicial Extern to Chief Judge Peter C. Dorsey, U.S. District Court, District of Connecticut, 1995. *Member*: State Bar of New York; Bar Association of the City of New York, American Bar Association, Hispanic National Bar Association.

   **KATHRYN E. BARNETT**, born Chapel Hill, North Carolina, October 23, 1967. Admitted to practice in Tennessee, 1992; U.S. District Court, Middle District of Tennessee, 1997; U.S. 6th Circuit, 2000; U.S. District Court, Western District of Tennessee, 2001; U.S. 11th Circuit, 2003; U.S. District Court, Eastern District of Tennessee, 2005. *Education*: Vanderbilt University School of Law (J.D., 1992); American Jurisprudence Awards: Torts I and Jurisprudence; Davidson College (B.A., with Honors in Philosophy, 1989), Dean Rusk Grant for International Studies. *Awards & Honors:* Northern California Super Lawyer, *Law & Politics*, 2006-2007; "Best Lawyers in Tennessee," *Business Tennessee,* (2006-2007); "Best of the Bar," *Nashville Business Journal* (2003, 2005, 2006). *Litigation Experience*: Ms. Barnett has tried over 15 civil and criminal trials, including complex and class action cases, as well as catastrophic personal injury cases. In 2000, Ms. Barnett obtained a verdict of nearly $6 million on behalf of parents whose unborn fetus died tragically due to medical malpractice. In March, 2004 and in August, 2004 Ms. Barnett served as co-lead trial counsel in the class action lawsuit of *In re Tri-State Crematory Litigation*, Multi-District Litigation Docket No. 1467. The case was settled during the second week of trial. The settlements in the Tri-State litigation exceed $40 million. *Employment*: Judicial Intern to Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, Fall 1990; Assistant Public Defender, Davidson County, Tennessee, Sept. 1991-Dec. 1995. *Publications/Presentations*: "Civil Procedure and Evidence Update," Tennessee Trial Lawyers (Oct. and Nov. 2006); "Pre-Trial Skills: Thinking on Your Feet," National Business Institute (Nov. 2006), "Trial Practice Institute," Nashville Bar Association (Sept. 2005); "State Law Class Actions," American Bar Association, Business Law Section (April 2005); "Power Windows Can Kill," *Trial* (April 2005); "Auto Defect Cases," Tennessee Trial Lawyers (Feb. 2005); "Limiting the Harmful Testimony of Experts on the Law," *Trial* (Jan. 2001); "Letting Focus Groups Work for You," *Trial* (April 1999); "Knocking Out Opposing Experts," Tennessee Trial Lawyers (October and November, 2004), Nashville Bar Association (July, 2004); "Trial Practice Tips: Powerful Trial Strategies for the Absolute Litigator," Nashville Bar Association (April, 2004); "Damages," Tennessee Trial Lawyers (Oct. and Nov. 2003); "Trying the Wrongful Death Case in Tennessee," National Business Institute (Aug. 2003); "Advanced Personal Injury," National Business Institute (July 2003); "Mass Torts," Tennessee Bar Association (July 2002); "Superior Depositions Strategies in Civil Trial Practice," National Business Institute (Jan. 2002, Dec. 1999); "Lawsuits Against the Nursing Home Industry," Tennessee Trial Lawyers (Feb. 2000); "How to Prepare for Mediation and other Practice Tips," Nashville Bar Association (Oct. 2000); "Tennessee Expert Witness," Lorman Education Services (July 2000); "Using Focus Groups to Get the Settlement or Verdict Your Client Deserves," Tennessee Trial Lawyers (Feb. 1999). *Member*: Tennessee Trial Lawyers (Secretary, 2007; Board of Governors, 2002-2005; Chair Continuing Legal Education Committee 2004-05); Nashville Bar Foundation (Fellow); Tennessee Justice Center, Inc. (Board of Directors, 2002-05, Secretary-Treasurer, 2003-04); Nashville Lawyer's Association for Women (President, 2004-05; President-elect 2003-04; Director, 2002-03; Treasurer, 2000-02; Board, 1998-present); Davidson County, Tennessee Metropolitan Board of Equalization, 2000-04; Harry Phillips American Inn of Courts (Executive Committee, 2004-05; Member, 2004 - 2008, 1997-99); Nashville Bar Association; Tennessee Bar Association; American Association of Trial Lawyers.

**JOY A. KRUSE**, born Buffalo, New York, February 24, 1955. Admitted to practice in Washington, D.C., 1984; California; U.S. Supreme Court; U.S. Courts of Appeals for the District of Columbia, Ninth, and Federal Circuits; U.S. District Courts for the Northern and Eastern Districts of California, 1989. *Education*: Harvard Law School (J.D., 1984); Wellesley College (B.A., 1977). *Employment*: Assistant Federal Public Defender, Northern District of California, 1992-96; Public Defender Service, Washington D.C., 1984-89. *Member*: Phi Beta Kappa; State Bar of California; Bar Association of San Francisco.

