# EXHIBIT  F-1



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/11/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

WAYNE WELMON, Individually and on Behalf
of all others similarly situated,

                    Plaintiff,

      vs.

CHICAGO BRIDGE & IRON CO. N.V.,
GERALD M. GLENN, ROBERT B. JORDAN,
and RICHARD E. GOODRICH,

                Defendants.

Case No. 06-CV-01283 (JES)

CLASS ACTION

---

RICHARD J. O'BRIEN, Individually and on
Behalf of all others similarly situated,

                    Plaintiff,

      vs.

CHICAGO BRIDGE & IRON CO. N.V.,
GERALD M. GLENN, ROBERT B. JORDAN,
and RICHARD E. GOODRICH,

                Defendants.

Case No. 06-CV-01532 (JES)

CLASS ACTION

-------------------------------------------------------------x

**(Additional Captions Set Forth Below)**

**[PROPOSED] ORDER CONSOLIDATING ACTIONS, APPOINTING LEAD
PLAINTIFF AND APPROVING LEAD PLAINTIFF'S SELECTION
OF LEAD COUNSEL**

|  |  |  |
|---|---|---|
| MARC SABELLA, Individually and on Behalf of all others similarly situated, | : | Case No. 06-CV-01542 (JES) |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CHICAGO BRIDGE & IRON CO. N.V., GERALD M. GLENN, ROBERT B. JORDAN, and RICHARD E. GOODRICH, | : | |
| | : | |
| Defendants. | : | |

|  |  |  |
|---|---|---|
| DONALD CHJERT, On Behalf of himself and all others similarly situated, | : | Case No. 06-CV-01677 (JES) |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| CHICAGO BRIDGE & IRON CO. N.V., GERALD M. GLENN, ROBERT B. JORDAN, and RICHARD E. GOODRICH, | : | |
| | : | |
| Defendants. | : | |

|  |  |  |
|---|---|---|
| ROBERT FRIEDMAN, Individually and on Behalf of all others similarly situated, | : | Case No. 06-CV-01835 (JES) |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| vs. | : | |
| CHICAGO BRIDGE & IRON CO. N.V., GERALD M. GLENN, ROBERT B. JORDAN, and RICHARD E. GOODRICH, | : | |
| | : | |
| Defendants. | : | |

HAROON I. RASHEED, Individually and on
Behalf of all others similarly situated,

                Plaintiff,

    vs.

CHICAGO BRIDGE & IRON CO. N.V.,
GERALD M. GLENN, ROBERT B. JORDAN,
and RICHARD E. GOODRICH,

                Defendants.

Case No. 06-CV-01879 (JES)

CLASS ACTION

---

CHARLES K. DETENBER, Individually and on
Behalf of all others similarly situated,

                Plaintiff,

    vs.

CHICAGO BRIDGE & IRON CO. N.V.,
GERALD M. GLENN, ROBERT B. JORDAN,
and RICHARD E. GOODRICH,

                Defendants.

Case No. 06-CV-01957 (JES)

CLASS ACTION

---

TIM TADDEI, Individually and on Behalf of all
others similarly situated,

                Plaintiff,

    vs.

CHICAGO BRIDGE & IRON CO. N.V.,
GERALD M. GLENN, ROBERT B. JORDAN,
and RICHARD E. GOODRICH,

                Defendants.

Case No. 06-CV-01959 (JES)

CLASS ACTION

|  |  |
|---|---|
| STEVEN STEIN, Individually and on Behalf of all others similarly situated, | Case No. 06-CV-01976 (JES) |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | |
| CHICAGO BRIDGE & IRON CO. N.V., GERALD M. GLENN, ROBERT B. JORDAN, and RICHARD E. GOODRICH, | |
| Defendants. | |

|  |  |
|---|---|
| JEFFREY GOLDSTEIN, Individually and on Behalf of all others similarly situated, | Case No. 06-CV-02563 (UA) |
| Plaintiff, | CLASS ACTION |
| vs. | |
| CHICAGO BRIDGE & IRON CO. N.V., GERALD M. GLENN, ROBERT B. JORDAN, and RICHARD E. GOODRICH, | |
| Defendants. | |

|  |  |
|---|---|
| ROBERT WEIS, Individually and on Behalf of all others similarly situated, | Case No. 06-CV-02671 (UA) |
| Plaintiff, | CLASS ACTION |
| vs. | |
| CHICAGO BRIDGE & IRON CO. N.V., GERALD M. GLENN, ROBERT B. JORDAN, and RICHARD E. GOODRICH, | |
| Defendants. | |

Upon consideration of the motions and supporting papers filed by the various movants for lead plaintiff in the above-captioned action and for good cause shown,

IT IS HEREBY ORDERED THAT:

1.    The Motion of Metzler Investment GmbH and Fortis Investment Management N.V./S.A. is **GRANTED**;

2.    The above-captioned actions are **CONSOLIDATED** pursuant to Fed. R. Civ. P. 42(a);

3.    Class members Metzler Investment GmbH and Fortis Investment Management N.V./S.A. are hereby **APPOINTED** to serve as Lead Plaintiff in the consolidated action, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995.

4.    The law firm of Milberg Weiss Bershad & Schulman LLP is hereby **APPOINTED** to serve as Lead Counsel for the Class, pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995, in the above-captioned action.

SO ORDERED.

DATED: _____, 2006               _____
                                                                    UNITED STATES DISTRICT JUDGE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE ABLE LABORATORIES SECURITIES LITIGATION | :<br>:<br>:<br>:<br>:<br>: | Civil Action No. 05-2681 (JAG)<br><br>**ORDER** |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motions of the Denver Employees Retirement Plan ("DERP") (Docket Entry No. 14) , Deka International (Ireland) Limited ("Deka") (Docket Entry No. 13), Richard Upham ("Upham") (Docket Entry No. 17), Floyd Webster, Kent Webster, Keith Webster and Helen Darrah (the "Webster Family") (Docket Entry No. 7), the Communications Workers of America Plan for Employees' Pensions and Death Benefits ("CWA") with Daniel Levy (Docket Entry No. 11), Genesee County Employees Retirement System with Julian M. Warren ("Genesee and Warren") (Docket Entry No. 6), Edward Howlette (Docket Entry No. 12), and Charles M. Gillis (Docket Entry No. 16) for appointment as lead plaintiff and appointment of their respective attorney as lead counsel. Following the filing of the individual motions seeking appointment as lead plaintiff, Deka and DERP proposed combining to form the Institutional Investor Group ("IIG"), and the court having reviewed the submissions of the parties, as well a the oral arguments presented on January 23, 2006; and for the reasons set forth in the Court's opinion,

IT IS on this  17th  day of March, 2006,

ORDERED that the motions of Deka and DERP are GRANTED, and Deka and DERP

shall combine to form the Institutional Investor Group; and

IT IS FURTHER ORDERED that the Institutional Investor Group is appointed as the lead plaintiff; and

IT IS FURTHER ORDERED that Grant & Eisenhofer P.A. and Murray, Frank and Sailer LLP are appointed as co-lead counsel; and

IT IS FURTHER ORDERED that the motion of the Webster Family is withdrawn; and

IT IS FURTHER ORDERED that all other motions for appointment as lead plaintiff are DENIED; and

IT IS FURTHER ORDERED that a copy of this Order be served on all parties within seven (7) days of the date of this Order.

S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF NORTH CAROLINA
#### Master File Civil Action No. 1:06CV00201

| | |
|---|---|
| MIRCO INVESTORS, LLC, on behalf of itself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>INSPIRE PHARMACEUTICALS, INC. CHRISTY L. SHAFFER, and THOMAS R. STAAB, II, )<br><br>Defendants. ) | Civil Action No. 1:05CV00118 |
| RICHARD & SUSAN GIORGINO, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>INSPIRE PHARMACEUTICALS, INC. CHRISTY L. SHAFFER, and THOMAS R. STAAB, II, )<br><br>Defendants. ) | Civil Action No. 1:05CV00120 |

[Captions continued on next page]

### ORDER CONSOLIDATING ACTIONS, APPOINTING LEAD PLAINTIFFS AND APPROVING LEAD PLAINTIFFS' SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

| | |
|---|---|
| KIAH SAI TAN, on behalf of himself and all others similarly situated,<br><br>                        Plaintiff,<br><br>        v.<br><br>INSPIRE PHARMACEUTICALS, INC. CHRISTY L. SHAFFER, and THOMAS R. STAAB, II,<br><br>                        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:05CV00195 |
| RONALD P. HORLICK, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>        v.<br><br>INSPIRE PHARMACEUTICALS, INC. CHRISTY L. SHAFFER, and THOMAS R. STAAB, II,<br><br>                        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:05CV00227 |
| RANDALL SIMON and ROBERT KEMP, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiff,<br><br>        v.<br><br>INSPIRE PHARMACEUTICALS, INC. CHRISTY L. SHAFFER, and THOMAS R. STAAB, II,<br><br>                        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:05CV00248 |

Having considered the motion of David and Stephanie Cozzarelli, Robert and Carole Swoboda and the FRANKFURT-TRUST Investment-Gesellschaft mbH (collectively, the "Inspire Investors Group") to consolidate actions, to be appointed Lead Plaintiffs and for approval of Lead Plaintiffs' selection of Lead Counsel and Liaison Counsel, and after a hearing before this Court on January 25, 2006,

**IT IS HEREBY ORDERED THAT:**

I.    **Order of Consolidation**

1.    The Inspire Investors Group's motion is granted.

2.    The above-captioned actions (the "Actions") and any other cases filed against any of the Defendants arising out of the same nucleus of operative facts as those alleged in these Actions are hereby consolidated into one action (the "Consolidated Action") for all purposes, pursuant to Federal Rules of Civil Procedure 42. This Order (the "Order") shall apply to the Consolidated Action and to each case that relates to the same subject matter that is subsequently filed in this Court or is transferred to this Court and is consolidated with the Consolidated Action.

3.    A Master File is established for this proceeding. The Master File shall be Civil Action No. 1:06CV00201. The Clerk shall file all pleadings in the Master File and note such filings on the Master Docket.

