# EXHIBIT  F-2

BUCHWALS.

USDC SDNY
DOCUMENT
ELECTRONIC
DOC #:
DATE FILED: 6/27/05

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNNY COX, on behalf of himself and all others similarly situated,  ) )  | |
| Plaintiff,  ) ) ) | |
| v.  ) ) | Civil Action No. 1:05-CV-2637 (NRB) |
| DELPHI CORPORATION (F/K/A DELPHI AUTOMOTIVE SYSTEMS), J.T. BATTENBERG, III, ALAN S. DAWES, PAUL R. FREE, and JOHN SHEEHAN,  ) ) ) ) ) | |
| Defendants.  ) | |
| THOMAS MORRISON, on behalf of himself and all others similarly situated,  ) ) ) | |
| Plaintiff,  ) ) ) | |
| v.  ) ) | Civil Action No. 1:05-CV-2656 (NRB) |
| DELPHI CORPORATION, J.T. BATTENBERG, III, RODNEY O=NEAL, ALAN S. DAWES, and JOHN G. BLAHNIK,  ) ) ) ) ) | |
| Defendants.  ) | |

[Captions continued on next page]

**STIPULATION AND [PROPOSED] ORDER REGARDING APPOINTMENT OF LEAD
PLAINTIFFS AND APPROVAL OF LEAD PLAINTIFFS' SELECTION OF LEAD
COUNSEL**

ROBERT HILLMAN, on behalf of himself )
and all others similarly situated,        )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )    Civil Action No. 1:05-CV-2732 (NRB)
                                           )
DELPHI CORPORATION, J.T.                   )
BATTENBERG, III, ALAN S. DAWES,            )
PAUL R. FREE, and JOHN D. SHEEHAN,         )
                                           )
                    Defendants.            )
                                           )

CORINNE C. OREM, on behalf of herself  )
and all others similarly situated.         )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )    Civil Action No. 1:05-CV-2854 (NRB)
                                           )
DELPHI CORPORATION, J.T.                   )
BATTENBERG, III, RODNEY O=NEAL,            )
ALAN S. DAWES, and JOHN G.                 )
BLAHNIK,                                   )
                                           )
                    Defendants.            )

VANESSA JONES, individually and on     )
behalf of all others similarly situated,   )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )    Civil Action No. 1:05-CV-3323 (BSJ)
                                           )
DELPHI CORPORATION, J.T.                   )
BATTENBERG, III, RODNEY O=NEAL,            )
ALAN S. DAWES, and JOHN G.                 )
BLAHNIK,                                   )
                                           )
                    Defendants.            )

[Captions continued on next page]

IRA GAINES, on behalf of himself and all )
others similarly situated, )
 )
               Plaintiff, )
 )
          v. )          Civil Action No. 1:05-CV-3439 (BSJ)
 )
DELPHI CORPORATION, J.T. )
BATTENBERG, III, ALAN S. DAWES, )
PAUL R. FREE, and JOHN D. SHEEHAN, )
 )
               Defendants. )
 )

POLICEMEN'S ANNUITY & BENEFIT )
FUND OF CHICAGO, on behalf of itself )
and all others similarly situated, )
 )
               Plaintiff, )
 )          Civil Action No. 1:05-CV-4476 (UA)
          v. )
 )
DELPHI CORPORATION, JOHN D. )
SHEEHAN, J.T. BATTENBERG, III, )
ALAN S. DAWES, and PAUL R. FREE, )
 )
               Defendants. )

WHEREAS, on March 7, 2005, the first captioned class action complaint (*Cox v. Delphi Corp. (f/k/a Delphi Automotive Systems, LLC), et al.*, No. 1:05-CV-2637 (NRB)) alleging violations of federal securities laws was filed in the United States District Court for the Southern District of New York;

WHEREAS, twelve related complaints were subsequently filed. Six of those complaints were filed in the United States District Court for the Southern District of New York (*Morrison v. Delphi Corp., et al.*, No. 1:05-CV-2656 (NRB); *Hillman v. Delphi Corp., et al.* No. 1:05-CV-2732 (NRB); *Orem v. Delphi Corp., et al.*, No. 1:05-2854 (NRB); *Jones v. Delphi Corp., et al.*, No. 1:05-CV-3323 (BSJ); *Gaines v. Delphi Corp., et al.*, No. 1:05-CV-3439 (BSJ); and *Policemen's Annuity & Benefit Fund of Chicago v. Delphi Corp., et al.*, No. 1:05-CV-4476 (UA)) and six of those complaints were filed in the United States District Court for the Eastern District of Michigan (*Priest v. Delphi Corp., et al.*, No. 05-CV-70907-DPH-VMM; *City of Delray Beach Police and Firefighters Ret. Sys. v. Delphi Corp., et al.*, No. 05-CV-70945-DPH-VMM; *Karlin v. Delphi Corp., et al.*, No. 05-CV-70952-DPH-VMM; *Bennett v. Delphi Corp. (f/k/a Delphi Automotive Systems), et al.*, No. 05-CV-71157-VAR-MKM; *Raphael v. Delphi Corp., et al.*, No. 05-CV-71238-DPH-VMM; and *Police and Fire Ret. Sys. of the City of Detroit v. Delphi Corp., et al.*, No. 05-CV-60102-JCO-WC.) (All thirteen of the above actions shall be referred to collectively as the "Actions");

WHEREAS, on March 7, 2005, pursuant to Section 21D(a)(3)(A) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(A), notice was published which informed class members of their right to seek appointment as lead plaintiff;

WHEREAS, on May 6, 2005, putative class members Teachers' Retirement System of Oklahoma ("OTRS"), Oklahoma Law Enforcement Retirement System ("OLERS"), Public

Employees' Retirement System of Mississippi ("Mississippi PERS"), and San Diego City

Employees' Retirement System ("SDCERS") (collectively, the "Public Pension Fund Group")

timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment

as lead plaintiff and for approval of Bernstein Litowitz Berger & Grossmann LLP and Nix,

Patterson & Roach, L.L.P. as lead counsel;

    WHEREAS, on May 6, 2005, putative class members Nextra Investment Management

S.G.R. S.p.A. on behalf of the NIS US Equities Fund, the Nextra Azioni Beni Di Consumo Fund,

the Nextra Azioni Nord America Fund, the Primavera Trading Azioni Nord America Fund, and

the Nextra Azioni Nord America Dinamico Fund (collectively, "Nextra") and Raiffeisen

Kapitalanlage-Gesellschaft m.b.H. ("Raiffeisen") timely moved this Court, pursuant to Section

21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Schiffrin

& Barroway, LLP as lead counsel;

    WHEREAS, on May 6, 2005, putative class member Stichting Pensioenfonds ABP

("ABP") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for

appointment as lead plaintiff and for approval of Grant & Eisenhofer, P.A. as lead counsel;

    WHEREAS, on May 6, 2005, putative class member Secure Trading Group, Inc. ("STG")

timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment

as lead plaintiff and for approval of Entwistle & Cappucci, LLP as lead counsel;

    WHEREAS, on May 6, 2005, putative class members Illinois State Board of Investment

("ISBI") and State Universities Retirement System of Illinois ("SURS") (collectively, the

"Illinois Funds") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act,

for appointment as lead plaintiff and for approval of Berman DeValerio Pease Tabacco Burt &

Pucillo as lead counsel;[1]

WHEREAS, on May 6, 2005, putative class members International Union of Painters and Allied Trades Industry Pension Fund, National Roofing Industry Pension Fund, and California Ironworkers Field Trust Funds (collectively, the "Institutional Funds") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Lerach Coughlin Stoia Geller Rudman & Robbins, LLP as lead counsel;

WHEREAS, on May 6, 2005, putative class members Metzler GmbH, Activest Investmentgesellschaft mbH, and Amalgamated Bank as Trustee of the Longview Collective Investment, Longview Quantitative FD-Prude and Longview VEBA 500 Funds (collectively, the "Institutional Investor Group") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Milberg Weiss Bershad & Schulman, LLP as lead counsel;

WHEREAS, on May 6, 2005, putative class member Police and Fire Retirement System of the City of Detroit ("Detroit") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Kirby McInerney & Squire, LLP as lead counsel;[2]

WHEREAS, on May 6, 2005, putative class member Government Employees' Retirement System of the Virgin Islands timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Barrack Rodos & Bacine as lead counsel;

WHEREAS, on May 6, 2005, putative class member Policemen's Annuity & Benefit

---

[1] Subsequently, on May 17, 2005, SURS withdrew its application for appointment as lead plaintiff.

[2] Subsequently, on May 23, 2005, Detroit withdrew its application for appointment as lead plaintiff.

Fund of Chicago timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Much Shelist Freed Denenberg Ament & Rubenstein, P.C. as lead counsel;

WHEREAS, on May 6, 2005, putative class members Louisiana District Attorneys' Retirement System ("LADARS"), Richard Cameron ("Cameron"), Bruce Chernofsky and Samuel & Harriet Chernofsky (the "Chernofsky Family") timely moved this Court, pursuant to Section 21(D)(a)(3) of the Exchange Act, for appointment as lead plaintiff and for approval of Pomerantz Haudek Block Grossman & Gross, LLP as lead counsel;

WHEREAS, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court is to presume that the "most adequate plaintiff" is the person or group of persons who, "in the determination of the court has the largest financial interest in the relief sought by the class;"

WHEREAS, pursuant to the PSLRA, the lead plaintiff is vested with authority to select and retain lead counsel, subject to Court approval;

WHEREAS, OTRS, Mississippi PERS, ABP and Raiffeisen independently determined that it would be in the best interests of the Class to prosecute the Actions jointly as Lead Plaintiffs, with their respective law firms, Nix, Patterson & Roach, L.L.P., Bernstein Litowitz Berger & Grossmann LLP, Grant & Eisenhofer, P.A., and Schiffrin & Barroway, LLP, serving as Lead Counsel for the Class;

WHEREAS, OTRS, Mississippi PERS, ABP and Raiffeisen, whether taken independently of one another or together, have the largest loss of all other persons who filed motions seeking appointment as lead plaintiff;

WHEREAS, counsel for STG, the Police and Fire Retirement System of the City of Detroit, the Government Employees' Retirement System of the Virgin Islands, the Policemen's Annuity & Benefit Fund of Chicago, LADARS, Cameron and the Chernofsky Family have represented to counsel for OTRS, Mississippi PERS, ABP and Raiffeisen that they either support or do not oppose the appointment of OTRS, Mississippi PERS, ABP and Raiffeisen as Lead Plaintiffs for the Class and their choice of Lead Counsel for the Class; and

WHEREAS, counsel for the ISBI have represented to counsel for OTRS, Mississippi PERS, ABP and Raiffeisen that ISBI does not take any position on this matter.

IT IS HEREBY STIPULATED AND AGREED, by OTRS, Mississippi PERS, ABP and Raiffeisen through their undersigned counsel as follows:

1.      OTRS, Mississippi PERS, ABP and Raiffeisen shall, subject to the approval of the Court, be appointed Lead Plaintiffs pursuant to Section 21(D)(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B) in the Actions and all related actions consolidated herewith; and

2.      Lead Plaintiffs' selection of the law firms of Nix, Patterson & Roach, L.L.P., Bernstein Litowitz Berger & Grossmann LLP, Grant & Eisenhofer, P.A., and Schiffrin & Barroway, LLP shall, subject to the approval of the Court, be approved as Lead Counsel for the Class pursuant to Section 21(D)(a)(3)(B)(v) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B)(v).

Respectfully submitted,

NIX, PATTERSON & ROACH, L.L.P.

Dated: May 23, 2005

By: _Bradley Beckworth /JKC_
Bradley E. Beckworth
Jeffrey J. Angelovich
Susan Whatley
205 Linda Drive
Daingerfield, TX 75638
Telephone:     (903) 645-7333
Facsimile:      (903) 645-4415

*Counsel for OTRS and Proposed Lead Counsel*

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

Dated: May 23, 2005

By: _Gerald Silk /JKC_
Douglas M. McKeige
Gerald H. Silk
Jai K. Chandrasekhar
1285 Avenue of the Americas
New York, NY 10019
Telephone:     (212) 554-1400
Facsimile:      (212) 554-1444

*Counsel for Mississippi PERS and
Proposed Lead Counsel*

GRANT & EISENHOFER, P.A.