**CARYN BECKER**, born Johannesburg, South Africa, January 10, 1973. Admitted to practice in California, 1998; U.S. District Court, Northern District of California, U.S. District Court, Central District of California; U.S. Court of Appeals, Ninth Circuit, 1999. *Education*: Duke Law School (J.D., with honors, 1998); Technical Editor, *Law and Contemporary Problems*; Articles Editor, *Duke Journal of Gender Law & Policy*; Phi Beta Kappa; University of California at Berkeley (B.A., with high honors, 1995). *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Member*: American Bar Association; State Bar of California; Bar Association of San Francisco.

**STEPHEN H. CASSIDY**, born Pittsburgh, Pennsylvania, May 14, 1964. Admitted to practice in California, 1989; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1997. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1989); Associate Managing Editor, *Hastings International and Comparative Law Review*, 1988-89; Order of the Coif; Member, Thurston Society; Recipient, American Jurisprudence Awards for Real Property, Evidence and American Legal History; Georgetown University (B.S.F.S., 1986). *Employment*: Law Clerk to Magistrate-Judge Joan S. Brennan, U.S. District, Northern District of California, 1989-90; Motions Attorney, U.S. Court of Appeals, Ninth Circuit, 1992-94, 1996-97. *Publications/Presentations*: "Internet Marketing for Plaintiffs' Firms," CAOC Conference (May 2004); "Enhancing the Role of Law Firm Marketing Departments," LexisNexis Law Firm Marketers' Roundtable (November 2003); Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," in *Survey of State Class Action Law* (ABA 2001); "The Newest Member of the Nuclear Club: Pakistan's Drive for a Nuclear Weapon's Capability," 12 *Hastings Int'l & Comp. L. Rev.* 679 (1989). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association (Litigation Section); Trial Lawyers for Public Justice; Fight for Justice Campaign; Consumer Attorneys of California.

**RACHEL GEMAN***, born Northampton, Massachusetts, August 7, 1971. Admitted to practice in New York, 1998; Southern and Eastern Districts of New York, 1999; U.S. District Court, Eastern District of Michigan, 2005; U.S. District Court of Colorado, 2007. *Education*: Columbia University School of Law (J.D. 1997); Stone Scholar; Equal Justice America Fellow; Human Rights Fellow; Editor, *Columbia Journal of Law and Social Problems*; Harvard University (A.B. *cum laude* 1993). *Employment*: Adjunct Professor, New York Law School; Special Advisor, United States Mission to the United Nations, 2000; Law Clerk to Judge Constance Baker Motley, U.S. District Court, Southern District of New York, 1997-98. *Awards and Honors*: *Distinguished Honor Award*, United States Department of State, 2001. *Publications/Presentations*: "The New York Employee Advocate," Co-Editor, 2005-Present (Volumes 12 and forward); "Evidence and Jury Instructions in FLSA Actions," Georgetown Law

Center/ACL-ABA (2007); "Crucial Events in the 'Life' of an FLSA Collective Action: Filing Considerations and the Two-step 'Similarly-Situated' Analysis," National Employment Lawyers Association, Annual Convention (2006) (Author & Panelist); "Time is Money, Except When It's Not: Compensable Time and the FLSA,"  National Employment Lawyers Association, Impact Litigation Conference (2005) (Author & Panelist); "Electronic Discovery," Federal Judicial Center & Institute of Judicial Administration, Workshop on Employment Law for Federal Judges (2005) (Panelist); "Image-Based Discrimination and the BFOQ Defense," *EEO Today* (Vol. 9, Issue 1, Fall 2004) (Author); "Fair Labor Standards Act Overtime Exemptions: Proposed Regulatory Changes," *New York State Bar Association Labor and Employment Newsletter* (Spring 2004) (Author);  "Current Topics in Fair Labor Standards Act Litigation," Conference, Association of the Bar of the City of New York (2003, Chair & Panelist); "Workforce Without Borders," ABA Section of Labor & Employment Law, EEOC 2003 Midwinter Meeting (Moderator).  *Member*: Board Member, National Employment Lawyers' Association/New York; American Bar Association, Sections of Labor and Employment Law, EEO Committee (Plaintiffs' Vice Chair).