4.    An original of this Order shall be filed by the Clerk in the Master File.

5.    The Clerk shall mail a copy of this Order to counsel of record in the Consolidated Action.

-3-

6.    Every pleading in the Consolidated Action shall have the following caption:

IN RE INSPIRE PHARMACEUTICALS,          )
INC. SECURITIES LITIGATION              )          Civil Action No. 1:06CV00201
                                        )

7.    When a pleading is intended to be applicable to all actions to which this order is applicable, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above.  When a pleading is intended to be applicable only to some, but not all, of such actions, the Court's docket number for each individual action to which the paper is intended to be applicable and the last name of the plaintiff in said action shall appear after the words "This Document Relates To:" in the caption set out above.

8.    The Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated as part of the Consolidated Action.

9.    When a case that arises out of the same subject matter of the Consolidated Action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall:

    a.    File a copy of this Order in the separate file for such action;

    b.    Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly-filed or transferred case and to any new defendant(s) in the newly-filed case; and

    c.    Make the appropriate entry in the Master Docket for the Consolidated Action.

10.    Each new case that arises out of the subject matter of the Consolidated Action, which is filed in this Court or transferred to this Court, shall be consolidated with the Consolidated Action and this Order shall apply thereto, unless a party objects to consolidation,

-4-

as provided for herein, or any provision of this Order, within ten (10) days after the date upon

which a copy of this Order is served on counsel for such party, by filing an application for relief

and this Court deems it appropriate to grant such application. Nothing in the forgoing shall be

construed as a waiver of Defendants' right to object to consolidation of any subsequently-filed or

transferred related action.

      11.    This Order is entered without prejudice to the rights of any party to apply for

severance of any claim or action, for good cause shown.

      12.    This Order is entered without prejudice to the rights of any party to challenge

personal jurisdiction or venue.

      13.    Defendants are not required to respond to the complaint in any action

consolidated into this action, other than the Consolidated Action or a complaint designated as the

operative complaint.

## II.    Appointment of Lead Plaintiffs and Lead Counsel

      14.    Class members David and Stephanie Cozzarelli, Robert and Carole Swoboda, and

FRANKFURT-TRUST Investment-Gesellschaft mbH (collectively, the "Inspire Investors

Group") are appointed to serve as Lead Plaintiffs in the above-captioned Consolidated Action

pursuant to 15 U.S.C. §78u-4(a)(3)(B).

      15.    Robin Winchester of the law firm of Schiffrin & Barroway, LLP and Christopher

S. Polaszek of the law firm of Milberg Weiss Bershad & Schulman LLP are hereby approved as

Co-Lead Counsel for the Class. Co-Lead Counsel shall have the authority to speak for all

Plaintiffs and class members in all matters regarding the litigation including, but not limited to,

pre-trial proceedings, motion practice, trial and settlement, and shall make all work assignments

in such a manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort. Additionally, Lead Counsel shall have the following responsibilities:

      a.     to brief and argue motions;

      b.     to initiate and conduct discovery, including, without limitation, coordination of discovery with Defendants' counsel, the preparation of written interrogatories, requests for admissions, and requests for production of documents;

      c.     to direct and coordinate the examination of witnesses in depositions;

      d.     to act as spokesperson at pretrial conferences;

      e.     to call and chair meetings of Plaintiffs' counsel as appropriate or necessary from time to time;

      f.     to initiate and conduct any settlement negotiations with counsel for Defendants;

      g.     to provide general coordination of the activities of Plaintiffs' counsel and to delegate work responsibilities to selected counsel as may be required in such a manner as to lead to the orderly and efficient prosecution of this litigation and to avoid duplication or unproductive effort;

      h.     to consult with and employ experts;

      i.     to receive and review periodic time reports of all attorneys on behalf of Plaintiffs, to determine if the time is being spent appropriately and for the benefit of Plaintiffs, and to determine and distribute Plaintiffs' attorneys' fees; and

      j.    to perform such other duties as may be expressly authorized by further order of this Court.

    16.    No pleadings or other papers shall be filed or discovery propounded, conducted or otherwise undertaken by any Plaintiff except as directed or undertaken by Lead Counsel.

    17.    J. Anthony Penry of the law firm of Taylor Penry Rash & Riemann, PLLC is hereby approved as Liaison Counsel for the Class.

**IT IS SO ORDERED.**

DATED:   March 1, 2006                 *Russell A. Eliason*
                                           Honorable Russell A. Eliason, U.S.M.J.

cc:  All counsel of record

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

---

RAYMOND KADAGIAN, On Behalf of
Himself and All others Similarly Situated,

        Plaintiff,

        v.                           Case No. 05-C-0547

HARLEY-DAVIDSON, INC.,
JEFFREY L. BLEUSTEIN,
JAMES L. ZIEMER,

        Defendants.

---

ALBERT VILLAR,
Individually and On Behalf of
All Others Similarly Situated,

        Plaintiff,

        v.                           Case No. 05-C-0554

HARLEY-DAVIDSON, INC.,
JEFFREY BLEUSTEIN,
JAMES ZIEMER,
JAMES BROSTOWITZ,

        Defendants.

---

## ORDER CONSOLIDATING THE RELATED ACTIONS, APPOINTING LEAD PLAINTIFF AND LEAD PLAINTIFF'S SELECTION OF LEAD AND LIAISON COUNSEL

[Caption continued on following pages]

FRANKLIN HIMES,

        Plaintiff,

       v.                           Case No. 05-C-0579(LA)

HARLEY-DAVIDSON INC.,
JEFFREY L. BLEUSTEIN,
JAMES M. BROSTOWITZ,
R. JON FLICKINGER,
JOHN A. HEVEY,
RONALD M. HUTCHINSON,
GAIL A. LIONE,
JAMES A. MCCASLIN,
KENNETH SUTTON, JR.,
DONNA F. ZARCONE,
JAMES L. ZIEMER,

        Defendants.

PHILIP KATZ, Individually and On Behalf
of All Others Similarly Situated,

        Plaintiff,

       v.                           Case No. 05-C-0609

HARLEY-DAVIDSON, INC.,
JEFFREY BLEUSTEIN,
JAMES ZIEMER,
JAMES M. BROSTOWITZ,

        Defendants.

JAMES A. ZIOLKOWSKI, On Behalf of
Himself and All Others Similarly Situated,

        Plaintiff,

       v.                           Case No. 05-C-0629

2

HARLEY-DAVIDSON, INC.,
JEFFREY L. BLEUSTEIN,
JAMES M. BROSTOWITZ,
KARL M. EBERLE,
JON R. FLICKINGER,
JOHN A. HEVEY,
RONALD M. HUTCHINSON,
GAIL A. LIONE,
JAMES A MCCASLIN,
W. KENNETH SUTTON, JR.,
DONNA F. ZARCONE,
JAMES L. ZIEMER,

               Defendants.

---

CHARLES R. BOURRET,
On Behalf of Himself and
All Others Similarly Situated,

               Plaintiff,

        v.                              Case No. 05-C-0696

HARLEY-DAVIDSON, INC.,
JEFFREY L. BLEUSTEIN,
JAMES M. BROSTOWITZ,
R. JON FLICKINGER,
JOHN A. HEVEY,
RONALD M. HUTCHINSON,
GAIL A. LIONE,
JAMES A. McCASLIN,
W. KENNETH SUTTON, JR.,
DONNA F. ZARCONE,
JAMES L. ZIEMER,

               Defendants.

---

    Having considered the Plaintiffs' Joint Stipulation to Consolidate the Actions, Appoint Lead Plaintiff, and to Approve Lead Plaintiff's Selection of Co-Lead Counsel, and good cause appearing therefore, IT IS HEREBY ORDERED that:

1.    The stipulation is approved in part.

2.    Construction Laborers Pension Trust of Greater St. Louis, the Iron Workers Local No. 25 Pension Fund, the City of Sterling Heights Police & Fire Retirement System, and Deka International S.A. Luxembourg are hereby appointed Lead Plaintiffs for the Class, pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. §78u-4(a)(3)(B).

3.    Lerach Coughlin Stoia Geller Rudman & Robbins LLP and Murray, Frank & Sailer LLP are approved as Co-Lead Counsel for the Class, pursuant to §21D(a)(3)(B)(v) of the Exchange Act, 15 U.S.C. §78u-4(a)(3)(B)(v), and Hale & Wagner, S.C. is approved as Liaison Counsel.

4.    Each of the above-entitled cases is found to be related and is consolidated for all purposes (the Consolidated Action) pursuant to Fed. R. Civ. P. 42(a).  This order applies to the above-entitled cases and to each case related to the claims at issue in this Consolidated Action that is pending in this district, transferred to this district or consolidated with the above-entitled cases on or after this date, in accordance with this order.

5.    Every pleading filed in this action shall have the following caption:

| | | |
|---|---|---|
| IN RE HARLEY-DAVIDSON, INC. SECURITIES LITIGATION | ) ) ) ) | Case No. 05-C-00547-CNC |

6.    When a pleading is intended to apply to all actions governed by this order, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above.  When a pleading is intended to apply only to some, but not all of the Consolidated Actions, this court's docket number for each individual action

4

to which the paper is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption described above (e.g., "No. 2:04-C-00547," (Kadagian)).

Dated at Milwaukee, Wisconsin, this 14th day of February, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge

**MEMO ENDORSED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re GENERAL MOTORS CORP. SECURITIES LITIGATION | Master File No. 05-CV-8088 (RMB) THIS DOCUMENT RELATES TO: ALL ACTIONS |

~~[PROPOSED]~~ ORDER APPOINTING LEAD PLAINTIFF AND APPROVING
LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL *

*RMB*

Upon consideration of the motions and supporting papers *and further briefs* for appointment of Lead

Plaintiff and approval of Lead Plaintiff's selection of Lead Counsel in the above-captioned

action and for good cause shown,

**IT IS HEREBY ORDERED THAT:**

1. The Motion of Deka Investment GmbH and Deka International S.A., Luxembourg

("Deka") is **GRANTED**;

2. Deka is hereby **APPOINTED** serve as Lead Plaintiff.

3. The law firm of Murray, Frank & Sailer LLP is hereby **APPOINTED** to serve as

Lead Counsel.