Dated: May 23, 2005

By: _Jay Eisenhofer /JKC_
Jay W. Eisenhofer
Sidney S. Liebesman
James L. Sabella
45 Rockefeller Center
650 Fifth Avenue
New York, NY 10111
Telephone:     (212) 755-6501
Facsimile:      (212) 755-6503

- and -

Geoffrey C. Jarvis
Sharan Nirmul
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone:     (302) 622-7000
Facsimile:     (302) 622-7100

*Counsel for ABP and Proposed Lead Counsel*

**SCHIFFRIN & BARROWAY, LLP**

Dated: May 23, 2005          By:   *Stuart Berman /OKC*

Richard S. Schiffrin
Stuart L. Berman
Darren J. Check
Sean M. Handler
Robin Winchester
280 King of Prussia Road
Radnor, PA 19087
Telephone:     (610) 667-7056
Facsimile:     (610) 667-7706

*Counsel for Raiffeisen and*
*Proposed Lead Counsel*

**IT IS SO ORDERED:**

Dated: *June 27, 2005*

The Honorable Naomi Reice Buchwald, U.S.D.J.

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE SIPEX CORPORATION
SECURITIES LITIGATION
_____/

AND CONSOLIDATED CASES
_____/

No. C 05-00392 WHA

ORDER APPOINTING LEAD
PLAINTIFFS GLOBIS CAPITAL
PARTNERS LP AND SHAYE
HIRSCH

**INTRODUCTION**

Pursuant to the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104–67, 109 Stat. 737 (codified as additions and amendments to 15 U.S.C. 77–78 and 18 U.S.C. 1964), this order appoints Globis Capital Partners LP and Shaye Hirsch as the lead plaintiffs for two cases previously consolidated as the above-named action. The consolidated actions involve securities fraud. This order sets forth the criteria for selection and approval of lead plaintiff and also sets forth the procedure that will be used for the selection and approval of class counsel.

**FACTS**

These consolidated class actions arise from the alleged financial misrepresentation by Sipex Corporation. Sipex designs, manufactures and markets semiconductors that are used by original equipment manufacturers in the computing, consumer electronics, communications and networking infrastructure markets (Jacobson Compl. ¶ 2). During the alleged class period, Sipex reported positive results in its SEC filings (*id.* ¶ 3).[1] In publically disseminated press

_____

[1] The alleged class period is April 10, 2003, through and including January 20, 2005.

1   releases, the company attributed the results to increased semiconductor sales and cost savings

2   resulting from restructuring its operations (*ibid*). On January 20, 2005, after the market closed,

3   Sipex issued a press release announcing that it might need to restate its reported financial

4   statements for fiscal year 2003 and for the first three quarters of fiscal year 2004 due to possible

5   "improper recognition of revenue" and that the company's audit committee and board of

6   directors had commenced an internal investigation of the matter (*id.* ¶ 4). As a result of the

7   investigation, Sipex stated that it would not be able to file its 2004 annual report with the SEC

8   on time (*ibid.*). In reaction to this news, the price of Sipex common stock dropped 23% from its

9   previous trading day's closing price (*ibid*).

10       Four class actions were filed.[2] Plaintiffs named Sipex corporation and its officers,

11   Douglas M. McBurnie, Walid Maghribi, Phillip Kagel and Clyde Ray Wallin as defendants.

12   The complaints alleged that defendants violated Section 10(b) and 20(a) of the Securities

13   Exchange Act of 1934 and Rule10b-5, promulgated thereunder, by making allegedly false and

14   misleading statements, causing plaintiffs to purchase Sipex securities at artificially inflated

15   prices.

16       Initially, there were several competing movants for the position of lead plaintiff:

17   Walter Bednarszyk and James T. Collier, Roy and Margaret Gentles, the "Young Group" that

18   included six individuals and the "Globis Group" that included Globis Capital Partner LP and

19   Shaye Hirsch. Before the hearing on the appointment of lead plaintiff, the Court requested each

20   lead plaintiff to complete a questionnaire. The Court's questionnaire alerted movants that it

21   would evaluate the qualifications of single investors, not groups, as lead plaintiffs. The Court's

22   questions focused on the qualifications of the lead plaintiff, their experience in managing

23   litigation, potential conflicts and transactions related to the instant securities case. The Court

24   received back two questionnaires, one from Paul Packer, on behalf of Globis Capital Partners

25

26

27       [2] Initially the following five related actions were filed: *Barbara Keller v. Sipex*, C05-00331 WHA,
    *Coil Partners, LLC v. Sipex*, C05-00392 WHA, *Levy v. Sipex*, C05-00505 WHA and *Alfred H. Jacobson v.*

28   *Sipex*, C05-00712 WHA. Eventually, all the actions voluntarily dismissed except for *Coil Partners, LLC v.*
    *Sipex* and *Alfred H. Jacobson v. Sipex*. They were consolidated into this action.

United States District Court
For the Northern District of California

2

1    LP, and one from Shaye Hirsch. None of the other movants returned questionnaires.

2    Subsequently, the Gentiles moved for withdrawal of appointment as lead plaintiff.

3        The Court held a hearing on the appointment of lead plaintiff on May 12, 2005. The

4    only candidates present were Mr. Packer, on behalf of Globis, and Mr. Hirsch. The Court

5    questioned both plaintiffs on their qualifications, experience and financial loss.

6        Mr. Packer is the managing member of Globis Capital Partners LP, a hedge fund that

7    deals with small and mid-cap-value companies. He has previous experience as a lead-plaintiff.

8    Before the alleged class period he held 520,570 shares of Sipex stock. During the alleged class

9    period he purchased 1,110,086 shares of stock and sold 1,201,229 shares of stock. Despite

10   being a net seller during the alleged class period, Globis' alleged estimated loss is $725,857, a

11   point discussed below. Mr. Hirsch is an individual investor. During the alleged class period he

12   bought $7,000 shares. He estimates his total loss to be between $20,000 and $25,000. Globis

13   and Mr. Hirsch asked the Court to appoint them as joint lead-plaintiffs. Mr. Packer and Mr.

14   Hirsch are friends and their families have known each other for many years. Each had seen the

15   published notice of the class action and had contacted the law firm of Bernstein Liebhard &

16   Lipshitz LLP. The firm represents Mr. Packer in other matters and Mr. Hirsch had a personal

17   relationship with a partner at the firm.

18       At the hearing, the Court noted that Globis appears to have been a net seller and asked

19   counsel to provide the Court with supplemental briefing as to whether defendants would assert

20   at class certification that Globis is not an appropriate class representative. The defendants and

21   Globis provided the Court with supplemental briefing. Defendants' position is that Globis,

22   being a net seller, profited from the alleged stock price inflation and therefore is not

23   representative of a typical and adequate plaintiff in this class action. Globis' position is that it

24   is an adequate and typical lead plaintiff in this class action if one calculates financial loss using

25   a "first-in/first-out" (FIFO) method of accounting. This issue is addressed in depth below.

26       After the hearing, three of the fives cases were voluntarily dismissed and the Court

27   issued an order consolidating the remaining two actions. The following two actions were

28

United States District Court
For the Northern District of California

3

United States District Court
For the Northern District of California

1   consolidated into the present case: *Coil Partners, LLC v. Sipex*, C05-00392 WHA and *Alfred*

2   *H. Jacobson v. Sipex*, C05-00712 WHA.

3                                    ANALYSIS

4           The PSLRA seeks to place a real investor, not a lawyer, in charge of the litigation on

5   behalf of the class. This statutory responsibility now resides in what the PSLRA calls the "lead

6   plaintiff." This representative acts as a fiduciary for all members of the proposed class and

7   must provide fair and adequate representation and management to obtain the largest recovery

8   for the proposed class consistent with good faith and meritorious advocacy.

9           The PSLRA provides that the Court "shall appoint as lead plaintiff the member or

10  members of the purported plaintiff class that the court determines to be the most capable of

11  adequately representing the interests of the class members in accordance with this

12  subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(I). The Act creates a rebuttable presumption that

13  the most adequate plaintiff should be the plaintiff who: (1) has brought the motion for

14  appointment of lead counsel in response to the publication of notice; (2) has the "largest

15  financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements

16  of FRCP 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc). The above presumption may be

17  rebutted only upon proof that the presumptive lead plaintiff (1) will not fairly and adequately

18  protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff

19  incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

20          The PSLRA does not provide any guidance concerning the method of calculating which

21  plaintiff has the "largest financial interest." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Courts

22  in this district have equated "largest financial interest" with the amount of potential recovery.

23  *See In Re Critical Path, Inc. Sec Litig.*, 156 F. Supp. 2d 1102, 1107–08 (N.D. Cal 2001); *In Re*

24  *Network Assocs., Inc. Sec. Litig.*, 76 F. Supp.2d 1017, 1030 (N. D. Cal. 1999); *Weisz v. Calpine*

25  *Corp.*, 2002 WL 32818827, *5 (N.D. Cal 2002). In determining which lead plaintiff has

26  suffered the greatest loss under the PSLRA, the law regulating securities losses must be

27  reviewed in part, a discussion that will presently include the issue of the "first-in/first-out"

28  (FIFO) and "last-in/first-out" (LIFO) methods.

                                          4

**United States District Court**
For the Northern District of California

1    Under the purchaser-seller rule, only purchasers who actually buy or sellers who

2    actually sell in reliance on fraud may sue. Those who simply refrain from buying or selling,

3    even if in reliance on fraud, may not sue. *Blue Chip Stamps et al. v. Manor Drug Stores*, 421

4    U.S. 723, 731–755 (1975). The class period begins when the market was first defrauded. It

5    ends on the date when the truth was fully revealed or when the misinformation became too stale

6    to matter. Those defrauded in between can sue. Once the full truth comes out, an investor

7    electing to keep the stock and gamble on the future events cannot sue for future losses.

8    Otherwise, securities manipulators would become guarantors of a floor market price — even

9    after their manipulations had run their course. *See, e.g., SEC v. Shapiro*, 494 F.2d 1301, 1309

10   (2nd Cir. 1979).

11    The rule of loss causation, in the typical case, requires that the purchaser prove that

12   when the truth came out, the stock price dropped and did so by reason of the exposure of the

13   fraud rather than by reason of industry-wide down trends or other negative factors.

14   *Dura Pharmaceuticals, Inc., v. Michael Brudo*, ___ U. S. ___, 125 S. Ct. 1627, 1631 (2005).

15   Put another way, it is not enough to show that at the time of the purchase, the misrepresentation

16   had created a so-called "fraud premium," *i.e.*, that had the truth been known at the time of

17   purchase, the market price would have been lower. Rather than focusing on the time of the

18   *purchase*, we must, for damages purposes, focus on the time of the *sale* and determine the

19   extent to which revelation of fraud depressed the price as of the sale date. To be more precise,

20   the key inquiry is to isolate the extent of misrepresentations (originally inducing the purchase)

21   that became known during the time the shares were held and then to determine the contributory

22   and cumulative effect of those revelations on the price as of the date of sale, the date of sale

23   being the date of an actual sale within the class period or, constructively, the end of the class

24   period for all shares held to the end.

25    Suppose a share is purchased for $100 in reliance on an actionable misrepresentation.

26   The entire truth then suddenly comes out. The share price immediately drops $60. The only

27   reason for the plunge is the revelation. The entire $60 is recoverable.

28

5

1    What happens, however, if the defrauded investor sells before the end of the class

2    period? In the case of a purchaser (within the class period) who sells *before any* of the truth is

3    revealed, of course, recovery might be doubtful. This is because the market has absorbed the

4    misinformation and imposed a fraud premium on both the purchase and sale. Often the fraud

5    premium will be the same in each case, thus cancelling the loss. In the case of a purchaser

6    (within the class period) who sells immediately after a partial revelation of the truth with a

7    resultant plunge in the stock price, the critical inquiry, again, is the extent to which the partial

8    revelation has depressed the price as of the date of the sale. Again, the focus is not on the fraud

9    premium on the day of purchase. The focus must be on the day of sale and on the contribution

10    to the loss due to the partial revelation of fraud.

11    Turning now to a scenario closer to our immediate case, what happens when an investor

12    already owns some shares going into the class period and/or trades actively within the class

13    period? When an investor already owns shares at the outset of the class period and sells them

14    during the class period, the investor actually profits from the fraud by recovering a fraud

15    premium over and above the true value of the shares. When the same investor already holds

16    shares at the outset of the class period but, in addition, buys and sells shares during the class

17    period, the gains received must be used to reduce the losses incurred. Otherwise, the investor

18    would reap a windfall.

19    Over the course of the class period, there are two items needed for this calculus. One

20    may be called the "loss-causation contribution." This is the contribution made to the overall

21    loss by revelation of fraud between the dates of the purchase and sale. This item is relevant to

22    recoverable damages as set forth by the Supreme Court. *See Dura Pharm. Inc.,* 125 S. Ct. at

23    1631–2. The other is the "fraud premium," *i.e.,* the extent to which the price remains inflated

24    due to unrevealed fraud. The second item is relevant to the offsetting of windfall for shares sold

25    during the class period.

26    The LIFO/FIFO issue arises, among other scenarios, when a trader has an inventory of

27    the shares in question going into the class period and trades during the class period, as here.