**BRUCE W. LEPPLA**, born Oakland, California, September 6, 1949.  Admitted to practice in California, 1976; U.S. District Court, Northern District of California; U.S. District Court, Central District of California, 2007; U.S. Court of Appeals, Ninth Circuit, 1976; New York, 1978.  *Education*:  Boalt Hall School of Law, University of California (J.D., 1975); M.G. Reade Scholarship Prize, Boalt Hall School of Law; University of California, Berkeley (M.A., Economics, with honors, 1974); Yale University (B.A., *magna cum laude*, Highest Honors in Economics, 1971).  *Employment*:  California Bankers Insurance Services Inc. (CEO, President and General Counsel), 1998-2000; Redwood Bank (CEO, President and General Counsel), 1986-98; Lasky, Haas, Cohler & Munter, 1980-82; Brobeck, Phleger & Harrison, 1980; Davis, Polk & Wardwell, 1976-80.  *Teaching Positions*:  Lecturer, California Bankers Association General Counsel Seminars, Lending Documentation, Financial Institutions Litigation and similar topics, 1994-97; Lecturer, University of California at Berkeley, Haas School of Business, Real Estate Law and Finance, 1993-96.  *Publications*: "Stay in the Class or Opt-Out? Institutional Investors Are Increasingly Opting-Out of Securities Class Litigation," Securities Litigation Report, Vol. 3 No. 8, September 2006, West Legalworks; reprinted by permission of the author in Wall Street Lawyer, October 2006, Vol. 10.  No. 10, West Legalworks; "Selected Waiver: Recent Developments in the Ninth Circuit and California", Part 1; Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, May 2005, vol. 1, no.9.  pp. 1, 3 – 7; "Selected Waiver: Recent Developments in the Ninth Circuit and California", Part 2; Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, June 2005, vol. 1, no. 10.  pp. 1, 3 – 9; Author or co-author of 11 different U.S.  and International patents in electronic commerce and commercial product design, including "A Method for Storing and Retrieving Digital Data Transmissions," United States Patent No. 5,659,746, issued August 19, 1997; Author, "Securities Powers for Community Banks," *California Bankers Association Legislative Journal* (Nov. 1987).  *Member*: Wall Street Lawyer, a Thompson West publication (Editorial Board); State Bar of California; State Bar of New York; Yale University Alumni Board of Directors (Director, 2001-present); California Bankers Association (Director, 1996-98); California State Small Business Development Board, 1989-1997; University of California at Berkeley, Boalt Hall Alumni Board of Directors, 1993-96; Leadership Council, San Francisco

Chamber of Commerce, 1990-1992; Community Reinvestment Institute (Founding Director, 1989-1990).

**SCOTT P. NEALEY**, born Champaign, Illinois, July 28, 1966. Admitted to practice in California, 1997; U.S. District Court, Northern District of California, 1998; U.S. District Court, Eastern District of California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Central District of California, 2000. *Education*: Boalt Hall School of Law, University of California (J.D., 1996); University of California at Berkeley (B.A., 1988). *Employment*: Law Clerk to Chief Justice Joseph R. Weisberger, Supreme Court of Rhode Island, 1996-97. *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Member*: Bar Association of San Francisco; State Bar of California.

**ELIZABETH A. ALEXANDER,** born Morristown, Tennessee, October 4, 1971. Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 2001; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Eastern District of Tennessee, 2002. *Education*: Vanderbilt University Law School (J.D., 1998); President, Criminal Law Association; Moot Court Board Member; Vanderbilt University Honor Committee; Hollins College (B.A., 1993). *Honors & Awards*: "Lawdragon 500 New Stars" and "Lawdragon 3000 Leading Plaintiffs' Lawyers in America," *Lawdragon* magazine, 2006. *Publications*: *ABA Survey of State Class Action Law* (2003-2006), Tennessee section; "Consumer Class Actions Against Financial Institutions," Lorman Education Services, July 2004. *Prior Employment*: Associate, Dodson, Parker, Dinkins & Behm (2002-03); Associate, Wyatt, Tarrant & Combs (2000-2002); Law Clerk, Honorable Thomas A. Higgins, U.S. District Court for the Middle District of Tennessee (1998-2000). *Member*: State Bar of Tennessee; Tennessee Bar Association; Nashville Bar Association (Board of Directors, Young Lawyers Division); American Bar Association; Lawyers' Association for Women (2003-2005); American Bar Association Labor and Employment Law Section Equal Employment Opportunity Committee, Co-Chair, Basics Committee (2005-2006); Chair of Internal Marketing and Mentoring Committee (2006-2007); National Employment Lawyers' Association.

**DANIEL E. BARENBAUM,** born Boston, Massachusetts. Admitted to practice in California, 2000; U.S. Court of Appeals for the Ninth Circuit, U.S.; District Court for the Northern District of California; U.S. District Court for the Central District of California; U.S. District Court for the Southern District of California. *Education*: Emory School of Law (J.D., 2000); Goizueta Business School, Emory University (M.B.A., 2000, Award: Most Outstanding Academic Accomplishment); Tufts University (B.A., 1994). *Publications*: "Delineating Covered Class Actions Under SLUSA," Securities Litigation Report, December-January 2005; Contributing Author, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser editor-in-chief, 2003); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study, 1999). *Member*: State Bar of California; Bar Association of San Francisco.

**DANIEL P. CHIPLOCK**, born Albany, New York. Admitted to practice in New York, 2001; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2001. *Education*: Stanford Law School (J.D., 2000); Article Review Board, *Stanford Environmental Law Journal*; Recipient, Keck Award for Public Service;

Columbia University (B.A., *summa cum laude*, 1994); Phi Beta Kappa. *Member*: State Bar of New York; American Association for Justice; Fight for Justice Campaign; Public Justice.