**SO ORDERED**

DATED: **2/6** , 2006
**2:20 P.M.**

*RMB*
_____
United States District Judge

_____

*\* No further briefing would be
necessary, appropriate or helpful*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE CONAGRA FOODS, INC. SECURITIES LITIGATION | ) ) ) | |
| DAVID P. BERLIEN, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | 8:05CV292 |
| v. | ) ) | |
| CONAGRA FOODS, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| JOSEPH CALVACCA, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | 8:05CV318 |
| v. | ) ) | |
| CONAGRA FOODS, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| JAMES M. WOODS, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | 8:05CV493 |
| v. | ) ) | |
| CONAGRA FOODS, INC., et al., | ) ) | ORDER |
| Defendants. | ) ) | |

This matter is before the Court on the motions of
International Fund Management S.A., Luxembourg (International

Fund"), National Elevator Industry Pension Fund ("National Elevator"), and the Sumas Group ("Sumas") for consolidation, appointment as lead plaintiff and approval of selection of lead counsel. All three motions were filed on August 22, 2005. This Court has previously ordered the consolidation of these actions (Filing No. 54 in 8:05CV292; Filing No. 33 in 8:05CV318; Filing No. 51 in 8:05CV493). Now the Court will address the issues of appointing a lead plaintiff and approving the selection of lead counsel.

### Selection of Lead Plaintiff

In selecting the co-lead plaintiff, Fed. R. Civ. P. 23 provides typicality and adequacy requirements that must be met for a party to be considered for appointment as lead plaintiff. In addition, the Private Securities Litigation Reform Act ("PSLRA") establishes a rebuttable presumption that "the person or group of persons" which otherwise meets the requirements of Rule 23 that "has the largest financial interest in the relief sought by the class" shall be appointed lead plaintiff. This presumption may be overcome only upon proof that the presumptively most adequate plaintiff will not fairly and adequately represent the class or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Three parties have sought to be named as lead plaintiff: International Fund, National Elevator and Sumas. Now

-2-

International Fund and National Elevator, (collectively the "Institutional Investor Group"), have elected to jointly prosecute this action against ConAgra and ask the Court to name them collectively as the co-lead plaintiff. Thus, the Court must choose between the Institutional Investor Group and Sumas for the position of lead plaintiff.

The PSLRA instructs courts to appoint as lead plaintiff the investor with the largest financial interest in the relief sought by the class. In this instance, the Institutional Investor Group clearly has a larger financial interest in the relief sought than does Sumas. The Institutional Investor Group bought 555,897 shares between September 18, 2003, and June 7, 2005 (the "Class Period"), and thereby claims losses totaling $2,399,802.16. In comparison, Sumas bought 4,300 shares during the Class Period and claims losses of $12,300.76. Thus, the Institutional Investors Group clearly have the largest financial stake in this litigation. Therefore, a rebuttable presumption exists that the Institutional Investors Group shall be appointed as co-lead plaintiff.

Sumas can rebut this presumption only by proof that the Institutional Investor Group will not fairly and adequately represent the class or is subject to unique defenses. In an effort to rebut this presumption, Sumas asserts that appointment of the Institutional Investors Group as co-lead plaintiff would

-3-

expose "the class to logistical issues that would not arise if the lead plaintiff is not foreign." This bare assertion is ineffectual. Sumas fails to detail any logistical issues which could arise because one of the members of the Institutional Investors Group is foreign. This objection is found to be without merit.

Next, Sumas asserts that one of the members of Institutional Investors Group failed to clearly set forth all of the information necessary in a sworn, signed certification. It is unclear whether a putative lead plaintiff, such as National Elevator, which did not file a complaint, is subject to this requirement. The plain language of the statute states that the sworn, signed certification is to be "filed with the complaint." 15 U.S.C. § 78u-4 (a)(2)(A); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 407, 2004 U.S. Dist. LEXIS 9571, at *36, n.18 (S.D.N.Y. 2004). Here, National Elevator has provided sufficient information to allow the Court to analyze its claimed financial interest. This objection is insufficient to overcome the Institutional Investor Group's rebuttable presumption as co-lead plaintiff as the party with the largest financial interest in the class.

<u>Typicality and Adequacy</u>

Institutional Investors Group fulfills the typicality and adequacy requirements of Rule 23(a). Typicality exists where

the plaintiff's claims arise from the same series of events and are based upon the same legal theories as the claims of all the class members. It is the generalized nature of the claims asserted which determines whether the class representatives are typical. The typicality requirement does not require that the claims be identical.

The Institutional Investors Group satisfies the typicality requirement because, like all other class members, it: (1) purchased ConAgra securities during the Class Period at allegedly artificially inflated prices; and (2) suffered damages thereby. Thus, its claims are typical of those of other class members because its claims arise out of the same course of events.

Adequacy is evaluated by determining that (1) potential conflict between the proposed co-lead plaintiff and the class members is absent, and (2) the class representative has chosen counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. Here, Institutional Investors Group is an adequate class representative because its interests are clearly aligned with the other class members in vigorously pursuing the claims against the defendants because of the defendants' alleged false statements to the market. There also is no evidence of any antagonism between Institutional Investors Group and other class members. Finally, its proposed counsel is

-5-

highly qualified, experienced and capable of conducting this complex litigation in a professional manner. Thus, Institutional Investors Group fulfills both the typicality and adequacy requirements of Rule 23(a). Therefore, Institutional Investors Group will be appointed as co-lead plaintiff in this action.

**Counsel**

Having appointed Institutional Investors Group as co-lead plaintiff, the Court also will approve its selection of counsel. The statute states that the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v). The lead plaintiff has selected Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") and Murray, Frank & Sailer LLP to serve as co-lead counsel for the class and Abrahams, Kaslow & Cassman LLP, as liaison counsel. Lerach Coughlin has experience serving in the role of lead counsel, having been appointed as lead or co-lead counsel in several class actions including *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002). Likewise, Murray, Frank & Sailer LLP also is experienced in class action litigation. The Court approves the selections by the lead plaintiff for lead and liaison counsel. Accordingly,

IT IS ORDERED:

1)   National Elevator and International Fund are appointed co-lead plaintiff for the class;

2)   Lerach Coughlin Stoia Geller Rudman & Robbins LLP and Murray, Frank & Sailer LLP are appointed to serve as co-lead counsel for the class;

3)   Abrahams, Kaslow & Cassman LLP is appointed as liaison counsel.

DATED this 2nd day of December, 2005.

BY THE COURT:

/s/ Lyle E. Strom

LYLE E. STROM, Senior Judge
United States District Court





THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DREAMWORKS ANIMATION SKG, INC., SECURITIES LITIGATION<br><br>This Document Relates To:<br>All Actions | Master File No. CV 05-03966 MRP (VBKx)<br><br>(Consolidated Cases)<br><br>ORDER APPOINTING NEXTRA INVESTMENT MANAGEMENT S.G.R. S.p.A. AS LEAD PLAINTIFF AND APPOINTING LEAD COUNSEL |

Putative class member Nextra Investment Management S.G.R. S.p.A. ("Nextra"), on behalf of NIS International Equities Fund, the Nextra Blue Chips Internazionali Fund, the Nextra Bilanciato Internazionale Fund, the Nextra Equilibrio Fund, and the Nextra Azioni Internazionali Fund, has moved, pursuant to Section 27(a)(3) of the Securities Act of 1933 and Section 21D(a)(3) of the Securities Exchange Act of 1934, for (1) appointment as Lead Plaintiff for the class of plaintiffs in this case (the "Class"), (2) the approval of Schiffrin & Barroway, LLP as Lead Counsel for Lead Plaintiff and the Class, and (3) the approval of Lim, Ruger & Kim, LLP as Liaison Counsel for Lead Plaintiff and the

1 Class.

2     The Court has read and considered the following documents: (1) the

3 Notice of Motion and Motion to Appoint Nextra as Lead Plaintiff Pursuant

4 to Section 27(a)(3)(B) of the Securities Act of 1933 and Section

5 21D(a)(3)(B) of the Securities Exchange Act of 1934 and to Approve Lead

6 Plaintiff's Choice of Counsel, filed by Nextra on August 9, 2005 (the

7 "Motion"); (2) the Memorandum in Opposition to Nextra Investment

8 Management S.G.R. S.P.A.'s Motion to be Appointed Lead Plaintiff and for

9 Approval of its Choice of Counsel, filed by plaintiffs Edward Forstein,

10 Joe Karim, Pamela Kasza and the Carpenters Pension Fund of Baltimore

11 (collectively, the "Dreamworks Group") on September 12, 2005; (3) the

12 Memorandum of Law in Further Support of Nextra Investment Management

13 S.G.R. S.p.A.'s Motion for Appointment as Lead Plaintiff and for

14 Approval of Lead Counsel and Opposition to all Competing Motions Seeking

15 Appointment of Lead Plaintiff, filed by Nextra on September 12, 2005;

16 (4) the Reply Memorandum of Law in Further Support of Nextra Investment

17 Management S.G.R. S.p.A.'s Motion for Appointment as Lead Plaintiff and

18 Approval of Selection of Lead Counsel, filed by Nextra on September 19,

19 2005; (5) the Reply Memorandum in Further Support of the Dreamworks

20 Group's Joint Stipulation for Appointment as Lead Plaintiff and for

21 Approval of its Choice of Counsel, filed by the Dreamworks Group on

22 September 19, 2005; (6) Nextra Investment Management S.G.R. S.p.A.'s

23 Submission Pursuant to this Court's October 19, 2005 Order, filed by

24 Nextra on November 2, 2005; and (7) all Declarations and Memoranda of

25 Points and Authority relating to the Motion. In addition, the Court

26 heard oral argument on the Motion on September 26, 2005.

27     Accordingly, IT IS HEREBY ORDERED as follows:

28

1. Nextra, having the largest financial interest in this litigation and otherwise satisfying the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure, is the most adequate plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and Section 27(a)(3)(B)(iii)(I) of the Securities Act, and no other movant has offered the proof necessary pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) and Section 27(a)(3)(B)(iii)(II) of the Securities Act to rebut the statutory presumption in favor of Nextra. Therefore, Nextra is hereby appointed Lead Plaintiff for the Class in this action and any subsequently consolidated or related actions.

2. Pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v) and Section 27(a)(3)(B)(v) of the Securities Act, Lead Plaintiff's selection of lead counsel and liaison counsel is hereby approved. The law firm of Schiffrin & Barroway, LLP is appointed as Lead Counsel and the law firm of Lim, Ruger & Kim, LLP is appointed as Liaison Counsel.

3. Lead Counsel shall have the authority to speak for all plaintiffs and Class members in all matters regarding the litigation including, but not limited to, pre-trial proceedings, motion practice, discovery, and trial and settlement, and shall make all work assignments in such a manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort. In connection with the foregoing, Lead Counsel shall have the following responsibilities:

a. to brief and argue motions;

1   b. to initiate and conduct discovery, including, without

2 limitation, coordination of discovery with defendants' counsel; the

3 preparation of written interrogatories, requests for admissions; and

4 requests for production of documents;

5   c. to direct and coordinate the examination of witnesses in

6 depositions;

7   d. to act as spokesperson at pretrial conferences;

8   e. to call and chair meetings of plaintiffs' counsel as

9 appropriate or necessary from time to time;

10   f. to initiate and conduct any settlement negotiations with

11 defendants' counsel;

12   g. to provide general coordination of the activities of

13 plaintiffs' counsel and to delegate work responsibilities to selected

14 counsel as may be required in such a manner as to lead to the orderly

15 and efficient prosecution of this litigation and to avoid duplication or

16 unproductive effort;

17   h. to consult with and employ experts;

18   i. to receive and review periodic time reports of all

19 attorneys on behalf of all plaintiffs to determine if the time is being

20 spent appropriately and for the benefit of plaintiffs; and

21   j. to perform such other duties as may be expressly authorized

22 by further order of this Court.

23

24   4. Lead Counsel shall be responsible for coordinating all

25 activities and appearances on behalf of the Class and for disseminating

26 notices and orders of this Court.

27

28   5. No motion, application or request for discovery shall be

1  served or filed, or other pre-trial proceedings initiated, on behalf of

2  Lead Plaintiff, except through Lead Counsel.

3

4       6.  All  notices,  proposed  orders,  pleadings,  motions,

5  discovery, and memoranda requiring a response in less than 30 days shall

6  be served upon Lead Counsel and defense counsel in electronic format and

7  emailed the day of filing with exhibits to follow by overnight mail

8  service, telecopy, or hand delivery.  All other service shall take place

9  by regular mail.

10

11      7. In accordance with the Court's personal procedures, counsel

12 shall submit two (2) courtesy copies of all filings to Chambers.

13

14      8. Defendants' counsel may rely upon all agreements made with

15 Lead  Counsel,  or  other  duly  authorized  representatives  of  Lead

16 Plaintiff.

17

18      9. This Order shall apply to each case subsequently filed in

19 this Court or transferred to this Court, unless a party objecting to the

20 consolidation of such case or to any other provision of this Order files

21 within ten (10) days after the date upon which a copy of this Order is

22 mailed to counsel for such party, an application for relief from this

23 Order or any provision herein and this Court grants such application.

24

25      IT IS SO ORDERED.

26   DATED: _November 7, 2005_         _Mariana R. Pfaelzer_

27                                 Honorable Mariana R. Pfaelzer

28                                 United States District Judge

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TOBY OLSEN, individually and on behalf of
all others similarly situated,

                              Plaintiff,

        -against-

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                              Defendants.

---

MORDEKAI SHAPIRO, individually and on
behalf of all others similarly situated,

                              Plaintiff,

        -against-

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                              Defendants.

---

ZACHARY ALAN STARR, on behalf of himself
and all others similarly situated,

                              Plaintiff,

        -against-

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                              Defendants.

---

**MEMORANDUM OF DECISION
AND ORDER**

04-CV-4165 (DRH)(JO)

04-CV-4282 (DRH)(JO)

04-CV-4375 (DRH)(JO)

---

JOSEPH R. RUSSO, individually and on
behalf of all others similarly situated,

                       Plaintiff,

        -against-                                  04-CV-4464 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                     Defendants.

---

ELI BOTKNECHT, individually and
on behalf of all others similarly situated,

                       Plaintiff,

        -against-                                  04-CV-4490 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, JOSEPH L. MANCINO,
MICHAEL MANZULLI, MICHAEL P. PUORRO,
and ROBERT WANN

                     Defendants.

---

RAMIN SARRAF, individually and on
behalf of all others similarly situated,

                       Plaintiff,

        -against-                                  04-CV-4577 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, JOSEPH L. MANCINO,
MICHAEL MANZULLI, MICHAEL P. PUORRO,
and ROBERT WANN,

                     Defendants.

---

HARLIN BROWN, on behalf of himself
and all others similarly situated,

                    Plaintiff,

            -against-                                          04-CV-4845 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.
JOSEPH R. FICALORA, and MICHAEL P.
PUORRO,

                    Defendants.

PETER BRANDEL, individually and on
behalf of all others similarly situated,

                    Plaintiff,

            -against-                                          04-CV-5047 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, JOSEPH L. MANCINO,
MICHAEL MANZULLI, MICHAEL P. PUORRO,
and ROBERT WANN,

                    Defendants.

ROBERT LOWINGER, on behalf of himself and
all others similarly situated,

                    Plaintiff,

            -against-                                          04-CV-5065 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, ROBERT WANN,
MICHAEL F. MANZULLI, DONALD M. BLAKE,
ANTHONY E. BURKE, DOMINICK CIAMPA,
ROBERT S. FARRELL, WILLIAM C.
FREDERICK, MAX L. KUPFERBERG,
HOWARD C. MILLER, JAMES J. DONOVAN,
and JOHN A. PILESKI,

                    Defendants.

3

---

RICHARD A. STRAUSS, individually and on
behalf of all others similarly situated,

Plaintiff,

-against-                              04-CV-5101 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, and MICHAEL P. PUORRO,

Defendants.

---

AL TAWIL and ESTATE OF FARAH MAHLAB,

Plaintiffs,

-against-                              04-CV-5128 (DRH)(JO)

NEW YORK COMMUNITY BANCORP, INC.,
JOSEPH R. FICALORA, ROBERT WANN,
MICHAEL F. MANZULLI, DONALD M. BLAKE,
ANTHONY E. BURKE, DOMINICK CIAMPA,
ROBERT S. FARRELL, WILLIAM C.
FREDERICK, MAX L. KUPFERBERG,
HOWARD C. MILLER, JAMES J. DONOVAN,
and JOHN A. PILESKI,

Defendants.

---

**HURLEY, District Judge:**

Presently before the Court are the motions by: (1) Metzler Investment GmbH, for account of its funds MI-Fonds 208 and MI-Fonds 705 ("Metzler Investment") and Bernard Drucker (collectively, the "NYCB Group"); (2) Carlos J. Burbano, Anna C. Burbano, Henry E. Dubuy, Anthony J. Izzo, Hans Kalb, Dong K. Lee, Joseph Tobin, and Anthony Whitehead (collectively, the "Lee Group"); (3) Dr. Max Schnapp ("Dr. Schnapp"); (4) James T. Stevens and

4

John W. Feil (collectively, the "Stevens Group"); (5) Vera Dalia, PhD, Anthony Curcio, and Genevieve DeCarlo (collectively, the "Dalia Group"); and (6) Philip A. Stewart, Joyce Stewart, and International Brotherhood of Electrical Workers Local 98 (the "Stewart Group") for an Order consolidating the above-referenced actions,[1] appointing lead plaintiff, and approving the selection of lead counsel. For the reasons stated below, the motion of the NYCB Group is granted in its entirety and the remaining motions are granted in part and denied in part.

## BACKGROUND

The above-captioned actions were commenced as purported securities class actions on behalf of investors who purchased or acquired stock of New York Community Bancorp, Inc. ("NYCB") between June 27, 2003 and May 9, 2004 (the "Class Period"). The actions seek to recover damages suffered by members of the class as a result of Defendants' alleged violations of federal securities law. (Compl. ¶ 1.)[2] Specifically, the Complaint alleges that on the first day of the class period, NYCB announced that it had signed a definitive agreement with Roslyn Bancorp, Inc. ("Roslyn"), valued at $1.579 billion, whereby Roslyn would merge into NYCB and Roslyn shareholders would receive 0.75 shares of NYCB stock in exchange for each share of Roslyn stock. (*Id.* ¶ 24.) The Complaint further alleges that in connection with the merger, Defendants failed to disclose and misrepresented material adverse

---

[1] At the time of the filing of the parties' motions, there were eight related cases pending before the Court. Since that time, three additional related cases have been filed, to wit, *Lowinger v. New York Community Bancorp, Inc.*, 04 CV 5065, *Strauss v. New York Community Bancorp, Inc.*, 04 CV 5101, and *Tawil v. New York Community Bancorp, Inc.*, 04 CV 5128. These three related cases will be considered in the Court's decision.

[2] All citations to Complaint refer to the Complaint filed in *Olsen v. New York Community Bancorp, Inc.*, 04 CV 4165, the first action filed in this Court.

facts, which were known to Defendants or recklessly disregarded by them, which caused NYCB's stock to be artificially inflated. (*See id.* ¶¶ 25-57.)

The first action, *Olsen v. New York Community Bancorp, Inc.*, 04 CV 4165, was filed on September 24, 2004. That same day, plaintiffs' counsel published notice of the pendency of the action over the *PR News Wire*. The notice advised members of the proposed class of their right to move before this Court to serve as lead plaintiff(s) on or before November 23, 2004. (*See, e.g.*, Decl. of Aaron Brody, dated Nov. 23, 2004, Ex. A.)

Presently pending in the Eastern District of New York are eleven separate related securities fraud class actions. Plaintiffs in six of these actions have filed motions to consolidate and for appointment as lead plaintiff. Defendants take no position with regard to the respective motions.