28    Suppose one share is owned going into the class period, another share is then bought in reliance

United States District Court
For the Northern District of California

6

United States District Court
For the Northern District of California

1   on the fraud, one share is then sold midway through the class period and, finally, one share is

2   sold at the end of the class period. Recovery is allowable, of course, only for the share

3   purchased during the class period. But which share was sold when? Under FIFO, the

4   previously-held (non-actionable) share would be the first sold share. The fraud-induced

5   (actionable) share would be the last. Under LIFO, it would be the opposite. In doing the math

6   for the recoverable loss and the offsetting windfall, it would be necessary to determine the fraud

7   premium and loss-causation contribution. Depending on which of the two sales is deemed to be

8   actionable, these calculations will vary.[3]

9        The FIFO method would dictate that the actionable purchase was sold later. That loss

10  would be offset by a windfall of any fraud premium received on the first sale. The LIFO

11  method would dictate that the actionable purchase was sold first. There would be no windfall

12  on the later sale since, by definition, any fraud premium will always completely be eliminated

13  by the end of the class period. This, plus the fact that the recoverable loss will often be less

14  during the mid-range of the class period explains why defendants prefer the LIFO method and

15  plaintiffs prefer the FIFO, although this preference can be reversed in particular cases.

16       In the Court's view, LIFO is closer to the economic realities of market investing and the

17  purposes of the securities acts. If a trader buys and sells the same number of shares of the same

18  issue, on the same day, the economic reality of the basic investment decision is a net of one

19  against the other, *i.e.*, no change in position, at least as of the end of the day. Put differently, if

20  a trader buys and sells shares of the same issue over a brief period, the trader is relying on the

21  same basic market analysis and same market information. If a fraudulent misrepresentation has

22  affected the market, it has affected *both* sides of the equation. The LIFO method better tracks

23  the impact of investment decisions and how market fraud impacts them. This is at the core of

24  the securities acts. So, this Court will follow a LIFO convention for investors who both buy and

25  sell within the class period.

26

27

28

---

[3]   This Court expresses no opinion on the scenario in which the stock price goes up during the class period in the presence of fraud but where the stock price would have gone up even in absence of the fraud. *See Dura Pharm., Inc.*, 125 S. Ct. at 1632.

1    This conclusion is in accordance with the weight of authority. *See, e.g., In re McKesson*

2    *HBOC, Inc. Sec. Litig.,* 97 F. Supp. 2d 993, 996 fn.2 (N. D. Cal. 1999); *In re Network Assoc.*

3    *Inc. Sec. Litig.,* 76 Supp. 2d 1017, 1027 (N.D. Cal. 1999); *Weisz v. Calpine Corp.,* 2002 WL

4    32818827, *7 (N.D. Cal 2002); *In re Clearly Canadian Sec. Litig.,* 1999 U.S. Dist. LEXIS

5    14273, *12–14 (N.D. Cal. 1999); *In re Comdisco Sec. Litig.,* 150 F. Supp. 2d 943, 945 (N.D. Ill.

6    2001).

7    At the May 12, 2005 hearing, counsel for Globis relied on an unpublished decision,

8    *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.,* 2004 U.S. Dist. LEXIS

9    27008 (N.D. Cal. 2004), that cites *Broudo v. Dura Pharmaceuticals Inc.,* 339 F.3d 933, 938

10   (9th Cir. 2003), for the proposition that damages may be proved by simply showing that

11   plaintiffs purchased stock at an inflated price. As discussed, *Broudo* has been subsequently

12   overturned by *Dura Pharmaceuticals, Inc. v. Michael Broudo,* 125 S. Ct. 1627, 1631 (2005). In

13   its supplemental briefing, Globis cited published cases that used FIFO as an accounting

14   methodology for determining financial losses and several unpublished cases. *See e.g. Chill v.*

15   *Green Tree Financial Corp.,* 181 F.R.D. 398, 411 (D. Minn 1998); *Vansguard v. Ariba, Inc.,*

16   C-03-00277 JF, slip op. (N.D. Cal. 2003). These cites, however, are not helpful. While the

17   courts accepted the calculation of damages based on FIFO, they did not arrive at the application

18   of FIFO after a reasoned discussion of the merits. It was merely a background fact.

19   Since Globis, an active trader, was a net *seller* throughout the class period, there is a

20   plausible chance that Globis will have no net recovery. This is not yet certain, however,

21   because the necessary calculations are unknowable at this early stage. Only with the benefit of

22   expert evidence could the necessary items be determined and then netted. For the time being,

23   Globis has a sufficient stake to be appointed as one of two lead plaintiffs. Because the net loss

24   is speculative for Globis at this point and because Globis may eventually be shown to have no

25   net loss, Mr. Hirsch will be made a co-lead plaintiff. This ruling is without prejudice to defense

26   arguments to be made later, on the class certification motion. The same is true for the other

27   Rule 23 issues raised by the defense. (No other competing lead plaintiff is challenging the Rule

28   23 qualifications of the pending candidates).

United States District Court
For the Northern District of California

8

**RESPONSIBILITIES OF LEAD PLAINTIFF**

The lead plaintiffs must take affirmative steps to keep themselves informed at all times of the progress and status of the case, the strengths and weaknesses of the case, the prospects for settlement, and the resources invested in the suit or proposed to be invested. With respect to each major litigation event, such as important motions, settlement discussions, trial, and trial preparation, the lead plaintiffs must actively inform themselves in advance and shall have the authority and responsibility to direct counsel, after, of course, receiving the advice of counsel. The lead plaintiffs must consult with counsel in advance to determine whether major tasks proposed by counsel are likely to add more value to the case than would be incurred in time and expense. The lead plaintiffs shall meet in person with lead trial counsel at least quarterly to review the progress and status of the case, shall attend all major hearings and mediation sessions and shall, at a minimum, attend all sessions of the trial where the jury is present. And, of course, the lead plaintiff must give testimony. No settlement will be approved by the Court without the lead plaintiffs' careful recommendation in favor of it. Reasonable travel, telephone and business expenses incurred as a result of the lead plaintiff duties, if detailed and itemized, may be reimbursed as expenses from any recovery.

Appended to this order are two forms of certification which Mr. Hirsch and Mr. Packer, on behalf of Globis Partners LLP, individually, must sign, file and serve on or before JUNE 1, 2005, in order to complete the appointment, obligating themselves to carry out the responsibilities as lead counsel and the procedure for selecting and approving class counsel, a procedure to which this order now turns.

**PROCEDURE FOR SELECTING AND APPROVING CLASS COUNSEL**

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. 78u-4(a)(3)(B)(v). Selection and approval of class counsel are important responsibilities for the lead plaintiff and the court. The selection and approval require an assessment of the strengths, weaknesses and experience of counsel as well as the financial burden — in terms of fees and costs — on the class.

United States District Court
For the Northern District of California

9

United States District Court
For the Northern District of California

1   *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602–03 (N.D. Cal. 2000); *Network Assocs.*,

2   76 F. Supp. 2d at 1033–34.

3       Any important decision made by a fiduciary should be preceded by due diligence. A

4   lead plaintiff is a fiduciary for the investor class. No decision by the lead plaintiff is more

5   important than the selection of class counsel. Consequently, the lead plaintiff should precede

6   his or her choice with due diligence. The extent of such due diligence is a matter of judgment

7   and reasonableness based on the facts and circumstances.

8       The lead plaintiffs should immediately proceed to perform their due diligence and,

9   through counsel, move for the appointment and approval of their selected counsel no later than

10   JUNE 17. The motion should be accompanied by declarations from each lead plaintiff

11   explaining the due diligence undertaken by each with respect to the selection of class counsel.

12   The declarations should also explain why the counsel selected was favored over other potential

13   candidates. The declarations should be filed under seal and not served on defendants. The

14   motion for approval of lead plaintiffs' choice of counsel, however, should be served on defense

15   counsel. No hearing will be held on the motion unless the Court determines that it would be

16   beneficial. Once class counsel is approved, the first order of business will be to file a

17   consolidated complaint. The Court expects this to be done by JULY 14 and any motion to

18   dismiss to be filed by AUGUST 11.

19

20      **IT IS SO ORDERED.**

21

22   Dated: May 24, 2005.

23                           WILLIAM ALSUP
                               UNITED STATES DISTRICT JUDGE

24

25

26

27

28

10

1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT
7
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9
10   IN RE SIPEX CORPORATION                    No. C 05-00392 WHA
     SECURITIES LITIGATION
11   _____/          **CERTIFICATION OF LEAD**
12                                              **PLAINTIFF SHAYE HIRSCH**
     AND CONSOLIDATED CASES
13   _____/
14        I have read and understand the Court's Order Appointing Lead Plaintiffs Globis Capital
15   Partners LP and Shaye Hirsch, including the duties of lead plaintiff and the procedure for
16   selecting and approving class counsel.  I agree and promise to faithfully execute those provisions
17   and to abide by the order.  Once class counsel are selected and approved, I will work and
18   cooperate fully with such counsel for the benefit of the investor class.
19
20   Dated:
21                                              Mr. Shaye Hirsch
22                                              Address: _____
23
24                                              _____
25
26
27
28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   IN RE SIPEX CORPORATION                   No. C 05-00392 WHA
     SECURITIES LITIGATION
11   _____/         **CERTIFICATION OF LEAD**
12                                             **PLAINTIFF GLOBIS CAPITAL**
     AND CONSOLIDATED CASES                    **PARTNERS LP**
13   _____/

14        I have read and understand the Court's Order Appointing Lead Plaintiffs Globis Capital

15   Partners LP and Shaye Hirsch, including the duties of lead plaintiff and the procedure for

16   selecting and approving class counsel.  I agree and promise to faithfully execute those

17   provisions and to abide by the order.  Once class counsel are selected and approved, I will work

18   and cooperate fully with such counsel for the benefit of the investor class.

19

20   Dated:                                    _____

21
                                               Mr. Paul Packer on behalf of Globis
22                                             Partners LP

23                                             Address: _____

24                                             _____

25

26

27

28



The Honorable John C. Coughenour

1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

WESTERN DISTRICT OF WASHINGTON

8

AT SEATTLE

9
10 | SOUTH FERRY LP #2, Individually and on Behalf of All Others Similarly Situated,

)
)    Master File No. CV04-1599C

11 |                          Plaintiff,

)
)

12 |        vs.

)    [~~PROPOSED~~] ORDER APPOINTING
)    LEAD PLAINTIFFS AND

13 | KERRY K. KILLINGER, THOMAS W. CASEY, DEANNA W. OPPENHEIMER, WILLIAM W.

)    APPROVING LEAD PLAINTIFFS'
)    SELECTION OF COUNSEL

14 | LONGBRAKE, CRAIG J. CHAPMAN, JAMES G. VANASEK, MICHELLE MCCARTHY, and

)
)

15 | WASHINGTON MUTUAL INC.,

)
)

16 |                          Defendants.

)

17
18
19
20
21
22
23

04-CV-01599-ORD

24
25
26

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206/839-0730 • Fax: 206/839-0728

1     Having considered The WAMU Investors Lead Plaintiff Group's Motion for

2 Appointment of Lead Plaintiff and Approval of Selection of Plaintiffs' Lead Counsel (the

3 "Motion"), and good cause appearing therefor, it is hereby ORDERED that:

4     1.    The Motion is GRANTED.

5     2.    The Court, having considered the provision of § 21D(a)(3)(B), as amended by the

6 PSLRA, hereby determines that The WAMU Investors Lead Plaintiff Group, consisting of

7 Metzler Investment GmbH, South Ferry LP #2, and The Walden Management Co. Pension Plan,

8 is appointed as Lead Plaintiff in this action.

9     3.    Lead Plaintiffs' selection of Lead Counsel is approved. Pursuant to 15 U.S.C.

10 § 78u-4(a)(3)(B)(v), the law firm of Milberg Weiss Bershad & Schulman LLP is appointed as

11 Lead Counsel in this consolidated action.

12     4.    Lead Counsel for the class shall have the following responsibilities and duties, to

13 be carried out either personally or through counsel whom Lead Counsel shall designate:

14     a.    To coordinate the briefing and argument of motions;

15     b.    To coordinate the conduct of discovery proceedings;

16     c.    To coordinate the examination of witnesses in depositions;

17     d.    To coordinate the selection of counsel to act as spokesperson at pretrial

18 conferences;

19     e.    To call meetings of counsel as they deem necessary and appropriate from

20 time to time;

21     f.    To coordinate all settlement negotiations with counsel for defendants;

22     g.    To coordinate and direct the pretrial discovery proceedings and the

23 preparation for trial and the trial of this matter, and to delegate work responsibilities to selected

24 counsel as may be required; and

25     h.    To supervise any other matters concerning the prosecution or resolution of

26 the related and/or consolidated actions.

[PROPOSED] ORDER APPOINTING LEAD PLAINTIFFS AND
APPROVING LEAD PLAINTIFFS' SELECTION OF COUNSEL
(Master File No. CV04-1599C)
DOCS\26008V1    - 1 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206/839-0730 • Fax: 206/839-0728

5.    No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiff in this action without the approval of Lead Counsel, so as to prevent duplicative pleadings or discovery by plaintiffs in this action. No settlement negotiations shall be conducted in this action without the approval of Lead Counsel.