**MARK P. CHALOS**, born New York, New York, September 3, 1973. Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 1998; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Western District of Tennessee, 2002; U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Northern District of Florida, 2006. *Education*: Emory University School of Law (J.D., 1998); Dean's List; Award for Highest Grade, Admiralty Law; Research Editor, *Emory International Law Review*; Phi Delta Phi Legal Fraternity; Vanderbilt University (B.A., 1995). *Publications, Presentations, Appointments*: "The End of Meaningful Punitive Damages," *Nashville Bar Journal*, November 2001; "Is Civility Dead?" *Nashville Bar Journal*, October 2003; "The FCC: The Constitution, Censorship, and a Celebrity Breast," Nashville Bar Journal, April 2005. *Member*: American Bar Association; Fight for Justice Campaign; Tennessee Bar Association; Board of Directors, Tennessee Trial Lawyers Association; Nashville Bar Association; Past-Chair, ABA YLD Criminal & Juvenile Justice Committee; American Bar Association Tort Trial and Insurance Practice Section Professionalism Committee YLD liaison; Board of Directors, Nashville Bar Association YLD; Chair, Nashville Bar Association YLD Continuing Legal Education; *Nashville Bar Journal*, Editorial Board; Member, Harry Phillips American Inn of Court (2002-2004); Grant Review Panelist, Metropolitan Nashville Arts Commission; Founding Member, Young Professionals Program, Frist Center for the Visual Arts; President, Kappa Chapter of Kappa Sigma Fraternity Alumni Association.

**NICHOLAS R. DIAMAND**, born London, England. Admitted to practice in New York, 2003; U.S. District Court, Southern, Eastern, Northern, and Western Districts of New York; US. Court of Appeals, Seventh Circuit. *Education*: Columbia University School of Law (LL.M., Stone Scholar, 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude,* 1992). *Employment*: Solicitor, Herbert Smith, London (1999-2001); Law Clerk to the Honorable Edward R. Korman, Chief Judge, U.S. District Court, Eastern District of New York (2002-03). *Publications/Presentations:* Contributing Author, *California Class Actions Practice and Procedure* (Elizabeth J. Cabraser, Editor-in-Chief), 2006; Panelist, "Obstacles to Access to Justice in Pharmaceutical Cases," *Pharmaceutical Regulation and Product Liability*, British Institute of International and Comparative Law, April 21, 2006; Panelist, "Pre-Trial Discovery in the United States," Union Internationale des Avocats, Winter Seminar, February 2006; Columnist, *The New York Employee Advocate*, NELA/NY, February 2006-present. *Member*: New York City Bar Association, Trial Lawyers for Public Justice, American Society of International Law, Law Society of England and Wales.

**OF COUNSEL**

**ROBERT L. LIEFF**, born Bridgeport, Connecticut, September 29, 1936. Admitted to practice in California, 1966; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1969; U.S. Supreme Court, 1969; U.S. Court of Appeals, Seventh Circuit, 1972; U.S. Tax Court, 1974; U.S. District Court, District of Hawaii, 1986. *Education*: Columbia University (M.B.A., 1962; J.D., 1962); Cornell University; University of Bridgeport (B.A., 1958). Member, Columbia Law School Dean's Council; Member, Columbia Law School

Board of Visitors (1992-present); Member, Columbia Law School Center on Corporate Governance Advisory Board (2004).  *Member*:  Bar Association of San Francisco; State Bar of California (Member: Committee on Rules of Court, 1971-74; Special Committee on Multiple Litigation and Class Actions, 1972-73); American Bar Association (Section on Corporation, Banking and Business Law); Lawyers Club of San Francisco; San Francisco Trial Lawyers Association; California Trial Lawyers Association; Consumer Attorneys of California; Fight for Justice Campaign.  *Awards and Honors*:  "Northern California Super Lawyers," *Law & Politics*, 2005 - 2007.

      *MORRIS A. RATNER*, born San Jose, California, November 13, 1966.  Admitted to practice in California, 1991; District of Columbia, 1999; New York, 2000; U.S. District Court, Northern, Central and Southern Districts of California; and U.S. Court of Appeals, Second, Third, Sixth and Ninth Circuits.  *Education*:  Harvard University (J.D., 1991); Stanford University (B.A., with distinction, 1988); Phi Beta Kappa.  *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "Factors Impacting the Selection and Positioning of Human Rights Class Actions in United States Courts:  A Practical Overview," 58 *New York University Annual Survey of American Law* 623 (2003); "The Settlement of Nazi-Era Litigation Through the Executive and Judicial Branches,"  20 *Berkeley Journal of International Law* 212 (No. 1, March 2002).  *Member*:  State Bar of California; State Bar of New York; Bar of the District of Columbia; Bar Association of San Francisco.