## DISCUSSION

### *I.     The Motions to Consolidate are Granted*

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court must decide any motion to consolidate prior to deciding a motion for appointment of lead plaintiff in a proposed securities class action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Rule 42 of the Federal Rules of Civil Procedure provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; [and] it may order all the actions consolidated." Fed. R. Civ. P. 42(a).

Here, the factual allegations in each of the above-referenced actions are virtually identical and, as a result, the same discovery will be relevant to all of the actions. Several of the

actions, however, have alleged slightly different class periods and name different individual

defendants. Moreover, some of the actions assert claims by former Roslyn shareholders pursuant

to the Securities Act of 1933 (the "Securities Act"), some assert claims by persons who

purchased NYCB stock on the open market pursuant to the Securities Exchange Act of 1934 (the

"Exchange Act"), and some assert claims pursuant to both statutes. None of these minor

differences, however, which can be resolved when the appointed lead plaintiff files a

consolidated complaint, detracts from the overwhelming factual and legal similarities among the

cases. *See, e.g., Dolan v. Axis Capital Holdings Ltd.*, Nos. 04 Civ. 8564, 04 Civ. 8810, 2005 WL

883008, at * 2 (S.D.N.Y. Apr. 13, 2005) (consolidating cases where one case asserted claims

against additional defendant and claims "overlapp[ed]"); *In re Olsten Corp. Sec. Litig.*, 3 F.

Supp. 2d 286, 292-93 (E.D.N.Y. 1998) (consolidating cases alleging different class periods and

slightly different facts; "the facts and legal issues need not be identical to warrant

consolidation"), *opinion adhered to on reconsideration*, 181 F.R.D. 218 (E.D.N.Y. 1998).

Moreover, it is apparent that no party will suffer prejudice from consolidation, a fact confirmed

by the complete absence of any opposition thereto. Finally, it is equally apparent that

consolidation would significantly enhance judicial economy. There is, in short, nothing to be

gained by requiring this matter to proceed as eleven separate cases. Accordingly, the actions

involve "common issues of law and fact" and are hereby consolidated pursuant to Rule 42(a).

II.     *Motions for Appointment of Lead Plaintiff*

    A.     *Procedure under the PSLRA*

        The PSLRA sets forth the procedure governing the appointment of a lead plaintiff

in securities class actions. As an initial matter, the plaintiff who files the first action must

7

publish notice to the class within twenty (20) days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(I). Here, notice of the first action was published on September 24, 2004.

Next, the PSLRA provides that within ninety (90) days after publication of notice, the Court shall consider any motion made by a purported class member and shall appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B). There is a rebuttable presumption that the "most adequate plaintiff" is

the person or group of persons that –

> (aa) has either filed the complaint or made a motion in response to [the statutorily mandated] notice . . .;
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

**B.    *Application to the Present Cases***

Plaintiffs in six of the above-referenced cases filed competing motions for appointment as lead plaintiff.   Upon review of the competing motions, the Stevens Group subsequently withdrew its application. The Dalia and Stewart Groups failed to file any opposition papers in response to the other applicants' motions and, thus, have presumably

withdrawn their applications as well.[3] Thus, the only three groups under consideration are the NYCB Group, the Lee Group, and Dr. Schnapp.

All three groups have satisfied the first criterion necessary for a finding that it is the most adequate plaintiff in that each has timely filed a motion in response to the notice of the first filed action. *Id.* § 78u-4(a)(3)(B)(iii)(I)(aa). The Court must then determine which group holds the largest financial interest in the relief sought. *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb).

All three groups have submitted affidavits along with their papers in support of their respective claims of financial losses. The NYCB Group purchased or otherwise acquired 106,000 shares of NYCB stock, incurring an estimated loss of $905,647.65. (*See* Decl. of Peter E. Seidman, dated Nov. 23, 2004, Exs. C and D.) The Lee Group purchased 57,116 shares of NYCB stock during the class period and suffered estimated losses of $451,547. (*See* Decl. of Aaron L. Brody, dated Nov. 23, 2004, Exs. B and C.) Finally, Dr. Schnapp acquired 59,432 shares of NYCB through the merger of NYCB and Roslyn and 780 shares through dividend reinvestment for a total estimated loss of $605,520.[4] (*See* Decl. of William Berbarduci, dated Nov. 23, 2004, Ex. B; Dr. Schnapp Reply Mem. at 2 n.3.) Thus, at first glance, the NYCB Group appears to have sustained the largest financial loss. Both Dr. Schnapp and the Lee Group advance several arguments, however, as to why the NYCB Group should be disqualified from

---

[3] The Dalia Group claimed a financial loss of $357,715.40 and the Stewart Group estimated its loss at $450,971.13. As will be discussed *infra*, because the Court finds that the NYCB Group, with an estimated loss of $905,647.65, has the largest financial interest in the relief sought, and satisfies the other requirements under the PSLRA, the Court finds that the NYCB Group is the most adequate plaintiff.

[4] Dr. Schnapp initially asserted a loss of $365,129, but later changed his loss based upon a revised calculation to allegedly reflect the methods used by the other movants. (Dr. Schnapp Mem. in Further Supp. at 1 n.1.)

lead plaintiff contention. The Court will address each one in turn.

### 1.     The Validity of the NYCB Group

Dr. Schnapp argues that the NYCB Group used an improper calculation in arriving at its estimated loss. Dr. Schnapp's argument, however, is based on his assertion that the NYCB Group is improperly comprised of two movants and that viewing each movant's loss separately, Dr. Schnapp's loss is greater than each individual movant. At this juncture, the Court need not resolve whether the approach used by the NYCB Group in estimating its financial loss is appropriate because as discussed below, the Court finds that the NYCB Group's inclusion of two distinct members is proper. Thus, under either method for calculating loss, the NYCB's loss, taken in the aggregate, is substantially greater than that of Dr. Schnapp.[5]

Dr. Schnapp argues that the NYCB Group is "nothing more than an amalgamation of unaffiliated and unrelated class members thrown together to try to artificially create the movant with the 'largest financial interest.'" (Dr. Schnapp Reply Mem. at 5.) The NYCB Group is comprised of an institutional movant, to wit, Metzler Investment, and an individual movant, to wit, Bernard Drucker.

The PSLRA states that the court "must appoint as lead plaintiff the *member or members* of the purported plaintiff class that the court determines to be most capable of

---

[5] The NYCB Group asserts its financial loss as totaling $905,647.65, based upon the "mean trading price" of its stock during the 90-day period beginning on the date on which the information correcting the misstatement or omission was disseminated to the market. 15 U.S.C. § 78u-4(e)(1). Dr. Schnapp contends that the NYCB Group erroneously performed this calculation based upon 90 *calendar* days, as opposed to 90 *trading* days, the latter of which excludes weekends and legal holidays. Thus, under Dr. Schnapp's method, the NYCB Group's loss, viewed in the aggregate, would actually be higher, at $1,010,580. (*See* Dr. Schnapp's Mem. in Further Supp. at 4.)

adequately representing the interests of class members," 15 U.S.C. § 78u-4(a)(3)(B) (emphasis

added), but does not specify whether the members must be related in some fashion in order to

qualify as an appropriate lead plaintiff group. As recently articulated by Judge Scheindlin:

> Courts are divided on the issue. Two cases in the Southern District
> of New York forcefully assert that unrelated investors may not
> band together for the purpose of achieving lead plaintiff status,
> reasoning that investors with no prior relationship will not be as
> effective at controlling class counsel as would a single institutional
> entity. Other cases, comprising the majority view, hold that
> unrelated investors may aggregate under certain circumstances.
> One court even goes so far as to argue that "a greater number of
> plaintiffs allows them, as a group, to wield more control over
> counsel." For the most part, in the absence of explicit limits the
> lead plaintiff decision must be made on a case-by-case basis,
> taking account of the unique circumstances of each case.
> Generally, a lead plaintiff group should be held to a reasonable
> number, so that the group does not become too unwieldy. This
> logic eschews a hard-and-fast rule, instead adopting a rule of
> reason along with the general presumption that unrelated groups
> with more than five members are too large to work effectively.

*In re eSpeed, Inc. Sec. Litig.*, No. 05 Civ 2091, 2005 WL 1653933, at *2 (S.D.N.Y. July 13,

2005) (citations omitted).

　　　　Many courts have interpreted the PSLRA to favor institutional investors serving

as lead plaintiff. *See id.* ("An institutional investor with substantial losses functioning as lead

plaintiff is less likely to cause a flurry of otherwise pointless activity in the form of disputes

within the lead plaintiff group.") (citation and internal quotation marks omitted) (collecting

cases); *Dolan*, 2005 WL 883008, at *3 (stating that PSLRA was designed to encourage

institutional investors which have "significant holdings in issuers [and] whose interest are more

strongly aligned with the class of shareholders"). Here, given the PSLRA's preference for

institutional investors, and given that the NYCB Group consists of a manageable number of

11

members, the Court finds that the two member NYCB Group is a valid group under the PSLRA. *See In re Star Gas Sec. Litig.*, No. 04 Civ. 1766, 2005 WL 818617, at *5 (D. Conn. Apr. 8, 2005) ("The majority of courts considering the issue have taken an intermediate position, allowing a group of unrelated investors to serve as lead plaintiffs when it would be most beneficial to the class under the circumstances of a given case."); *Pirelli Armstrong Tire Corp. v. LaBranche & Co.*, No. 03 Civ. 8264, 2004 WL 1179311, at *22 (S.D.N.Y. May 27, 2004) (noting that a co-lead plaintiff structure will help to ensure that adequate resources and experience are available to the prospective class in the prosecution of the class action); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00 Civ. 152, 2000 WL 486956, at *3 (D. N.J. Apr. 24, 2000) (appointing three separate movants as co-lead plaintiffs and anticipating that each party would bring a unique perspective to the litigation); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45-46 (S.D.N.Y. 1998) (naming group of three unrelated individual investors as co-lead plaintiff with an institutional investor). Thus, viewing the NYCB Group's loss in the aggregate, it has the largest financial interest.