6.    Defendants' counsel may rely upon agreements made with Lead Counsel. Such agreements shall be binding on plaintiffs.

7.    Any counsel of record for a party in this action who is not a member of the Bar of this District is hereby admitted to practice *pro hac vice* in this action.

Dated this 30 day of Nov , 2004.

HONORABLE JOHN C. COUGHENOUR
UNITED STATES DISTRICT JUDGE

Presented by:

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**
LORI G. FELDMAN, WSBA #29096
DOUGLAS C. MCDERMOTT, WSBA #31500

LORI G. FELDMAN
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: (206) 839-0730
Facsimile: (206) 839-0728

-and-

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**
MELVYN I. WEISS
SALVATORE J. GRAZIANO
PETER E. SEIDMAN
SHARON M. LEE
1 Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 868-1229
Facsimile: (212) 594-5300

[Proposed] Lead Counsel for Plaintiffs

[PROPOSED] ORDER APPOINTING LEAD PLAINTIFFS AND
APPROVING LEAD PLAINTIFFS' SELECTION OF COUNSEL
(Master File No. CV04-1599C)
DOC5\226008V1

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206/839-0730 • Fax: 206/839-0728

- 2 -

```
1    LAW OFFICES OF
        MICHAEL A. SWICK, LLP
2    MICHAEL A. SWICK
     One William Street, Suite 900
3    New York, New York 10005
     Telephone: (212) 584-0770
4    Facsimile: (212) 584-0799

5
     BULL & LIFSHITZ, LLP
6    PETER D. BULL
     JOSHUA M. LIFSHITZ
7    18 East 41st Street, 11th Floor
     New York, New York 10017
8    Telephone: (212) 213-6222
     Facsimile: (212) 213-9405
9
     Plaintiff's Counsel
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
```

[PROPOSED] ORDER APPOINTING LEAD PLAINTIFFS AND
APPROVING LEAD PLAINTIFFS' SELECTION OF COUNSEL
(Master File No. CV04-1599C)
DOCS\226008V1

- 3 -

Milberg Weiss Bershad & Schulman LLP
1001 Fourth Avenue, Suite 2550
Seattle, WA 98154
Telephone: 206/839-0730 • Fax: 206/839-0728



1   MILBERG WEISS BERSHAD
      & SCHULMAN LLP
2   JEFF S. WESTERMAN (94559)
    355 S. Grand Ave., Suite 4170
3   Los Angeles, CA 90071-3172
    Telephone: (213) 617-1200
4   (213) 617-1975 (fax)

5   MILBERG WEISS BERSHAD
      & SCHULMAN LLP
6   STEVEN G. SCHULMAN
    PETER E. SEIDMAN
7   One Pennsylvania Plaza
    New York, NY 10119
8   Telephone: (212) 594-5300
    (212) 868-1229 (fax)

9   Proposed Lead Counsel

10

11  [Additional Counsel on Signature Page]

12              UNITED STATES DISTRICT COURT

13           CENTRAL DISTRICT OF CALIFORNIA

14                    WESTERN DIVISION

15  CONWAY INVESTMENT CLUB,          )  Case No. 2:04-cv-05025
     Individually and On Behalf of All )
16  Others Similarly Situated,        )  [PROPOSED] ORDER
                                      )  CONSOLIDATING THE ACTIONS,
17                      Plaintiff,    )  APPOINTING LEAD PLAINTIFF,
                                      )  AND APPROVING SELECTION OF
18         vs.                        )  LEAD COUNSEL
    CORINTHIAN COLLEGES, INC.,        )
19  DAVID MOORE, ANTHONY              )  Date:       October 4, 2004
    DIGIOVANNI and DENNIS BEAL,       )  Time:       10:00 a.m.
20                                    )  Courtroom: Honorable Manuel L.
                        Defendant.    )             Real
21                                    )
                                      )  Date Action Filed: July 8, 2004
22
    (Additional Captions Set Forth Below)
23

24

25

26

27

28

| | | |
|---|---|---|
| 1 | BARBARA KAUFMAN, On Behalf of Herself and All Others Similarly Situated, | Case No. 2:04-cv-05091 |
| 2 | | Judge:  Honorable Manuel L. Real |
| 3 | Plaintiff, | Courtroom:  8 Date Action Filed:  July 8, 2004 |
| 4 | vs. | |
| 5 | CORINTHIAN COLLEGES, INC., DAVID G. MOORE, DENNIS N. | |
| 6 | BEAL, AND ANTHONY F. DIGIOVANNI, | |
| 7 | Defendant. | |
| 8 | | |
| 9 | MICHAEL ORLANDO, Individually and On Behalf of All Others Similarly | Case No. 2:04-cv-05754 |
| 10 | Situated, | |
| 11 | | |
| 12 | Plaintiff, | Judge:  Honorable Manuel L. Real Date Action Filed:  July 16, 2004 |
| 13 | vs. | |
| 14 | CORINTHIAN COLLEGES, INC., DAVID MOORE, ANTHONY | |
| 15 | DIGIOVANNI and DENNIS BEAL, | |
| 16 | Defendant. | |
| 17 | PAULENA PARTNERS, LLC, Individually and On Behalf of All | Case No. 2:04-cv-06057  R |
| 18 | Others Similarly Situated, | |
| 19 | Plaintiff, | Judge:  Honorable Dale S. Fischer Date Action Filed:  July 23, 2004 |
| 20 | vs. | |
| 21 | CORINTHIAN COLLEGES, INC., DAVID MOORE, ANTHONY | |
| 22 | DIGIOVANNI and DENNIS BEAL, | |
| 23 | Defendant. | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

| | | |
|---|---|---|
| 1 | JAMES DOLAN, On Behalf of Himself and All Others Similarly Situated, | Case No. 2:04-cv-06076 |
| 2 | | |
| 3 | Plaintiff, | Judge: Honorable Manuel L. Real Date Action Filed: July 23, 2004 |
| 4 | | |
| 5 | vs. | |
| 6 | CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, DENNIS BEAL, and ANTHONY DIGIOVANNI, | |
| 7 | | |
| 8 | Defendant. | |
| 9 | KWOK YAU TONG, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:04-cv-06993 |
| 10 | | |
| 11 | Plaintiff, | Judge: Honorable Manuel L. Real Date Action Filed: August 20, 2004 |
| 12 | | |
| 13 | vs. | |
| 14 | CORINTHIAN COLLEGES, INC., DAVID MOORE, ANTHONY DIGIOVANNI and DENNIS BEAL, | |
| 15 | | |
| 16 | Defendant. | |
| 17 | DOUGLAS ROSE, On Behalf of Himself and All Others Similarly Situated, | Case No. 2:04-cv-06994 |
| 18 | | |
| 19 | Plaintiff, | Judge: Honorable Manuel L. Real Date Action Filed: August 20, 2004 |
| 20 | | |
| 21 | vs. | |
| 22 | CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, DENNIS BEAL and ANTHONY DIGIOVANNI, | |
| 23 | | |
| 24 | Defendant. | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

SCANNED

| | |
|---|---|
| 1 | IVAN MENESES, Individually and on | Case No. 8:04-cv-923 |
| 2 | Behalf of All Others Similarly Situated, | 2104-8513 T |
| 3 | Plaintiff, | Judge: Honorable David O. Carter |
| 4 | vs. | Date Action Filed: August 4, 2004 |
| 5 | CORINTHIAN COLLEGES, INC., ANTHONY DIGIOVANNI, DAVID | |
| 6 | MOORE and DENNIS BEAL, | 04-6994 |
| 7 | Defendant. | |
| 8 | DOUGLAS ROSE, On Behalf of Himself and All Others Similarly | Case No. 8:04-cv-926 |
| 9 | Situated, | Judge: Honorable David O. Carter |
| 10 | Plaintiff, | Date Action Filed: August 5, 2004 |
| 11 | vs. | |
| 12 | CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, | |
| 13 | DENNIS BEAL and ANTHONY DIGIOVANNI, | |
| 14 | | |
| 15 | Defendant. | |
| 16 | KOK YEOH, On Behalf of Himself and | Case No. 8:04-cv-959 |
| 17 | All Others Similarly Situated, | 04-8393 |
| 18 | Plaintiff, | Judge: Honorable Gary L. Taylor |
| 19 | vs. | Date Action Filed: August 9, 2004 |
| 20 | CORINTHIAN COLLEGES, INC., DAVID MOORE, PAUL ST. PIERRE, | |
| 21 | DENNIS BEAL and ANTHONY DIGIOVANNI, | |
| 22 | Defendant. | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

SCANNED



| | | |
|---|---|---|
| 1 | JAMES STELLATO, On Behalf of Himself and All Others Similarly Situated, | ) Case No. 8:04-cv-997 |
| 2 | | ) |
| 3 | Plaintiff, | ) Judge: Honorable David O. Carter |
| 4 | vs. | ) Date Action Filed: August 16, 2004 |
| 5 | CORINTHIAN COLLEGES, INC., | ) |
| 6 | DAVID MOORE, PAUL ST. PIERRE, DENNIS BEAL and ANTHONY | ) |
| 7 | DIGIOVANNI, | ) |
| 8 | Defendant. | ) |

OF 84-01 R

SCANNED

1    Having considered the motion of Metzler Investment GmbH ("Metzler

2  Investment"), and good cause appearing therefore, the Court orders as follows:

3

4       1.    The Motion is GRANTED;

5       2.    The above-captioned actions are consolidated pursuant to Fed. R. Civ. P.

6  42(a);

7

8       3.    Metzler Investment is the "most adequate plaintiff" and accordingly, is

9  appointed Lead Plaintiff pursuant to 15 U.S.C. 78u-4(a)(3)(B)(iii);

10      4.    Milberg Weiss Bershad & Schulman LLP is appointed Lead Counsel,

11

12  pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

13  IT IS SO ORDERED.

14  DATED: **Nov. 1**, 2004

15                                          _____
                                            Honorable Manuel L. Real
16  Submitted by:                           United States District Court Judge

17  Dated: September 7, 2004

    MILBERG WEISS BERSHAD
18    & SCHULMAN LLP
    Jeff S. Westerman

19

20  _____
         JEFF S. WESTERMAN

21  355 S. Grand Ave., Suite 4170
    Los Angeles, CA 90071-3172
22  Telephone: (213) 617-1200
    Facsimile: (213) 617-1975
23

24  MILBERG WEISS BERSHAD
    & SCHULMAN LLP
25  Steven G. Schulman
    Peter E. Seidman
26  One Pennsylvania Plaza
    New York, NY 10119
    Telephone: (212) 594-5300
27  Facsimile: (212) 868-1229

28  Proposed Lead Counsel



1 | THE BRUALDI LAW FIRM
Richard B. Brualdi
2 | 29 Broadway
Suite 2400
3 | New York, New York 10006
Telephone: (212) 952-0602
4 | Facsimile: (212) 952-0608

5 | Plaintiff's Counsel

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

SCANNED.

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a resident of the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 355 South Grand Avenue, Suite 4170, Los Angeles, California 90071.

2.    That on September 7, 2004, declarant served the [PROPOSED] ORDER CONSOLIDATING THE ACTIONS, APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF LEAD COUNSEL by depositing a true copy thereof in a United States mailbox at Los Angeles, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 7TH day of September, 2004, at Los Angeles, California.