      *WILLIAM B. HIRSCH*, born Los Angeles, California, May 19, 1951.  Admitted to practice in California, 1983; U.S. District Court, Northern District of California; U.S. District Court, District of Hawaii, 1991.  Education: Harvard University ( J.D., 1983); Princeton University (M.A., 1975); University of California at Santa Cruz (B.A., with highest honors, 1973).  Awards and Honors: Trial Lawyer of the Year, Trial Lawyers for Public Justice, 1995.  Publications: "Justice Delayed: Seven Years Later & No End In Sight," in The Exxon Valdez Disaster: Readings on a Modern Social Problem (Kendall & Hunt Pub. Co. 1996).  Member: Bar Association of San Francisco; State Bar of California; Trial Lawyers for Public Justice; The Association of Trial Lawyers of America; ACLU of Northern California (Steering Committee, 1993-94).

## ASSOCIATES

      **REBECCA BEDWELL-COLL**, born Ridgewood, New Jersey, May 27, 1971.  Admitted to practice in California, 1996; U.S. District Court, Northern District of California, 1996; U.S. District Court, Central District of California, 1996.  *Education*: Boalt Hall School of Law, University of California, Berkeley, (J.D., 1996); University of Michigan, Ann Arbor, (B.A. 1993).

      **NANCY CHUNG**, born Los Angeles, February 21, 1972.  Admitted to practice in California, 2003; U.S. District Court of Appeals Ninth Circuit, 2003; U.S. District Court, Northern District, 2003.  Education:  Hasting College of Law (J.D., 2002); University of California, Santa Cruz (B.A., Language Studies, 1995).  Prior Employment:  International Labor Organization, Geneva, Switzerland (2000-2001); Peace Corps Volunteer, Romania (1995-1997).  Member:  Bar Association of San Francisco.  Languages:  French, Romanian and Korean.

**CHRISTOPHER E. COLEMAN**, born Mobile, Alabama, March 30, 1971. Admitted to practice in Georgia, 2005. *Education:* Northwestern University School of Law (J.D., *cum laude*, 2003); Order of the Coif; Associate Editor, *Northwestern University Law Review* (2002-2003); John Paul Stevens Public Interest Fellowship (2002); Northwestern University (M.A., History, 2000); University of Virginia (M.A., English, 1995); Vanderbilt University (B.A., *magna cum laude*, 1993). *Publications & Presentations:* Contributing Author, "California Class Actions Practice and Procedures" (Elizabeth J. Cabraser, Editor-in-Chief, 2006); "Decades-Old Murder Case Needs Review," Op-Ed, *Chicago Sun-Times*, February 2, 2003; Co-Author, "Social Movements and Social Change Litigation: Synergy in the Montgomery Bus Protest," *Law and Social Inquiry* (Fall 2005); "Fingerprints and False Confessions: The William Heirens Case," Conference Presentation, Conference on False Confessions, Center on Wrongful Convictions, Northwestern University, Chicago, Illinois, March 2002. *Prior Employment:* Judicial Clerkship, Honorable Joan Humphrey Lefkow, U.S. District Court, Northern District of Illinois, 2003-2005. Leadership Council for Metropolitan Open Communities (Chicago, Illinois, 2002); Central Alabama Fair Housing Center (Montgomery, Alabama, 1997-1998). *Member*: American Bar Association; Tennessee Bar Association; Tennessee Trial Lawyers Association; Lawyers Association for Women; Nashville Bar Association YLD (Board of Directors); American Constitution Society, Nashville Lawyers' Chapter (Board of Directors).

**NIMISH R. DESAI**, born Coventry, England, June 25, 1980. Admitted to practice in California, 2006; US District Court; Northern District of California, 2007. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2006), Finalist and Best Brief, McBaine Moot Court Competition (2006), Moot Court Best Brief Award (2004); University of Texas, Austin, (B.S. & B.A., High Honors, 2002). *Prior Employment*: Extern, Sierra Club Environmental Law Program, 2004; Researcher, Public Citizen, 2003; Center for Energy and Environmental Resources, 2001-2002. *Publications*: "American Chemistry Council v. Johnson: Community Right to Know, But About What? D.C. Circuit Takes Restrictive View of EPCRA," 33 *Ecology L.Q.* 583 (Winter 2006); "Lessons Learned and Unlearned: A Case Study of Medical Malpractice Award Caps in Texas," *The Subcontinental*, (Winter 2004, Vol. 1, Issue 4, pp. 81-87); "Separation of Fine Particulate Matter Emitted from Gasoline and Diesel Vehicles Using Chemical Mass Balancing Techniques", *Environmental Science Technology*, (2003; 37(17) pp. 3904-3909). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California. *Languages*: Gujarati (conversational).