       2.    *The NYCB Group has Standing to Sue*

      Dr. Schnapp and the Lee Group contend that Metzler Investment, the institutional member of the NYCB Group, lacks standing to assert violations of the Exchange Act because it is merely an investment manager which did not purchase any NYCB stock for its own account but rather managed the investments of its clients' assets. "Generally, a client's grant of authority to an investment manager to purchase stock on his or her behalf does not also confer authority to commence suit on his or her behalf." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) (citing *Smith v. Suprema Specialties*, 206 F. Supp. 2d 627,

634-35 (D. N.J. 2002)). "However, when the investment advisor is also the attorney-in-fact for

its clients with unrestricted decision making authority, the investment advisor is considered the

'purchaser' under the federal securities laws with standing to sue in its own name." *Id.*; *see also*

*In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *1 ("In order for an investment advisor to

attain standing on behalf of investors[,] the transactions in question must have been executed as

if by a single person. Moreover, the advisor must be the attorney in fact for his clients, and he

must be granted both unrestricted decision-making authority and the specific right to recover on

behalf of his clients.") (citations omitted).

> Here, Metzler Investment has proffered the signed declaration of Marlies Pauly,

an authorized signatory of Metzler Investment, stating that Metzler Investment is a fund

management company that controls, manages, and is attorney-in-fact for each of its funds.

(Third Decl. of Peter E. Seidman, dated Dec. 15, 2004, Ex. B. ¶ 2.) The declaration further avers

that:

> Metzler [Investment] is also contractually authorized to undertake
> and act on behalf of these funds in any legal action on their behalf,
> including serving as lead plaintiff in this action. These funds'
> respective shareholders have each entered into a contract with
> Metzler [Investment] explicitly authorizing Metzler [Investment]
> to control all investments and to commence litigation on behalf of
> the funds. Accordingly, Metzler [Investment] has full and
> complete authority and discretion to purchase and sell securities
> for each of these funds, and to institute legal action on their behalf,
> including serving as lead plaintiff in this action.

(*Id.* ¶ 4.) Metzler Investment also submits a portion of the contracts it entered into with each of

the shareholders of the funds, which provides that Metzler Investment "is authorized to purchase

assets with the money invested by the shareholders, to sell those assets and to otherwise invest

the proceeds; it is further authorized to take all legal actions that arise from the management of

the assets." (*Id.* Ex. D and attachments thereto.)  Based on this proffer, the Court finds that Metzler Investment has demonstrated that it has complete investment authority over its trades and is agent and attorney-in-fact with full power and authority to act in connection with its investments.  Thus, the Court finds that Metzler Investment does have standing to prosecute its Exchange Act claims asserted here.

### 3.    *Applying the Requirements of Rule 23*

Having established that the NYCB Group has the greatest financial loss, and is not otherwise disqualified from serving as lead plaintiff, the next question is whether the NYCB Group "otherwise meets the requirements of Rule 23(a)." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) sets forth four prerequisites to be considered in evaluating the propriety of class certification, to wit, numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Only the typicality and adequacy criterions are relevant to the selection of lead plaintiff. *See Dolan*, 2005 WL 883008, at *4; *In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *5.

Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *See, e.g., Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).  The NYCB Group easily meets this requirement because the NYCB Group, like the other purported class members in this action, alleges that it purchased or otherwise acquired NYCB stock during the class period and was injured by false and misleading representations made by defendants in violation of both the Exchange Act *and* the Securities Act.  Because the NYCB Group consists of both a movant who acquired his shares of NYCB stock through NYCB's merger with Roslyn *and* a movant who acquired its shares through the open market, all available legal theories are

represented. Although the Stevens Group suggests that the Court appoint two separate lead plaintiffs with separate counsel – one for the claims arising out of the Securities Act and one for the claims arising out of the Exchange Act[6]– the Court declines to do so. This argument is based on the premise that the two movants who make up the NYCB Group do not *individually* possess the greatest financial loss. As discussed previously, however, the Court has already found the NYCB Group to be a valid group which may be viewed in the aggregate. Moreover, as the parties concede, there is no precedent under which the Court is required to appoint separate lead plaintiffs for different claims, *cf. Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) (stating that the PSLRA does not require district to choose lead plaintiff with standing to sue on every available cause of action), and there has been no showing that the NYCB Group, the presumptive lead plaintiff, cannot vigorously pursue both claims. The NYCB Group therefore meets the Rule 23 typicality requirement for purposes of the lead plaintiff inquiry.

The NYCB Group also meets the Rule 23 requirement that the lead plaintiff have the capacity to adequately represent the class. The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 2005 WL 1653933, at *5 (citing *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (considering adequacy in the lead plaintiff appointment context)). The NYCB Group's counsel, Milberg Weiss Bershad & Schulman LLP, has extensive experience litigating securities class actions and, therefore, has the ability to conduct the litigation effectively.

---

[6] (*See* Stevens and Feil Response at 2-4; Dr. Schnapp Reply at 6-8.)

Moreover, there is no evidence to suggest that the members of the NYCB Group have interests that are antagonistic to each other or to other members of the putative class. Finally, the NYCB Group has already displayed a willingness to vigorously pursue its claims and has enough of an interest in the outcome of the litigation to ensure that it will continue to do so. Thus, the NYCB Group is an adequate class representative.

Thus, because the NYCB Group has satisfied the three prong test of the PSLRA, to wit, the NYCB Group has submitted a timely motion requesting to be named lead plaintiff, it is the entity with the greatest financial interest in the relief sought by the class, and otherwise meets the requirements of Rule 23(a), the NYCB Group is presumptively the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To rebut this presumption, as noted previously, the other movants must offer proof that the NYCB plaintiffs "will not fairly and adequately protect the interests of the class; or [are] subject to unique defenses that render [them] incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II). They have failed to do so. Accordingly, the Court appoints the NYCB Group as lead plaintiff.

### III.    *Motions for Selection of Lead Counsel*

The NYCB Group further moves to designate Milberg Weiss Bershad & Schulman LLP as lead counsel. The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel." 15 U.S.C. § 78u-4(a)(3)(B)(v). Resumes submitted by the firm indicate that it has successfully prosecuted numerous securities fraud class actions and is otherwise well qualified and free of conflicts. Accordingly, the Court appoints Milberg Weiss Bershad & Schulman LLP as lead counsel.

16

## CONCLUSION

For the foregoing reasons, the motion by the NYCB Group is granted in its entirety. The Court appoints the NYCB Group as lead plaintiff and Milberg Weiss Bershad & Schulman LLP as lead counsel. The other applicants' motions are granted to the extent they seek consolidation but are otherwise denied. The NYCB Group shall serve and file a consolidated complaint within thirty (30) days of this Order.

The actions are hereby consolidated under the caption "In re New York Community Bancorp, Inc. Securities Litigation." All relevant documents and submissions shall be maintained as one file under case number 04 CV 4165. The Clerk of the Court is hereby directed to close the other ten actions.

**SO ORDERED.**

Central Islip, N.Y.
August 9, 2005

/s_____
Denis R. Hurley,
United States District Judge

17

FILED

APR 9 2007

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

*In re*

**DELL INC., SECURITIES LITIGATION**

Case No. A-06-CA-726-SS

# O R D E R

BE IT REMEMBERED on the ___9th___ day of April 2007 the Court reviewed the file in the above-styled cause, specifically the motions for appointment as lead plaintiff filed by the Institutional Investor Group [#20, #137], the Pension Fund Group [#25], the Boca Raton Police and Firefighters' Retirement System [#26], Union Asset Management Holding AG [#39], and I.U.O.E Local 68 Pension and Annuity Funds [consolidated complaint] . Having considered these motions, the memoranda filed in support and opposition thereto, the applicable law, and the consolidated case file as a whole, the Court now enters the following opinion and order.

## Background

This case consolidates four class actions alleging violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, and Rule 10b-5 promulgated thereunder. Plaintiff Marc Abrams filed this action on September 13, 2006, individually and on behalf of all those who purchased common stock of Dell, Inc. ("Dell") between February of 2003 and September of 2006. Abrams claims Dell, during this period, disseminated materially false and misleading statements regarding its earnings and expected growth and reported incorrect financial data in its required SEC filings.

As required by the PSLRA, counsel for Abrams published notice of the pending class action in a "widely circulated national business-oriented publication or wire service" on September 13, 2006. 15 U.S.C. §78u-4(a)(3)(A)(i). On November 13, 2006, several parties moved to be appointed lead plaintiff in this case pursuant to the PSLRA.[1] Abrams moved to appoint the Institutional Investor Group (made up of plaintiffs Wolverhampton City Council and Amalgamated Bank) as Lead Plaintiff with Joe Kendall of Provost & Umphrey LLP and Patrick Coughlin of Lerach Coughlin Stoia Gellar Rudman & Robbins LLP as Co-Lead Counsel. The Pension Fund Group (made up of Plaintiffs Mississippi Public Employees' Retirement System, Sjunde AP-Fonden, Stichting Pensioenfunds ABP, and Pensionskassernes Administration A/S) also moved for appointment as Lead Plaintiff, with counsel from the law firms of Grant & Eisenhofer P.A. and Schiffrin and Barroway, LLP as Lead Counsel. Plaintiff Union Asset Management Holding AG ("Union") moved for appointment as Lead Plaintiff with counsel from the firms of Motley Rice LLC and Byrd, Davis, Furman, LLP as Lead Counsel.[2] The City of Boca Raton Police and Firefighters' Retirement System filed its motion to be appointed Lead Plaintiff, with counsel from the firm of Lieff, Cabraser, Heimann and Bernstein, LLP as Lead Counsel. Plaintiff I.U.O.E Local 68 Pension and Annuity Funds ("I.U.O.E.") filed a parallel complaint on November 13, 2006.

On November 16, 2006, the Court held a hearing regarding consolidation of the Abrams and I.U.O.E. complaints and related ERISA and derivative actions against Dell. The Court issued an

---

[1] On November 13, 2006, the Policemen's Annuity and Benefit Fund of Chicago moved for appointment as Lead Plaintiff , but later withdrew the motion. The DeKalb County Pension Fund likewise moved for appointment as Lead Plaintiff on November 13, 2006, but later withdrew the motion.

[2] Union's motion is marked "filed" on November 16, 2006, but the motion itself is dated November 13, 2006.