_____
CYNTHIA DORSEY

## CORINTHIAN COLLEGES

### Service List

| Counsel for Plaintiffs | |
|---|---|
| Christopher Kim<br>Lisa J. Yang<br>**LIM RUGER & KIM**<br>1055 West 7th Street, Suite 2800<br>Los Angeles, CA 90017<br>Tel.: (213) 955-9500<br><br>Eric J. Belfi<br>**RABIN MURRAY AND FRANK**<br>275 Madison Avenue, Suite 801<br>New York, NY 10016<br>Tel.: (212) 682-1818<br><br>Marc A. Topaz<br>Richard A. Maniskas<br>**SCHIFFRIN & BARROWAY**<br>3 Bala Plaza East, Suite 400<br>Bala Cynwyd, PA 19004<br>Tel.: (610) 667-7706<br><br>*Attorneys for Conway Investment Club* | Kevin J. Yourman<br>Jennifer R. Williams<br>Vahn Alexander<br>**WEISS & YOURMAN**<br>10940 Wilshire Blvd, 24th Fl.<br>Los Angeles, CA 90024<br>Tel.: (310) 208-2800<br>Email: service@wyca.com<br><br>Timothy J. Burke<br>**STULL STULL & BRODY**<br>10940 Wilshire Boulevard, Suite 2300<br>Los Angeles, CA 90024<br>Tel.: (310) 209-2468<br>Email: service@ssbla.com<br><br>*Attorneys for Barbara Kaufman* |
| Robert I. Harwood<br>Joshua D. Glatter<br>**WECHSLER HARWOOD**<br>488 Madison Avenue, 8th Floor<br>New York, NY 10022<br>Tel.: (212) 935-7400<br><br>Lionel Z. Glancy<br>**GLANCY BINKOW & GOLDBERG**<br>1801 Avenue of the Stars, Suite 311<br>Los Angeles, CA 90067<br>Tel.: (310) 201-9150<br><br>*Attorneys for Kwok Yau Tong* | Peter Arthur Binkow<br>**GLANCY BINKOW & GOLDBERG**<br>1801 Avenue of the Stars, Ste 311<br>Los Angeles, CA 90067<br>Tel.: (310) 201-9150<br>Email: info@glancylaw.com<br><br><br>*Attorneys for Michael Orlando* |
| Jonathan M. Stein<br>**JONATHAN M. STEIN LAW OFFICES**<br>197 S Federal Highway, Suite 200<br>Boca Raton, FL 33432 | Betsy C. Manifold<br>Francis A. Bottini, Jr.<br>Francis M. Gregorek<br>Rachele R. Rickert |

DOCS\223239v1

-4-

| | |
|---|---|
| 561-750-3000<br><br>*Attorneys for James Dolan* | **WOLF HALDENSTEIN ADLER FREEMAN & HERZ**<br>Symphony Twr<br>750 B St, Ste 2770<br>San Diego, CA 92101<br>Tel.: (619) 239-4599<br>Fax: (619) 234-4599<br><br>*Attorneys for Ivan Meneses* |
| William S. Lerach<br>Darren J. Robbins<br>**LERACH COUGHLIN STOIA GELLER RUDMAN AND ROBBINS**<br>401 B Street, Suite 1700<br>San Diego, CA 92101-4297<br>Tel.: (619) 231-1058<br>Email: denisey@lcsr.com<br><br>*Attorneys for Douglas Rose* | Evan J. Smith<br>Marc L. Ackerman<br>**BRODSKY AND SMITH**<br>333 East City Avenue, Suite 602<br>Bala Cynwyd, PA 19004<br>Tel.: (610) 667-6200<br><br>*Attorneys for Kok Yeoh* |
| Deborah R. Gross<br>**BERNARD M. GROSS LAW OFFICES**<br>1515 Locust St, 2nd Fl.<br>Philadelphia, PA 19102<br>Tel.: (215) 561-3600<br><br>*Attorneys for James Stellato* | Robert I, Harwood<br>Joshua D, Glatter<br>**WECHSLER HARWOOD**<br>488 Madison Avenue<br>8th Floor<br>New York, NY 10022<br>Tel.: (212) 935-7400<br><br>*Attorneys for Kwok Yau Tong* |
| *Defendants* | |
| Robert Dell Angelo<br>**Munger Tolles & Olson Llp**<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, CA 90071<br>Tel: (213) 683-9100<br>(213) 687-3702 (fax) | |

DOCS\223239v1

~5~

1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7
8

RICHARD CURTIS, on behalf of himself and
all others similarly situated,

No. C 04-2275 SI

9

Plaintiffs,

**CLASS ACTION**

v.

**ORDER CONSOLIDATING ACTIONS
AND APPOINTING LEAD PLAINTIFF
AND LEAD COUNSEL**

10

BEA SYSTEMS, INC., ALFRED S. CHUANG,
CHARLES L. ILL, III, and THOMAS M.
ASHBURN,

11
12
13

Defendants.
                                                              /

14
15
16
17
18

On September 24, 2004, the Court heard argument on motions to consolidate various related securities class actions and competing motions to appoint lead plaintiff and lead counsel. Having considered the papers filed and the argument of counsel, the Court GRANTS the motion to consolidate these actions, appoints ARCA S.p.A. lead plaintiff and appoints its counsel, Green & Jigarjian and Schiffrin & Barroway, lead counsel.

19

**BACKGROUND**

20
21
22
23
24

Plaintiffs Tareq Zuaiter, John E. Kalil, and Roland Pardun ("the Zuaiter Group") and ARCA S.G.R. S.p.A. ("ARCA") are members of a class bringing a securities class action against defendant BEA Systems, Inc. ("BEA Systems" or the "Company") under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "'34 Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.

25
26
27
28

BEA Systems is a provider of application infrastructure software and related services. Compl. ¶ 2. Specifically, a product called the "BEA WebLogic Enterprise Platform" provides application infrastructure "for building and deploying distributed, integrated information technology environments, allowing customers to

United States District Court
For the Northern District of California

1   integrate private client/server networks, the Internet, intranets, extranets, virtual private networks, and

2   mainframe and legacy systems as system components." Id. The Company's executive offices are in San Jose,

3   where its day-to-day operations occur. Id. at ¶ 7(b). Plaintiffs allege that the Company and certain of its

4   officers and directors artificially inflated the Company's stock price during the class period, November 13,

5   2003 through May 13, 2004, by issuing materially false and misleading statements regarding BEA's business

6   and prospects. Id. at ¶ 3.

7          On May 13, 2004, BEA reported disappointing first quarter results and attributed these results to "the

8   difficult selling environment" and "sales execution issues." Id. at ¶ 3. Company shares fell 30% to $8 per

9   share. Id. at ¶ 3. Plaintiffs allege that defendants knew and concealed the real reasons for the first quarter

10  results: (1) the Company was experiencing sales execution problems in its licensing division, which would result

11  in license reserve being down; (2) a reorganization of the Company's sales' personnel disrupted sales during

12  the preceding quarter; (3) the Company's WebLogic 8.1 Platform product was not selling as well as defendants

13  claimed, and was not "revolutionary"; (4) the Company's North American reserves were disrupted by a

14  transfer of medium and small businesses to the General Accounts Team; and (5) the Company was

15  experiencing weakness in its telecom vertical business. Id. at ¶¶ 4(a)-(d); 23(a)-(e).

16         Because of defendants' false statements, the Company's stock price traded at inflated prices, as high

17  as $14 per share. Id. at ¶ 5. The Company's officers and directors sold more than $13 million worth when

18  the stock traded at its allegedly artificially inflated price. Id. Plaintiff and other class members allegedly suffered

19  injury when they purchased the Company's stock at artificially inflated prices. Id. at ¶ 27-28.

20         The first of seven related securities class actions was filed against BEA Systems on June 9, 2004.

21  ARCA Mot. for Appointment as Lead Plaintiff ("ARCA Mot.") at 3:12. Between June 9, 2004 and July 17,

22  2004, six more suits were filed in this District. Id. at 1:15-16. As required by § 21 D(a)(3)(A)(I) of the

23  Exchange Act, a notice was published over Business Wire on June 9, 2004, advising class members of the

24  existence and nature of the litigation. Decl. of Patrice L. Bishop ("Bishop Decl."), Ex. A; Decl. of Darren J.

25  Check ("Check Decl."), Ex. B. The notice set a 60 day window for class members to appear and move for

26  appointment as lead plaintiff, by August 9, 2004. Id. Three motions were filed within the time limit, two of

27

28

United States District Court
For the Northern District of California

2

1   which are now before the Court, one by the Zuaiter Group, and one by ARCA.[1]  In addition, both movants

2   have moved to have all the actions consolidated.

3          The Zuaiter Group is comprised of three individuals who collectively purchased 48,380 shares of BEA

4   systems stock during the Class Period.  Zuaiter Group's Mot. for Appointment as Lead Plaintiff ("Zuaiter

5   Group Mot.") at 5:9-10.  ARCA is a mutual fund manager based in Milan, Italy.  ARCA Mot. at 2:4; Decl.

6   of John W. Pillette ("Pillette Decl."), Ex. A (Decl. of Dr. Attilio Ferrari) ¶ 2.

7          Now before the Court are the two competing motions for appointment of lead plaintiff and approval

8   of counsel, one by the Zuaiter Group, represented by Stull, Stull & Brody, LLP; and one by ARCA,

9   represented by Schiffrin & Barroway, LLP and Green and Jigarjian, LLP.

10

11                                    **LEGAL STANDARD**

12  **A.     Motion to consolidate**

13         Under Rule 42(a) of the Federal Rules of Civil Procedure:

14         When actions involving a common question of law or fact are pending before the court, it may order
           a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions
15         consolidated; and it may make such orders concerning proceedings therein as may tend to avoid
           unnecessary costs or delay.

16  Courts have recognized that securities class actions are particularly suited to consolidation to help expedite

17  pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple

18  proceedings, and minimize the expenditure of time and money by everyone involved.  See In re Equity Funding

19  of Amer. Sec. Litig., 416 F. Supp. 161, 176 (C.D. Cal. 1976) (citation omitted).  A court must rule on a

20  motion to consolidate before it can rule on a motion to appoint a lead plaintiff.  Securities Exchange Act, §

21  21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii).

22

23

24

25  **B.     Motion to appoint lead plaintiff**

26         It has been long recognized that private securities litigation provides "'a most effective weapon in the

27  ────────────────────

28      [1] Cement Masons and Plasterers Retirement Trust, Brian A. Metz and Mustapha Bahij also filed a
    motion for appointment of lead plaintiff and counsel, but withdrew that motion on August 27, 2004.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   enforcement' of the securities laws and [is] 'a necessary supplement to [administrative] action.'" Bateman

2   Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310, 105 S. Ct. 2622 (1985).  Although Congress

3   affirmed that such litigation "is an indispensable tool with which defrauded investors can recover losses," it

4   enacted the Private Securities Litigation Reform Act of 1995 (PSLRA) in response to a widespread perception

5   of abuse in securities class actions. Joint Explanatory Statement of the Committee of Conf., Conference Report

6   on Sec. Litig. Reform, H.R. Conf. Rep. No. 104-39 at 31 (1995). Section 21D of the PSLRA  provides

7   well-defined standards and procedures for selecting lead plaintiffs in a securities class action and is "intended

8   to encourage the most capable representatives of the plaintiff class to participate in class action litigation and

9   to exercise supervision and control of the lawyers for the class." H.R. 104-39 at 32.  See generally In re

10  Microstrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 432-436 (E.D. Va. 2000).

11        Under the procedures set out in the PSLRA, all proposed lead plaintiffs must have submitted a sworn

12  certification setting forth certain facts designed to assure the court that the plaintiff (i) has suffered more than

13  a nominal loss, (ii) is not a professional litigant, and (iii) is otherwise interested and able to serve as a class

14  representative. 15 U.S.C. § 78u-4(a)(2)(A).  The plaintiff in the first lawsuit to be filed must additionally

15  publish notice of the complaint in a widely circulated business publication within twenty days of filing the

16  complaint.  Id. at  § 78u-4(a)(3)(A)(I).  The notice must include a description of the claim and notify

17  prospective class members that they may move within 60 days of the notice to be named lead plaintiff.

18        Once applications for lead plaintiff status are closed, the district court must determine who among the

19  movants for lead plaintiff status is the "most adequate plaintiff." Id. at § 78u-4(a)(3)(B)(I). The PSLRA directs

20  courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court

21  determines to be most capable of adequately representing the interests of class members . . . ." Id.  Toward

22  this end, the court must consider three factors: "the court shall adopt a presumption that the most adequate

23  plaintiff . . . is the person or group of persons that - (aa) has either filed the complaint or made a motion in

24  response to a notice . . .; (bb) in the determination of the court, has the largest financial interest in the relief

25  sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil

26  Procedure." Id. at § 78u-4(a)(3)(B)(iii)(I). The presumption of most adequate plaintiff may be rebutted by

27  evidence that the designated plaintiff "will not fairly and adequately protect the interests of the class" or "is

28

4

1    subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. at §

2    78u-4(a)(3)(B)(iii)(II).

3         In the Ninth Circuit, In re Cavanaugh, 306 F.3d 726, 729-30 (9th Cir. 2002), governs lead plaintiff

4    selection and establishes a three-step process. First, as discussed above, timely and complete notice of the

5    action must be published. Id. at 729. Second, the district court considers the losses suffered by potential lead

6    plaintiffs and selects "the one who 'has the largest financial interest in the relief sought by the class' and

7    'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" Id. at 730, citing 15

8    U.S.C. § 78u-4(a)(3)(B)(iii)(I). Thus the court must determine which plaintiff "has the most to gain from the

9    lawsuit." Cavanaugh, 306 F.3d at 730. Finally, the court focuses on that plaintiff to ensure that the proposed

10   lead plaintiff "satisfies the requirements of [Fed. R. Civ. Pro.] 23 (a), in particular those of 'typicality' and

11   'adequacy.'" Id.