**ALLISON S. ELGART**, born Manhasset, New York, January 27, 1978. Admitted to practice in California, 2006; New York, 2007. *Education*: Harvard Law School (J.D., 2005), Editor-in-Chief, *Harvard Civil Rights-Civil Liberties Law Review*, Vol. 40; Student Attorney, Harvard Legal Aid Bureau, (2003-2005); Brown University (B.A., *magna cum laude* 2000). *Prior Employment*: Law Clerk to Judge Robert P. Patterson, Jr., U.S. District Court, Southern District of N.Y., 2005-2006; Health Advocacy Fellow, Medicare Rights Center, (2000-2002). *Publications*: "Hamdi v. Rumsfeld: Due Process Requires That Detainees Receive Notice and Opportunity to Contest Basis for Detention," 40 Harv. C.R-C.L. L. Rev. 239 (2005). *Member*: American Bar Association; Bar Association of San Francisco; Consumer Attorneys of California; State Bar of California.

**HEATHER A. FOSTER**, born Washington, D.C., October 2, 1970. Admitted to practice in California in 1996; U.S. District Court, Northern District of California, 1996. *Education*:

University of the Pacific, McGeorge School of Law (J.D., 1996); Moot Court Honors Board, 1995-96; Trial Advocacy Honors 1996; Boston College (B.A., 1992). *Employment*: Adjunct Professor, San Francisco State University – College of Extended Learning, Paralegal and LNC program (Fall 2000 – Spring 2001). *Publications*: Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study, 1999). *Member*: American Association for Justice; American Bar Association (Litigation Section); Association of Legal Administrators; Bar Association of San Francisco; Legal Assistant Management Association; Phi Alpha Delta; State Bar of California (Volunteer Legal Services Program: Liaison for the Summer Associate Public Service Program – Homeless Advocacy Program, 2002; Teachers in the Schools Program, 2002; Pro Bono Attorney – Family Law Clinic, 1999); Trail Lawyers for Public Justice.

**DAVID P. GOLD**, born New York, New York, December 29, 1967. Admitted to practice in New York, 2004. *Education*: Columbia Law School (J.D., 2002), James Kent Scholar, Articles Editor, *Columbia Law Review*; University of Pennsylvania (Ph.D., 2002), William Penn Fellow; Brown University (A.B., *magna cum laude,* 1990). *Employment*: Law Clerk to Honorable Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 2002-03. *Publications*: "Wildlife Protection and Public Welfare Doctrine," 27 *Colum. J. Envtl. L.* 633 (2002); "A Hitherto Unknown Sanskrit Work Concerning Mādhava's Power Series for Sine and Cosine," 42 *Historia Scientiarum* 49 (1991). *Member:* State Bar of New York, Southern District of New York, Eastern District of New York; District of Colorado.

**JENNIFER GROSS**, born Sleepy Hollow, New York, July 1, 1969. Admitted to practice in California, 1994; U.S. District Court, Central District of California, 1994. *Education*: RAND Graduate School (M. Phil., 1997); University of Southern California (J.D., 1994); Emory University (B.A., 1991). *Publications*: Co-Author, *Intelligence, Surveillance, and Reconnaissance Force Mix Study: Final Report* (RAND 2003); Co-Author, *Asbestos Litigation Costs and Compensation: An Interim Report* (RAND 2002); Co-Author, *Asbestos Litigation in the U.S.: A New Look at an Old Issue* (RAND 2001); Co-Author, *Class Action Dilemmas: Pursuing Public Goals for Private Gain* (RAND, 2000); Co-Author*, Potential Vulnerabilities of U.S. Air Force Information Systems* (RAND, 1999); Co-Author, "Preliminary Results of the RAND Study of Class Action Litigation," (RAND, 1997). *Member*: State Bar of California.

**HENRY JOHN GUTIERREZ**, born Biloxi, Mississippi, July 20, 1965. Admitted to practice in California, 2005; U.S. District Court, Northern District of California, 2005; U.S. District Court, Eastern District of California, 2005, and in Mississippi, 2000; U.S. District Court, Southern District of Mississippi, 2000; U.S. District Court, Northern District of Mississippi, 2000; U.S. Fifth Circuit Court of Appeals, 2000; U.S. Ninth Circuit Court of Appeals, 2007. *Education*: Georgetown University Law Center (J.D., 1999); Assistant Articles Editor, *Georgetown Journal of Gender and the Law* (1998-1999); University of California, Berkeley, (M.L.I.S., Library and Information Studies, 1991); Brown University (A.B., American Civilization, 1988). *Employment*: Associate with Phelps Dunbar, LLP (2001-2004); Associate with Page, Mannino, Peresich & McDermott, PLLC (1999-2001). *Member*: State Bar of California; Mississippi Bar (Public Information Committee, 2003-2004); Bay Area Lawyers for Individual Freedom; American Bar Association; Consumer Attorneys of California; American Constitution Society; American Association for Justice.