Order directing "each group seeking to be lead counsel and represent the named representative plaintiff" in a consolidated action to "file an amended complaint on or before January 31, 2007, specifically alleging the class or classes to be established and the reasons why it should be selected as lead counsel and its client the named representative plaintiff." Order of Nov. 16, 2006. In response, the Pension Fund Group filed a parallel lawsuit on January 31, 2007. The Institutional Investor Group also filed a parallel suit on January 31, 2007. Union Asset Management filed an amended complaint in the *Abrams* action on January 31, 2007.

The Court also requested that all named plaintiffs file affidavits (in addition to the certifications required by the PSLRA, 15 U.S.C. §78u-4(a)(2)(A)) "confirming that the client solicited the attorney or firm to represent him . . . and the client made the first contact with the attorney." Order of Nov. 16, 2006. It appears that Abrams, the Pension Fund Group, and Union have filed such affidavits, but no representative of I.U.O.E. Local 68 Pension and Annuity Funds has done so. The additional filings requested by the Court are intended to aid the Court in determining which movant is the most adequate Lead Plaintiff, but the Court will consider each motion filed in accordance with the PSLRA regardless of whether the movant has filed the affidavits and amended complaint requested in the November 16, 2006 Order. *See* 15 U.S.C. §78u-4(a)(3)(B)(i) (the Court "*shall* consider any motion made by a purported class member in response to the notice") (emphasis added). The Court consolidated the related securities class action complaints on February 28, 2007, and now considers the motions for appointment as Lead Plaintiff.

### Analysis

Where a court has pending before it one or more class actions arising under the Securities Exchange Act of 1934, the PSLRA directs that a Lead Plaintiff be selected early in the case, and that

the Lead Plaintiff is to select and retain lead counsel, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). One of the main goals of the PSLRA is "to have the plaintiff class, represented by a member with a substantial financial interest in the recovery as incentive, monitor the litigation to prevent its being lawyer-driven." *See In re Waste Management, Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 411-12 (S.D. Tex. 2000).

## I. The Most Adequate Plaintiff

The PSLRA provides that the Court shall consider all timely-filed motions made by purported class members seeking to be appointed Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(1). The Court shall appoint as Lead Plaintiff the member or members of the purported plaintiff class that the court considers most capable of adequately representing the interests of the class members. *Id.* This Lead Plaintiff is termed the "most adequate plaintiff." *Id.*

The PSLRA directs the Court to adopt a presumption that the most adequate plaintiff is the person or group of persons that (1) filed a complaint or a timely motion to be appointed lead plaintiff, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA does not delineate a procedure for determining the "largest financial interest" among the proposed class members. Both the approximate loss claimed and the total number of shares purchased are, however, significant factors in determining the largest financial interest in the litigation. *See, e.g. In re Waste Management, Inc.*, 128 F. Supp. 2d 401, 414 (S.D. Tex. 2000) ("The term 'largest financial interest' . . . should be read broadly in terms of (1) the number of shares purchased, (2) the number of net shares purchased, (3) the total net funds expended by the plaintiff(s) during the class period, and (4) the approximate losses suffered by the

-4-

plaintiff(s).") (citation omitted). Accordingly, the Court considers the number of shares purchased

and the total loss claimed by each movant in determining which proposed Lead Plaintiff has the

largest financial interest in this litigation.

    The Court has five motions for appointment as Lead Plaintiff to consider:

| Proposed Lead Plaintiff | Proposed Lead Counsel | Claimed Losses | Shares Purchased |
| --- | --- | --- | --- |
| Pension Fund Group | Grant & Eisenhofer P.A.; Schiffrin Barroway Topaz & Kessler, LLP | $87.93 million | 18.84 million |
| Union Asset Management Holding AG | Motley Rice LLC | $20.25 million | 3.23 million |
| Institutional Investors' Group | Lerach Coughlin Stoia Gellar Rudman & Robbins LLP | $5.86 million | 629,412 |
| I.U.O.E. Local 68 Annuity & Pension Fund | Seeger Weiss LLP | $1.32 million | 59,522 |
| City of Boca Raton Police & Firefighters Retirement System | Lieff Cabraser Heiman & Bernstein LLP | $235,483.98 | 41,300 |

## II. Aggregation of Financial Interests

    Several of the proposed Lead Plaintiffs are actually small groups of investors. In particular,

the Pension Fund Group ("PFG") is made up of four separate entities: Stichting Pensioenfonds ABP

("ABP"), Mississippi PERS ("Mississippi"), Sjunde AP-Fonden ("AP7"), and Pensionskassemes

Administration A/S ("PKA"). The Institutional Investors' Group ("IIG") is made up of two separate

entities: Amalgamated Bank and the Wolverhampton City Council. Finally, Union Asset

Management Holding AG ("Union") is a fund manager that manages seven different funds ("the

Union funds"). Each of these groups has claimed losses based on aggregating the total losses suffered by each member. Courts are divided over whether multiple plaintiffs may be aggregated to satisfy the "largest financial interest" requirement. *See Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1067 (C.D. Cal. 1999) (collecting cases). The majority of courts addressing this issue, however, have permitted the aggregation of claims. *See, e.g., In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 353 (S.D. Cal. 1998) (allowing the aggregation of six plaintiffs); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45-48 (S.D. N.Y. 1998) (appointing three plaintiffs as lead plaintiffs); *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 409 (D. Minn. 1998) (aggregating six plaintiffs). Courts have arrived at this result because the Act expressly permits a court to appoint more than one lead plaintiff. The court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).

Courts within this Circuit, however, tend to adopt a "strict" view of aggregation, reasoning that although there is "no textual statutory obstacle to considering the [grouped] plaintiffs' financial interests together," *Bell v. Ascendant Solutions, Inc.*, No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850 (N.D. Tex. April 17, 2002), the express purpose of the PSLRA is to ensure that securities litigation is overseen by competent interested parties rather than driven by lawyers. *Id.* To ensure the type of proactive representation by plaintiffs envisioned by the PSLRA, a strict definition of appropriate "group" plaintiffs should be adopted, "requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment." *In re Waste Management*, 128 F. Supp. 2d at 413. Under this

"strict" aggregation approach, "[t]he burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group' and . . . failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest should result in denial of their application for appointment as Lead Plaintiff." *Id.* (citing *Switzenbaum v. Orbital Sciences Corp.* ("Orbital I"), 187 F.R.D. 246, 250 (E.D. Va. 1999)).

The Institutional Investors' Group argues the Court should not consider the Pension Fund Group's aggregate loss because this group is "lawyer-driven," cobbled together for the purpose of achieving the greatest aggregated financial interest in the case. This is an interesting argument from a group whose own filings show no evidence whatsoever of any relationship between the entities beyond this litigation, and whose counsel initially represented a totally different named plaintiff (Abrams) whose losses were much smaller. Nevertheless, the Institutional Investors' Group makes a good point. Neither PFG nor IIG has shown any non-litigation relationship between the members of the proposed Lead Plaintiff groups.

PFG argues its members are not an unrelated group because two of its members, ABP and Mississippi, are currently serving together as lead plaintiffs in *In re Delphi Corporation Sec. Litig.*, No. 06-10026 (E.D. Mich.); and AP7 and PKA previously filed a joint lead plaintiff motion in *In re UnitedHealth Group Inc. PSLRA Litig.*, No. 06-cv-1691-JMR-FLN (D. Minn. May 5, 2006). This argument, however, does little to counter the argument that the Pension Fund Group's relationship is "lawyer-driven" and arises out of litigation alone. The Court also notes that PFG member Mississippi is presumptively disqualified from serving as a lead plaintiff, because it has participated

as lead plaintiff in more than five securities class actions in the last 3 years. 15 U.S.C. §784-4(a)(3)(B)(5).

Though some courts have adopted group Lead Plaintiffs on the theory that diversity among plaintiffs helps ensure that all class members' interests are represented, *see, e.g. In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998), there is no such diversity in either of the groups proposed by PFG or IIG. All of the members of these proposed groups are institutional investors. With respect to the Lead Plaintiff groups proposed by PFG and IIG, the Court finds no "advantages that outweigh the disservice to the PSLRA's interest in creating a small number of lead plaintiffs to counterbalance the influence of lawyers." *Bell*, 2002 U.S. Dist. LEXIS 6850.

In contrast, Union Asset Management, AG ("Union") is a single fund management company that oversees several different funds. The Court in *In re Waste Management* recognized that "[a]n institutional investor that invests the monies pooled into it from numerous, interrelated funds, . . . under the direction of a single individual" functions as a single investor under the PSLRA. *In re Waste Mgmt.*, 128 F. Supp. 2d at 432. Even if Union is considered as a group of separate investors, aggregation of their losses is appropriate because the funds have "a pre-litigation relationship based on more than their losing investment." *Id.* at 413.

### III. ABP is the Presumptively Most Adequate Plaintiff

Even when considered in the aggregate, however, Union has the second-largest claimed loss in this litigation. The PFG's largest member, Stichting Pensioenfonds ABP ("ABP") purchased 18,484,148 shares of Dell stock during the class period and claims a loss of $68 million. The PFG has requested that ABP be considered as an alternate Lead Plaintiff movant if the Court rejects its

group motion. Accordingly, the Court considers whether ABP, the movant with the largest financial interest in this litigation, is the most adequate plaintiff under the PSLRA.

"The rebuttable presumption created by the PSLRA, which favors the plaintiff with the largest financial interest, was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 49. *See* Although the inquiry at this stage of the litigation in determining the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and the capacity to provide adequate representation for those class members. *In re Waste Management, Inc.*, 128 F. Supp. 2d at 411.Only the typicality and adequacy requirements of Rule 23 are directly relevant to the choice of the Lead Plaintiff in securities fraud cases. *Id.*

The proposed Lead Plaintiff's claims are typical of the class if there are "no differences among the class members that would substantially alter the proof required for one member's claims versus another's." *Bell*, 2002 U.S. Dist. LEXIS 6850 (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997)). It is not necessary that a proposed Lead Plaintiff's claims be identical to the claims of other class members. *Id.* ABP, as a member of the PFG, has submitted a complaint alleging it, like other members of the proposed class, purchased Dell securities and lost money as a result of Dell's material misstatements and omissions. Though the class period differs slightly from the period alleged in the other complaints, and ABP is not pursuing some of the defendants and claims at issue in the related cases, there is no significant difference in the proof required to prove

ABP's claims and the claims asserted by other named plaintiffs in these related cases. Therefore, ABP's claims are typical of the proposed class.