12        A plaintiff who satisfies the first two steps becomes the "presumptively most adequate plaintiff." Id.

13   In step three, other plaintiffs have the opportunity to rebut the presumptive lead plaintiff's showing of typicality

14   and adequacy. Id. at 730, citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

15        Once the court has designated a lead plaintiff, the lead plaintiff "shall, subject to the approval of the

16   court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).  A court generally

17   should accept the lead plaintiff's choice of counsel unless it appears necessary to appoint different counsel to

18   "protect the interests of the class." Id. at § 78u-4(a)(3)(B)(iii)(II)(aa).  In the Ninth Circuit, Cavanaugh

19   establishes the standard for approval of lead counsel. "[T]he district court does not select class counsel at all,"

20   id. at 732; instead, the district court generally approves the lead plaintiff's selection of counsel.

21

22

23

24   ///

25

26

27

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

### DISCUSSION

**A.     Motion to consolidate**

Both proposed lead plaintiffs have filed motions to consolidate the seven related cases pending in the Northern District of California against BEA Systems, Inc., and both motions are unopposed. The Court GRANTS the motions to consolidate.

**B.     Competing motions to appoint lead plaintiff and approve lead counsel**

The notice of this action was posted on Business Wire, a widely circulated national business-oriented publication. See Bishop Decl., Ex. A; Check Decl., Ex. B. The Zuaiter Group and ARCA have both filed timely motions for appointment as lead plaintiff and submitted acceptable sworn certifications. See Bishop Decl., Ex. B; Check Decl., Ex. A. The only task that remains is to determine which movant is the most adequate plaintiff.

**1.     Financial interest in the litigation**

The Court must first determine which movant has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Zuaiter Group asserts that its financial interest in the litigation is $242,625, distributed as follows: Zuaiter – $138,221; Kalil – $55,804; and Pardun – $48,600. Zuaiter Group's Mot. at 2:20; Bishop Decl., Exs. B,C. ARCA asserts that it has the largest financial interest in the case, with losses of $255,042. ARCA's Mot. at 2:1-2; Check Decl., Ex. C.

ARCA claims that the Zuaiter Group's loss figures are inflated because group member John Kalil's sales figures for May 13, 2004, do not match the Bloomberg trading data for that date. Specifically, Kalil states that he sold 3,800 shares at $9.22 per share and 10,200 shares at $9.10 per share for a loss of $55,804, but ARCA states that BEA Systems stock traded at a low of $10.49 per share that day. See ARCA Opp'n, Ex. A. Applying these figures, ARCA calculates the Zuaiter Group's total loss at $223,621. ARCA's Opp'n at 3:13. The Zuaiter Group counters that, while BEA stock did close on May 13, 2004 at $10.78, the stock price dropped on after-hours trading and opened at $9.04 on May 14, 2004. Zuaiter Group's Surreply at 1:8-11; Exs. 1-2.

1   Regardless of which figures are used to calculate the Zuaiter Group's losses, the Court finds that

2   ARCA has the largest financial interest in the litigation, and is thus entitled to the presumption of most adequate

3   plaintiff, if it meets the requirements of typicality and adequacy.

4

5       2.      **Typicality and adequacy**

6       While the Zuaiter Group does not dispute ARCA's higher loss figures, it argues that ARCA should not

7   serve as lead plaintiff because ARCA is an atypical member of the class. Specifically, the Zuaiter Group alleges

8   that ARCA "engaged in a suspicious pattern of trading which included short selling BEA stock" during the Class

9   Period. Zuaiter Group's Opp'n at 2:21-24. As an alleged short-seller and possible "hedge fund," the Zuaiter

10  Group contends, ARCA intended to drive down the price of stock so that it could buy more at a lower price,

11  and therefore its interests are not aligned with those of other class members.[2] In addition, the Zuaiter Group

12  questions whether ARCA's clients have authorized ARCA to litigate on their behalf, and points out that there

13  is a pending case before the Ninth Circuit regarding whether an "investment advisor" may be appointed as lead

14  plaintiff. Id. at 3:22-25; see id., Ex. 1 (In re Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund

15  v. Anchor Capital Advisors, No. 04-73146). It contends that ARCA has not provided specific information

16  about its structure, clients, whether it has notified its clients of its motion for appointment as lead plaintiff, or

17  what "sophistication and resources" it has to "effectively manage this litigation." Zuaiter Group Opp'n at 1:7-

18  14.

19      ARCA responds that Zuaiter Group has not shown that ARCA engaged in short selling or established

20  why ARCA "appears" to be a hedge fund or asset manager. ARCA states that it is a mutual fund manager that

21  invested in BEA Systems on behalf of its own mutual funds, not on behalf of individual clients who control those

22  funds or receive investment advice from ARCA, and attaches a declaration from its Managing Director in

23  support of these claims. ARCA Reply at 4:10-14; see Pillette Decl., Ex. A (Decl. of Dr. Attilio Ferrari) ¶ 2,

24

_____

25      [2] The Zuaiter Group bases its claim that ARCA engaged in short-selling by pointing to the fact that
    ARCA purchased 254,388 shares of BEA Systems stock for $12.2776 on November 19, 2003; it sold them
26  for a profit of $0.2206 per share, a total of $56,118 one week later; just over three weeks later, it purchased
    353,715 more shares for $12.3378 and sold these over the next two months for profits ranging from $1.7957
27  per share to $0.6074 per share, totaling $371.269. It then had 88,430 shares left, and it bought 88,430 more,
    of which it sold 36,397 two weeks before the May 13, 2004 announcement. See Zuaiter Group Opp'n at 3:7-
28  16. Without more, the Court is unpersuaded that this reflects short-selling.

7

United States District Court
For the Northern District of California

1    4.  Therefore, ARCA has full authority to bring suit, and Dr. Ferrari will actively monitor the litigation. Id. at

2    ¶ 4-5.  ARCA also argues that, as a large investor, it is precisely the kind of prototypical "institutional investor"

3    that Congress intended to serve as lead plaintiff under the PSLRA.  ARCA Mot. at 8:12-25.

4         By contrast, ARCA argues, the Zuaiter group does not survive the "rule of reason," under which the

5    proposed group of plaintiffs must "actively represent the class."  This Court applies this rule of reason on a

6    case-by-case basis to determine whether an asserted group "has demonstrated the ability to represent the class

7    and direct the litigation without undue influence from counsel." In re Versata, Inc. Sec. Litig., 2001 U.S. Dist.

8    LEXIS 24270, at *21 (N.D. Cal. Aug. 20, 2001).  Because the Court lacks any specific information about

9    the three individuals in the Zuaiter Group, ARCA argues that it cannot ensure that this group of plaintiffs has

10   the sophistication and business knowledge to adequately represent the class and direct the litigation without

11   undue influence from counsel. In re Versata, at *18-*22.[3]

12        The Court finds that ARCA meets the typicality and adequacy requirements.  To meet the typicality

13   requirement, the claims of a lead plaintiff and class members need not be identical.  In re Enron Corp. Sec.

14   Litig., 206 F.R.D. 427, 445 (S.D. Tex. 2002), citing In re Lucent Techs., Inc. Sec. Litig., 194 F.R.D. 137,

15   150 (D.N.J. 2000) ("the typicality requirement is satisfied when the plaintiff's claim arises from the same event

16   or course of conduct that gives rise to the claims of other members and is based on the same legal theory.").

17   In fact, "the test for typicality is not demanding . . . . [T]he critical inquiry is whether the class representative's

18   claims have the same essential characteristics of the putative class."  In re Enron, at 445, n.10, citing Stirman

19   v. Exxon Corp., 280 F.3d 554, 562-63 (5th Cir. 2002).  As the court explained in Deutschman v. Beneficial

20   Corp., 132 F.R.D. 359, 373 (D. Del., 1990),  "the focus of the typicality inquiry is not on plaintiff's behavior,

21   but defendants'."  If defendants' course of conduct gave rise to all class members' claims and if "defendants

22   have not taken any action unique to the named plaintiff, then the representative's claim is typical." Id. (citations

23   omitted).  Here, the claims of all plaintiffs, including ARCA, are based on whether BEA Systems' alleged

24   misrepresentations injured its stockholders by artificially inflating its stock price.  Moreover, the Court is

25

26

27       [3] The Court does not agree with ARCA that specific information from proposed lead plaintiffs is always
     required. In Versata, the Court relied on declarations submitted by the putative plaintiffs to establish their
     business sophistication, but did not expressly require them, like the district court in In re Network Associates,

28   Inc. Sec. Litig., 76 F.Supp.2d 1017 (N.D. Cal. 1999).

1   satisfied that ARCA is neither a hedge fund engaged in short selling nor an investment advisor acting without

2   the authorization of its clients.

3        The representative must have sufficient interest in the case's outcome to ensure vigorous advocacy.

4   The Court finds no evidence of any antagonism between the interests of ARCA and the class.  ARCA has

5   certified its willingness to serve as representative plaintiff and has retained counsel experienced in litigation

6   securities class actions.  No challenge has been made to ARCA's selection of counsel.

7        The Court finds that ARCA, as the plaintiff with the largest financial stake in the litigation, also satisfies

8   the typicality and adequacy tests necessary to serve as lead plaintiff in this litigation.

9

10                                   **CONCLUSION**

11        For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motions to

12   consolidate all related actions.  The Court GRANTS ARCA's motion for appointment as lead plaintiffs along

13   with Schiffrin & Barroway LLP as lead counsel and Green & Jigarjian LLP as liaison counsel.  The motion by

14   the Zuaiter Group is DENIED.

15        Counsel for ARCA is ordered to prepare, circulate for approval as to form and submit to the Court

16   an order of consolidation and an Amended Consolidated Complaint, **all to be filed on or before October**

17   **15, 2004.**

18

19        **IT IS SO ORDERED.**

20

21   Dated: September 24, 2004                    S/Susan Illston

22                                               SUSAN ILLSTON
                                                 United States District Judge

23

24

25

26

27

28

United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re PARMALAT SECURITIES LITIGATION

This document relates to:  All Cases

MASTER DOCKET
04 Civ. 0030 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AMENDED ORDER

LEWIS A. KAPLAN, *District Judge.*

　　1.　　For reasons stated on the record in open court on May 21, 2004:

　　　　(a)　　The motions of plaintiff Hermes Focus Asset Management Europe Ltd. ("Hermes") [docket item 29] and of Cattolica Partecipazioni S.p.A., Solorat, Societe Moderne des Terrassements Parisiens, and Capital & Finance Asset Management (collectively, the "Bond Group") [docket items 23 and 66] to appoint them as lead plaintiffs and their counsel as lead counsel, are granted to the extent that Hermes and the Bond Group are appointed co-lead plaintiffs and their respective counsel, Stuart M. Grant of the firm of Grant & Eisenhofer and Steven J. Toll of the firm of Cohen, Milstein, Hausfeld & Toll are appointed co-lead counsel.  The appointment of Hermes is conditioned upon Mr. Goobey resigning either from the Hermes board of directors or from the Morgan Stanley advisory board no later than ten days from the date of this order and remaining off whichever board he resigns from for the duration of this litigation.

　　　　(b)　　The motions of Southern Alaska Carpenters Retirement Trust and others [docket items 24, 25, 26, 27 and 28], of Margery Louise Kronengold and Ezio Argano [docket items 76 and 89], and of Erste-Sparinvest Kapitalanlagegesellschaft m.b.H. [master docket item 30; 04 Civ. 47 docket item 4; 04 Civ. 367 docket item 4] are denied.

　　2.　　The motions to strike [docket items 97 and 102] are denied.

　　3.　　Plaintiffs shall filed a consolidated amended complaint no later than August 19, 2004.

　　SO ORDERED.

Dated: May 25, 2004

_____
Lewis A. Kaplan
United States District Judge

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 3314943 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Ohio, Eastern
Division.
In re: THE GOODYEAR TIRE & RUBBER
COMPANY SECURITIES LITIGATION
No. 5:03 CV 2166.

May 12, 2004.

Jack Landskroner, Cleveland, OH, for Plaintiff.
Jack Morrison, Jr., Thomas R. Houlihan, Akron, OH,
Jacob B. Radcliff, Jerome S. Hirsch, Jonathan Lerner,
Lauren Aguiar, New York, NY, John T. Billick,
Cleveland, OH, for Defendants.

MEMORANDUM OPINION & ORDER

[Resolving Docs. 13, 16, 17 in case # 5:03CV2166
and Doc. 12 in case # 5:03CV2210]

J. Introduction

ADAMS, J.
*1 The above-captioned case is an action for
securities fraud brought on behalf of shareholders of
The Goodyear Tire & Rubber Company (the
"Shareholders") against Defendants The Goodyear
Tire & Rubber Company (Goodyear), Robert J.
Keegan, Robert W. Tieken, Samir G. Gibara,
Stephanie W. Bergeron, John W. Richardson, and
Richard J. Kramer, (collectively referred to as
"Defendants"). The Shareholders base their claims on
violations of Section 10(b) of the Securities and
Exchange Act of 1934, Section 20(a) of the Securities
Exchange Act of 1934, and Rule 10b-5, which was
promulgated thereunder. The action was filed as a
class action, excluding from the class Defendants,
directors and officers of Goodyear, their families and
affiliates.