**DANIEL M. HUTCHINSON**, born Oakland, California, May 25, 1977.  Admitted to practice in California, 2005; U.S. Court of Appeals for the Ninth Circuit, 2005; U.S. District Court, Northern District of California, 2005.  *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2005), Senior Articles Editor, *African-American Law & Policy Report*, Prosser Prizes in Constitutional Law and Employment Law; University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999), Mellon Minority Fellowship (1997-1999).  *Employment*: Judicial Extern to the Hon. Martin J. Jenkins, U.S. District Court, Northern District of California, 2004; Law Clerk, Lewis & Feinberg, P.C., 2003-2004; Teacher, Oakland Unified School District, 1999-2002.  *Member*: State Bar of California; National Bar Association.

**KENT L. KLAUDT,** born Jamestown, North Dakota, September 6, 1968.  Admitted to practice in California, 1996; U.S. District Court, Northern District of California, 1997; U.S. District Court, Eastern District of California, 1998; U.S. District Court, Central District of California, 2007.  *Education*:  University of Minnesota Law School (J.D., 1996); Outside Articles Editor, *Journal of Law & Inequality: A Journal of Theory & Practice*; National Association of Public Interest Law (Summer Fellowship, 1995); University of Minnesota (B.A., 1991).  *Prior Employment:* BlueDog, Olson & Small, PLLP, 1995-96; Cartwright & Alexander, LLP, 1996-2001; The Cartwright Law Firm, Inc., 2001-2004.  *Publications:* "Hungary After the Revolution: Privatization, Economic Ideology, and the False Promise of the Free Market," *13 Law & Inequality: A Journal of Theory & Practice* 301.  *Member*:  American Trial Lawyers Association; Consumer Attorneys of California; Trial Lawyers for Public Justice; San Francisco Trial Lawyers Association; National Lawyers Guild.

**KRISTEN E. LAW**, born Parkersburg, West Virginia, April 3, 1974.  Admitted to practice in California, 2002.  *Education*:  Boalt Hall School of Law, University of California, Berkeley (J.D., 2002); Executive Editor, *Ecology Law Quarterly*; Moot Court Advocacy Award; Moot Court Board; Hopi Appellate Clinic; Ohio Wesleyan University (B.A., *summa cum laude,* 1995); Presidential Scholar.  *Member*:  Phi Beta Kappa; State Bar of California.

**SHARON M. LEE**, born Richmond, B.C., Canada, January 19, 1975.  Admitted to practice in New York 2002; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2003; Washington State, 2005.  *Education*:  St. John's University School of Law, (J.D., 2001); *New York International Law Review*, Notes & Comments Editor, 2000-2001; St.  John's University, (M.A., 1998); St. John's University, (B.A., 1997).  *Employment*: Milberg Weiss & Bershad, LLP, 2003-2007.  *Member*:  American Bar Association; Washington State Bar Association.

**ANNIKA K. MARTIN**, born New York, New York, September 13, 1979.  Admitted to practice in New York, 2005; U.S. District Court, Southern District of New York, 2005.  *Education:* Law Center, University of Southern California (J.D., 2004); Review of Law & Women's Studies; Jessup Moot Court; Medill School of Journalism, Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999).  *Publications*: "Stick a Toothbrush Down Your Throat: An Analysis of the Potential Liability of Pro-Eating Disorder Websites," *Texas Journal of Women & the Law* (Volume 14 Issue 2, Spring 2005); "Welcome to Law School," monthly column on www.vault.com (2001-2004).  *Awards and Honors*: 2005 Wiley W. Manuel Award for Pro Bono Legal Services awarded by the State Bar of California for

voluntary provision of legal services to the poor. *Member*: New York State Bar Association (General Practice Section and Young Lawyers Section); Swedish American Bar Association; American Association for Justice; New York State Trial Lawyers Association; New York County Lawyer's Association. *Languages*: Swedish (fluent); French (DFA1-certified in Business French); Spanish (conversational).

**SHARMILA L. MURTHY**, Smithtown, New York, February 4, 1977. Admitted to practice in New York, 2003; Tennessee, 2004; U.S. District Court, Middle District of Tennessee, 2004; U.S. Court of Appeals for the Sixth Circuit (2004). *Education*: Harvard Law School, (J.D., *cum luade* 2003); Harvard Legal Aid Bureau, (2001-2003); South Asian Law Students Association, (2000-2003); International Law Journal, (2000); Reginald Lewis Summer Fellowship, (2001); Kennedy School of Government, Harvard University, (M.P.A., 2003); Cornell University, (B.S. *with honors* 1997). *Awards*: Tennessee Alliance for Legal Services New Advocate of the Year, 2006; Nashville Bar Journal Article of the Year, 2006; Skadden Fellowship, 2004; Betty Allebach Award for Public Service at Harvard Legal Aid Bureau, 2003; Kennedy Scholarship at JFK School of Government, 1999; U.S. Fulbright Award, 1998-1999. *Publications*: "Lost in Translation?" Interpreters in the Courts," *The Nashville Bar Journal* (2006 ); "SEWA's Rural Savings and Credit Program in Gujarat, India," *Kennedy School Review: Student Perspectives 2000*. *Employment*: Law clerk to Judge Martha Craig Daughtrey, U.S. Court of Appeals for the Sixth Circuit, 2003-2004. Skadden Fellow and Staff Attorney at Legal Aid Society of Middle Tennessee and the Cumberlands, 2004 – 2007. *Member*: Nashville Bar Association; Tennessee Bar Association; Lawyers Association for Women; Inn of Court; American Constitution Society; Tennessee Immigrants and Refugee Rights Coalition; Harvard Legal Aid Bureau Alumni Advisory Board.