"[T]he adequacy requirement mandates an inquiry into [1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees[.]" *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (citation omitted). There is no question that APB's chosen counsel is competent and zealous; the detailed complaint and the thorough pleadings filed in connection with ABP/PFG's Lead Plaintiff Motion are ample proof of that. ABP's affidavit, filed in response to this Court's Order of November 16, 2006, establishes that ABP is prepared to take an active role in the litigation.

Because ABP filed a timely motion (as part of the Pension Fund Group) to be appointed Lead Plaintiff, has the largest financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23, ABP is presumptively the "most adequate plaintiff" under the PSLRA. This presumption may be rebutted only by proof by another member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

## IV. Rebutting the Presumption

Union Asset Management and the Institutional Investors' Group present several challenges to ABP's ability to fairly and adequately represent the class and allege ABP is subject to multiple unique defenses.

### a. PriceWaterhouse Coopers

The Pension Fund Group is the only proposed Lead Plaintiff whose complaint does not name

Dell's auditor, PriceWaterhouseCoopers , as a defendant. Union and IIG argue this is because the

Pension Fund Group's largest member, ABP, uses the auditing services of a European affiliate of

PriceWaterhouseCoopers. In response, ABP points out that the Fifth Circuit rejected a similar

conflict of interest challenge in *Feder v. Electronic Data Sys. Corp.*, 429 F. 3d 125, 133–34 (5th Cir.

2005). In *Feder*, a defendant argued that the lead plaintiff, the state of New Jersey, was not an

adequate class representative because KPMG, a potential defendant, was New Jersey's auditor.

Specifically, defendants argued "that New Jersey's failure to name KPMG as a defendant in this

case, coupled with the fact that KPMG is New Jersey's auditor, demonstrates a conflict of interest

with the class that should disqualify New Jersey from serving as class representative." *Id.* at 134. The

Fifth Circuit Court of Appeals flatly rejected this argument and affirmed the District Court's decision

finding New Jersey to be an adequate class representative, holding:

> New Jersey is only a client of KPMG-not vice versa-so it has no self-interest in
> appeasing KPMG .... New Jersey would not necessarily benefit financially by
> maintaining a good relationship with KPMG. Thus, the Court does not believe
> there are unique circumstances here that threaten adequacy.

*Id.* at 135 (quoting *In re Electronic Data Sys. Corp. Sec. Litig*, 226 F.R.D. 559, 570 (E.D. Tex.

2005)). However, the *Feder* Court based its decision on the facts of the case: plaintiffs alleged the

defendant had "concealed its fraud from the market and from [the auditor]." *Id.* In contrast, the

complaints filed by IIG and by Union in this case both allege PriceWaterhouseCoopers was complicit

and actively participated in Dell's alleged fraudulent scheme. In particular, many of the securities

fraud allegations against Dell rest on its use of non-GAAP accounting procedures in SEC filings;

-11-

PriceWaterhouseCoopers approved Dell's accounting methods and signed off on these filings. In these circumstances, it is somewhat troubling that ABP has not named PriceWaterhouseCoopers as a defendant. Although "generally, failure to join all defendants is a strategy choice, and . . . is probably not grounds for finding inadequacy," *id.* at 135 (quoting *Paper Systems, Incorporated v. Mitsubishi Corporation*, 193 F.R.D. 601 (E.D. Wis. 2000), it is also true that "[t]he omission to sue a potential defendant cannot but prejudice the class." *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990). In these circumstances, "plaintiff is obligated to supply a persuasive reason for the non-joinder." *Id.*

ABP asserts that it is merely following the Court's directive to "be careful whom you sue" and further argues that, if selected as lead plaintiff, it "may well name PwC as a defendant if the circumstances warrant." Reply at 7. ABP points out that in a case pending in the United States District Court for the District of New Jersey, ABP named as a defendant PricewaterhouseCoopers U.K., LLP, a European subsidiary of PriceWaterhouseCoopers. *See Stichting Pensioenfonds ABP V. Royal Dutch Shell plc*, Civil Action No. 06-095. Nevertheless, in light of ABP's relationship with PriceWaterhouseCoopers and the detailed allegations against this auditing firm filed by other proposed Lead Plaintiffs, the Court is troubled by ABP's failure to join PriceWaterhouseCoopers as defendants in their Amended Complaint. The Court need not determine whether this potential conflict of interest is fatal, however, because ABP is also subject to unique defenses that disqualify it as an appropriate Lead Plaintiff.

**b. Short selling**

Union Asset Management asserts that ABP is not the most adequate plaintiff because it adopts both long and short selling strategies and would therefore be subject to unique defenses.

Several courts have rejected short-sellers as potential lead plaintiffs in securities class actions, even where those plaintiffs also took "long" market positions, reasoning that short sales are inconsistent with the fraud-on-the-market theory on which most securities fraud claims are based. *In re Critical Path*, 156 F. Supp. 2d 1102, 1109-1110 (D. Cal. 2001); see also *In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780 (N.D. Ill. 2000). "Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny." *In re Critical Path*, 156 F. Supp. at 1109. Each of the complaints filed in the related Dell Securities Class Actions relies on the fraud-on-the-market theory. Therefore, ABP's position as a short-seller may well undermine the claims of the other class members.

## V. Union is Entitled to the Presumption

Union, the proposed Lead Plaintiff with the next largest financial interest in this case, has not taken any short positions on Dell stock and its fraud-on-the-market claims would not be subject to this defense. Nor has any other movant identified a potential conflict of interest between Union and the proposed class. Union satisfies the adequacy and typicality requirements of Rule 23. The detailed complaint and affidavit Union filed in response to this Court's Order of November 16, 2006 establish that Union has claims for securities fraud similar to those of the other class members and is prepared to take an active role in the litigation.

The Institutional Investors' Group objects that Union is a foreign entity. IIG argues that foreign entities should be "appointed alongside qualified and experienced American investors" in order to avoid unique defenses and mitigate the inconvenience of long-distance litigation. IIG, however, fails to identify any particular defense or inconvenience that would disqualify Union Asset Management. "There is, of course, a marked difference between affirmatively demonstrating that

-13-

[the presumptive Lead Plaintiff] is not an adequate representative or is subject to unique defenses and simply claiming that [Plaintiff] might be subject to such arguments in the future." *Gluck*, 976 F. Supp. at 547. There is neither a bar nor a presumption against appointing foreign entities to serve as lead plaintiff, particularly where, as here, the defendant is a U.S. company and the foreign entities bought their shares in the United States. *See In Re NPS Pharms., Inc. Sec. Litig.*, No. 2:06-00570, 2006 U.S. Dist. LEXIS 87231, at *13 (D. Ut. Nov. 17, 2006) (rejecting challenge to foreign lead plaintiff movant as inadequate or subject to unique defense, holding "concerns over subject matter jurisdiction and res judicata . . . are not present" where the foreign plaintiffs purchased stock in a United States company via a United States stock exchange). *See also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 153 (D. Del. 2005) (court appointed German investment manager lead plaintiff, calling "res judicata argument a red herring"); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No 5:03-2166, 2004 U.S. Dist Lexis 27043 (N.D. Ohio May 12, 2004) (appointing Austrian institution as lead plaintiff, holding "[t]he...attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm...is insupportable."); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002)("In light of today's travel and communication methods, the geographical location of the [foreign lead plaintiff movants] is irrelevant").

Because ABP, the Plaintiff with the largest financial interest in this litigation, is subject to unique defenses, it is not the most adequate plaintiff. Union Asset Management Holding AG has the next largest financial interest in the case, satisfies the typicality and adequacy requirements of Rule 23, and has timely filed a motion to be appointed Lead Plaintiff. Union is therefore presumptively the most adequate plaintiff. No other movant has shown that Union would be subject to unique defenses or would be unable to adequately represent the class. Furthermore, Union's

-14-

relationship with its chosen counsel is exactly the type of relationship the PSLRA seeks to sponsor: Union is an institutional investor "dedicated to the strengthening of corporate governance to protect investors." Affid. Gaebel & Von Cornberg, Mot. for Appt. as Lead Pl. Ex. D. After evaluating the merits of the case and the extent of its losses, Union decided to move for appointment as lead plaintiff and selected the firm of Motely Rice as proposed Lead Counsel. *Id.* Union worked with Motley Rice to select Byrd Davis Furman L.L.P. as liason counsel. *Id.* It seems clear from the affidavit of Union's in-house counsel that Union is firmly in the drivers' seat with regard to this litigation. Appointing this institutional investor as Lead Plaintiff and approving its choice of Lead Counsel will serve the PSLRA's goal of encouraging shareholders to protect their interests via securities class actions while discouraging "lawyer-driven" litigation.

## Conclusion

Accordingly,

IT IS ORDERED that the Motion for Appointment of Lead Plaintiff of Union Asset Management Holding AG [#39] is GRANTED.

IT IS FURTHER ORDERED that Union's choice of Lead Counsel and Liason Counsel is APPROVED. The firm of Motley Rice appears to have extensive experience in securities class action litigation, and the local firm of Byrd Davis Furman is amply qualified to assist as liason counsel in this matter. Ronald Motley, Joseph Rice, Lauren S. Antonino, James M. Hughes, and Ann Kimmel Ritter of Motley Rice LLC are appointed Lead Counsel in this case, and Don L. Davis of Byrd Davis Furman is appointed Liason Counsel.

IT IS FINALLY ORDERED that the miscellaneous motions to file supplemental briefing and pleadings over the page limit regarding the Motions for Appointment as Lead Plaintiff [Documents

#21, #137, #144] are GRANTED.  The Court gave full consideration to all arguments on this

important threshold issue in the consolidated securities class action.


SIGNED this the ___9___ day of April 2007.


_____

SAM SPARKS

UNITED STATES DISTRICT JUDGE