On December 31, 2003, this Court entered an order
consolidating all individual actions related to this
matter. Shortly thereafter certain individual movants
filed motions requesting appointment as lead plaintiff
in the consolidated action. The first group of movants
consists of the Alaska Electrical Pension Fund and
the Central States, Southeast and Southwest Areas

Pension Fund (the "Institutional Funds").[FN1] The
second group of movants consist of funds A57, C16
and NK1, which are part of the fund family managed
by Capital Invest, die Kapitalanlagegesellschaft der
Bank Austria Creditanstalt Gruppe GmbH, a fund
management company located in Vienna, Austria
(Capital Invest).[FN2] The last movant is Flamina
Holdings, AG (Flamina Holdings.)[FN3] Flamina
Holdings is a holding entity for two individual
investors, Mr. Michael May and Ms. Christina May.

FN1. ECF Doc. 16.

FN2. ECF Doc. 17.

FN3. Flamina's motion was filed as ECF
Doc. 12 in case 5:03CV2210.

On February 10, 2004, the Court held a hearing at
which time counsel for each of the proposed lead
plaintiffs had an opportunity to present their
arguments. Counsel for the Institutional Funds,
Capital Invest and Flamina were present at the
hearing.[FN4] The Court has reviewed the parties'
motions, responses, and replies thereto. It has also
fully considered the arguments presented at the
hearing.

FN4. The Court notes that a motion filed by
movant Richard Berman is still pending on
its docket. Mr. Berman was not represented
by counsel at the hearing. Therefore, the
Court deems his motion withdrawn. Even if
the Court seriously considered Mr. Berman's
motion, however, it would not appoint him
as lead plaintiff in this action. By Mr.
Berman's own admission, he has lost only
$54,730, which is much less than the losses
the other movants allegedly suffered.
(Berman, Mot. for Lead Plf. at 9).

II. The Alleged Losses

The Institutional Funds request appointment as lead
plaintiff based on their alleged loss of more than $3.7
million in connection with the purchase of over
188,000 shares of Goodyear securities between the
time of October 13, 1998 and October 22, 2003 (the
"Class Period"). The Institutional Funds also request

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 3314943 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

approval of their selection of lead counsel, William S. Lerach and Tor Gronborg of Milberg, Weiss, Bershad, Hynes & Lerach LLP and Landskroner-Grieco, Ltd. as liaison counsel.

Likewise, Capital Invest requests appointment as lead plaintiff based on its loss of approximately $1.2 million in connection with its acquisition of 83,100 shares of Goodyear common stock during the class period. Capital Invest also requests approval of its selection of lead counsel the law firm of Bernstein, Litowitz, Berger & Grossman, LLP (Bernstein Litowitz) and the law firm Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA (Climaco Lefkowitz) as liaison counsel.

*2 Flamina Holdings requests appointment as lead plaintiff based on its alleged loss of $2 million in connection with its acquisition of common stock and options. Flamina Holdings also requests approval of its selection of lead counsel the law firm of Scott & Scott and the law firm Tzangas, Plakas, Mannos, & Recupero as liaison counsel. However, Flamina Holdings' stated losses are based on its losses plus the losses of Goodyear Tireworkers Independent Unity of the USWA Local 307 Topeka (GTWIU), who no longer seeks appointment as lead plaintiff. GTWIU was originally a co-movant with Flamina Holdings. However, it subsequently withdrew from the motion.[FN5] At the hearing on this matter, Flamina Holdings represented that its loss alone was only $885,000.

> FN5. ECF Doc. 32, filed in case 5:03CV2166.

**III. Capital Invest is Appointed as Lead Plaintiff**

The Private Securities Litigation Reform Act (PSLRA) sets forth the procedure that governs appointment of the lead plaintiff in actions arising under the Securities and Exchange Act of 1934 when such an action is brought as a class action under the Federal Rules of Civil Procedure. *See generally* 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). This procedure first requires that the plaintiff who files the initial action, within 20 days of filing, publish a notice to the class informing the class members of their right to file a motion for appointment as lead plaintiff. *Id.* at § 78u-4(a)(3)(A)(i).[FN6]

> FN6. Here, the first notice of pendency was published over *The Business Wire* on

October 23, 2003. Consistent with the PSLRA, the notice advised potential class members of the pendency of the action, the claims asserted therein, the purported class period, and that any member may, within 60 days from the date of the notice, move the Court to serve as lead plaintiff in the action. *Id.* at § 78u-4(a)(3)(A)(i).

The PSLRA also provides that within 90 days after publication of notice, the district court shall consider the class members' motions and shall appoint as lead plaintiff the member or members of the class that the Court determines most capable of adequately representing the interests of the class members.[FN7] *Id.* at § 78u-4(3)(B)(i). When making the determination of "most adequate plaintiff," the PSLRA states that:

> FN7. The Court acknowledges that this Order designating lead Plaintiff was not issued within 90 days after publication of notice. However, the Court was not able to comply with the 90-day provision in this case. Based on the Court's trial schedule it was not able to hold the hearing before expiration of the 90-day period. Accordingly, the Court did not have the requisite information on which to base its decision. *In re PRI Automation, Inc. Securities Litigation,* 145 F.Supp.2d 138, 144-45 (D.Mass.2001) (noting that compliance with the 90-day provision in some cases would require a district judge to make an uninformed decision and finding the 90-day provision to be an unconstitutional intrusion on judicial functions). Moreover, the Court needed time after the hearing to appropriately consider the parties' motions and focus on selecting the lead plaintiff and lead counsel best suited to adequately and fairly represent the interests of the plaintiff class in this case. *See id.*

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under [the PSLRA] is the person or group of persons that -
(aa) has either filed the complaint or made a motion in response to a notice ...;
(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 3314943 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

*Id.* § 78u-4 (3)(B)(iii)(I)(aa)-(cc). The above presumption may only be rebutted by proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class, or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing to the class. *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). The lead plaintiff selected by the Court has the discretion to retain counsel of its choice to represent the class, subject to court approval. *Id.* § 78u-4(a)(3)(B)(v).

Here, all movants have timely filed their motions to be appointed lead plaintiff in this action. Accordingly, the Court now turns to its determination of the movants' relative financial interests in the relief sought by the class.

### IV. Largest Financial Interest

*3 The PSLRA does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest." *See id.* 78(u)(a)(3)(B)(iii)(I)(bb). This Court will calculate financial interest employing a four-factor inquiry recognized by a host of other district courts. *See, e.g., In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 295 (E.D.N.Y.1998); *In re Nice Sec. Litig.,* 188 F.R.D. 206, 217 (D.N.J.1999); *In re Cable & Wireless, PLC, Sec. Litig.,* 217 F.R.D. 372, 375 n. 4 (E.D.Va.2003); *In re Comedisco Sec. Litig.,* 150 F.Supp.2d 943, 945 (N.D.Ill.2001). The four factors relevant to the calculation are: (1) the number of stock shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered during the class period. The Court separately addresses each movant's financial interest in light of these factors, subject to the caveat that this discussion is limited to resolving the lead plaintiff motions, and is not an ultimate determination of liability and damages.

### A. Flamina Holdings

Under the foregoing analysis, Flamina Holdings has not demonstrated the most significant financial interest in this litigation. Flamina Holdings purchased and sold 65,000 shares of Goodyear stock during the Class Period, for a net purchase of zero shares. The company expended $1,550,000 and received $665,400, incurring a total loss of $884,600. The

record thus indicates that, of the three movants for lead plaintiff, Flamina Holdings expended the least amount of funds and purchased the fewest (total) shares of Goodyear stock during the Class Period. As the Court discusses below, Flamina Holdings' $884,600 loss is not the greatest loss incurred by the movants. Accordingly, Flamina Holdings is not the best candidate for lead plaintiff.

Flamina Holdings' motion is denied on the additional ground that the movant is a holding company for two individual investors and thus is not an "institutional investor." The legislative history of the PSLRA reflects a preference for institutional investors in the lead plaintiff role. *See In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803, 821 (N.D.Ohio 1999).

Flamina Holdings' alternative request for appointment as a co-lead plaintiff also is denied. A co-lead plaintiff appointment is not warranted under the circumstances present in this case and likely would result in increased costs and duplication of efforts.

### B. The Institutional Funds

The Institutional Funds' motion also is denied on the ground that the Institutional Funds do not have the most significant financial interest in this litigation based on damages incurred from purchases and sales of Goodyear securities during the Class Period. Although the movants' respective representations of loss seem to indicate that the Institutional Funds suffered the greatest damages by a considerable margin, the Institutional Funds' claimed $3.7 million loss is illusory.

*4 The Institutional Funds have calculated their purported $3.7 million loss based solely on a first-in-first-out (FIFO) methodology, ignoring the four-pronged inquiry set forth above. In this situation, FIFO grossly inflates the Institutional Funds' damages because the Institutional Funds are a "net seller" of Goodyear stock. The Institutional Funds sold 202,714 more Goodyear shares during the Class Period than they purchased, and received profits from the sale of Goodyear stock during the Class Period than losses on the purchase of Goodyear securities.

Application of the four-factor test reveals FIFO's inaccuracy under the circumstances present here. The Institutional Funds purchased 188,675 shares of Goodyear stock during the Class Period and sold

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 3314943 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

391,389 shares for a net *sale* of 202,714 shares. A determination of net expenditures, or total monies received from sales ($12,910,959.72) of Goodyear stock less total funds expended on purchases ($5,299,423.81), verifies that the Institutional Funds received a total of $7,611,535.91 in net *proceeds* as a result of their high-volume Goodyear stock sales during the Class Period. The Institutional Funds may have benefitted from the alleged fraud in view of the fact that they earned millions of dollars on net sales of Goodyear stock during the Class Period. Accordingly, the Institutional Funds cannot establish the largest financial interest in the relief sought by the class.

Similarly, Central States and Alaska both are net sellers. Central States profited in the amount of $8,460,217.87 from its sales of Goodyear Stock during the Class Period. Although Alaska expended $848,681.96 more than it received, its loss is not even half as great as that claimed by Capital Invest. As such, the Court rejects the Institutional Funds' contention that they have incurred a greater financial interest in this litigation than any other lead plaintiff applicant. *See Weisz v. Calpine Corp.,* No. C 02-1200 SBA, Slip. Op. At 12 (N.D.Cal. Aug. 19, 2002) (rejecting motion of lead plaintiff movant who was a net seller and, as a result, "may have actually profited, not suffered losses as a result of the allegedly artificially inflated stock price"); *Comdisco,* 150 F.Supp. at 945-46 (same). *See also In re McKesson HBOC Sec. Litig.,* 97 F.Supp.2d 993, 996-97 (N.D.Cal.1999) ("[a] net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed.")

Even if the Court ignores the flaws inherent in the Institutional Funds' FIFO methodology, the Institutional Funds are not an acceptable lead plaintiff as they may be subject to unique defenses. Alaska sold all of its shares of Goodyear stock prior to the disclosure of the alleged fraud. Likewise, it appears that Central States sold the significant majority of its shares prior to the disclosure. Thus, both Alaska and Central States undoubtedly will face motions to dismiss and/or for judgment as a matter of law on the ground that certain losses suffered by them were not caused by the alleged fraud. *See In re Cable & Wireless,* 217 F.R.D. at 379 (stating that the lead plaintiff movant who sold its shares "before the fraud ... was revealed to the public ... could not have suffered any loss as result of the Defendants' alleged fraud"); *In re MicroStrategy Inc. Sec. Litig.,* 110

F.Supp.2d 427, 437 n. 23 (E.D.Va.2000) (holding that a lead plaintiff movant who sold shares in the subject company prior to the disclosure of the fraud also may be subject to "unique defenses based on the timing of its loss"); *Arduini/Mesina P'ship v. Nat'l Med. Fin. Servs. Corp.,* 74 F.Supp.2d 352, 361-62 (S.D.N.Y.1999) (granting the defendants' motion to dismiss the plaintiff's claims where plaintiff sold all of his shares in the subject company prior to disclosure of the fraud and could not demonstrate that his damages were caused by the defendants' fraudulent statements).

**\*5** Moreover, the Institutional Funds' motion is denied in light of this Court's previous ruling that lead plaintiff movants must have a pre-existing relationship and basis for acting as a collective unit to qualify under the PSLRA as a viable lead plaintiff group. *In re Telxon,* 67 F.Supp.2d at 823 (O'Malley, J.). At the February 10, 2004 hearing, counsel for the Institutional Funds admitted that Central States and Alaska have no relationship pre-dating this litigation and were joined solely for the purpose of prosecuting this case. As such, the Institutional Funds have improperly aggregated their losses for the purpose of their lead plaintiff motion.