**JAHAN C. SAGAFI**, born Philadelphia, Pennsylvania, December 26, 1971. Admitted to practice in California, 2003. *Education*: Harvard Law School (J.D., 2001); Senior Editor, *Harvard Civil Rights-Civil Liberties Law Review*, (1999-2001); President, Board of Student Advisers; Harvard College (B.A., *magna cum laude*, 1994). *Employment*: Law Clerk to Judge William W. Schwarzer, U.S. District Court, Northern District of California, 2001-02. *Member*: State Bar of California (Litigation Section Executive Committee); National Employment Lawyers' Association; Association of Trial Lawyers of America; Consumer Attorneys of California; American Bar Association; Bar Association of San Francisco; Fight for Justice Campaign.

**DANIEL E. SELTZ**, born Alexandria, Virginia, April 24, 1974. Admitted to practice in New York, 2004; U.S. District Court, Southern District of New York; Eastern District of New York. *Education*: New York University School of Law (J.D., 2003); *Review of Law and Social Change*, Managing Editor; Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, Phi Beta Kappa, 1997). *Employment*: Law Clerk to Honorable John T. Nixon, U.S. District Court, Middle District of Tennessee, 2003-04. *Publications*: "Remembering the War and the Atomic Bombs: New Museums, New Approaches," in *Memory and the Impact of Political Transformation in Public Space* (Duke University Press, 2004), originally published in *Radical History Review*, Vol. 75 (1998); "Issue Advocacy in the 1998 Congressional Elections," with Jonathan S. Krasno (Urban Institute, 2001); *Buying Time: Television Advertising in the 1998 Congressional Elections*, with Jonathan S. Krasno (Brennan Center for Justice, 2000); "Going Negative," in *Playing Hardball*, with Kenneth Goldstein, Jonathan S.

Krasno and Lee Bradford (Prentice-Hall, 2000).  *Member*:  American Association for Justice; State Bar of New York.

    ***JENNA M. WHITMAN***, born Palo Alto, California, December 29, 1972.  Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. Court of Appeals, 9th Circuit, 2001.  *Education*:  Georgetown University Law Center (J.D., 2001); *Journal of Gender and the Law*, Symposium Committee; Yale College (B.A., 1995). *Employment*: Law Clerk to U.S.  Attorney's Office, Economic Crimes Unit (2000-2001); Howard, Rice, Nemerovski, Canady, Falk & Rabin, P.C. (2001-2004).  *Member*: American Bar Association; Bar Association of San Francisco; California Bar Association; Bay Area Lawyers for Individual Freedom; Board Member, AIDS Legal Referral Panel.

    **BARBRA L. WILLIAMS,** born Bellflower, California, July 10, 1974.  Admitted to practice in California, 2007; U.S. District Court, Northern District of California, 2007. *Education:* University of California, Hastings College of the Law, (J.D., 2006); Notes Editor, *Hastings Race & Poverty Law Journal;* UC Hastings Civil Justice Clinic, Individual Wage & Hour Representation; UC Hastings Admissions Policy Committee; Teaching Assistant, Legal Writing & Research; National Black Law Students Association (Sub-Regional Director); Hastings Black Law Students Association (Co-President); University of California, Irvine (B.A., 1997).  *Member:* State Bar of California; American Bar Association (Labor & Employment Section); National Bar Association; California Association of Black Lawyers; Bar Association of San Francisco; Charles Houston Bar Association.

    ***HEATHER H. WONG***, born San Diego, California, July 5, 1978.  Admitted to practice in California, 2005; U.S. Court of Appeals, Ninth Circuit, 2005; U.S. District Court, Central District of California, 2005;  U.S. District Court, Northern District of California, 2006; U.S. District Court, District of Colorado, 2006.  *Education:*  University of San Francisco (J.D. & M.B.A., 2005); Beta Gamma Sigma Honor Society (2005); Technical Editor, *Maritime Law Journal*; University of California, Berkeley (B.A., 2000).  *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association;  Consumer Attorneys of California; Association of Business Trial Lawyers.

    <u>Notice on the Firm's AV Rating</u>:  AV is a registered certification mark of Reed Elsevier Properties, Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.  Martindale-Hubbell is the facilitator of a peer review process that rates lawyers.  Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories – legal ability and general ethical standards.