### C. *Capital Invest*

Having denied the competing lead plaintiff applications, the Court now turns to Capital Invest's motion. Capital Invest has the most significant financial interest in this litigation. It purchased the most shares of Goodyear Stock during the Class Period and sold no shares, for a net purchase of 83,100 shares, a net expenditure of $1,779,900.36, and a claimed loss of approximately $1,200,000. Thus, Capital Invest is the presumptive lead plaintiff subject to the requirements of Rule 23 (discussed *infra.*)

Capital Invest's qualifications for lead plaintiff status are not susceptible to the Institutional Funds' challenges. The Court briefly examines said challenges below.

Contrary to the Institutional Funds' contention, Capital Invest possesses standing to assert securities fraud claims on behalf of the clients for whom it purchases and sells securities. A number of district courts have held that an investment manager has standing to bring securities claims on its clients' behalf if it is the clients' attorney-in-fact and has specific authority to recover its clients' investment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 5
Not Reported in F.Supp.2d, 2004 WL 3314943 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

losses. *See, e.g., Weingberg v. Atlas Air Worldwide Holdings, Inc.,* 216 F.R.D. 248, 255 (S.D.N.Y.2003) (stating that "when the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name"); *In re DaimlerChrysler AG Sec. Litig.,* 216 F.R.D. 291, 299 (D.Del.2003) (same); *In re Rent-Way Sec. Litig.,* 218 F.R.D. 101, 106-09 (W.D.Pa.2003) (same); *EZRA Charitable Trust v. Rent-Way, Inc.,* 136 F.Supp.2d 435 (W.D.Pa.2001) (same). Capital Invest's Declaration provides, "Capital Invest controls and manages the Funds and acts as attorney-in-fact for them. Capital Invest has full and complete authority to purchase and sell securities for each of the funds, and to institute legal action on their behalf." Based on the Declaration, the other evidence of record, and the caselaw cited above, Capital Invest has standing to bring suit and serve as lead plaintiff in this litigation.

The Institutional Funds' attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm, and therefore an uncommitted and uncontrollable candidate for lead plaintiff, is insupportable. Capital Invest has testified in its Declaration and through its attorneys at the February 10, 2004 hearing that it has vast resources, that it is committed to working to obtain the best possible recovery for the plaintiff class, and that its representatives will be available in person to the Court. Further, the Institutional Funds' comment that Capital Invest is located almost 4500 miles from the Court lacks a measure of ingenuousness given that Alaska itself is located over 4000 miles away and has not provided the Court with any proof that it is willing to make its representatives available to the Court as necessary. Further, Austrians are, by treaty, expressly entitled to the same rights and privileges before United States courts as United States citizens. *See* Treaty between the United States of America and Austria of Friendship, Commerce and Consular Rights, June 19, 1928, U.S.-Aus., art. IX, 47 Stat. 1876, 1931 WL 29977 (U.S. Treaty). Even in the absence of a treaty, to exclude a foreign investor from lead plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy.

*6 For all of the foregoing reasons, Capital Invest has the greatest financial interest in this case and is the presumptive lead plaintiff subject to the strictures and requirements of Rule 23. The Court now turns to its Rule 23 analysis.

**V. Adequacy & Typicality Under Rule 23(a)**

Having determined that Capital Invest is the largest stakeholder does not end this Court's analysis. The PSLRA requires that the lead plaintiff also satisfy the requirements of Federal Rule 23.[FN8] Here, the Court must find that Capital Invest would satisfy Rule 23's typicality and adequacy requirements before it can appoint Capital Invest as lead plaintiff.[FN9] *See In re Century Business Services Sec. Litig.,* 202 F.R.D. 532, 539 (N.D.Ohio 2001) (analyzing the typicality and adequacy requirements of Rule 23 in a securities class action governed by the PSLRA); *See also In re Telxon,* 67 F.Supp.2d at 807 n. 10 (noting that class action analysis under Rule 23 in securities actions hinges on the typicality and adequacy requirements of the rule). Based on the evidence before it, this Court finds that Capital Invest would satisfy the typicality and adequacy requirements of Rule 23.

> FN8. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a).

> FN9. Upon motion to certify this action as a class action, the Court will undertake the "rigorous analysis" necessary for a determination of whether the complete prerequisites of Rule 23 are met. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996) (citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). As the Sixth Circuit has noted, "[a] class is not maintainable as a class action by virtue of its designation as such in the pleadings." *Id.* Because, in this case, a consolidated complaint has not been filed, the Court will reserve the issue of whether a class will be certified for a later date.

Typicality is governed by Rule 23(a)(3), which requires that the claims or defenses of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2004 WL 3314943 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

representative party be typical to the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). In other words, a sufficient relationship must exist between the injury to the named representative and the conduct affecting the class. In re American Medical Sys. Inc., 75 F.3d 1069, 1082 (6th Cir.1996) (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed.1992)). "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory ." Id.

Capital Invest satisfies the typicality requirement. It seeks to represent a class of purchasers of Goodyear securities who have non-competing and non-conflicting interests. All class members purchased or acquired Goodyear stock during the Class Period and allegedly suffered a loss as the result of Defendants' conduct in connection therewith. As Capital Invest aptly notes, its claims deal with the same issues that pertain to the claims of the other class members. Namely, these issues are (1) whether Goodyear issued false and misleading statements during the Class period, (2) whether Defendants acted knowingly and/or with deliberate recklessness in issuing these allegedly false and misleading statements, (3) whether the market price of Goodyear stock was artificially inflated during the Class Period because of Defendants' allegedly wrongful conduct, and (4) whether the members of the class have sustained damages, and the amount of such damages. Because Capital Invest's claims deal with the same issues that pertain to the other class members, its interests are clearly aligned with those of the class. Id.

*7 Adequacy is governed by Rule 23(a)(4), which allows certification of a class only if the class representative will fairly and adequately protect the interest of the class. Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has set forth two criteria for determining adequacy. First, the class representative must have common interests with those unnamed class members. In re American Medical Systems, Inc., 75 F.3d 1069, 1082 (6th Cir.1996) (citation omitted). Second, it must appear that the class representative will vigorously prosecute the action with the assistance of qualified counsel. Id. According to the circuit, "[t]he adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class

members." Id.

Here, Capital Invest has common interests with the unnamed members of the class. Both Capital Invest and the other class members seek to recover their losses in connection with Defendants' alleged conduct. There is nothing to indicate that Capital Invest, as the class representative, would not vigorously prosecute the interests of the class. Clearly, Capital Invest has the need seek to recovery for its own losses. As such, there is no reason for this Court to find that Capital Invest would not just as vigorously prosecute and protect the interests of the class. As Capital Invest notes, there is no evidence before the Court of any antagonism between the interests of Capital Invest and the interests of the class members. Therefore, the Court sees no reason why Capital Invest cannot or would not vigorously prosecute the class members' claims.

There is also no evidence that the proposed lead counsel, Bernstein Litowitz, is not qualified counsel. In making this determination, the Court must consider whether the proposed counsel are qualified, experienced, and generally able to conduct the litigation. See Stout v. J.D. Byrider, 228 F.3d 709, 717 (6th Cir.2000). Having reviewed the resume of Bernstein Litowitz, proposed lead counsel in this action, the Court notes that the firm's litigation practice concentrates in the area of securities class actions. The firm also markets itself as "the nation's leading firm in representing institutional investors in securities fraud class action litigation." [FN10]

> FN10. See Capital Invest, Mot. to Consolidate at Exh. D.

A review of the firm's resume reveals that it is qualified in securities class action lawsuits. Other courts have found this as well. See, e.g. Piven v. Sykes Enterprises, Inc., 137 F.Supp.2d 1295, 1306 (M.D.Fla.2000) (finding Bernstein Litowitz experienced in litigating class action lawsuits); Osher v. Guess?, Inc., No. CV01-00871LGB, 2001 WL 861694 at *4 (C.D.Cal.2001) (unreported) (finding Bernstein Litowitz experienced in litigating complex securities actions after reviewing the firm's resume); Armour v. Network Assoc., Inc., 171 F.Supp.2d 1044, 1052 (noting that "[t]he firm resume of Bernstein Litowitz reveals its competence to provide class representation in a securities class action."). In fact, the firm's literature boasts numerous statements from various district court judges across the country who have commented on the outstanding performance of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Bernstein Litowitz in various actions where excellent results have been achieved for plaintiff class members. On the whole, there is nothing that would indicate to this Court that Bernstein Litowitz is anything but qualified, experienced, and generally able to conduct the litigation in this case.

### VI. Conclusion

*8 For the reasons stated above, Capital Invest's motion for appointment as lead plaintiff is granted. In keeping, its request appoint the law firm of Bernstein Litowitz as lead counsel and the law firm of Climaco Lefkowitz as liaison counsel is granted. All other pending motions are hereby denied.

IT IS SO ORDERED.

N.D.Ohio,2004.
In re Goodyear Tire & Rubber Co. Securities Litigation
Not Reported in F.Supp.2d, 2004 WL 3314943 (N.D.Ohio)

Briefs and Other Related Documents (Back to top)

• 2004 WL 3147605 (Trial Motion, Memorandum and Affidavit) Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dec. 30, 2004) Original Image of this Document (PDF)
• 2004 WL 3145073 (Trial Motion, Memorandum and Affidavit) Motion to Fix Defendants' Reply Deadline at January 21, 2005. (Dec. 6, 2004) Original Image of this Document (PDF)
• 2004 WL 3145065 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of their Motion to Dismiss the Consolidated Amended Class Action Complaint (Nov. 15, 2004) Original Image of this Document (PDF)
• 2004 WL 3144420 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of the Motion of Capital Invest to be Appointed Lead Plaintiff Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, for Approval of its Choice of Lead Counsel for the Class and in Opposit ion to the Motions of the Central States Group and Flamina (Feb. 9, 2004) Original Image of this Document (PDF)
• 2004 WL 3152998 (Trial Motion, Memorandum and Affidavit) The Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Consolidated Reply in Further Support of their Motion for Appointment as Lead

Plaintiff and for Approval of their Selection of Lead Counsel (Feb. 9, 2004) Original Image of this Document (PDF)
• 2004 WL 3152997 (Trial Motion, Memorandum and Affidavit) Movant Flamina's Reply in Support of its Motion for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel (Feb. 6, 2004) Original Image of this Document (PDF)
• 2004 WL 3146524 (Trial Motion, Memorandum and Affidavit) The Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Consolidated Opposition to the Competing Motions for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counse (Jan. 29, 2004) Original Image of this Document (PDF)
• 2004 WL 3152996 (Trial Motion, Memorandum and Affidavit) Movant Flamina's Response to the Motions for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel Filed by the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund and by Capital Inves t GmbH (Jan. 29, 2004) Original Image of this Document (PDF)
• 2004 WL 3146787 (Trial Motion, Memorandum and Affidavit) Plaintiff Richard Berman's Response to Motions for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Co-Lead Counsel (Jan. 12, 2004) Original Image of this Document (PDF)
• 2003 WL 23998043 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 23998246 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 23999273 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 23999846 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants'

Not Reported in F.Supp.2d                                                              Page 8
Not Reported in F.Supp.2d, 2004 WL 3314943 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 24001167 (Trial Motion, Memorandum and Affidavit) Class Action (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 24002678 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 23998228 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Motion of Capital Invest for Consolidation; to be Appointed Lead Plaintiff Pursuant to Section 21d(a)(3)(B) of the Securities Exchange Act of 1934; and to Approve Proposed Lead Plaintiff's Choice of Counsel for the Class (Dec. 23, 2003) Original Image of this Document (PDF)
• 2003 WL 23998026 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southeast Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998035 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998040 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998092 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998253 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and

Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998353 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Richard Berman for Consoidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23998849 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999134 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999263 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999268 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999333 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999343 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 9
Not Reported in F.Supp.2d, 2004 WL 3314943 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

• 2003 WL 23999748 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999957 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 24000014 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Motion of Capital Invest for Consolidation; to be Appointed Lead Plaintiff Pursuant to Section 21d(a)(3)(B) of the Securities Exchange Act of 1934; and to Approve Proposed Lead Plaintiff's Choice of Counsel for the Class (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 24001165 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 24001174 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 23999790 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Oct. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 23998348 (Trial Pleading) Complant for Violation of the Federal Securities Laws (Oct. 23, 2003) Original Image of this Document (PDF)
• 5:03cv02166 (Docket) (Oct. 23, 2003)
• 2003 WL 24002679 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of the Motion of Capital Invest to be Appointed Lead Plaintiff Pursuant to Section 21d(a)(3)(B) of the Securities Exchange Act of 1934, for Approval of its Choice of Lead Counsel for the Class and in Opposition to all other Competing Motions (Jan. 29, 2003) Original Image of this

Document (PDF)
• 2003 WL 23998875 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (2003) Original Image of this Document (PDF)
• 2003 WL 24001166 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (2003) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.